**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA KAMMEYER, et al.,** | : | **CASE NO. 1:01cv00649** |
| | : | **(J. Spiegel)** |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **CITY OF SHARONVILLE, OHIO, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MOTION OF THE DEFENDANTS MIKE SCHAPPA**
**AND THE CITY OF SHARONVILLE, OHIO TO DISMISS**
**PLAINTIFFS THIRD AMENDED COMPLAINT**

Comes now Defendants, Mike Schappa and the City of Sharonville, Ohio, and

respectfully move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for the

dismissal of Plaintiffs' Third Amended Complaint based upon Plaintiffs' failure to state claims

upon which relief can be granted.   This Motion to Dismiss is directed to all claims in the Third

Amended Complaint including all federal and state law claims. This Motion is supported by the

attached Memorandum.

_____ **s/ Lawrence E. Barbiere** _____
Lawrence E. Barbiere
Ohio Bar Number: 0027106
Attorney for Defendants, City of Sharonville, Ohio,
and Mike Schappa
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
11935 Mason Road, Suite 110
Cincinnati, OH  45249
(513) 583-4200
(513) 583-4203 (fax)
Email:  lbarbiere@schroederlaw.com

## <u>TABLE OF CONTENTS AND SUMMARY</u>

<u>Page</u>

I.     **PROCEDURAL POSTURE** .................................................................... 1

II.    **STATEMENT OF FACTS AS ALLEGED BY PLAINTIFF**............... 2

III.  **ARGUMENT**............................................................................. **4**

    A.     **Standard for Motion to Dismiss**.................................................. **4**

         <u>Gazette v. City of Pontiac</u>, 41 F.3d 1061, 1064 (6th Cir. 1994).................... 4
         <u>Culberson v. Doan</u>, 125 F.Supp.2d 252, 263 (S.D. Ohio W.D. 2000)......... 5
         <u>Bower v. Village of Mt. Sterling</u>, 44 Fed. Appx. 670, 2002 WL 1752270
         (6th Cir. Ohio)................................................................................................. 5
         <u>Wroblewski v. City of Washburn</u>, 965 F.2d 452, 459-60 (7th Cir. 1992)..... 5
         <u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th Cir. 1988). 5
         <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987)............... 5
         <u>Teagardner v. Republic-Franklin, Inc. Pension Plan</u>, 909 F.2d 947, 950
         (6th Cir. 1990)................................................................................................. 5

         Plaintiffs cannot rely on bare legal assertions or conclusory allegations to state a claim for relief.  Plaintiffs' allegations fail to state a claim upon which relief can be granted on the federal or state claims alleged in the Complaint.

    B.     **Plaintiffs Can Prove No Set of Facts That Would Entitle
            Them to Relief On Their Equal Protection Claim Under
            the "Class of One" Theory**............................................................... **6**

         Plaintiffs have not alleged an appropriate case for consideration under the "class of one theory and have failed to allege the extra factor of vindictive action, illegitimate animus or ill will directed at plaintiffs.

         <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)........................ 6
         <u>Esmail v. Macrane</u>, 53 F.3d 176, 180 (7th Cir. 1995)...................................... 6
         <u>Alsenas v. City of Brecksville</u>, No. 99-4063, 2000 U.S. App. LEXIS
           14520 (6th Cir. June 19, 2000).................................................................... 7
         <u>Harlen Associates v. Incorporated Village of Mineola</u>, 273 F.3d 494,
           500 (2nd Cir. 2001)........................................................................................ 7
         <u>Hilton v. City of Wheeling</u>, 209 F.3d 1005, 1008 (7th Cir. 2000)................... 7
         <u>Purze v. Village of Winthrop Harbor</u>, 286 F.3d 452, 455 (7th Cir. 2002)....... 7
         <u>DeMuria v. Hawkes</u>, 328 F.3d 704 (2d Cir. 2003)......................................... 8
         <u>Bower v. Village of Mount Sterling</u>, 44 Fed.Appx. 670, 673, 2002 WL
           1752270*2 (6th Cir. July 26, 2002)............................................................ 8

**Page**

C.    **Plaintiffs Can Prove No Set of Facts That Would Entitle
       Them to Relief On Their Denial of  Access to Courts Claim**........    **9**

       Plaintiffs have made no claim of an attempt to access the state
       courts and therefore have not sufficiently pled a claim for denial of
       access to courts.  Plaintiffs' claim is less one of defendants' denial
       of plaintiffs' access to courts than it is a claim of defendants' denial
       of plaintiffs' right to  the criminal prosecution of a third party.
       Plaintiffs have no constitutional right to the criminal prosecution of
       a third party.

Christopher v. Harbury,  _U.S._ , 122 S.Ct. 2179 (2002)...................................    10
Swekel v. City of River Rouge, 119 F.3d 1259, 1260 (6th Cir. 1997)..............    10
Bell v. City of Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984).....................    12
Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983)...............................................    12
Crowder v. Sinyard, 884 F.2d 804 (5th Cir. 1989), cert. denied,
       496 U.S. 974 (1990)...................................................................................    12
Horton v. California, 496 U.S. 128 (1990)**..**.......................................................    12
Harbury v. Deutch, 233 F.3d 596 (D.C. Cir. 2000).........................................    12
Joyce v. Mavromatis, 783 F.2d 56 (6th Cir. 1986)...........................................    16
Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988)..    17
Fisher v. City of Cincinnati, 753 F.Supp. 681, 685 (S.D. Ohio, W.D. 1990)......    17
Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999).......................    18
Collins v. Sotka, 81 Ohio St.3d 506, 518 (1998)...............................................    19
Mooneyhan v. Hawkins, 129 F.3d 1264*7 (6th Cir. 1997)....................................    19
Jones v. Union County Tennessee, 296 F.3d 417, 425 (6th Cir. 2002)..................    20

D.    **Plaintiffs Can Prove No Set of Facts That Would Entitle
       Them to Relief On Their Due Process Claim**...................................    **20**

       Plaintiffs' allegations fail to state a claim for violation of their
       substantive due process rights similar to the failure of their
       allegations of a deprivation of their equal protection rights and
       denial of their right of access to the courts.  These defendants did
       not invade the realm of Plaintiffs' bodily integrity and their
       conduct did not shock the conscience.

DeShaney v. Winnebago County of Dep't of Soc. Servs., 489 U.S. 189,
       195 (1989)......................................................................................................    21
Reed v. Knox County Dept. of Human Services, 968 F.Supp. 1212, 1216
       (S.D. Ohio, E.D. 1997)................................................................................    22
Gazette v. City of Pontiac, 41 F.3d 1061, 1066 (6th Cir. 1994)..........................    23
Barrett v. Outlet Broadcasting, Inc., 22 F.Supp.2d 726, 744 (S.D. Ohio,
       E.D. 1997).....................................................................................................    24

**Page**

Lillard v. Shelby Cty. Bd. Of Educ., 76 F.3d 716, 725 (6th Cir. 1996).............. 24
Culberson v. Doan, 125 F.Supp.2d 252 (S.D. Ohio 2000).............................. 24
Claybrook v. Birchwell, 199 F.3d 350 (6th Cir. 2000)........................................ 24
County of Sacramento v. Lewis, 523 U.S. 833 (1998)..................................... 24

    **E.**    <u>**Plaintiffs' State Law Claims Against Defendants Schappa**</u>
<u>**and the City of Sharonville Should Be Dismissed**</u> ..........................  **25**

Ohio Revised Code Chapter 2744 protects the political subdivision for claims such as alleged in the Complaint.  Ohio Revised Code Chapter 2744 further protects individual Defendant Schappa  and as a result he is entitled to immunity pursuant to Ohio Revised Code §2744.02(A)(6).

