**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PATRICIA KAMMEYER, et al. | : | CASE NO. C-1-01-649 |
| | : | |
| Plaintiffs, | : | (SPEIGEL, J.) |
| | : | |
| vs. | : | |
| | : | **MOTION TO DISMISS THIRD** |
| CITY OF SHARONVILLE, OHIO, et al. | : | **AMENDED COMPLAINT BY** |
| | : | **DEFENDANTS JAMES I. CRAMER** |
| Defendants. | : | **AND WILLIAM NUSS** |

Now come Defendants, James I. Cramer and William Nuss, and move this Court pursuant to Federal Rule of Civil Procedure 12(B)(6) for a dismissal of all claims against them in Plaintiffs' Third Amended Complaint for failure to state claims upon which relief can be granted. This Motion is supported by federal and Ohio law as expressed in the attached Memorandum.

                                           Respectfully submitted,

                                           KEATING, RITCHIE & SWICK
                                           A Legal Professional Association


                                           __s/ Thomas T. Keating_____
                                           Thomas T. Keating, 0011359
                                           Attorney for Defendants, Cramer and Nuss
                                           8050 Hosbrook Road, Suite 200
                                           Cincinnati, Ohio 45236
                                           Phone:  (513) 891-1530
                                           Fax:  (513) 891-1537
                                           email:  tkeating@krslawyers.com

**MEMORANDUM**

**I.    FACTS ALLEGED BY PLAINTIFFS**

For purposes of this Memorandum of Defendants Cramer and Nuss, allegations in the Third Amended Complaint concerning Defendants Cramer and Nuss are as follows:

**AS TO DETECTIVE CRAMER**

1. He was for eight years the detective responsible for the investigation into the murder of Marie Wright Schuholz. (Third Amended Complaint, Para. 10.)

2. He is the brother in law of Defendant, former Police Chief William Nuss. (Third Amended Complaint, Para. 10.)

3. He is sued in his "official capacity as a policymaker for the City of Sharonville." (Third Amended Complaint, Para. 10.)

4. He previously worked for Albert J. Schuholz collecting loan payments. (Third Amended Complaint, Para. 34.)

5. He would wear his uniform when collecting debts for Albert J. Schuholz, in cash, even though he was not on duty. (Third Amended Complaint, Para. 35.)

6. He himself borrowed money from Albert J. Schuholz. (Third Amended Complaint, Para. 37.)

7. He was the lead detective on the Schuholz/Burns murders and "set policy for the City of Sharonville in regard to how the investigation was handled." (Third Amended Complaint, Para. 38.)

8. He did not tell the family members of the two murder victims of a "conflict of interest" as an employee of Schuholz and a detective for the City of Sharonville. (Third Amended Complaint, Para. 39.)

9. He removed evidence from the murder scene and the automobile of Marie Schuholz and the evidence has been destroyed. (Third Amended Complaint, Para. 40.)

10. He had been advised by an unnamed person that Albert Schuholz had attempted to hire the unnamed person to murder Marie Schuholz. (Third Amended Complaint, Para. 41.)

11. He was told by Plaintiff James Wright that Albert Schuholz told Plaintiff Wright after the murders that he "got her and would get the rest of them." (Third Amended Complaint, Para. 42.)

12. He told Plaintiffs Wright and Kammeyer that too many contacts to the police department would hurt the investigation. (Third Amended Complaint, Para. 43.)

13. He misled the Plaintiffs by stating that there was insufficient evidence to charge Schuholz with the murders. (Third Amended Complaint, Para. 44.)

14. He "covered up" his illegal conduct and improper association with Schuholz in order to assist Schuholz in avoiding prosecution for the murder of Marie. (Third Amended Complaint, Para. 44.)

15. He acted in concert with other Defendants by "covering up" facts that would lead to the indictment and conviction of Albert J. Schuholz for the murders. (Third Amended Complaint, Para. 45.)

16. He was acting pursuant to a "policy and custom of the City of Sharonville." (Third Amended Complaint, Para. 57.)

17. His actions along with those of the other individual Defendants have been taken pursuant to an agreement or a conspiracy to injure the person or property of the Plaintiffs. (Third Amended Complaint, Para. 58.)

