## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA KAMMEYER, et al.** | : | |
| **Plaintiffs** | : | **Case No. C-1-01-649** |
| **vs.** | : | **Spiegel, J.** |
| | | **Sherman, J.** |
| **CITY OF SHARONVILLE, et al.** | : | |
| **Defendants** | : | |
| | : | |
| | : | |

_____

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTIONS TO DISMISS THIRD AMENDED COMPLAINT BY DEFENDANTS SCHAPPA AND CITY OF SHARONVILLE (DOC. 121) AND DEFENDANTS CRAMER AND NUSS (DOC. 124)

_____

Alphonse. A. Gerhardstein # 0032053
Trial Attorney for Plaintiffs
Paul Laufman # 0066667
Attorney for Plaintiffs
617 Vine Street, Suite 1409
Cincinnati, OH 45202
(513) 621-9100
(513) 345-5543 fax
agerhardstein@laufgerhard.com
plaufman@laufherhard.com

# TABLE OF CONTENTS

Table of Authorities………………………………….....    ii

I.    INTRODUCTION AND SUMMARY (L.R. 7.2(a)(3)….    1

II.    ARGUMENT …………………………………………...    2

    A. The Court Should Follow its Previous Ruling on
       Plaintiffs' Federal Claims Pursuant to the Doctrine of
       Law of the Case. ……………………………………..    2

    B. Plaintiffs' Third Amended Complaint States a Claim
       for Denial of Equal Protection. ……………………....    4

    C. Plaintiffs' Third Amended Complaint States a Cause
       of Action for Denial of Access to the Courts ………    9

    D. The Second Amended Complaint States a Claim for
       Denial of Substantive Due Process ………………...    14

    E. The Third Amended Complaint States Claims
       Against the City of Sharonville………………………    19

    F. The Complaint States A Claim For State Law
       Conspiracy …………………………………..    20

    G. The Complaint States A Claim for Spoliation of
       Evidence ……………………………………………..    21

    H. The Complaint States A Claim For Intentional
       Infliction of Emotional Distress………………………    22

    I. The Complaint States A Claim For Punitive
       Damages………………………………………...........    23

    J. The Defendants Are Not Protected by Sovereign
       Immunity ……………………….....................................    23

III.    CONCLUSION ………………………………………    24

CERTIFICATE OF SERVICE…………………………….    24

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

Anderson v. Anderson, 2000 WL 33126582 (N.D.Ohio)……………………..7

Anderson v. Creighton, 483 U.S. 635, 639 (1987)....................................... 18

Aubrey v. Cincinnati, 815 F.Supp. 1100 (S.D. Ohio 1993), remanded 65
    F.3d. 168 (6th Cir. 1995)........................................................................ 20

Barrett v. Outlet Broadcasting, 22 F. Supp. 2d 726 (S.D. Ohio 1997)........ 15

Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984) ......................... 12

Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998)........................................ 2

Bounds v. Smith, 430 U.S. 817, 822 (1977).................................................. 14

Bower v. Village of Mt. Sterling, 44 Fed. Appx. 470 (6th Cir. 2002) ........ 5,8

Campbell v. Erie Township, 133 F.Supp.2d 953, (E.D. Mich. 2001).......... 19

Chambers v. Baltimore & Ohio R.R., 207 U.S. 142, 148 (1907)................. 18

Chavez v. Martinez, 123 S.Ct. 1994 (2003)……………………………..18

Chesher v. Neyer, No. 1:01-CV-00566 (S.D. OH., 9/8/03)………………15

Claybrook v. Birchwell, 199 F.3d 350 (6th Cir. 2000) ................................ 14

Collins v. City of Harker Heights, 503 U.S. 115, 119 (1992) ..................... 17

Coon v. Heron, 1999 WL 357779 (6th Cir. May 19, 1999) ......................... 17

County of Sacramento v. Lewis, 523 U.S. 833 (1998)................................. 15

Crawford-El v. Britton, 523 U.S. 574, 600 (1998)................................. 20, 21

Culberson v. Doan, 125 F. Supp. 2d 252 (S.D. Ohio 2000)................. passim

Culberson v. Doan, 65 F. Supp.2d 701 (S.D. Ohio 1999)........................... 16

Delew v. Wagner, 143 F.3d 1219 (9th Cir. 1998)........................................ 12

DeMuria v. Hawkes, 328 F.3d 704 (2d Cir. 2003)………………………..6

Fisher v. City of Cincinnati, 753 F. Supp. 681, 691 (S.D. Ohio 1990)........ 20

Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994)……………2

Harbury v. Christopher, ___ U.S. ___, 122 S. Ct. 2179 (2002) .................. 12

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)..................................... 2

Hoover v. Radabaugh, 123 F.Supp.2d 412, 426 (S.D. Ohio 2000)............. 21

Hull, 312 U.S.546 ........................................................................................ 19

In re Cincinnati Radiation Litigation, 874 F. Supp. 796 (S.D. Ohio 1995) . 12

Johnson v. City of Ecorse, 137 F. Supp.2d 886 (E.D. Mich 2001)............. 19

Jones v. City of Youngstown, 980 F. Supp 908 (N.D. Ohio 1997).............. 19

Kirk v. Hanes Corp, 16 F.3d 705(6th ...................................................... 23

Leisure v. City of Cincinnati, 267 F.Supp.2d 848, 857 (S.D. Ohio 2003)…20

Lewellen v. Metropolitan Gov't of Nashville, 34 F.3d 345 (6th Cir. 1994). 16

Mertik v. Blalock, 983 F.2d 1353, 1367-68 (6th Cir. 1993) ....................... 17

Monell v. Department of Social Services of the City of New York, 436 U.S.
    658 (1978) ............................................................................................. 20

