117 F.3d 1420 (Table)                        Page 1
**Unpublished Disposition**

(Cite as: 117 F.3d 1420, 1997 WL 397212 (6th Cir.(Ohio)))
C

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Keith **CALLIHAN**, Ray **Callihan**, Bonnie **Callihan**, Plaintiffs-Appellants,
v.
Joseph **SUDIMACK**, M.D., Richard Jackmas, Defendants-Appellees,
Trumbull County, Ohio, Defendant.

No. 96-3711.

July 10, 1997.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

Before MARTIN, Chief Judge; RYAN and BATCHELDER, Circuit Judges.

PER CURIAM.

**1 Keith, Bonnie, and Ray **Callihan** filed an action under 42 U.S.C. §§ 1983 and 1985 against Joseph **Sudimack**, a former Trumbull County Coroner; Richard Jakmas, a former Trumbull County Sheriff, Trumbull County; and Yuhasz Funeral Home for alleged violations of their rights under the Fourteenth Amendment to the United States Constitution. The action arose out of the defendants' alleged failure to discover the true cause of death of the Callihan's family member, Sharon Callihan Brain. The district court, finding that the Callihans had failed to demonstrate that they were denied a right secured by the Constitution or laws of the United States, granted the defendants' motion to dismiss for failure to state a claim. The Callihans filed a timely notice of appeal. We affirm.

I. Background [FN1]

FN1. Because this appeal is from a dismissal under Fed R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, we accept the factual allegations in the **Callihan**'s complaint as true.

Appellants are the son, father, and mother of decedent Sharon **Callihan** Brain. On August 28, 1978, Brain's corpse was discovered in Trumbull County, Ohio. The body was delivered to Dr. Joseph **Sudimack**, the County Coroner from 1961 to 1987, who was responsible for determining the official cause of Brain's death. Following blood tests on the body, **Sudimack** determined that the decedent died from a self-induced drug and alcohol overdose. The blood tests, while showing concentrations of blood and alcohol, actually did not support this conclusion.

After being informed of his daughter's death, Ray **Callihan** met with **Sudimack** on August 29, 1978 and openly questioned **Sudimack**'s conclusion concerning Brain's cause of death. Ray **Callihan** requested that **Sudimack** perform an autopsy on the body and offered to pay for the procedure. He also enlisted the help other local physicians in his attempt to persuade **Sudimack** to perform an autopsy. Nevertheless, **Sudimack** refused to perform the procedure.

Although he initially supported **Callihan**'s request for an autopsy, Richard Jakmas, the Sheriff of Trumbull County from 1977 to 1992, adopted **Sudimack**'s determination of the cause of death and ceased all investigation into Brain's death. Although the **Callihans** apparently could have availed themselves of a procedure under Ohio law to compel the coroner to change his determination regarding the cause, manner, or mode of death, they failed to do so.

In 1994, the current Trumbull County Sheriff reopened the investigation into Brain's death and obtained an order to exhume Brain's body. The body was exhumed on May 11, 1994, and an autopsy was performed shortly thereafter. The autopsy revealed that the cause of death was asphyxiation due to manual strangulation.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.3d 1420 (Table)  
(Cite as: 117 F.3d 1420, 1997 WL 397212, **1 (6th Cir.(Ohio)))

On March 1, 1995, the **Callihans** filed a § 1983 cause of action against **Sudimack**, Jakmas, Trumbull County, and Yuhasz funeral home. The **Callihans** alleged that their civil rights were violated by **Sudimack's** refusal to perform an autopsy on Brain's body to discover the true cause of death and by Jakmas's termination of the criminal investigation of Brain's death. The **Callihans** further alleged that the defendants conspired to cover up the true cause of death and that Trumbull County breached its duty to train Jakmas and **Sudimack**. A state-law claim alleging intentional infliction of emotional distress was also included in the complaint.

**2 The defendants filed motions to dismiss in October, 1995. On May 23, 1996, the district court, finding that the **Callihans** had failed to identify a right protected under the Constitution or Federal law, dismissed their complaint for failure to state a claim. The district court also refused to exercise pendent jurisdiction over the **Callihans'** state-law claim. The **Callihans** filed a timely notice of appeal.