Garrett v. Sandusky, 68 Ohio St.3d 139, 624 N.E.2d 704 (1994).................. 26
Nungester v. Cincinnati, 100 Ohio App.3d 561, 656 N.E.2d 423 (1995)...... 26
Wilson v. Stark County Dept. of Human Services, 70 Ohio St.3d 450,
    452 639 N.E.2d 105, 107 (1994)............................................................. 26
Jackson v. Butler County Bd. of Co. Commissioners (1991), 76 Ohio App.
3d 448, 452.......................................................................................... 26
Bush v. Kelley's, Inc. (1969), 18 Ohio St. 2d 89............................................ 26
Butler v. Jordan, 92 Ohio St.3d 354 (2001)..................................................... 27
Cicco v. Stockmaster, 89 Ohio St.3d 95, 98 (2000)....................................... 27
City of Newport v. Fat Concerts, Inc., 453 U.S. 247 (1981)............................ 27

    **F.**    <u>**Plaintiffs' Claims for Punitive Damages Against Defendant**</u>
<u>**Schappa Should Be Dismissed**</u>............................................................  **27**

Ohio Revised Code Chapter 2744.05(A) provides with respect to actions against subdivisions that "punitive or exemplary damages shall not be awarded."

**IV. CONCLUSION**...................................................................................  **28**

**M E M O R A N D U M**

## I. PROCEDURAL POSTURE

On October 16, 2001, Plaintiffs filed their First Amended Complaint alleging §1983 claims against Defendants Mike Schappa (hereinafter "Schappa") and the City of Sharonville, Ohio, (hereinafter "City of Sharonville") for the deprivation of Plaintiffs' rights of access to courts and to due process of law and §1983 claims for conspiracy to deprive them of these rights, as well as alleging state law claims for conspiracy to cover-up evidence, spoliation of evidence and intentional infliction of emotional distress. In response, Defendants Schappa and City of Sharonville filed a Motion to Dismiss based upon Plaintiffs' failure to state claims upon which relief could be granted, as well as based upon the doctrine of qualified immunity applicable to Defendant Schappa, in his "individual capacity." Plaintiffs opposed Defendants' Motion to Dismiss and filed a Motion to File Second Amended Complaint on March 8, 2002. In response, Defendants filed a Memorandum in Opposition to Plaintiffs' Motion to File Second Amended Complaint.

In its Order filed September 25, 2002, the Court granted Plaintiffs' Motion to File Second Amended Complaint and granted Defendants fifteen days to amend their Motion to Dismiss. Defendants Schappa and the City of Sharonville filed a Motion to Dismiss the Second Amended Complaint. Although the Court issued a ruling denying qualified immunity to Defendant Schappa, the Court did not rule upon the Second Motion to Dismiss. After the Court's ruling denying Schappa qualified immunity, these Defendants filed a Notice of Appeal to the United States Court of Appeals for the Sixth Circuit. Plaintiffs then sought and were granted leave to amend their Complaint to withdraw all federal claims against the individual defendants. As a result, the Sixth Circuit dismissed the appeal from the denial of qualified immunity. The Third

Amended Complaint sues Defendant Schappa only in his official capacity on the federal claims, but sues him individually on the state law claims. However, the Third Amended Complaint contains no factual allegations against Schappa which could be remotely considered to be malicious. This Motion to Dismiss is filed in response to Plaintiffs' Third Amended Complaint which was filed September 5, 2003. This Motion to Dismiss is directed to all claims in the Third Amended Complaint as they relate to defendants City of Sharonville and Mike Schappa, either individually or in his official capacity.

## II. STATEMENT OF FACTS AS ALLEGED BY PLAINTIFFS.

For purposes of this Motion to Dismiss only, the following allegations contained in Plaintiffs' Third Amended Complaint will be taken as true. Marie Wright Schuholz married Defendant Albert J. Schuholz in 1965. Defendant Schuholz became physically abusive to Marie Wright Schuholz and Plaintiff Patricia Kammeyer early in the marriage. Marie Wright Schuholz notified the City of Sharonville Police Department of the abuse. In 1980 or 1981, Marie Wright Schuholz moved from her home and filed for divorce after being warned that Defendant Schuholz was seeking to hire someone to kill her. Subsequently, Marie Wright Schuholz advised the City of Sharonville Police Department that Defendant Schuholz was keeping her under surveillance and that he had threatened to kill her. On March 6, 1981, Marie Wright Schuholz was granted a divorce, pending division of the marital property. Defendant Schuholz was attempting to defraud her of her share of the marital estate.

Marie Wright Schuholz and Starla Burns were murdered on May 8, 1981 at the apartment of Marie Wright Schuholz. Plaintiffs are the children of Marie Wright Schuholz and Starla Burns. Plaintiffs Patricia Kammeyer and James Wright, children of Marie Wright Schuholz, were adults at the time of their mother's murder. Plaintiff James Wright was warned by

Defendant Schuholz shortly after the murders that he "got her and would get the rest of them." Defendant Schuholz and Defendant Audrey Stevens conspired to murder Marie Wright Schuholz and Starla Burns.

Defendant William Nuss was the Chief of Police for the City of Sharonville at the time of the murders. Defendant Nuss assigned Defendant James Cramer to investigate the murders. Defendant Cramer had previously been employed by Defendant Schuholz to collect loan payments. Defendant Cramer removed evidence from the murder scene and the automobile of Marie Wright Schuholz. Defendant Cramer covered up facts that could have led to the indictment and conviction of Defendant Schuholz for the murders. Defendant Schappa has been Chief of Police for the City of Sharonville since 1990.

Defendant Schuholz subsequently pled guilty to the attempted murder of his third wife, Norma Schuholz, in July 1998. In November 1999, Defendant Schuholz was indicted for the murders of Marie Wright Schuholz and Starla Burns. According to the Hamilton County Prosecutor, a third person, not yet charged, committed the murders. The indictment of Defendant Schuholz has not proceeded to active prosecution because of the alleged mental incompetence of Defendant Schuholz. The City of Sharonville has refused to share the results of the murder investigation due to the pendency of the prosecution.[1] Without the criminal prosecution, Plaintiffs claim they will never discover the truth about their mothers' murders and the cover-up of facts relating to the murders.

Plaintiffs' claim that in November, 1999 they received "the first reliable information" about misconduct of a police officer from Defendant Schappa. Plaintiffs allege that Defendants'

---

[1]By Order of this Court, the City of Sharonville has produced its criminal investigation file to the Court and plaintiffs.

conduct has been "pursuant to a policy and custom of the City of Sharonville." Plaintiffs allege that Defendants' actions were taken pursuant to an agreement to injure the person or property of Plaintiffs.