18. He and the other individual Defendants, based upon a custom policy and practice, have intentionally treated these Plaintiffs differently from other families of crime victims for which there is no rational basis. (Third Amended Complaint, Para. 59.)

19. He and the other individual Defendants acting upon a policy or practice of the City of Sharonville have increased the risk of physical harm to the property of the Plaintiffs and limited the ability of the Plaintiffs to utilize civil litigation in the Probate Court and the Domestic Relations Court. (Third Amended Complaint, Para. 60.)

20. He and the other individual Defendants, based upon a policy or practice of the City of Sharonville, have acted with deliberate indifference to the property and other rights and physical safety of the Plaintiffs. (Third Amended Complaint, Para. 61.)

## **AS TO CHIEF NUSS**

1. He and other Defendants have covered up evidence linking Albert J. Schuholz to the murders. (Third Amended Complaint, Para. 2.)

2. He and other Defendants have covered up the fact that evidence has been destroyed. (Third Amended Complaint, Para. 2.)

3. He and other Defendants have covered up the fact that Cramer lied to the Wright family. (Third Amended Complaint, Para. 2.)

4. He and other Defendants have covered up other facts crucial to a timely solution to the murder case. (Third Amended Complaint, Para. 2.)

5. He is the former Chief of Police for the City of Sharonville who served as Chief for nine years following the murders. (Third Amended Complaint, Para. 11.)

6. He is the brother-in-law of James Cramer. (Third Amended Complaint, Para. 11.)

7. He assigned James Cramer to investigate the murders of Marie Schuholz and Starla Burns. (Third Amended Complaint, Para. 38.)

8. His actions have been pursuant to a policy and custom of the City of Sharonville. (Third Amended Complaint, Para. 57.)

9. His actions and those of other Defendants have been taken pursuant to a conspiracy to injure the Plaintiffs. (Third Amended Complaint, Para. 58.)

10. He and other Defendants, through a custom policy or practice of the City of Sharonville, have intentionally treated Plaintiffs differently from others similarly situated without rational basis. (Third Amended Complaint, Para. 59.)

11. He and other Defendants, through a custom policy or practice of the City of Sharonville, have intentionally increased the risk of harm to the property of the Plaintiffs and limited their ability to utilize civil litigation in the Probate Court, the Domestic Relations Court, and through filing wrongful death actions. (Third Amended Complaint, Para. 60.)

12. He and other Defendants have acted intentionally, recklessly and with deliberate indifference to the property and other federally protected rights of the Plaintiffs through an arbitrary abuse of government power. (Third Amended Complaint, Para. 61.)

13. He and other Defendants have deprived Plaintiffs of rights, privileges and immunities of the first and fourteenth amendments, including access to Courts, equal protection and due process of law. (Third Amended Complaint, Para. 68.)

14. He and other Defendants have engaged in a conspiracy to destroy evidence and cover up the role of Albert J. Schuholz in the murder of Marie Wright Schuholz and Starla Burns and cover up the role of Defendant Cramer who aided Schuholz in avoiding prosecution. (Third Amended Complaint, Para. 69.)

15. He and other Defendants have willfully destroyed evidence related to the investigation of the death of Marie Schuholz. (Third Amended Complaint, Para. 70.)

16.     He and other Defendants have intentionally and with malice toward Plaintiffs caused them severe emotional distress. (Third Amended Complaint, Para. 71.)

## II.     ARGUMENT

### A.  LACK OF CRUCIAL ALLEGATIONS

Based upon the Third Amended Complaint, and assuming its factual allegations to be true, these Defendants believe that they are entitled to dismissal of all claims based upon Federal Rule 12(B)(6) because Plaintiffs can prove no set of facts, which would entitle them to relief. Throughout the numerous versions of the Complaint crafted by Plaintiffs, there is not a single inference that either James Cramer or William Nuss had anything to do with the murders of Marie Schuholz or Starla Burns. There is no inference that these Defendants knew that Albert Schuholz committed the murders, nor is there an inference that Albert Schuholz hired someone to commit the murders whose identity was known to these Defendants. Further, there is no inference that these Defendants knew who killed the murder victims. Distilled to its essence, the Third Amended Complaint states:

> Cramer had previous dealings with murder suspect, Al Schuholz, and did not charge him with the murders of Marie Schuholz and Starla Burns. Cramer did not tell the families of the victims that he previously had contact with Schuholz. No one knows who killed the victims. In 1998, after Albert Schuholz plead guilty to a conspiracy to murder his next wife, all involved individuals, including the Sharonville Police Department and the families of the murder victims, decided that Albert Schuholz must have committed the 1981 crimes. Plaintiffs claim that their constitutional rights were violated by the fact that neither Cramer, nor Chief Nuss solved the murders earlier.