Neitzke v. Williams, 490 U.S. 318, 326-7, 109 S.Ct. 1827, 1832 (1989)...... 2

# TABLE OF AUTHORITIES

Nishiyama v. Dickson County, 814 F.2d 277 (6th Cir. 1987) (en banc) .... 13, 14, 18

O'Brien v. City of Grand Rapids, 23 F.3d. 990 (6th Cir. 1990) ................... 20

Pembaur v. Cincinnati, 475 U.S. 469 (1986)................................................ 20

Rochin v. California, 342 U.S. 165 (1952).................................................... 18

Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983) ........................................ 12

Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190 (1923) .................................................................................................................. 3

Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir.1996), cert. denied, 117 S. Ct. 2409 (1997)................................................................. 2

Swekel v. City of River Rouge, 119 F.3d 1259 (6th Cir. 1997)............ 7, 9-11

United States v. Lanier, 117 S.Ct. 1219, 1226-27. (1997) ........................... 18

United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994)……………..3

United States v. Todd, 920 F.2d 399, 403 (6th Cir. 1990)…………………..3

Village of Willowbrook v. Olech, 528 U.S. 562 (2000) ............................... 4

Wroblewski v. City of Washburn, 965 F.2d 452, 459-60 (7th Cir. 1992) . 4, 5

State Cases

Butler v. Jordan, 92 Ohio St. 3d 354 (2001)................................................ 24

Carney v. Knollwood Cemetery Assn., 33 Ohio App. 3d 31, 32-33 (1986) 22

Pyle v. Pyle, 11 Ohio App. 3d 31, 34 (1983) .............................................. 22

Smith v. Howard Johnson, 67 Ohio St. 3d 28 (1993)................................... 21

Thomas v. Nationwide Insurance Co.,  79 Ohio App. 3d 624 (10th Dist. 1992)...................................................................................................... 21

Yeager v. Local Union 20, 6 Ohio St. 3d 369 (1983)................................... 22

Federal Statutes

42 U.S.C. §1983................................................................................... 16, 17

State Statutes

Revised Code §2744 .................................................................................... 24

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA  KAMMEYER, et al.** | : | **Case No. C-1-01-649** |
| **Plaintiffs** | : | **Spiegel, J.** |
| | | **Sherman, J.** |
| **vs.** | : | |
| | | **PLAINTIFFS' MEMORANDUM** |
| **CITY OF SHARONVILLE, et al.** | : | **IN OPPOSITION TO MOTIONS** |
| | | **TO DISMISS THIRD AMENDED** |
| **Defendants** | : | **COMPLAINT BY DEFENDANTS** |
| | | **SCHAPPA AND CITY OF** |
| | : | **SHARONVILLE (DOC. 121) AND** |
| | | **DEFENDANTS CRAMER AND** |
| | : | **NUSS (DOC. 124)** |
| | : | |

## I.  INTRODUCTION AND SUMMARY (L.R. 7.2(a)(3))

This civil rights case alleges that Marie Wright and Starla Burns were murdered by or at the direction of defendant Albert Schuholz.  The plaintiffs are the adult children of the deceased. They allege that all of the defendants have covered up facts related to the murders and committed related acts, denying rights to the plaintiffs.  Defendants City of Sharonville, Mike Schappa, James I Cramer, and William Nuss have moved to dismiss Plaintiffs' Third Amended Complaint.  (*See* Docs. 121 and 124).  Most of defendants' arguments were expressly rejected by this Court in its order denying qualified immunity.  (Doc. 93).   This Court approved the filing of the Third Amended Complaint in an Order on September 24, 2002 (Doc. 118).  The complaint clearly states claims upon which relief may be granted.   Plaintiffs oppose both motions to dismiss.

When addressing defendants' motions to dismiss, this court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and

permissible inferences therein." *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996), *cert. denied,* 117 S. Ct. 2409 (1997) (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994)).  The court cannot dismiss a complaint merely because it does not believe the complaint's allegations.  *Neitzke v. Williams,* 490 U.S. 318, 326-7, 109 S.Ct. 1827, 1832 (1989).  The court may grant defendants' motions "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id*. (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). When these standards are applied to the facts alleged in Plaintiffs' Third Amended Complaint, all defendants' motions to dismiss must be denied.

As this Court correctly held, plaintiffs state federal claims for relief based on equal protection, access to courts, and substantive due process (Doc. 93).  Further review of these claims is now barred by the doctrine of law of the case. Plaintiffs also have valid state claims for relief based on conspiracy, intentional infliction of emotional distress, and spoliation of evidence.  As explained in detail below, the motions to dismiss these pendant state claims should be denied.  This court should then maintain jurisdiction over these pendant state claims as they "arise out of a common nucleus of operative fact." *See Culberson v. Doan*, 125 F.Supp.2d 252 (S.D. Ohio, 2000)(Spiegel, J.)(*citing to United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130 (1966).

## II.  ARGUMENT

**A.    The Court Should Follow its Previous Ruling on Plaintiffs' Federal Claims Pursuant to the Doctrine of Law of the Case**

Defendants Schappa, Cramer and Nuss previously filed motions to dismiss in regard to plaintiffs' second amended complaint. (Docs. 49 & 54). These motions to dismiss sought qualified immunity from the federal civil rights claims. The court denied qualified immunity to all defendants as to all claims in an order issued February 13, 2003. (Doc. 93). In that order, the court conducted the two-step analysis required in response to a claim of qualified immunity. The court first examined whether the plaintiffs' complaint adequately plead violations of constitutionally protected rights and then whether those rights were clearly established by pre-existing law. (Doc. 93 at 2).