II. Analysis

We review a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) de novo. Dismissal under 12(b)(6) is proper if, construing the complaint "liberally in the plaintiff's favor" and accepting "as true all factual allegations and permissible inferences therein," a plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir.1995) (citations omitted). In granting the defendant's motion to dismiss, the district court determined that the Callihans failed to identify any violation of a right protected under the Constitution or Federal law--an essential element of a § 1983 claim. We agree with the district Court.

Because Brain's civil rights terminated at her death, the Callihans must establish a deprivation of their own rights under the Constitution or laws of the United States. *Guyton v. Phillips*, 606 F.2d 248, 250 (9th Cir.1979) (holding that 42 U.S.C. §§ 1983 and 1985 do not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights that occurred after his death), *cert. denied*. 445 U.S. 916 (1980). The Callihans assert that they have articulated a violation of their due process rights under the Fourteenth Amendment. They contend that the due process violation springs from the defendants' failure to comply with Ohio Rev.Code Ann. § 313.15 (Banks-Baldwin 1994), which provides:

> All dead bodies in the custody of the coroner shall be held until such time as the coroner, after consultation with the prosecuting attorney, or with the police department of a municipal corporation, if the death occurred in a municipal corporation or with the sheriff, has decided that it is no longer necessary to hold such body to enable him to decide on a diagnosis giving a reasonable and true cause of death, or to decide that such body is no longer necessary to assist any of such officials in his duties.

Mere allegations of state law violations are, of course, insufficient to state a claim under § 1983. *Huron Valley Hosp. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir.1989). The Callihans nevertheless assert that the defendants' alleged violation of this statute provides the basis for a substantive due process claim and, presumably, a procedural due process claim.

A. *Substantive Due Process*

**3 We have held that a deprivation of a state-created right is, by itself, insufficient to support a substantive due process claim in this circuit. *See Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir.1990) ("Substantive due process 'affords only those protections "so rooted in the traditions and conscience of our people as to be ranked as fundamental." ' It protects those interests, some yet to be enumerated, 'implicit in the concept of ordered liberty'...."). We have recognized two types of substantive due process claims:

> The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under "the Fourteenth Amendment simpliciter."
> The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

whether the conduct complained of "shocks the conscience" of the court.
*LRL Properties*, 55 F.3d at 1111 (quoting *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir.1993)). Thus, substantive due process serves "as a check on official misconduct which infringes on a 'fundamental right' or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally 'conscience shocking,' hence oppressive, as to rise to the level of a substantive due process violation." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir.1996).

The Callihans do not have a "fundamental," or explicit, right under the Constitution to know the true cause of Brain's death through an autopsy and criminal investigation. A fundamental right is one that is " 'rooted in the traditions and conscience of our people' " and " 'implicit in the concept of ordered liberty,' like personal choice in matters of marriage and the family." *Sutton v. Cleveland Brd. of Educ.*, 958 F.2d 1339, 1350-51 (6th Cir.1992) (quoting *Charles*, 910 F.2d at 1353). Although we do not doubt the importance of the interest claimed by the Callihans, the right to know a decedent's true cause of death through an autopsy and criminal investigation simply is not a "fundamental" interest garnering substantive due process protection.

Nevertheless, the Callihans assert that the defendants' conduct "shocks the conscience" in violation of their substantive due process rights. The Supreme Court first articulated the "shocks the conscience" standard in *Rochin v. California*, 342 U.S. 165 (1952), when it found the forcible stomach pumping of petitioner to be "so brutal and so offensive to human dignity" that it "shock[ed] the conscience" of the justices. *Id.* at 174, 172. This Circuit has resisted application of the "shocks the conscience" standard to § 1983 cases not involving physical force. We explained this resistance in *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir.1990), in which we addressed whether an individual's claims of false arrest, false imprisonment, and malicious prosecution supported a substantive due process claim:

> **4 Applying the "shock the conscience" test in an area other than excessive force, however, is problematic. Not only are there fewer instances in the case law, but the "shock the conscience" standard, fuzzy under the best of circumstances, becomes fuzzy beyond a court's power to interpret objectively where there is a dearth of previous decisions on which to base the standard. We doubt the utility of such a standard outside the realm of physical abuse, an area in which the consciences of judges are shocked with some degree of uniformity. *See also Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir.1991) (applying same rationale to reject appellant's claim that being forced to barricade herself in her office after jailer and deputies threatened to kill her "shocked the conscience").