## III. ARGUMENT

### A. Standard for Motion to Dismiss.

> The Supreme Court has stated that 12(b)(6) motions should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987) (en banc). Further, this Court, in reviewing the dismissal, must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). While we have stated that "a complaint need not set down in detail all the particularities of a plaintiff's claim," *Westlake*, 537 F.2d at 858, the complaint must give the defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. At 103. Thus, a 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief.

Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994).

Plaintiffs allege in the First Claim of their Third Amended Complaint that Defendants Schappa and the City of Sharonville deprived Plaintiffs of their rights secured by the First and Fourteenth Amendments as made applicable by 42 U.S.C. §1983, specifically their rights to equal protection, access to courts and due process of law. Plaintiffs allege in their Second Claim that Defendants have engaged in a state law conspiracy. In their Third Claim, Plaintiffs have alleged a state law claim for spoilation of evidence, and in the Fourth Claim they have alleged a state law claim for intentional infliction of emotional distress. This Motion to Dismiss is directed to all the claims in the Complaint.

In order "[t]o establish a claim under §1983, two elements are required: (1) conduct committed by a person acting under the color of state law that (2) deprives plaintiffs of rights,

privileges, or immunities secured by the Constitution or the laws of the United States."

Culberson v. Doan, 125 F.Supp.2d 252, 263 (S.D. Ohio W.D. 2000). As Plaintiffs can provide

no set of facts to support their claims that they were deprived of their constitutional rights to

equal protection, access to courts or due process of law, Defendants are entitled to dismissal of

these claims. To survive a Motion to Dismiss for failure to state a claim, plaintiffs "must allege

facts sufficient to overcome a presumption of rationality that applies to government

classification." Bower v. Village of Mount Sterling, 44 Fed. Appx. 670, 2002 WL 1752270 (6th

Cir. Ohio)(see attached); Wroblewski v. City of Washburn, 965 F.2d 452, 459-60 (7th Cir.

1992). Although the standard for Rule 12(b)(6) dismissals is liberal, the Complaint must contain

"either direct or inferential allegations respecting all the materials elements" and the allegations

must constitute "more than bare assertions of legal assertions." Scheid v. Fanny Farmer Candy

Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). The Court is not bound to accept as true

unwarranted factual inferences, Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.

1987), or legal conclusions unsupported by well pleaded facts. Teagardner v. Republic-Franklin,

Inc. Pension Plan, 909 F.2d 947, 950 (6th Cir. 1990). The only allegations against these

defendants are conclusory allegations. In fact, the only factual allegations relate to Chief

Schappa giving plaintiffs their "first reliable information." (Third Amended Complaint, paras.

55 and 56). Although it is alleged that the actions of defendants were pursuant to a custom and

policy of the City of Sharonville, no specific custom or policy is referred to.

It is the position of these defendants that if this Court dismisses the federal claims against

them, the state claims should be dismissed without prejudice for lack of jurisdiction. However,

as set forth in the Memorandum, if the Court considers the state claims they should be dismissed

pursuant to the immunities set forth in Chapter 2744 of the Ohio Revised Code.

**B.    Plaintiffs Can Prove No Set of Facts That Would Entitle Them to Relief On Their Equal Protection Claim Under the "Class of One" Theory.**

Plaintiffs' Third Amended Complaint alleges a claim for the denial of Plaintiffs' equal protection rights under the Fourteenth Amendment.  To support this claim, Plaintiffs allege only that Defendants "through the custom, policy or practice as set by City policy-makers, have intentionally treated plaintiffs differently from others similarly situated and there is no rational basis for the difference in treatment."  (Third Amended Complaint, para. 59).

Plaintiffs claim is based upon the "class of one" theory identified in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), wherein the Supreme Court recognized "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

In Olech, Justice Breyer noted in his concurrence that, "the Court of Appeals found respondent had alleged an extra factor as well-a factor that the Court of Appeals called 'vindictive action,' 'illegitimate animus,' or 'ill will.'" 528 U.S. at 565-66.  The appellate decision to which Justice Breyer was referring had been penned by Judge Posner for the Seventh Circuit.  Judge Posner had previously recognized the requirement of this "extra factor" of "vindictive action" in Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995).  Judge Posner, writing for the court, observed that under a "class of one" theory plaintiff must prove "that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective."

This Court gave consideration to defendants' contention that plaintiffs must show an "extra factor" of malice or vindictiveness to state a claim for equal protection on a class of one

-6-

theory in its decision allowing plaintiffs leave to file a Second Amended Complaint. In its Order dated September 25, 2002, the Court rejected Defendants' position that the addition of Plaintiffs' equal protection claim would be futile based upon Plaintiffs' failure to allege the "extra factor." The Court based this rejection on the decision in <u>Jackson v. Burke</u>, 256 F.3d 93, 97 (2nd Cir. 2001), a Second Circuit case offered by Plaintiffs. The Court cited to <u>Jackson</u> as precedent for its decision "that 'proof of subjective ill will is not an essential element of a 'class of one' equal protection claim'(doc. 30)." (Order, p. 6.) The Court then determined that the Sixth Circuit had followed the Second Circuit's lead based upon the Sixth Circuit's decision in <u>Alsenas v. City of Brecksville</u>, No. 99-4063, 2000 U.S. App. LEXIS 14520 (6th Cir. June 19, 2000).

Developing case law in the Second Circuit has shown that the Second Circuit has not determined that the extra element of "ill-will" is not necessary to make a "class of one" equal protection claim. In <u>Harlen Associates v. Incorporated Village of Mineola</u>, 273 F.3d 494, 500 (2nd Cir. 2001), decided subsequent to <u>Jackson</u>, the Second Circuit noted its prior decision in <u>Jackson</u>, but went on to hold:

> However, the district court and a number of our sister circuits have read *Olech* differently, holding that it did not remove the requirement that a plaintiff alleging an equal protection violation based on selective enforcement show that the governmental action at issue was motivated by personal animus. *E.g., Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000), *cert. denied*, 531 U.S. 1080, 121 S.Ct. 781, 148 L.Ed.2d 678 (2001); *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000). We need not decide which reading is the correct one in order to resolve this case, as Harlen's claim fails even if no showing of animus is required.

The Second Circuit specifically noted <u>Hilton v. City of Wheeling</u>, 209 F.3d 1005, 1008 (7th Cir. 2000), wherein Judge Posner, writing for the court, rejected a plaintiff's equal protection claim based upon plaintiffs' failure to allege that "the differential treatment of which the plaintiff

complains was a totally illegitimate animus toward the plaintiff by the defendant."   In Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002), the Seventh Circuit cited Hilton for the holding:

> Furthermore, to make out a prima facie case the [Purzes] must present evidence that the defendant deliberately sought to deprive [them] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position.

The Seventh Circuit, which provided the opinion affirmed by the Supreme Court in Olech, requires the extra element of animus toward plaintiff.  The Second Circuit has not rejected this requirement and stated as much in its recent decision of DeMuria v. Hawkes, 328 F.3d 704 (2d Cir. 2003).