### B.  FEDERAL IMMUNITY OF DEFENDANTS NUSS AND CRAMER

Plaintiffs state in the Third Amended Complaint that Officers Cramer and Nuss are being sued in their official capacities, rather than their individual capacities, as to federal civil rights claims. The only stated federal civil rights claim, a §1983 claim, is identified as the first claim,

paragraph 68, of the Third Amended Complaint. All other claims against Officers Cramer and Nuss, alleging liability in their individual capacities, apply only to State of Ohio claims.

In the event that the Court construes Plaintiffs' first claim as an allegation of deprivation of constitutional rights against Defendants Cramer and Nuss in their *individual* capacities, then such Defendants are entitled to qualified immunity based upon the following cases: Behrens v. Pelletier, 116 S. Ct. 834, 840, 516 U.S. 299, 133 L.Ed.2d 773 (1996); Albright v. Oliver, 114 S. Ct. 807, 510 U.S. 266, 127 L.Ed.2d 114 (1994); County of Sacramento v. Lewis, 118 S. Ct. 1708 FN 5, 523 U.S. 833, 140 L.Ed.2d 1043 (1998); Saucier v. Katz, 121 S. Ct. 2151, 533 U.S. 194, 150 L.Ed.2d 272 (2001).

### C. DISMISSAL OF FIRST CLAIM – ACCESS TO COURTS

The first claim, denial of access to courts, should be dismissed against Defendants Cramer and Nuss for the reason that it fails to state a cause of action against them. No fact is alleged anywhere that states that actions of either Cramer or Nuss denied them access to any Court. Plaintiffs admit that they litigated the Probate Court matter concerning the estates of the two decedents. They do not allege that they attempted to subpoena Officers Cramer or Nuss. They do not allege that Officers Cramer or Nuss misled or lied in a Court proceeding. They do not allege that Cramer or Nuss would have been parties to any such litigation.

Swekel v. City of River Rouge, 119 F.3d 1259 (6th Cir. 1997) requires that Plaintiffs must allege facts that show that as a direct result of the activities of the Defendants, the Plaintiffs' state Court remedies were rendered ineffective. Under common law and the Ohio Probate Code, a murderer is unable to profit from his actions. Plaintiffs fail to allege in any specific detail what steps they took to present evidence to the Probate Court that Albert Schuholz was guilty of murder.

Under Jones v. Union County Tennessee, 296 F.3d 417 (6th Cir. 2002), the Court ruled that the Plaintiff had to allege that a denial of access claim requires that the Plaintiff practically be physically barred from filing a lawsuit. In the case at bar, Plaintiffs admit that they did file a lawsuit in Probate Court and litigated for many months. Further, Plaintiffs in the instant case have sued, and then dismissed, Albert Schuholz for wrongful death. Plaintiffs have certainly not been barred from access to Courts.

Plaintiffs' first claim is based on numerous accusations of "cover up," which are intended to mislead the Court. Cases concerning police cover up deal with factual situations where the prior actions of the law enforcement officer actually caused the injury (or death) to the victim. Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983). Joyce v. Mavromatis, 783 F.2d 56 (6th Cir. 1986). In Joyce, the Plaintiff was injured in an accident caused by the son of the local police chief, who allegedly concealed certain evidence from the Plaintiff. The Court ruled that the actions of the Defendant did ***not*** deny Plaintiff access to the Courts because the Plaintiff knew the identity of the target Defendant and had the capability of filing a suit in state Court. In the case at bar, there are numerous allegations in the Complaint that the children of murder victim Marie Schuholz had great suspicions that Albert Schuholz murdered their mother, and they did resort to state Court action against him.

### D. EQUAL PROTECTION

The Third Amended Complaint also fails to state a cause of action against Defendants Cramer and Nuss on the basis of equal protection.