As discussed in greater detail below, the court held that plaintiffs' had adequately plead federal constitutional violations including an equal protection "class of one" claim, a denial of access to courts claim, and a denial of substantive due process claim. (Doc. 93 at 2-3).[1] Defendants have now filed motions to dismiss plaintiffs' third amended complaint. (Docs. 121 & 124). As discussed in greater detail below, defendants' current motions raise many of the same arguments which the court addressed in its order of February 13, 2003. The court's previous decision on the sufficiency of plaintiffs' federal claims should not be reconsidered at this time pursuant to the "law of the case" doctrine.

The law of the case doctrine states that a decision made by a court at one stage of a case should be given effect in successive stages of the same litigation. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994); *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990). The primary purpose of the law of the case doctrine is to prevent the

---

[1] The court also held that hese allegations stated a claim in its Order of September 5, 2002 wherein the court granted plaintiffs' motion to file their second amended complaint. (Doc. 44).

continued litigation of settled issues.  *Todd*, 920 F.2d at 403.  That is precisely what

defendants are attempting to do here.

As a rule "courts should be loathe to [revisit prior decisions of their own] in the

absence of extraordinary circumstances."  *Id. (quoting Christianson v. Colt Indus.*

*Operating Corp.*, 468 U.S. 800, 817 (1988).  Once decided, issues should be re-opened

only when there is "substantially different evidence," new law, or clearly erroneous prior

decision.  *Moored,* 38 F.3d at 1421.  Plaintiffs' third amended complaint is essentially

identical to the second amended complaint which was the subject of the defendants'

previous briefing and the courts' ruling.  The third amended complaint served only to

dismiss the federal civil rights claims against defendants in their individual capacities.

(Doc. 119 at ¶ 3).  None of the requirements necessary for the court to reopen these

issues are present.  The court must deny defendants' motions as to the federal civil rights

claims pursuant to the doctrine of law of the case.  In the event the court decides to

address the issues raised by the defendants, each of the federal civil rights claims is

addressed below.

**B.    Plaintiffs' Third Amended Complaint States a Claim for Denial of Equal
Protection**

Plaintiffs' third amended complaint includes a cause of action for denial of equal

protection based on allegations that they were intentionally treated differently from

others similarly situated and that there was no rational basis for a difference in

treatment.  (*See* Third Amended Complaint at ¶ 59).  Plaintiffs' claim is based on the

"class of one" theory articulated by the Supreme Court in *Village of Willowbrook v.*

*Olech*, 528 U.S. 562 (2000).  Defendants City of Sharonville and Shappa again raise the

identical argument in their motions to dismiss that plaintiffs' "class of one" equal

protection claim must fail because it fails to allege an "extra factor" of directed animus or ill will. (Doc. 121 at 6-9).

The court has already rejected this argument. In its February 13, 2003 Order, this Court noted the apparent split in authority as to whether an equal protection claim relying on the "class of one" must rest on an allegation of an "extra factor" of directed animus. (Doc. 93 at 3-5). The Court acknowledged the "apparent split between the Second and Seventh Circuits on the requirement of the 'extra factor,'" but went on to conclude that "the Sixth Circuit appears to have followed the approach of the Second Circuit in not requiring it." (Doc. 93 at 3). *Citing Alsensas v. City of Breckville*, No. 99-4063, 2000 U.S. App. Lexis 14520 (6th Cir. June 19, 2001).

Defendants Schappa and City of Sharonville again contend that an unpublished decision of the Sixth Circuit adopts the approach of those courts that require an "extra factor." (Doc. 121 at 8-9.) However, Defendants' reliance on that case, *Bower v. Village of Mt. Sterling*, 44 Fed. Appx. 470 (6th Cir. 2002), is misplaced. In *Bower*, the plaintiff alleged that the mayor of Mount Sterling denied him the opportunity to be hired as a full-time police officer through an appointment by city council, even though two other officers had been hired in that fashion. 44 Fed. Appx. at 673. Bower believed that this denial was premised on a desire to retaliate against him for his parents' political associations. *Id*. While the plaintiff's complaint did, in fact, contain an allegation of a "malicious and bad faith intent to injure" him, *id.*, this allegation was not essential to surviving a motion to dismiss. Instead, the *Bower* court held that in order to state a claim for equal protection based on a "class of one" theory, a plaintiff need allege 1) that he has been "intentionally treated differently from others similarly situated and there

5

was no rational basis for the difference in treatment," *Id*. at 676 (quoting *Olech*, 528

U.S. at 564); and 2) "facts sufficient to overcome the presumption of rationality that

applies to government classifications."   *Id*. at 677 (quoting *Wroblewski v. City of*

*Washburn*, 965 F.2d 452, 459-60 (7th Cir. 1992)).

Bower met the first prong of this test by alleging that he was similarly situated to

the other officers who had been hired via council appointments.  *Id*. at 677-78.  As to the

second prong, Bower asserted three separate bases for finding that the classification

imposed by the government lacked a rational basis: his alleged disparate treatment; the

allegation that the village's actions were contrary to Ohio statutes; and the retaliation

claim.  *Id*. at 678.  As Defendants note, the "animosity towards plaintiff [was]

pertinent"; it was, however, far from dispositive.  In fact, the court's language suggests

that any of Bower's three allegations could have supported his claim, standing alone:

> We conclude that the Plaintiff sufficiently alleged a lack of a
> rational basis for Plaintiff's non-selection when he alleged disparate
> treatment in securing the full-time police officer position after [the
> chief of police's] recommendation, as well as his subsequent hiring
> despite the sexual harassment complaint.

*Id*.  Nowhere in the *Bower* opinion did the Sixth Circuit require plaintiffs asserting an

equal protection claim based on the "class of one" theory to allege malice; instead, the

court merely held that such an allegation ***could*** support a "class of one" equal protection

claim.  This court correctly agreed with this position and held that, "Having reviewed

*Bowers*, the Court finds no explicit holding limiting a "class of one" claim to cases of

directed animus." (Doc. 93 at 4).  *See also*, *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir.