Even assuming the "shocks the conscience" standard is applicable to the case before us, we find that the standard is not met in this case. The alleged actions of the defendants, while disturbing, are not the type of brutal and inhumane acts that have shocked the conscience of courts in the past. *See Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir.1987) ("[S]ubstantive due process is concerned with violations of personal rights of privacy and bodily security.... [T]he ... inquiry ... must be whether the force applied caused injury so severe, and was so inspired by malice or sadism ... that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."). Trumbull County officials eventually corrected the erroneous cause-of-death determination and launched a full criminal investigation. In fact, this investigation apparently resulted in an arrest.

Moreover, the "shocking" nature of the defendants' actions is tempered by the Callihans' failure to avail themselves of an available remedy at state law. Ohio law provides a procedure through which an individual may challenge a coroner's findings regarding the cause of death. Under this provision, the court of common pleas of the county in which the death occurred may, after a hearing, direct the coroner to change his decision as to the cause, manner, or mode of death. Ohio Rev.Code Ann. § 313.19 (Banks-Baldwin 1994); *see Estate of Severt v. Wood*, 667 N.E.2d 1250 (Ohio Ct.App.1995) (affirming Court of Common Pleas application of statute to force Coroner to change cause of death); *see also State ex rel. Blair v. Balraj*, 631 N.E.2d 1044 (Ohio 1994) (noting that action for declaratory judgment is the proper way to challenge a coroner's findings pursuant to R.C. 313.19). The Callihans do not assert that this provision is inapplicable or inadequate. Thus, one of the more disturbing consequences of the officials' actions--the sixteen-

year wait to determine the true cause of death--potentially could have been averted by prompt resort to this state-law remedy. Accordingly, we find that the alleged actions of the defendants do not "shock the conscience;" the Callihans have therefore failed to state a substantive due process claim.

### B. Procedural Due Process

**\*\*5** Although they are immaterial to substantive due process claims, state statutory rights can merit procedural due process protection. For a state-created interest to garner Fourteenth Amendment procedural protection, however, the state must "place[ ] substantive limitations on official discretion." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 462 (1989) (quoting *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983)). We have held that a statute substantively limits official discretion when (1) it establishes substantive predicates to govern official decision making, and (2) it mandates the outcome to be reached upon finding a certain required criteria. *"Tony L." v. Childers,* 71 F.3d 1182, 1185 (6th Cir.1995), *cert. denied,* 116 S.Ct. 1834 (1996). Thus, a state statute creates an interest protected under the Fourteenth Amendment only when it uses "explicitly mandator, language requiring a particular outcome if the articulated substantive predicates are present." *Id.* at 1185.

The Ohio statute relied upon by the Callihans does not meet this requirement. The statute provides:

> All dead bodies in the custody of the coroner shall be held until such time as *the coroner,* after consultation with the prosecuting attorney, or with the police department of a municipal corporation, if the death occurred in a municipal corporation, or with the sheriff, *has decided* that it is no longer necessary to hold such body to enable him to decide on a diagnosis giving a reasonable and true cause of death, or to decide that such body is no longer necessary to assist any of such officials in his duties.

Ohio Rev.Code § 313.15 (Banks-Baldwin 1994) (emphasis added). On its face, the statute does not create *any* individual right to a correct cause of death determination, but speaks only to the Coroner's right to hold the body so long as he deems necessary to the performance of his duties. Moreover, this provision does not contain "mandatory language requiring a particular outcome if substantive predicates are found to be present," *Childers,* 71 F.3d at 1185; instead, the provision leaves it within the coroner's discretion to "decide[ ]" F.3d her. "it is no longer necessary to hold such body to enable him to decide on a diagnosis giving a reasonable and true cause of death." § 313.15. Thus, the state statute referenced by the Callihans does not create an interest protected by the Fourteenth Amendment's Due Process Clause.

Accordingly, because the Callihan's have failed to articulate a violation of a right protected by the Constitution or Federal laws, we AFFIRM the district court's dismissal of their §§ 1983 and 1985 claims.

117 F.3d 1420 (Table), 1997 WL 397212 (6th Cir.(Ohio)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works