With respect to the Sixth Circuit's decision in Alsenas, 2000 WL 875717 at *2, the only Sixth Circuit case relied upon by the Court in its Order, the court never reached the issue of whether the "extra factor" of "ill-will" toward plaintiff was necessary as the court found that the plaintiff had failed to "show that there was no rational basis for treating his application differently."  However, in Bower v. Village of Mount Sterling, 44 Fed.Appx. 670, 673, 2002 WL 1752270*2 (6th Cir. July 26, 2002), a case decided subsequent to the submission of Defendants' previous Motion to Dismiss and Plaintiffs' Motion to File Second Amended Complaint, the Sixth Circuit considered a "class of one" equal protection claim by a plaintiff who was not promoted to full-time police officer allegedly because the Mayor did not like the plaintiff's parents.  The plaintiff specifically alleged that "Defendants were 'motivated [in their decision] by an intention to punish or inhibit Plaintiff from being able to exercise his constitutional rights' and 'by a malicious and bad faith intent to injure Plaintiff." Id. at 673, 2002 WL 1752270 at *2.  The

court reviewed the Supreme Court's decision in <u>Olech</u>, finding it controlling law.  <u>Id</u>.; 2002 WL 1752270 at *5.  The court ultimately concluded that "[t]he factual allegations could be reasonably construed as the Mayor employing the Villages' hiring process to 'get' Plaintiff due to Plaintiff's association with his parents who are political opponents of Mayor Meade."  These factual allegations were found "sufficient to state an independent equal protection claim under <u>Olech</u>."  <u>Id</u>. at 678; 2002 WL 1752270 at *7.  The language of the court's decision mimics that of Judge Posner in <u>Esmail</u>, <u>supra</u>, finding the defendant's animosity toward the plaintiff pertinent.

 In the case at bar, Plaintiffs have alleged no attempt by these Defendants to "get" Plaintiffs.  In fact, they have alleged no personal animus toward Plaintiffs or any other facts which could give rise to an equal protection claim against Defendant Schappa or the City of Sharonville.  They have alleged instead that Cramer covered-up the evidence of Schuholz's involvement in the murders so as to protect himself.   Plaintiffs have not alleged an appropriate case for consideration under the "class of one" theory and these Defendants are entitled to the dismissal of their equal protection claim.

## C.    <u>Plaintiffs Can Prove No Set of Facts That Would Entitle Them to Relief On Their Denial of  Access to Courts Claim.</u>

Plaintiffs allege that Defendants covered up the evidence of the murders of their mothers and that this cover up delayed the criminal indictment of Defendant Schuholz for eighteen years. They further allege that the result of the delay in the criminal prosecution of Defendant Schuholz was the denial of Plaintiffs' constitutional right of access to the courts.

In their previous Motion to Dismiss, Defendants argued that Plaintiffs' allegations did not support a claim for the denial of access to courts as Plaintiffs had failed to allege any attempt to access the courts.  In response, Plaintiffs amended their Complaint to further allege that

Defendants "have intentionally increased the risk of harm to the property of the plaintiffs and limited the ability of the plaintiffs to use self-help and civil litigation or recover assets through the administration of the Wright estate in probate court, completion of the divorce lawsuit between Al Schuholz and Marie Schuholz, and through filing wrongful death and other tort actions."  Even accepting all of the allegations of Plaintiffs' Third Amended Complaint as true, these additional allegations do not meet the pleading requirements for a denial of access claim as set forth by the Supreme Court in Christopher v. Harbury, _U.S._, 122 S.Ct. 2179 (2002), a case decided since the submission of Defendants' previous Motions to Dismiss, and, therefore, they do not support a claim for the denial of access to the courts.

Defendants agree with Plaintiffs that the discussion must begin with the Sixth Circuit's decision in  Swekel v. City of River Rouge, 119 F.3d 1259, 1260 (6th Cir. 1997), in which the court considered a plaintiff's claim that the police engaged in a cover up of the identity of the second of two drivers involved in fatally injuring plaintiff's husband because the second driver was the son of a high-ranking police officer.  Swekel claimed that the defendants had violated her right of access to courts as the cover up had prevented her from discovering the identity of the second driver in time for her to file a state court wrongful death action against the second driver.  Id. at 1261.

The Sixth Circuit recognized that the right of access to courts is a fundamental right protected by the Constitution and that the right finds support in both the Due Process Clause of the Fourteenth Amendment and the First Amendment.  Id. at 1261-62.  "Access to courts does not only protect one's right to physically enter the courthouse halls, but also insures that the access to courts will be 'adequate, effective and meaningful.'  (Citation omitted.)  Therefore, if a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's

state court remedy ineffective, they have violated his right of access to the courts." Id. at 1262.

Having recognized the right of access to courts and having defined it as going beyond the protection of one's physical access to the court system, the Sixth Circuit rejected Swekel's claim based upon her failure to attempt to gain access to the state court prior to her filing her federal claim for denial of access. The court found that:

> Swekel, however, never presented evidence that the state court could not adequately address these problems. In fact, none of the evidence before this court establishes that Swekel even attempted to go to the state court in first instance. Before filing an 'access to courts' claim, a plaintiff must make some attempt to gain access to the courts; otherwise, how is this court to assess whether such access was in fact 'effective' and 'meaningful'?

Id. at 1264. The Sixth Circuit held:

> A plaintiff cannot merely guess that a state court remedy will be ineffective because of a defendant's actions. Rather, the plaintiff must present evidence that the defendants' actions actually rendered any available state court remedy ineffective.

Id.

Although the Sixth Circuit in Swekel was considering the trial court's grant of summary judgment, the holding would be applicable in the case at bar. Plaintiffs' amended allegations appear to offer three instances in which "defendants' actions allegedly rendered any available state court remedy ineffective." Defendants' actions allegedly prevented the recovery of "assets from the administration of the Wright estate in probate court," the "completion of the divorce lawsuit between Al Schuholz and Marie Schuholz," and the "filing wrongful death and other tort actions." Plaintiffs' allegations do not meet the requirements for pleading a denial of access claim as set forth in Christopher, supra.

In its prior Order, the Court found that Plaintiffs' amendment to their access to courts claim was not futile based upon its determination that "if a party engages in actions that

-11-

effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts."  (Order, p. 8.)  The Court, however, did not address the failure of Plaintiffs' amended allegations to allege that Plaintiffs had attempted access to the state courts seeking a remedy and found such access denied, which allegations are necessary under Swekel.  The Court relied upon the Seventh Circuit's decision in Bell v. City of Milwaukee, 746 F.2d 1205, 1261 (7th Cir. 1984), and the Fifth Circuit's decisions in Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983), and Crowder v. Sinyard, 884 F.2d 804 (5th Cir. 1989), cert. denied, 496 U.S. 974 (1990), abrogated on other grounds by Horton v. California, 496 U.S. 128 (1990); however, Bell, Ryland, and Crowder were considered by the Sixth Circuit in arriving at its decision in Swekel and such consideration did not prevent the Sixth Circuit from determining that the plaintiff cannot allege a denial of access claim without alleging an attempt "to go to the state court in the first instance."  119 F.3d at 1264.  Swekel is controlling law in the Sixth Circuit.  As set forth below, Plaintiffs' amended allegations fail to establish any attempt by Plaintiffs to access the state courts, therefore, their claim for denial of such access must fail.