The case of Village of Willowbrook v. Olech, 528 U.S. 562 (2000) dealt with the government's duty owed to the property owner from whom an easement was being negotiated. If the government conduct treated her unfairly and improperly and singled her out as a target for unfair treatment, then liability may be established. However, in the case at bar, there is no duty

8

owed from the government and its employees to families of crime victims to successfully prosecute criminals within a stated time. The allegations of the Third Amended Complaint do identify any such duty; only that the actions of Defendant Cramer were done improperly. There is not a "vindictive motive" alleged whereby Defendants Cramer or Nuss are alleged to have singled out these plaintiffs to harm them in conjunction with the murder investigations. <u>Albiero v. City of Kankake</u>, 246 F.3d 927 (7th Cir. 2001).

It remains the law in a "class of one" claim of unequal protection that the claimant must allege and prove malice or vindictiveness on the part of the government. In <u>Willowbrook</u>, the government was forced by law to negotiate fairly with several property owners from whom it would negotiate easements. When it acquired all other easements at a fifteen-foot width and the claimants at thirty-three feet, she was treated with vindictiveness or animosity. The government not only treated her differently than others, but it did so for vindictive purposes. The point is that there was controlling law that compelled the government to treat her fairly under the eminent domain laws. In the case at bar, no possible allegation can be made that Officers Cramer or Nuss had any vindictiveness or evil motive directed at Plaintiffs in carrying out their duties as police officers. There is not even a duty to communicate with them.

### E. **DUE PROCESS OF LAW**

Plaintiffs also failed to state a cause of action on the base of denial of due process of law. Plaintiffs do not allege that a property right has been infringed; rather, they allege that they have lost their inheritance. That matter was litigated in the Probate Court and there is no allegation that Plaintiffs attempted to have testimony or evidence elicited from Defendants Cramer or Nuss in that proceeding. Therefore, Plaintiffs' procedural due process claim must be dismissed. <u>Hudson v. Palmer</u>, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed.2d 394 (1984).

This Court in the case of Culberson v. Doan, 125 F. Supp.2d 252 (S.D. Ohio W.D. 2000) ruled that a factual issue existed whether a property right (the right to possession of the body of Decedent, Carrie Culberson) had been actively violated by actions of a governmental official who had an affirmative duty to prevent harm to the protected property interest. The actions of the Blanchester Police Chief effectively restrained the Culberson family from protecting he body, and her family had a protected property interest in her body. No such claim exists in the pending case.

In Cartwright v. City of Marine City, 336 F.3d 487 (6th Cir. 2003), the Court ruled that the failure of the government to protect an individual against private violence does not constitute a violation of due process. The Court ruled that Plaintiffs cannot argue liability under a due process theory because of the failure of the government to act, such as the failure of police officers to take an individual into custody. When the government takes an individual into custody, and restrains the individual's liberty, then a special relationship of care arises, as well as when the government actively creates a situation of danger. "By contrast, failure to act is not an affirmative act under the state created danger theory." Cartwright at 491.

In Gazette v. City of Pontiac, 41 F.3d 1061 (6th Cir. 1994), the Court ruled that the actions and inactions of police in poorly investigating a person who had disappeared from a carwash, and lied to family members of the victim, did not state a cause of action under a due process claim or an equal protection claim. The Plaintiff in Gazette also alleged that the defendant police officers denied the victim her due process rights through an official policy, custom or practice by failing to properly investigate missing persons and by lying and misleading the public and relatives of the missing person. The Court held that no affirmative duty to protect citizens from actions of their parties existed nor did a special relationship exist.

The Plaintiff in Gazette claimed that the actions of the police were "so reckless and grossly negligent" that harmful injuries were almost certain to result. The Court stated that no special relationship was proven because neither the perpetrator nor the victim were in the custody of the city. As to the lies from the police to the family of the victim, the Court ruled that the victim was no more vulnerable to the danger than she would have been otherwise.

The Court in Gazette held that there must be a direct causal link between a specific municipal policy and the alleged constitutional deprivation in order to state a due process claim. There was an insufficient causal connection between the lies of the police officers and the harm done to the victim. Even though the family of the victim failed to investigate the disappearance of the victim in reliance on the police officer's misrepresentations, there was no connection between the lies and the resulting death of the victim in Gazette. The decision by the police not to investigate a certain aspect of the case did not constitute an action, which violated the due process clause. Obviously, in the case at bar, any alleged lies and deception of Officer Cramer had nothing to do with the death of either murder victim. Nor do Plaintiffs allege any specific facts, which infer how such deception prevented them from fully and fairly litigating the Probate Court controversy between them and Albert Schuholz.