2003)(defendant police officer violated equal protection by enforcing law to favor friend

over plaintiff); *Anderson v. Anderson*, 2000 WL 33126582 (N.D.Ohio)(applies class of one to police misconduct).

This Court went on to hold that, "as long as there are facts sufficient to overcome the presumption of rationality that applied to government classifications, those facts do not necessarily need to show directed animus." (Doc. 93 at 4-5). Plaintiffs have therefore alleged facts sufficient to satisfy both prongs of the test enunciated by the Sixth Circuit in *Bower*. First, Plaintiffs have asserted that they were treated differently than other family members of murder and felony victims. (Third Amended Complaint at ¶ 59.) Clearly, the cover-up and criminal activity alleged by Plaintiffs is not conduct that Defendants engaged in with respect to every murder and felony investigation. Further, Plaintiffs have certainly alleged facts sufficient to overcome the presumption of rationality accorded to government classifications. Plaintiffs believe that Defendants' classification was a direct result of defendants' participation in illegal activities. (Third Amended Complaint at ¶¶ 34-45.) A classification based on the criminal activity of state actors cannot be deemed rational. This Court correctly held that, "Plaintiffs do not need to allege directed animus to support their "class of one" equal protection claim. Defendants' challenge to Plaintiffs' claim on this basis therefore fails." (Doc. 93 at 5).

In an abundance of caution, plaintiffs have and continue to argue that even if an allegation of ill will is deemed necessary, the third amended complaint certainly satisfied that criteria. Plaintiffs are accusing Defendants of outrageous, illegitimate behavior, singling out this case out of favoritism to Defendant Schuholz with an intent to deny these families a full and fair investigation. (Third Amended Complaint at ¶¶ 59, 34-45.) As this Court noted in its Order of February 13, 2003, "[E]ven though this

Court finds no requirement of directed animus under the law for a "class of one" equal protection claim, this case arguably presents evidence constituting animus directed at Plaintiffs out of a conflict of interest on the part of Defendants." (Doc. 93 at 5).

Defendants Cramer and Nuss have also renewed their argument for the dismissal of Plaintiffs' cause of action for denial of equal protection, apparently based on their belief that when such a claim is based on the "class of one" theory, a plaintiff is required to plead some sort of duty on the part of government officials. (Doc. 124 at 8-9). This proposition, however, is not supported by applicable case law. The *Olech* decision does not rely on the contractual relationship between the plaintiff and the government defendant; in fact, nowhere does the per curiam opinion use the word "duty."

The Equal Protection Clause of the Fourteenth Amendment is not limited to a guarantee of good faith when a party enters into negotiations with a state or local government; instead, it "secure[s] every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Olech*, 528 U.S. at 564. Similarly, the Sixth Circuit in *Bower* did not reference any "duty" owed to the plaintiff, but relied instead on the unconstitutionality of the imposition of arbitrary, irrational classifications. This Court correctly held that duty is not an element of the equal protection claim:

> The Court finds well-taken Plaintiffs' arguments that duty does not enter into the equal protection equation. Plaintiffs have met the first prong of *Bower* by alleging that they were treated differently than other family members of murder victims. They have met the second prong by alleging that Defendants engaged in illegal cover-up and criminal activity, clearly overcoming the presumption of rationality accorded to government classifications. Plaintiff have adequately stated their "class of one" equal protection claim.

(Doc. 93 at 5)(internal citations omitted).

For the reasons the court has previously stated, this cause of action should not be dismissed.

**C.    Plaintiffs' Third Amended Complaint States a Cause of Action for Denial of Access to the Courts**

Both of the Defendants' Motions to Dismiss again claim that the plaintiffs' complaint fails to state a claim for denial of access to courts.  These arguments have been considered and thoughtfully rejected by this Court on two occasions.  (Doc. 44 and Doc. 93 at 6-9).  Plaintiffs renew their position that the Court should again reject the Defendants argument because (1) the Wright plaintiffs litigated their claim but lost a substantial portion of their inheritance (Third Amended Complaint at ¶ 63) and (2) both the Wright plaintiffs and the Burns plaintiffs have been delayed for twenty years in their filing of a wrongful death action.  In the interim Al Schuholz has been declared incompetent, become incarcerated and claims to be indigent.  (Third Amended Complaint at ¶ 64; *see also* Answer of Schuholz, Doc. 7, ¶¶ 1, 2.)  Delayed for 20 years by the misconduct of the government defendants, any lawsuit against Al Schuholz for wrongful death may well be futile.  Evidence has been destroyed, hidden and stale and Schuholz is now uncollectible and unable to fully participate in the proceedings.  (Third Amended Complaint at ¶¶ 34-45, 55-61)

The right of access to courts is protected by the First, Fourth, and Fourteenth Amendments to the Constitution and by the Privileges and Immunity Clause to the Constitution.  See *Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997).  By protecting this right, courts insure that access to courts will be "adequate, effective and

meaningful." *Id.* at 1262 (citing *Bounds v. Smith*, 430 U.S. 817, 822 (1977)). The right of access is violated if "a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective." *Swekel*, 119 F.3d at 1262. The Sixth Circuit has held that the right of access to courts should be limited to "pre-filing abuses," that is, acts that occur before the plaintiff has filed a lawsuit on the matter. *Id.* at 1263. In that event, a plaintiff can recover upon a showing that the defendants' actions "foreclosed [the plaintiff] from filing suit in state court or rendered ineffective any state court remedy [the plaintiff] previously may have had." *Id.* at 1263-64.