In their previous Motion to Dismiss, Defendants cited to Harbury v. Deutch, 233 F.3d 596 (D.C. Cir. 2000), wherein the United States Court of Appeals for the District of Columbia Circuit distinguished Swekel to find that the plaintiff in Harbury had stated a claim for the deprivation of her right of access to courts.  In Harbury, the court considered the plaintiff's claim that the State Department withheld information about her husband regarding his location while he was being detained and tortured by the Guatemalan military, thereby preventing her from seeking legal redress, which might have saved her husband's life.

The court distinguished Swekel as being limited to wrongful death and intentional infliction of emotional injury whereas Harbury's complaint went further, it alleged "that but for

-12-

the cover-up, she might have been able to save her husband's life." Id. at 609.  Harbury did not

allege the breach of a duty to disclose, but that she was affirmatively deceived.  Additionally,

Harbury was "'unaware that there was a potential claim of any kind against any U.S. officials,

....'"  Id.  The court noted that had the case involved allegations merely "that due to the cover-up,

'key witnesses ... may now be dead or missing, ... crucial evidence may have been destroyed, and

... memories may have faded,'" the court might have agreed with its district court's reliance on

Swekel to dismiss the plaintiff's access to court's claim as the plaintiff had not yet completed her

attempt to gain access to the state court.

Since submission of Defendants' Motion to Dismiss and Plaintiffs' Motion to File

Second Amended Complaint, the Supreme Court of the United States decided Christopher, supra,

wherein the Supreme Court reversed the District of Columbia Court of Appeals' decision in

Harbury v. Deutch finding the plaintiff had failed to allege a denial of access to courts claim.  In

Christopher, the Court considered Swekel and other appellate decisions falling under a second

category of denial of access claims covering "claims not in aid of a class of suits yet to be

litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no

matter what official action may be in the future."  122 S.Ct. at 2186.  The Supreme Court found

that the right of access to courts "is ancillary to the underlying claim, without which a plaintiff

cannot have suffered injury by being shut out of court."  Id. at 2186-87.

> It follows that the underlying cause of action, whether anticipated or lost, is an
> element that must be described in the complaint, just as much as allegations must
> describe the official acts frustrating the litigation.  It follows, too, that when the
> access claim (like this one) looks backward, the complaint must identify a remedy
> that may be awarded as recompense but not otherwise available in some suit that
> may yet be brought.  There is, after all, no point in spending time and money to
> establish the facts constituting denial of access when a plaintiff would end up just
> as well off after litigating a simpler case without the denial-of-access element.

<u>Id</u>. at 2187. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." <u>Id</u>. at 2188. The Supreme Court ultimately found that the plaintiff's claim failed as "[s]he has not explained, and it is not otherwise apparent, that she can get any relief on the access claim that she cannot obtain on her other tort claims, i.e., those that remain pending in the District Court." <u>Id</u>. at 2190. The Court cited to <u>Swekel</u> for an example of when such relief would be prevented, "where the statute of limitations had run." <u>Id</u>. at 2190 fn22.

Plaintiffs' amended allegations clearly fail to meet the requirement of <u>Swekel</u> that access has been attempted or the requirement of <u>Christopher</u> of a plain statement of the remedy sought under the access claim and why that remedy is unique to the access claim and could not have been attained under Plaintiffs' other tort claims. Each of Plaintiffs' "underlying claims" will be addressed.

First, with respect to the "completion of the divorce lawsuit," Plaintiffs Patricia Kammeyer and James Wright, "the Wright Plaintiffs," offer no factual allegations whatsoever as to how the conduct of Defendants, as opposed to the murder of Marie Wright Schuholz, prevented the completion of the divorce lawsuit between Schuholz and Marie Wright Schuholz. Plaintiffs fail to allege how their denial of access claim will remedy the lack of completion of the divorce lawsuit. As the plaintiff in <u>Christopher</u> can not remedy the death of her husband via her denial of access claim, 122 S.Ct. at 2190, "the Wright plaintiffs" in the case at bar cannot remedy the death of their mother with a denial of access claim. Plaintiffs Jan Lorraine Miller and Sue

Ranielle Baker, "the Burns plaintiffs," certainly cannot support a denial of access claim with these allegations of an underlying action.

Second, with respect to the "filing of a wrongful death and other tort actions," Plaintiffs have made no allegations that Plaintiffs "even attempted to go to the state court to file such actions in the first instance" or that such an attempt would have been futile.  In Swekel, supra, the court denied a similar claim by the plaintiff wherein the police had allegedly covered up the identity of the would be defendant.

Defendants do not argue that because Plaintiffs may have suspected Defendant Schuholz as their mothers' killer, they are barred from bringing an action for denial of access to the court.  Defendants' argument is that Plaintiffs were in a better position than the plaintiff in Swekel to bring a wrongful death action in state court.  Their failure to allege any attempt to do so bars them from bringing a denial of access claim.

The facts in the case at bar are comparable to the facts in Swekel.  Both cases involve claims by plaintiffs that they were denied access to the state courts in the form of the filing of wrongful death actions based upon police cover-ups.  However, unlike the plaintiff in Swekel, Plaintiffs in the case at bar were well aware of the identity of the person they believed to have been responsible for the deaths of their loved ones.[2]    Plaintiffs in the case at bar were in a far better position than the plaintiff in Swekel to pursue a wrongful death action against that person.

---

[2]Plaintiffs were aware that Defendant Albert J. Schuholz (hereinafter "Schuholz") had abused Marie Wright Schuholz throughout their marriage, that Schuholz had responded to Marie Schuholz's requests for divorce with threats, that Schuholz had attempted to hire someone to kill Marie Schuholz, and that Schuholz had threatened to kill her.  They were also aware that at the time of her murder, Marie Schuholz had disclosed to the Common Pleas Court before which her divorce from Schuholz was pending that Schuholz had forged documents relevant to the division of marital property. (See Second and Third Amended Complaints).

However, Plaintiffs failed to do so. As Plaintiffs failed to attempt to access the courts by filing a wrongful death action, this Court can not "assess whether such access was in fact 'effective' and 'meaningful'?" Plaintiffs, therefore, can not prevail on their claim that such access was rendered ineffective by Defendants. Swekel, 119 F.3d at 1264.

In his Concurrence, Judge Merritt noted:

> We should not simply displace the normal state court remedies for spoliation or concealment of evidence or obstruction of state judicial proceedings with a new, expanded, loosely worded, federal constitutional tort under §1983. Right of access to the courts claims under the federal constitution should be reserved for situations in which adequate state remedies are made unavailable and should not include mere claims of interference with evidence.

Id. at 1265.

The Swekel opinion relied heavily upon the Sixth Circuit's earlier decision in Joyce v. Mavromatis, 783 F.2d 56 (6th Cir. 1986), wherein the court considered a plaintiff's claim that she was injured in an automobile accident caused by the son of the police chief. The plaintiff filed a §1983 complaint alleging that the police had, "acting in concert, sought to defeat her state court damage suit by revoking a traffic citation issued to the son in Wintersville in connection with the accident and by altering the police report filed by the Wintersville police officer who investigated the accident and by having new lines painted on the street at the intersection." Id.