The Sixth Circuit Court of Appeals recently ruled that a complaint, which rests upon an ultimate legal result impact (conviction of Albert Schuholz), which in turn depends upon completely discretionary factors, does not state a due process cause of action. Dotson v. Wilkinson, 329 F.3d 463, 470 (6th Cir. 2003). The Plaintiff in Dotson claimed that he was entitled to a new parole hearing, and the Court determined that a §1983 cause of action was not stated because the ultimate outcome depended upon discretionary parole determinations under Ohio law. In the case at bar, Plaintiffs attempt to fashion liability on the possibility that a jury will find Albert Schuholz guilty of a 1981 crime beyond a reasonable doubt. Plaintiffs also

claim that, if Schuholz is not so convicted, then this is the result of the failure of Officer Cramer to preserve evidence. Yet, Plaintiffs do not even allege the identity of the evidence is which has been lost. Therefore, no possible cause of action under due process can be construed out of the allegations in the Complaint.

### F. CRAMER AND NUSS AS POLICYMAKERS

Both Detective Cramer and Chief Nuss are alleged to be "policymakers" concerning the investigation into the Schuholz and Burns murders. However, such allegations must be totally disregarded because there is not one single allegation of a specific policy, how it was implemented, what it said, or how it affected anyone, in the Complaint. The entire first claim, under which Defendants Cramer and Nuss are sued in their representative capacity only, must be dismissed because there are no allegations of any official policy set by these Defendants.

This Court has held that a Plaintiff must allege more than "garden variety" assertions without more specific allegations in describing a custom or policy set by a City. In Leisure v. Cincinnati (2003), 267 F. Supp.2d 848, 855, (S.D. Ohio 2003). This Court noted that a written City of Cincinnati policy was relied upon by the Court in identifying the policy of the City of Cincinnati. Further, the Plaintiff in Leisure specifically alleged many decades of racial inconsistencies within the City of Cincinnati Police Department. Further, the mere assertion that one detective in one case has the authority to "set policy" must be totally disregarded.

In Wells v. Brown, 891 F.2d 591 (6th Cir. 1989) at 594, the Sixth Circuit indicated that a Plaintiff cannot merely conjure up unpleaded allegations nor guess at the nature of a legal argument. In the Third Amended Complaint, Officer Cramer is alleged to be a policymaker while the Complaint is also clear that he is merely a detective assigned to investigate the 1981 murders. There is no specific allegation of his authority to establish policy, nor the actual policy,

which he allegedly established. Therefore, his alleged status as a "policymaker" must be stricken. The same is true as to Chief Nuss.

### G. STATE LAW CONSPIRACY TO COVER UP EVIDENCE

Under Ohio Revised Code §2744.03 (A)(6), the state law claims against Defendants Cramer and Nuss in their individual capacities are barred by the immunity granted by the statute. The statute provides immunity unless the actions or omissions were done with malicious purpose, in bad faith or in a wanton or reckless manner. In Grinter v. City of Toledo 1999 WL 740268 (Ohio App. 6 Dist.), unreported, copy attached, the Court confirmed that the statute provides for immunity for individual employees of a government unless an exception is shown to be present. An action is willful, wanton and reckless if the individual acting perversely disregards a known risk, or takes an action or fails to act in contravention of a clear duty, knowing or having reason to know facts which would lead a reasonable person to realize the conduct creates an unreasonable risk of having substantially greater harm than the risk which would make the conduct merely negligent. In the case at bar, an allegation that an investigating officer destroyed evidence, which does not in any way identify the evidence destroyed, does not state a claim for mere negligent action. Every investigating police officer identifies important data and disregards data, which he determines to be unimportant. Unimportant data is destroyed or disregarded. Since the Complaint does not allege what evidence was destroyed or lost by Officer Cramer, all of which would be negligent acts, the Complaint fails to state that such actions were willful, wanton or reckless.