The plaintiffs in this case allege numerous actions that combined to deny to them access to courts. The destruction of crime scene evidence, the cover-up of facts and the admitted conflict of interest of the lead detective, Defendant James Cramer, have blocked all progress on a criminal prosecution of Schuholz and, quite possibly, made such a prosecution extremely unlikely. (Third Amended Complaint at ¶¶ 34-45.) The Wright plaintiffs were even warned not to contact Sharonville too often, as that would hurt the investigation. (Third Amended Complaint at ¶ 43.) In fact, defendant Cramer was acting with the other defendants to cover-up Cramer's illegal conduct and his involvement with Schuholz. (Third Amended Complaint at ¶¶ 44-45.) As a result of these acts, the Wright plaintiffs lost much of their inheritance.[2] (Third Amended Complaint at ¶¶ 63.) Further, given the delay and the subsequent incarceration,

---

[2] Plaintiffs have previously filed a Request to Take Judicial Notice of the probate court record of the fight between the Wright children and Schuholz. (Doc. 18 at Appx. A-1.) As is evident in those documents, Marie's will left all of estate to her children, Patti Kammeyer and James Wright. As surviving spouse, Al Schuholz elected to take against the will. If the police cover-up had not occurred the plaintiffs would have retained all of their rightful inheritance. All of this is better addressed at summary judgment and is a provable set of facts based on the allegations in the existing complaint.

indigency, and mental incompetence of Schuholz, the state court remedy for wrongful death against him by all of the plaintiffs has been rendered ineffective.

Contrary to the assertions of Defendants Schappa and Sharonville, these facts are not comparable to *Swekel*, where the Sixth Circuit affirmed the grant of summary judgment to defendants sued for denial of access to courts.  In that case, the plaintiff's husband was struck and killed by two automobiles.  One of the cars was allegedly operated by the son of a police official.  Plaintiff sued the other driver but claimed to have insufficient evidence to proceed against the son of the police official.  Instead she sued the police defendants and the city for denial of access to courts.  The court held on summary judgment that since plaintiff had knowledge that there was a second driver and failed to add a John Doe defendant to her existing case against the first driver, she failed to present sufficient evidence that her state court action against the second driver was rendered ineffective. By contrast, in this case, plaintiffs were completely unaware of the police misconduct for 18 years. The probate litigation by the Wrights was rendered completely ineffective by the police misconduct. In the interim, Schuholz has become indigent, mentally incompetent and incarcerated.

In *Swekel*, the Court did note that if police misconduct delayed Swekel's own investigation, "these allegations, if true, would substantially prejudice Swekel's ability to recover in state court."  *Id*. at 1264.  The allegations in the case at bar reveal that Patti Kammeyer first learned in 1999 (18 years after the murder) from defendant Schappa that the investigation of her mother's murder had been delayed by a "police cover-up" due to a "crooked cop."  (Third Amended Complaint at ¶ 55.)  During that period Cramer "repeatedly misled the plaintiffs …to cover-up his own illegal and improper association

with Mr. Schuholz and to assist Mr. Schuholz avoid prosecution…" (Third Amended Complaint at ¶¶ 44, 45.)  No similar facts were present in *Swekel*.  In the case at bar the Court correctly held that, "Plaintiffs are actually in a worse position because of an even greater passage of time, nearly 20 years before the discovery of a cover-up."  (Doc. 93 at 7).

This action is similar to *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983), where the court denied a motion to dismiss an access to courts claim based on an eleven month cover-up by police.  The court noted that defendant's actions could have "prejudiced the Rylands' chances of recovery in state court because the resulting delay would cause stale evidence and fading material facts in the minds of potential witnesses.  Moreover, it could well prove more expensive to litigate such action." *Id*. at 975.  The case at bar has an 18 year delay, not simply an 11 month delay. *See also In re Cincinnati Radiation Litigation*, 874 F. Supp. 796 (S.D. Ohio 1995) (cover-up of true purpose for radiation treatments denied right of access to courts); *Delew v. Wagner*, 143 F.3d 1219 (9th Cir. 1998) (cover-up of evidence linking police officer's wife to death of child stated claim of denial of access to courts); *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) (officers planted evidence and gave false testimony denied plaintiffs access to court).

Defendants Schappa and Sharonville note the Supreme Court's recent decision regarding access to court claims in *Harbury v. Christopher*, 536 U.S. 403, 122 S. Ct. 2179 (2002).  The Court held that the plaintiff's claim should have been dismissed, as she had no remedy available to her that could not be pursued in an existing claim. *Id*. at 2189-90.  While the D.C. Circuit court, in sustaining her claim, had relied on her

inability to get damages in a present-day claim for intentional infliction of emotional

distress, the Supreme Court disagreed:

> We have no choice but to assume that what Harbury intends to
> claim as intentional infliction of emotional distress is set out in the
> counts of her complaint naming the "CIA defendants," including
> the Guatemalan officer who allegedly tortured and killed her
> husband.  These are among the tort counts that survived the motion
> to dismiss under the portion of the District Court's order not before
> us. If an intentional-infliction claim can be maintained at all,
> Harbury can seek damages and even conceivably some sort of
> injunctive relief for the demonstrated consequences of the infliction
> alleged.

*Id*. at 2190.  While Harbury still had access for an intentional infliction claim, the

plaintiffs in this case have already lost their inheritance to Schuholz.  Marie Wright was

murdered before her pending divorce from Defendant Schuholz was finalized; as such,

he was by law entitled to that which should have gone to Plaintiffs.  (Third Amended

Complaint at ¶ 63.)  Had Defendants not covered up Defendant Schuholz's participation

in Marie's murder, Plaintiffs could have contested the distribution of Marie's estate.

Further, had Plaintiffs had meaningful access to the courts in pursuit of a wrongful death

action against Defendant Schuholz twenty years ago, they would have stood a greater

chance at recovery.  (Third Amended Complaint at ¶ 64.)  Clearly, the remedies

available two decades ago are no longer available other than in a claim for denial of

access to the courts.