The court held that the plaintiff had failed to state a claim finding that:

> The plaintiff has the right under Ohio law to file her damage suit and to offer proof about the accident and the alleged destruction of relevant evidence. If she is able to prove that the Police Chief's son and his confederates undertook to destroy evidence of the son's negligence as a driver, there is no reason to believe that an Ohio court and jury would be unavailable and would not do justice between the parties. Rather than having denied access, the defendants have opened themselves to punitive damages and converted a small claims matter into a significant case, albeit not a federal case.

-16-

Id.  Pursuant to the Sixth Circuit's decisions in Swekel and Joyce, Defendants Schappa and the City of Sharonville are entitled to the dismissal of Plaintiffs' claim for the deprivation of their right of access to courts based upon the Plaintiffs' failure to attempt to gain access to the state court to file a "wrongful death and other tort actions" prior to filing this federal claim for denial thereof.

Defendants recognize that this matter is before the Court on a Motion to Dismiss and that the Court must accept all of Plaintiffs' allegations as true; however, "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988); Fisher v. City of Cincinnati, 753 F.Supp. 681, 685 (S.D. Ohio, W.D. 1990).  Based upon Plaintiffs' failure to allege any attempt to gain access to the courts to file "wrongful death and other tort actions," it is fair to assume that those facts do not exist.  As Plaintiffs can offer no facts to establish any attempt to gain access to the courts, that the state court could not adequately address these problems, or that such an attempt would have been futile, Plaintiffs can not establish that they were deprived of their constitutional right of access to courts to file "wrongful death and other tort actions."

Third, Plaintiffs allege that Defendants "limited the ability of the plaintiffs to use self-help and civil litigation to recover assets through the administration of the Wright estate in probate court."   In support of this claim, Plaintiffs allege that immediately prior to her death, Marie Wright Schuholz executed a will bequeathing her entire estate to her children and grandchildren.   Plaintiffs further allege that pending division of marital property after the granting of their divorce, Schuholz submitted to the court forged documents awarding him the

majority of the marital assets.  Because Marie Wright Schuholz was murdered prior to the

division of marital property, Schuholz, as "surviving spouse," received a greater portion of the

estate than he would have received had the division of marital property been completed so as to

have given Marie Wright Schuholz's will its full effect.

Even accepting Plaintiffs' allegations as true, Plaintiffs' claim for denial of their right to

access the courts must fail.  "The Burns plaintiffs," did not participate in the litigation of Marie

Schuholz's probate estate; therefore, "the Burns plaintiffs" cannot offer any facts to support a

claim that they attempted to access the state courts via "the administration of the Wright estate in

probate court."  With respect to "the Wright plaintiffs," these factual allegations do not meet the

requirement of <u>Christopher</u> that Plaintiffs plead the underlying claim as if "it were being

independently pursued."  122 S.Ct. at 2188.  These allegations do not reveal any attempt by "the

Wright plaintiffs" to pursue "civil litigation to recover assets through the administration of the

Wright estate in probate court."

Plaintiffs' claim is less one of Defendants' denial of Plaintiffs' right of access to courts

than it is a claim of Defendants' denial of Plaintiffs' right to the criminal prosecution of a third

party.  Plaintiffs allege that Defendants "covered up the facts crucial to a timely solution to the

murder case."  Plaintiffs further allege that "the prosecution of Albert J. Schuholz will never go

forward" and that "[w]ithout this lawsuit the plaintiffs will never discover the truth about their

mothers' murders and the cover-up of facts relating to the murders."

Although the Court must accept all of the Plaintiffs' factual allegations as true in deciding

this Motion to Dismiss, the "court is not required, however, to accept a plaintiff's summary

allegations or unwarranted legal conclusions in ruling on a motion to dismiss." <u>Jackson v. City</u>

of Columbus, 194 F.3d 737, 745 (6th Cir. 1999). The Court need not accept Plaintiffs' allegations that they could not have proceeded with a state court wrongful death action against Defendant Schuholz without the prior completion of a criminal action, particularly in light of their failure to attempt such a state court action.

A wrongful death action against Defendant Schuholz does not require a previous conviction of Defendant Schuholz for the murders. "The resolution of a criminal investigation should not be a prerequisite to an action in wrongful death. In some instances, there may be insufficient evidence to convict, or even charge, a person for criminally causing the death of another. However, under the lower preponderance of evidence standard, the same evidence may demonstrate civil liability in wrongful death pursuant to R.C. 2125.01(A)(1)." Collins v. Sotka, 81 Ohio St.3d 506, 518 (1998) (dissenting opinion.)

Further, and more significantly, Plaintiffs have no constitutional right to the criminal prosecution of a third party. In Mooneyhan v. Hawkins, 129 F.3d 1264*7 (6th Cir. 1997) (a copy of the unpublished opinion is attached hereto), the Sixth Circuit considered a §1983 complaint alleging a police cover up of an alleged rape by an off-duty police officer. The plaintiff claimed that had the alleged rapist not been alerted to the investigation, he would have incriminated himself and would then have been found guilty of criminal charges. The plaintiff then argued that had the alleged rapist been found guilty of the criminal charges, the plaintiff would have been successful in her §1983 claim against him. The court rejected this argument, holding, among other conclusions, that the plaintiff had "no federal constitutional right of access to the criminal courts, see, e.g., Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ('[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.')...." As Plaintiffs in the case at bar have no constitutional right to the criminal prosecution of Defendant

Schuholz, Defendants can not have violated that right by not providing "a timely solution to the murder case."  Plaintiffs' deprivation of their right of access to the courts claim arising out of their allegations that they were deprived of the criminal prosecution of Defendant Schuholz should, therefore, be dismissed

Plaintiffs also allege that they "were denied the knowledge of the facts known to defendants about the murders of their mothers, including who did the acts and how much their mothers suffered."  They do not allege that the disclosure of this information might have prevented the murders of their mothers.

The Concurrence in <u>Swekel</u> specifically noted that "the normal state court remedies for spoliation or concealment of evidence or obstruction of state judicial proceedings" should not be replaced with a new federal constitutional tort under §1983.  119 F.3d at 1265.  The Sixth Circuit has held that "the right of access to courts should be limited to 'pre-filing abuses.'"  This is due to the fact that "state courts can address pre-filing abuses by tolling the statute of limitations or allowing for a 'spoliation of evidence' lawsuit."  <u>Swekel</u>, 119 F.3d at 1264.  Plaintiffs themselves have asserted claims for conspiracy to cover-up evidence and spoliation.  They have not been denied access to the courts as their remedy lies in the pursuit of those claims in the state court.

Since submission of Defendants' initial Motion, the Sixth Circuit decided <u>Jones v. Union County Tennessee</u>, 296 F.3d 417, 425 (6th Cir. 2002), in which the court read <u>Swekel</u> as follows:

> In *Swekel*, this Court affirmed the dismissal of the plaintiff's suit brought under 42 U.S.C. §1983, finding that the plaintiff presented no evidence that she went to the state courthouse and was physically prevented or mechanically barred from filing her lawsuit.