If Plaintiffs' had alleged that Officer Cramer destroyed evidence relating to his alleged prior contacts with Albert Schuholz, then these allegations would also fail to state a cause of action for destruction of evidence. Such evidence would have no possible relevance, if it existed, concerning the culpability of Albert Schuholz. If Cramer did destroy evidence concerning prior

13

contacts with Albert Schuholz, then these actions may have caused sanctions under Ohio's Civil Service laws or possibly even Ohio's criminal laws. However, no duty has been alleged connecting these wildly speculative allegations to any duty owed toward these Plaintiffs.

Chief Nuss is not even alleged to have destroyed evidence or alleged to be aware that any evidence has been destroyed.

### H. SPOLIATION OF EVIDENCE

Plaintiffs' allegation that the actions of Defendants, including Cramer and Nuss, that evidence was willfully destroyed, does not state a cause of action under Ohio law, and therefore must be dismissed. There is no duty concerning the gathering or maintaining of evidence, which flows from an individual police officer to a family member of a victim. No statute or case identifies such a duty. The Plaintiffs cannot base their claims for spoliation of evidence on the rights or interests of other individuals. Their rights must be asserted on their own. The duty concerning the preservation of evidence is a duty owed by the investigating officers to the government, which employs them. Conn v. Gabbert, 119 S. Ct. 1292, 1295, 526 U.S. 286, 143 L.Ed.2d 399 (1993). Further, Plaintiffs have not alleged how such evidence might have been used by them or available to them in the civil litigation in the Probate Court following the murders.

### I. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The State law claim for intentional infliction of emotional distress must be dismissed as to Defendants Cramer and Nuss. As stated above, these Defendants are entitled to immunity pursuant to Revised Code §2744.03. Both of these Defendants have been retired from the Police Department for over ten years. No duty of disclosure was owed by either of them to the family members of the victims of the crimes, which occurred in 1981. Further, there is no allegation in the facts alleged in the Complaint that indicates that anything done by Defendants Cramer and

Nuss were done intentionally with the purpose of inflicting emotional distress upon any of the Plaintiffs. The allegations, taken at their strongest evidentiary inference, suggest that Defendant Cramer was protecting himself and a former acquaintance, suspect Albert Schuholz. Therefore, the facts alleged in the Third Amended Complaint do not allege that any individual Defendants did anything with "malice toward Plaintiffs." Garrett v. Sandusky (1994), 68 O.S.3d 139, 624 N.E.2d 704. Wilson v. Stark County Department of Human Services (1994), 70 O.S.3d 450, 639 N.E. 2d 105.

### III.  CONCLUSION

There was no constitutional or statutory duty upon Defendants Cramer or Nuss in 1981, which mandated an immediate criminal prosecution of one suspect in two unsolved murders. There was no duty upon them to communicate anything to the families of the murder victims. There was no duty upon them to disclose any prior contacts with any suspect or crime victim. No allegation has been made that their actions were aimed at "getting" these Plaintiffs, or that their actions or inactions directly caused any harm to these Plaintiffs. Plaintiffs' inheritance rights were litigated twenty years ago. The actions of Defendant Cramer are alleged to be outrageous, but there has never been a statute, constitutional provision or case, which connects the alleged outrageous conduct to any duty owed to these Plaintiffs. The Third Amended Complaint should be dismissed as to Defendants Cramer and Nuss.

Respectfully submitted,

KEATING, RITCHIE & SWICK
A Legal Professional Association

  s/ Thomas T. Keating
Thomas T. Keating, 0011359
Attorney for Defendants Cramer and Nuss
8050 Hosbrook Road, Suite 200
Cincinnati, Ohio 45236
Phone: (513) 891-1530
email: tkeating@krslawyers.com

15

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been sent by ordinary U.S. Mail to Lawrence E. Barbiere, Trial Attorney for Defendants Mike Schappa and City of Sharonville, SCHROEDER, MAUNDRELL, BARBIERE & POWERS 11935 Mason Road, Suite 110, Cincinnati, Ohio 45249;  Alphonse A. Gerhardstein, Trial Attorney for Plaintiffs, 617 Vine Street, Suite 1409, Cincinnati, Ohio 45202, on this 22nd day of September, 2003.


    _s/ Thomas T. Keating_____
    Thomas T. Keating