Each Motion to Dismiss also contends that the access to courts claim should be

denied because Plaintiffs did not actually attempt to file a wrongful death lawsuit.  In

order to state a claim, however, Plaintiffs need not have previously sought redress.  As

this Court correctly held in its Order of February 12, 2003, "if a party engages in actions

that effectively cover-up evidence and this action renders a plaintiff's state court remedy

ineffective, they have violated his right of access to the courts."  (Doc. 93 at 6).  In short,

"Plaintiffs do not need to attempt to access the state court as a prerequisite to brining a

denial of access claim." (Doc. 93 at 7).  In this case, Defendants' actions stripped the

plaintiff of "adequate, effective and meaningful" access to the courts.  *Bounds v. Smith*,

430 U.S 817, 822 (1977).

　　　　The Court has analyzed the defendants arguments on this issue and properly

held that, "[T]he alleged police conduct substantially prejudiced Plaintiffs' ability to

recover in state court, prejudice that has been exacerbated by the passage of time, and

prejudice that is evidenced by the Plaintiffs' failure to effectively challenge Albert

Schuholz's election against the will of Marie Wright Schuholz."  (Doc. 93 at 8).

Plaintiffs' claim is adequately pled under *Harbury* and *Swekel* and the motions to

dismiss this cause of action should be denied.

**D.**　　**The Second Amended Complaint States a Claim for Denial of Substantive Due Process**

　　　　This Court properly held that "Plaintiffs allegations are of conduct that shocks

the conscience."  Doc 93, p. 10.  The cover-up of a murder in order to prevent disclosure

of an officer's misconduct is an arbitrary exercise of power and certainly shocks the

conscience Where law enforcement officers "are afforded a reasonable opportunity to

deliberate various alternatives prior to electing a course of action . . . their actions will

be deemed conscience-shocking if they were taken with 'deliberate indifference'

towards the plaintiff's federally protected rights."  *Claybrook v. Birchwell*, 199 F.3d 350

(6th Cir. 2000) (finding no due process violation in a rapidly evolving police shootout).

This Court has also applied the "shocks the conscience" theory in *Culberson v. Doan*,

125 F. Supp. 2d 252 (S.D. Ohio 2000).  In that case a police chief chose among

alternative courses of action and decided to abandon a pond containing a murder

victim's remains.  As a result, the remains were removed from the pond and never

recovered by the victim's family.  This Court held that such a course of action met the

shocks the conscience test.  *See Barrett v. Outlet Broadcasting*, 22 F. Supp. 2d 726 (S.D.

Ohio 1997) (permitting media representatives to move and photograph suicide victims

shocks the conscience); *See also Chesher v. Neyer*, No.  1:01-CV-00566 (S.D. OH.,

9/8/03)(Doc. 111)(permitting third party to view, access, manipulate and photograph

bodies in county custody shocks conscience).

Similarly, the decision to cover-up the murders of Starla Burns and Marie Wright

has been made repeatedly over the last twenty years.  This decision has been acted on

with deliberate indifference to the rights of the Burns and Wright children.  The

Supreme Court explored the "shocks the conscience" theory of substantive due process

in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).  In that decision, the Court

explained that when government officials have time to make unhurried judgments they

will be held responsible for deprivations caused by their deliberate indifference to the

rights of citizens:  "When such extended opportunities to do better are teamed with

protracted failure even to care, indifference is truly shocking."  *County of Sacramento*,

523 U.S. at 853.  Defendants who knowingly cover-up murders certainly worsen the

legal plight of the family members of the murder victims.  Defendant Schappa in this

case has admitted that the murder investigation was delayed by an officer who "acted

with criminal intent and a police chief that covered it up."  (Third Amended Complaint

at ¶ 56.)  This deliberate action to cover-up evidence and leave the case unsolved has

resulted in years of fear by the plaintiffs, interference with their property rights in the

form of their right to an inheritance and potential wrongful death actions, and extended grief, emotional distress, and needless suffering regarding the unsolved deaths of their mothers.

Defendants Schappa and Sharonville point to the Culberson decision and argue that unlike the defendants in that case, the defendants herein have never acted to prevent the plaintiffs from using self-help. That is not the case. An essential element of the cover-up was acting as though the case was being properly investigated by Cramer even though the opposite was true. Cramer's self interest caused him not to perform his duties in this case. (Third Amended Complaint at ¶¶ 34-42.) The plaintiffs were led to believe that the murders were being investigated, were misled that there was insufficient evidence to charge Schuholz, and were advised that calling too often seeking progress would hurt the investigation. (Third Amended Complaint ¶¶ 43-45.) This affirmative and successful effort to mislead the plaintiffs and protect their mothers' murderers states a claim for relief.

Each of the Defendants' Motion to Dismiss makes the familiar argument that "not every tort committed by a government employee can be transformed into a constitutional violation." (Doc. 121 & 124). The Sixth Circuit has held that the Due Process clause does not support a claim based on allegations of either ordinary or gross negligence. *See, e.g., Lewellen v. Metropolitan Gov't of Nashville*, 34 F.3d 345 (6th Cir. 1994) (narrowing the scope of *Nishiyama v. Dickson County*, 814 F.2d 277 (6th Cir. 1987) (en banc), in which the court had held that allegations of gross negligence on the part of government actors were enough to charge them with arbitrary use of the government's power). In refusing to permit a plaintiff to proceed on a substantive due

process claim premised only on gross negligence that demonstrated deliberate indifference, the *Lewellen* court held: "What the defendants in this case clearly did *not* do was engage in arbitrary conduct intentionally designed to punish someone -- *e.g.*, giving a worker 'a particularly dangerous assignment in retaliation for a political speech . . . or because of his or her gender . . . .'" *Id.*, 34 F.3d at 351 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992)). In *Collins*, upon which the Sixth Circuit has relied in rejecting substantive due process claims based on unintentional tortious acts, the Court was careful to distinguish those cases alleging the breach of some duty on the part of a defendant from those involving allegations of willful misconduct:

> A fair reading of petitioner's complaint does not charge the city with a willful violation of Collins' rights. Petitioner does not claim that the city or any of its agents deliberately harmed her husband. In fact, she does not even allege that his supervisor instructed him to go into the sewer when the supervisor knew or should have known that there was a significant risk that he would be injured. Instead, she makes the more general allegation that the city deprived him of life and liberty by failing to provide a reasonably safe work environment.