Although this seems to require more than the "attempt to gain access to the courts" required in <u>Swekel</u>, 119 F.3d at 1264, it signals that the Sixth Circuit is not going to require less.

Defendants are entitled to the dismissal of Plaintiffs' denial of access claim.

**D.**    **Plaintiffs Can Prove No Set of Facts That Would Entitle Them to Relief On Their Due Process Claim.**

Plaintiffs have clarified their due process claim as being one for a violation of Plaintiffs' substantive due process.  (Third Amended Complaint, para. 61.)  As with their equal protection and denial of access to courts claims, Plaintiffs can offer no set of facts that would entitle them to prevail on their due process claim.

With respect to Defendants' conduct, Plaintiffs first allege that  the City of Sharonville "was aware of the physical abuse of Marie by Albert J. Schuholz."  Plaintiffs further allege that "Marie advised the Sharonville Police that Al had made phone calls to her apartment, threatening to kill her."  Such allegations have been rejected as supporting a substantive due process claim as they are in the nature of a "failure to protect" claim.

In DeShaney v. Winnebago County of Dep't of Soc. Servs., 489 U.S. 189, 195 (1989), the United States Supreme Court held:

> But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.  It forbids the State itself to deprive individuals of life, liberty or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

In Culberson, this Court cited to the Court's holding in DeShaney to find that an affirmative duty to protect arises only where the State has affirmatively acted to restrain the individual's freedom to act on his own behalf.  It is this restraint, and not the failure to protect that triggers the Due Process Clause.  125 F.Supp.2d at 268.  This Court went on to hold that a genuine issue of material fact existed as to whether Police Chief Payton and the Village of

Blanchester had assumed an affirmative duty to prevent harm to Carrie's body and had restrained

Carrie's family from utilizing self-help to protect her body in which her family had a protected

property interest.  As there are no allegations that the City of Sharonville affirmatively restrained

Marie Wright Schuholz from acting on her own behalf to protect herself, the allegations of

Plaintiffs' Third Amended Complaint do not support a substantive due process claim for this

private act of violence.

Plaintiffs next allege that their injuries include "fear for their own safety and their

children's safety."  The Court in DeShaney specifically held that "the Due Process Clauses

generally confer no affirmative right to governmental aid, even where such aid may be necessary

to secure life, liberty or property interests of which the government itself may not deprive

individual."  489 U.S. at 196.  Plaintiffs have no constitutional right to protection from their fear;

therefore, these allegations fail to state a claim for a deprivation of a constitutional right.

In Culberson, the plaintiffs alleged that the defendants prevented the plaintiffs from using

self-help to protect Carrie Culberson's body in which they had a constitutionally protected

interest.  In the case at bar, Plaintiffs have no constitutionally protected interest in the criminal

prosecution of another; therefore, even accepting Plaintiffs' allegations as true that Defendants'

conduct delayed the criminal prosecution of Defendant Schuholz, there was no deprivation of a

constitutional right.

Plaintiffs' substantive due process claims also fail under the "shocks the conscience" test.

In Reed v. Knox County Dept. of Human Services, 968 F.Supp. 1212, 1216 (S.D. Ohio, E.D.

1997), the court cited to DeShaney, supra, for the observation that "the Due Process Clause of the

Fourteenth Amendment 'does not transform every tort committed by a state actor into a

constitutional violation.'"  In Reed, the court considered the §1983 claim of foster parents that

the state defendants' failure to provide them with information concerning the violent tendencies

of their foster children constituted a violation of plaintiffs' due process rights. The court rejected

the plaintiffs' claim holding:

> In this case, even assuming that the defendants knew about the information in the records submitted by plaintiffs but failed to provide this information to plaintiffs when they permitted the foster children to be placed in plaintiffs' home, the failure to provide information, in itself, does not provide plaintiffs with a basis for a §1983 claim. *Hiser* indicates that *DeShaney* would bar plaintiff's claim for the failure to provide information where the plaintiffs seek compensation for damages resulting from injuries caused by the foster children, who are private actors, and where no evidence has been offered that the defendants' conduct went beyond mere omissions and affirmatively limited plaintiffs' ability to protect themselves.

Id. at 1220. In this case, there is no evidence that Defendants "affirmatively limited plaintiffs'

ability to protect themselves."

In Gazette v. City of Pontiac, 41 F.3d 1061, 1066 (6th Cir. 1994), the Sixth Circuit noted

that "the Due Process clause does not guarantee any citizen the right to government aid,

including a guarantee of rescue." The Due Process clause neither guaranteed Marie Wright

Schuholz aid by the government in dealing with the physical abuse by Defendant Schuholz nor

guaranteed her heirs freedom from fear of Defendant Schuholz or assistance in the investigation

of her murder.

Even if the offensive conduct of Defendants alleged by Plaintiffs is true, it would not

amount to a constitutional violation. The court in Swekel, noting that the police officers' actions,

if true, were reprehensible, stated: "Yet, that is not the issue before us. Instead, we must

determine whether their actions amounted to a constitutional violation." 119 F.3d at 1264.

In Culberson, this Court found that a state actor's conduct "shocks the conscience" when

it invades "personal privacy and bodily security." 125 F.Supp.2d at 270-71. The Court

determined that Police Chief Payton's conduct could be determined to have allowed the removal and possible destruction of Carrie Culberson's body.  The Court, therefore, found that his conduct could be found to "shock the conscience."  There are no allegations of such conduct in this case; therefore, this case would not fall within the realm of situations that would "shock the conscience" as cited by this Court in Culberson.

In their Memorandum in Opposition to earlier Motions to Dismiss, Plaintiffs argued that Defendants' alleged conduct "shocks the conscience" because it continued for twenty years.  Plaintiffs misinterpret the cases that they cited for this proposition.  These cases reveal that the length of time over which the conduct takes place does not determine whether the conduct is that which "shocks the conscience."  Instead, the cases reveal that conduct that would ordinarily "shock the conscience" might be found acceptable in situations wherein law enforcement officers had limited time to choose the course of their conduct as in a rapidly evolving shoot-out.  Before the length of time consideration is made, however, the conduct must first qualify as that which "shocks the conscience."  According to the cases cited by Plaintiffs, the conduct alleged in the case at bar does not qualify as that which would "shock the conscience."

"The Sixth Circuit has described substantive due process as 'the right to be free from state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience' of a court."  Barrett v. Outlet Broadcasting, Inc., 22 F.Supp.2d 726, 744 (S.D. Ohio, E.D. 1997), citing, Lillard v. Shelby Cty. Bd. Of Educ., 76 F.3d 716, 725 (6th Cir. 1996).  The cases cited by Plaintiffs wherein the courts found defendants' conduct to have "shocked the conscience"each involved some invasion by a state actor into the realm of the plaintiffs' bodily integrity.  In Culberson v. Doan, 125 F.Supp.2d

252 (S.D. Ohio 2000), this Court considered the Police Chief's alleged failure to prevent harm to

Carrie Culberson's body.  In <u>Claybrook v. Birchwell</u>, 199 F.3d 350 (6th Cir. 2000), the court

considered bodily injury received during a gun battle with police officers.  In <u>Barrett</u>, <u>supra</u>, the

court considered claims against media representatives that they had moved and photographed the

body of a suicide victim.  Finally, in <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998), the

Supreme Court considered the death of a passenger on a motorcycle involved in a police chase.