*Collins*, 503 U.S. at 125-26.

The Sixth Circuit has held that a substantive due process claim may be maintained where the plaintiff alleges conduct that shocks the conscience of the court. *Coon v. Heron*, 1999 WL 357779 (6th Cir. May 19, 1999). A plaintiff who alleges such conduct need not demonstrate the deprivation of a specific constitutional right. *See, e.g., Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993) (explaining that substantive due process claims fall into two categories: those in which a the denial of a specific right, privilege, or immunity is pleaded, and those in which the alleged conduct of state actors "shocks the conscience"). Similarly, the Supreme Court has overturned a

conviction that was secured based on evidence obtained when law enforcement officials required a doctor to pump the defendant's stomach. *Rochin v. California*, 342 U.S. 165 (1952). The Rochin court did not look for an underlying constitutional right that had been violated, but relied instead on the criminal defendant's right to substantive due process. In defining the rights accorded by the Fourteenth Amendment, the Court held, "Due process of law is a summarized constitutional guarantee of respect for those personal immunities which . . . are so rooted in the traditions and conscience of our people as to be ranked as fundamental, or are implicit in the concept of ordered liberty." *Id*. at 169 (internal citations omitted). In this past term the Supreme Court again recognized a deprivation of substantive due process where conduct shocked the conscience. In *Chavez v. Martinez*, 123 S.Ct. 1994 (2003), the police officers interrogated a bleeding man in the hospital in a brutal, callous and ruthless manner satisfying the requirements for conduct that shocks the conscience, even though the man was never charged or prosecuted. The outrageous police action stated a basis for the claim.

In the instant case, Plaintiffs do not allege the deprivation of rights through Defendants' negligence. Instead, the Third Amended Complaint alleges that Defendants intentionally engaged in a cover-up of the deaths of Marie Wright and Starla Burns. Their actions were calculated towards ensuring that Plaintiffs never learned who was responsible for Marie's and Starla's deaths. The conduct alleged in this case—a conspiracy among law enforcement officers to make sure that a killer would never be brought to justice—surely shocks the conscience. The court agreed with this statement in its Order of February 13, 2003:

> The Court finds that Plaintiffs allegations are of conduct that shocks the conscience. . . It is shocking that the very authorities in whom the Plaintiffs put their trust to conduct a murder investigation allegedly covered-up evidence pointing to the killer.  It is further highly disturbing that the police allegedly led Plaintiffs to believe that the murders were being investigated, advised Plaintiffs that calling too often seeking progress reports would hurt the investigation, and misled the Plaintiffs that there was insufficient evidence to charge Schuholz.

(Doc. 93 at 10-11).

The possibility that law enforcement officers intentionally engaged in a scheme to assist a murderer in avoiding criminal and civil liability for his conduct must shock the conscience.  The Court agreed and held, "Plaintiffs have plead a viable substantive due process claim." (Doc. 93 at 10).  Because the Third Amended Complaint clearly states facts upon which relief can be granted for a denial of substantive due process, this claim should not be dismissed.

**E.    The Third Amended Complaint States Claims Against the City of Sharonville**.

The City is liable under the facts of this case.  Policymakers including the former and current police chief are alleged to have participated in the cover-up.  The current police chief even admits to this fact.  (Third Amended Complaint at ¶55-56). Plaintiffs have also alleged that collecting loan payments from Schuholz clients was pursuant to city policy as was the cover-up.  (Third Amended Complaint at ¶¶36, 57).

This case is brought under 42 U.S.C. §1983. Claims under that statute may be brought against a person "who…subjects or causes to be subjected, any citizen … to the deprivation…"  42 U.S.C. §1983.  This statute does not allow respondeat superior as a basis for municipal liability.  Rather, a municipality such as Sharonville causes a citizen to be subjected to a constitutional deprivation when a municipal policy itself drives the

deprivation. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). That policy can be formal or informal. In *Monell*, the Court said that municipal liability may be based upon governmental "custom…even though such a custom has not received approval through the official decisionmaking channels." *Id.* at 694. Municipalities have been exposed to liability based upon a practice of permitting traffic officers to investigate accidents involving fellow officers. *Fisher v. City of Cincinnati*, 753 F. Supp. 681, 691; a practice of permitting warrantless searches where suspect is barricaded. *O'Brien v. City of Grand Rapids*, 23 F.3d. 990 (6th Cir. 1990); and a practice of collaborating with private citizens to arrest sports spectators. *Aubrey v. Cincinnati*, 815 F.Supp. 1100 (S.D. Ohio 1993), *remanded* 65 F.3d. 168 (6th Cir. 1995).

Municipal liability can also be based upon the decisions of "those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. In *Pembaur v. Cincinnati*, 475 U.S. 469 (1986), the court held that Hamilton County was bound by the decisions of the county prosecutor who instructed officers to invade the offices of the plaintiff to retrieve records. *See also*, *Culberson v. Doan*, 125 F.Supp.2d 252, 272-277 (police chief was policymaker regarding criminal investigation); *Leisure v. City of Cincinnati*, 267 F.Supp.2d 848, 857 (S.D. Ohio 2003)(policy of foot pursuits established by custom caused deprivation) The facts alleged in this complaint certainlycould lead to a finding of municipal liability in this case.