The claims of Plaintiffs in the case at bar do not involve claims of such invasion of bodily

integrity, therefore, pursuant to the cases cited by Plaintiffs, Plaintiffs' fail to state a claim for a

violation of their substantive due process rights based on conduct of the Defendants that "shocks

the conscience."

In <u>County of Sacramento</u>, the Supreme Court specifically noted its reluctance to expand

the concept of substantive due process.  523 U.S. at 842.  The Court further held that "the

Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may

already be administered by the States,' ...."  <u>Id</u>. at 848.   As with their allegations of a deprivation

of their equal protection rights and the denial of their right of access to the courts, Plaintiffs fail

to state a claim for a violation of their substantive due process rights.

**E.    <u>Plaintiffs' State Law Claims Against Defendants Schappa and the City of
Sharonville Should Be Dismissed.</u>**

Ohio Revised Code §2744.02(A)(1) provides a broad immunity for political subdivisions

subject only to enumerated exceptions:

> For purposes of this chapter, the functions of political subdivisions are hereby
> classified as governmental functions and proprietary functions.  Except as
> provided in division (B) of this section, a political subdivision is not liable in
> damages in a civil action for injury, death, or loss to persons or property allegedly

caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

In this case, Plaintiffs' claims against Defendants Schappa and the City of Sharonville are for state law conspiracy, spoliation of evidence and intentional infliction of emotional distress. None of the exceptions set forth in Ohio Revised Code §2744.02(B) applies to the claims of Plaintiffs herein. Although there is an exception for injuries caused by negligent acts of employees, that exception applies only to proprietary functions not governmental functions. Consequently, with respect to governmental functions, political subdivisions retain their cloak of immunity stemming from an employee's negligent or reckless acts except as specifically provided in §2744.02(B)(1), (3), (4), and (5), none of which are applicable herein. See, Garrett v. Sandusky, 68 Ohio St.3d 139, 624 N.E.2d 704 (1994). Further, there are no exceptions to immunity for intentional torts arising from the employee relation or intentional infliction of emotional distress as alleged in this case. See, Nungester v. Cincinnati, 100 Ohio App.3d 561, 656 N.E.2d 423 (1995).

In Wilson v. Stark County Dept. of Human Services, 70 Ohio St.3d 450, 452 639 N.E.2d 105, 107 (1994), the Ohio Supreme Court discussed the five exceptions to immunity set forth in the Revised Code with respect to political subdivisions and also noted "[t]here are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress." Since the broad grant of immunity contained in §2744.02(A)(1) applies to Defendants Schappa, in his "official capacity," and the City of Sharonville, all of Plaintiffs' state law claims against Defendants should be dismissed. In addition, those claims against Defendants Schappa and the City of Sharonville should be dismissed when the Court dismisses the federal claims against them because this Court will no longer have jurisdiction.

With respect to the state law claims against defendant Schappa in his individual capacity, his immunity arises pursuant to R.C. 2744.03(A)(6) unless his actions or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. Malice, for purposes of determining statutory immunity, is the wilful and intention design to do injury or the intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified. Jackson v. Butler County Bd. of Co. Commissioners (1991), 76 Ohio App. 3d 448, 452. See, also, Bush v. Kelley's, Inc. (1969), 18 Ohio St. 2d 89. As set forth above, the only specific factual allegations relating to Chief Schappa are that he provided the first reliable information to Plaintiffs. As a result, defendant Schappa is entitled to immunity.

Plaintiffs have argued that "the sovereign immunity statute in Ohio is unconstitutional under the Ohio constitution." (Memorandum in Opposition to Motions to Dismiss filed March 8, 2002 , p. 16.) The Ohio Supreme Court in Butler v. Jordan, 92 Ohio St.3d 354 (2001), cited by Plaintiffs for this proposition, noted that the procedurally proper way to challenge the constitutionality of a statute is set forth in Cicco v. Stockmaster, 89 Ohio St.3d 95, 98 (2000). The decision in Cicco provides that, effective September 24, 1999, R.C. 2721.12 "was amended to require that the Attorney General be served with a copy of the complaint in the action or proceeding in which a statute, ordinance, or franchise is alleged to be unconstitutional." The decision goes on to find that the plaintiffs' challenge to the constitutionality of a statute "should have been specifically pleaded in their amended or second amended complaints." Id. at 100. As Plaintiffs in the case at bar have not raised this issue in the procedurally proper manner, in that they have neither pleaded it in their complaints nor served the Attorney General, this Court lacks jurisdiction to decide the constitutional challenge. Defendants City of Sharonville and Schappa, in his "official capacity," are entitled to immunity under R.C. 2744.02.

**F.    Plaintiffs' Claims for Punitive Damages Against Defendant Schappa Should Be Dismissed.**

Plaintiffs' claim for punitive damages is without merit.  Ohio and federal law are both clear that no such claim can be made against a municipality.  In <u>City of Newport v. Fat Concerts, Inc.</u>, 453 U.S. 247 (1981), the Supreme Court held that municipalities or political subdivisions cannot be liable for punitive damages.  Additionally, Ohio Revised Code §2744.05(A) provides with respect to actions against subdivisions that "punitive or exemplary damages shall not be awarded."  Plaintiffs, therefore, are not entitled to a punitive damage award against Mike Schappa in his official capacity.  In addition, Defendant Schappa did not act with the requisite malice or ill will to support a claim for punitive damages, nor is a constitutional claim alleged against Defendant Schappa which would permit such a claim for punitive damages.

**IV.  CONCLUSION**

For these reasons, Defendants Schappa and the City of Sharonville respectfully request that the Court dismiss all claims in the Third Amended Complaint against the City of Sharonville and Defendant Schappa, in his official and individual capacities, pursuant to Federal Rule of Civil Procedure 12(B)(6).

**s/Lawrence E. Barbiere**
Lawrence E. Barbiere
Ohio Bar Number: 0027106
Attorney for Defendants, City of Sharonville, Ohio, and Mike Schappa
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
11935 Mason Road, Suite 110
Cincinnati, OH  45249
(513) 583-4200
(513) 583-4203 (fax)
Email:  lbarbiere@schroederlaw.com

OF COUNSEL:

Michael E. Maundrell (0027110)
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
11935 Mason Road, Suite 110
Cincinnati, OH  45249
(513) 583-4200

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on **September 15, 2003,** I electronically filed the foregoing with the Clerk of the Court using the CM/ECFF system which will send notification to the following: Alphonse A. Gerhardstein, Esq., ***Attorney for plaintiffs***, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: ***Thomas T. Keating, Esq., Attorney for Defendant, James I. Cramer***.

<u>**s/ Lawrence E. Barbiere**</u>
Lawrence E. Barbiere
Ohio Bar Number: 0027106
Attorney for Defendants, City of Sharonville, Ohio, and Mike Schappa
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
11935 Mason Road, Suite 110
Cincinnati, OH   45249
(513) 583-4202
(513) 583-4203 [fax]
Email:  lbarbiere@schroederlaw.com