**F.  The Complaint States A Claim For State Law Conspiracy**

Plaintiffs have alleged a state claim of civil conspiracy. State law conspiracy consists of "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone resulting in actual damages." *Hoover*

*v. Radabaugh*, 123 F.Supp.2d 412, 426 (S.D. Ohio 2000) (quoting *Williams v. Aetna Financial Co.*, 700 N.E.2d 859, 868 (1998)).  There must be an underlying unlawful act for conspiracy.  *Id*.  In fact, plaintiffs' complaint alleges all the elements of a conspiracy.  Defendants have and are continuing to combine to injure the plaintiffs by covering-up the roles of Schuholz in the murders of Wright and Burns and by covering-up the role of Cramer who aided Schuholz in avoiding prosecution.  The murder and cover-up are the underlying unlawful acts.

**G.    The Complaint States A Claim for Spoliation of Evidence**

Plaintiffs have alleged a state tort of spoliation of evidence.  Persons who know of pending or probable litigation involving the plaintiff and who intentionally destroy evidence causing disruption to plaintiff's case are liable in Ohio for intentional spoliation of evidence.  *Smith v. Howard Johnson*, 67 Ohio St. 3d 28 (1993).  The facts of the complaint can certainly support a finding of intentional spoliation.  There is also support in Ohio for asserting a claim of negligent spoliation.  In *Thomas v. Nationwide Insurance Co.*, 79 Ohio App. 3d 624 (10th Dist. 1992), a civil plaintiff sued a salvage yard for destroying a car that was evidence in a tort case.  The court noted that in order to assert a claim of negligent spoliation the plaintiff would have to show that the salvage yard owed a duty to the plaintiff and that the destroyed evidence made the lawsuit unsuccessful.  The Wright plaintiffs have alleged that the destruction of evidence caused them to lose their inheritance.  The years of probate litigation are over.  The facts of this complaint could easily support a claim for intentional or negligent spoliation.  The claims should not be dismissed.

21

**H.    The Complaint States A Claim For Intentional Infliction of Emotional Distress**

The Ohio Supreme Court has long recognized the tort of intentional infliction of serious emotional distress.  "One who intentionally by extreme and outrageous conduct or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."  *Yeager v. Local Union 20*, 6 Ohio St. 3d 369 (1983).  The elements of an intentional infliction of emotional distress claim are:

1.    The actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress for plaintiff;
2.    The actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was 'utterly intolerable in a civilized community;'
3.    The actions were the proximate cause plaintiff's psychic injury; and
4.    The mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure.

*Pyle v. Pyle*, 11 Ohio App. 3d 31, 34 (1983); *Carney v. Knollwood Cemetery Assn.*, 33 Ohio App. 3d 31, 32-33 (1986) (holding all blood descendants have a claim for emotional distress and outrageous disturbance of the remains of their relative).

The complaint in this case alleges that the mothers of the plaintiffs were brutally murdered and that the defendants conspired to cover-up who did commit the murder. These outrageous acts caused plaintiffs severe emotional distress.  Certainly to live with the unresolved brutal murder of one's mother is the type of injury no reasonable person should have to endure.  See *Culberson v. Doan*, 125 F.Supp.2d 252, 280. (S.D.Ohio 2000) (denying summary judgment on claim of intentional infliction of emotional distress); *Barret*, 22 F.Supp.2d 726 (same).

I.    **The Complaint States A Claim For Punitive Damages**

Defendants Schappa, Cramer and Nuss seek to dismiss the prayer for punitive damages claiming that the complaint fails to state that they have harmed the plaintiffs or acted with malicious intent toward the plaintiffs.[3]  On the contrary, the complaint clearly alleges that these defendants have participated in the cover-up, which has continued to this day, including the destruction of evidence and the provision of misleading information to the families.  There are ample facts to support a claim for denial of access to courts, substantive due process violations and state torts, all of which will support an award of punitive damages.

J.    **The Defendants Are Not Protected by Sovereign Immunity**

To the extent that the state law claims allege intentional torts, the City of Sharonville may be entitled to immunity.  *Culberson*, 125 F.Supp.2d at 281-283 (interpreting ORC §2744.02).  Plaintiffs contend, however, that the sovereign immunity statute in Ohio is unconstitutional under the Ohio constitution.  This court should decide issues of state law as it predicts the state's highest court would decide them.  *Kirk v. Hanes Corp*, 16 F.3d 705(6th Cir. 1994).  In *Butler v. Jordan*, 92 Ohio St. 3d 354 (2001), the Ohio Supreme Court certainly suggested that if the issue were properly presented it would hold that the sovereign immunity statute was unconstitutional with respect to state and local government defendants.  *Id*. at 373.  For the reasons set out in the plurality opinion in *Butler*, this court should hold the immunity statute unconstitutional. See *Leisure v. City of Cincinnati*, 267 F.Supp.2d at 859.

---

[3] Plaintiffs do not seek punitive damages against the City of Sharonville.

The individual defendants share no protection under Revised Code §2744.  They can be held liable for their intentional torts and those claims should go forward. *Culberson*, 125 F.Supp2d at 283-284.

## III.    CONCLUSION

Plaintiffs respectfully request that both pending motions to dismiss be denied.

**Respectfully submitted,**

  s/ Alphonse A. Gerhardstein       
Alphonse A. Gerhardstein # 0032053
Trial Attorney for Plaintiffs
Paul Laufman  #0066667
Attorney for the Plaintiff
617 Vine Street, Suite 1409
Cincinnati, Ohio 45202
(513) 621-9100
(513) 345-5543 fax
agerhardstein@laufgerhard.com
plaufman@laufgerhard.com

**Certificate of Service**

I here by certify that on October 9, 2003, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

  s/ Alphonse A. Gerhardstein       
Alphonse A. Gerhardstein