This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.

Charles BOWER, Plaintiff-Appellant,
v.
VILLAGE OF MOUNT STERLING, et al.
Defendants-Appellees.

**No. 00-3418.**

July 26, 2002.

Applicant who sought to become village police officer brought Section 1983 claims against village, mayor, and police chief, alleging that he was denied the opportunity to become a full-time officer in violation of his due process right to engage in his profession of choice and his right to equal protection. The United States District Court for the Southern District of Ohio dismissed the claims, and applicant appealed. The Court of Appeals, Haynes, District Judge sitting by designation, held that: (1) village's denial of applicant's application for police officer did not implicate applicant's liberty interest in pursuing his occupation of choice, in that he could apply to be an officer in another nearby village, with another police force in the state, or with the village police force in the future, and (2) allegations that, inter alia, mayor had manipulated the police force's hiring process in retaliation for applicant's parents' political views were sufficient to state claim that mayor had violated applicant's equal protection rights.

Affirmed in part, and reversed in part.

West Headnotes

**[1]** Constitutional Law ☞278.4(2)
92k278.4(2) Most Cited Cases

**[1]** Municipal Corporations ☞184(1)
268k184(1) Most Cited Cases

Village's denial of plaintiff's application for police officer in the village did not implicate plaintiff's liberty interest in pursuing his occupation of choice, and thus, no due process violation occurred, where plaintiff did not allege that village prevented him from pursuing his occupation as police officer in nearby village, with another police force in the state, or with the village police force in the future. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[2]** Constitutional Law ☞238.5
92k238.5 Most Cited Cases

**[2]** Municipal Corporations ☞184(1)
268k184(1) Most Cited Cases

Allegations by plaintiff, who wanted to become village police officer, that village mayor had manipulated the police force's hiring process in retaliation for plaintiff's parents' political views, that mayor acted contrary to state law when he instructed village council that it was not council's function to approve applications for positions on the police force, and that plaintiff was similarly situated to others who were hired as officers, were sufficient to state civil rights claim that mayor had violated plaintiff's equal protection rights. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[3]** Constitutional Law ☞211(1)
92k211(1) Most Cited Cases

Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike. U.S.C.A. Const.Amend. 14.

**[4]** Constitutional Law ☞213.1(1)
92k213.1(1) Most Cited Cases

**[4]** Constitutional Law ☞213.1(2)
92k213.1(2) Most Cited Cases

Legislation or government action is presumed valid under Equal Protection Clause if the classification of groups is rationally related to legitimate state interest; however, general deference to government action

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

yields to heightened judicial scrutiny when statute or government act interferes with person's fundamental rights, such as freedom of speech or religion, or singles out suspect classes by such characteristics as race, alienage, or national origin.   U.S.C.A. Const.Amend. 14.

**[5]** Constitutional Law ☜82(10)
92k82(10) Most Cited Cases

**[5]** Constitutional Law ☜90.1(1)
92k90.1(1) Most Cited Cases

**[5]** Constitutional Law ☜91
92k91 Most Cited Cases

First Amendment rights include the right to be personally free from retaliation for speaking on matters of public concern, as well as the rights of association, and the right to be free from retaliation for family association.  U.S.C.A. Const.Amend. 1.
 *671 On Appeal from the United States District Court for the Southern District of Ohio.

 Before CLAY and GILMAN, Circuit Judges; HAYNES, District Judge. [FN*]

        FN* The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

**OPINION**

 HAYNES, Jr., District Judge.

 **1** Plaintiff-Appellant Charles Bower appeals the district court's order of dismissal *672 of his federal constitutional claims under 42 U.S.C. § 1983 against the Defendants-Appellees Village of Mount Sterling (the "Village"), Mayor Glen Meade, and Jackie Dill, the Village's police chief.  Specifically, Plaintiff alleged that he was denied the opportunity to become a full-time police officer in the same manner as other Village officers, in violation of his Fourteenth Amendment rights to engage in his profession of choice and to equal protection under the law.  Mayor Meade allegedly failed to follow state law and local custom for the Village's selection of police officers and thwarted Plaintiff's attempt to be appointed as a full-time police officer in retaliation for his parents' political opposition to Mayor Meade.  The district court dismissed Bower's complaint for failure to state

a claim under Fed.R.Civ.P. 12(b)(6).  For the reasons set forth below, we affirm the district court's order of dismissal on the Plaintiff's due process claim, but reverse the dismissal of the Plaintiff's equal protection claim under the "class of one" theory as to Defendants-Appellees Mayor Meade and the Village.  Finally, we do not reach the First Amendment issue here because Plaintiff did not assert this claim in his complaint.

**I. BACKGROUND**

 Plaintiff originally filed a state court complaint seeking monetary damages and appointment as a full-time police officer for the Village of Mount Sterling, but voluntarily dismissed that action, and re-filed a § 1983 action in the district court.  Plaintiff's § 1983 claims are for (1) deprivation of his liberty interest without due process in violation of the Fourteenth Amendment to the United States Constitution;  and (2) denial of equal protection of the laws in violation of the Fourteenth Amendment. Plaintiff also asserted pendent state law claims.

 Defendants moved to dismiss Plaintiff's federal claims because Plaintiff failed to allege an interest protected under the Due Process Clause and failed to allege sufficient facts to state an equal protection claim.  Plaintiff opposed the motion, contending that his complaint sufficiently alleged that Defendants violated his liberty interests by interfering with his right to engage in his chosen profession.  Further, the Plaintiff argued that Defendants violated his rights to equal protection by treating him differently than other similarly situated prospective officers who were offered full-time commissions on the Village police force, and that such "selective treatment" was motivated by Mayor Meade's intent to injure and punish Plaintiff for exercising his constitutional rights.

 In a written opinion, the district court granted Defendants' motion and declined to exercise supplemental jurisdiction over the state claims.  The district court reasoned, in sum, that Plaintiff had not stated a substantive due process claim because Plaintiff was permitted to seek employment as a police officer with another city and the Village had not stigmatized him so as to bar such employment.  Further, as to Plaintiff's equal protection claim, the district court ruled that (1) there was no fundamental right to public employment;  (2) Plaintiff was not a member of a suspect class;  (3) Plaintiff failed to overcome the legal presumption that the Defendants acted properly;  and (4) Plaintiff failed to allege a lack of a rational basis for the Defendants' decision not to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

hire Plaintiff. The district court opined that a possible First Amendment claim was stated, but concluded that Plaintiff did not plead such a claim nor did he allege any personal injury for the exercise of his First Amendment rights. Without a viable federal claim, the district court declined to exercise supplemental jurisdiction over Plaintiff's *673 state law claims. Plaintiff filed a timely notice of appeal that is limited to his federal law claims.

**2 According to his complaint, Plaintiff alleged that he was initially hired on October 12, 1995 as a non-paid police auxiliary to the Mount Sterling police department, and was later hired as a part-time police dispatcher. On June 6, 1996, Plaintiff was terminated from his police auxiliary position because a female employee claimed that she felt sexually harassed by the sexual nature of a narrative that Plaintiff left on his office desk. Plaintiff, however, was not discharged from his part-time police dispatcher position. On October 23, 1996, the Village enacted an ordinance creating a police reserve. In December 1996, Plaintiff was appointed to the Village police reserve. Later, two full-time police officer positions opened, but Defendants did not hire Plaintiff for either of those positions.

Ohio Rev.Code Ann. § 737.16 (Anderson 2000) delineates the manner in which Village police officers are selected. The mayor appoints officers, subject to the approval of the Village "Council." In the Village, however, the standard procedure for appointing new officers differs in that the police chief recommends suitable candidates and the mayor "will approve" them. This "practice" is apparently unwritten, but is understood as the local custom.

On or about January 1998, Police Chief Jack Dill orally told Plaintiff that he would be promoted to a full-time police officer. Prior to that time, Plaintiff was unaware of any other person whom Dill had recommended and who was subsequently denied a police officer position. On January 26, 1998, Dill sought Plaintiff's appointment before the Village council, but Mayor Meade declared that this appointment "was not a Council function." Subsequently, two other police officers were hired on a full-time basis in the very manner in which Meade claimed "was not a Council function."

Plaintiff alleges that he did not receive the appointment from Mayor Meade in retaliation for his parents' political associations. First, Plaintiff contends that he did not receive the appointment because his mother, Diane Bower, a Council member, voiced opposition to Mayor Meade's

appointment as Village Administrator. Second, Plaintiff alleges that his father, Ed Bower, had been a vocal opponent of Mayor Meade for several years and that it is common knowledge that Meade does not like Plaintiff's father. [FN1] Plaintiff alleges that by not appointing him to a full-time police officer position, Mayor Meade was retaliating against Plaintiff in violation of his constitutional rights. More specifically, Plaintiff claims that Defendants were "motivated [in their decision] by an intention to punish or inhibit Plaintiff from being able to exercise his constitutional rights" and "by a malicious and bad faith intent to injure Plaintiff."

> FN1. As proof of the conflict between his father and Mayor Meade, Plaintiff noted that his father and Mayor Meade have had several legal disagreements and that Mayor Meade has informed the police force and Village employees not to use his father's towing business.

## II. ANALYSIS

This Court reviews *de novo* a district court's dismissal of a complaint under Rule 12(b)(6). *Merriweather v. City of Memphis,* 107 F.3d 396, 398 (6th Cir.1997). On such a motion, the Court accepts as true well-pled facts alleged in the complaint, and will dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim *674 that would entitle him to relief. *Bibbo v. Dean Witter Reynolds, Inc.,* 151 F.3d 559, 561 (6th Cir.1998) (citing *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996)). Further, the allegations must be construed in the light most favorable to the plaintiff. *Mertik v. Blalock,* 983 F.2d 1353, 1355 (6th Cir.1993). However, in an action brought under section 1983, "[a] failure to identify a right, privilege or immunity secured by the Constitution that was violated merits dismissal of the cause of action for failure to state a claim upon which relief can be granted." *Codd v. Brown,* 949 F.2d 879, 882 (6th Cir.1991).

**3 "In any action under section 1983, the plaintiff must prove that (1) he has been deprived of a right secured by the United States constitution or laws, (2) the defendants who allegedly caused that deprivation acted under color of state law, and (3) the deprivation occurred without due process of law." ***Claybrook v. Birchwell,*** 199 F.3d 350, 353 n. 2 (6th Cir.2000) (citation omitted). The issue in this appeal is whether a cognizable federal right is alleged in Plaintiff's

complaint.

**A. Due Process Liberty Interest Claim**

 [1]  Plaintiff first asserts a due process claim. Accordingly, the Court must examine the nature of the interest at stake and must determine whether due process requirements apply. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wilkerson v. Johnson,* 699 F.2d 325, 328 (6th Cir.1983). "The Fourteenth Amendment's Due Process Clause protects, life, liberty and property." *Charles v. Baesler,* 910 F.2d 1349, 1352 (6th Cir.1990) (citation omitted).

 In *Roth,* a non-tenured university assistant professor was informed that he would not be rehired beyond his initial one-year contract. *Id.* at 566. The plaintiff there alleged that the decision not to rehire him violated, *inter alia,* his right to procedural due process of law, in that he was not given notice of any reason for his non-retention. *Id.* at 568. The issue before the Supreme Court was whether the plaintiff had a cognizable interest so as to give rise to a right to a hearing on the decision not to rehire him for another year. *Id.* The Court explained that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Id.* at 569. The Court observed that the liberty interest guaranteed by the Fourteenth Amendment not only denotes the right to be free from bodily restraint, but also

> the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Id.* at 572 (internal quotations and citations omitted). *See also United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 34 (6th Cir.1992).

 In *Roth,* the Court explained that in declining to extend his contract, the university did not damage the plaintiff's reputation or impose a stigma or disability on him that foreclosed his opportunity to take advantage of other employment opportunities. *Id.* at 573. According to the Court, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Id.* at 575 (citing *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 895-96, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Under *Roth,* the Due Process *675 Clause encompasses the liberty to pursue one's trade, profession or calling, but does not grant the right to a specific job. *Draghi v. County of Cook,* 184 F.3d 689, 693 (7th Cir.1999); *Parate v. Isibor,* 868 F.2d 821, 831 (6th Cir.1989) (holding that a university professor was not denied the right to pursue his choice of career, because he remained free to pursue his chosen profession at another university.)

 **4 Here, the district court held that to the extent Plaintiff alleged that he was denied a right to pursue his career or occupation as a police officer, his due process claim failed. Plaintiff merely alleged that he was denied the opportunity to become a police officer in the Village of Mount Sterling, not that because of Defendants' acts, he was foreclosed from pursuing his occupation as a police officer in a neighboring municipality.

 Plaintiff contends that his claim is distinguishable from *Roth* and *McElroy* because he must move to a different geographic location to pursue his career. But the Court does not discern that this is a meaningful distinction, because the university professor in *Roth* also might have had to move geographic locations to teach at another university.

 To be sure, in *Roth,* the Supreme Court noted that a different result might be called for if the state had invoked any regulations "to bar the respondent from all other public employment in state universities." *Roth,* 408 U.S. at 573-74; *Cf. Wilkerson v. Johnson,* 699 F.2d 325, 327-29 (6th Cir.1983) (recognizing a due process violation where a member of the state licensing board intentionally misapplied licensing law to foreclose Plaintiff from barbering anywhere in the state); *Parate,* 868 F.2d at 831. *See also Phillips v. Vandygriff,* 711 F.2d 1217, 1221-22 (5th Cir.1983) (holding that plaintiff stated a valid liberty interest claim where he contended that, based on industry custom, he was foreclosed from working at any savings and loan in the state where he had been denied a *de facto* license).

 Here, Plaintiff alleges in his complaint that he was denied the opportunity to become a police officer with the Village police force. Plaintiff does not allege, however, that Defendants prevented him from pursuing his occupation as a police officer in a nearby village, with another police force in that state, or with the Village police force in the future. Thus, we conclude that the Defendants' denial of Plaintiff's application for the Village officer position did not implicate Plaintiff's liberty interest. *Roth,* 408 U.S. at 573-74. Accordingly, the Court affirms the district

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

court's dismissal of Plaintiff's due process claim.

## B. Equal Protection Claim

[2] Plaintiff next asserts that Defendants violated his equal protection rights by selectively treating him differently from at least two other full- time police officer candidates. In sum, under Ohio law, the mayor appoints officers subject to the council's approval, but in Mount Sterling, the common practice is for the police chief to recommend individuals for available police officer positions and for the mayor to approve the recommendation. Here, Chief Dill represented to Plaintiff that he sought Bower's appointment to the police force, but that Mayor Meade, who presided at the council meeting, denied Plaintiff's appointment on the grounds that appointing officers was not a council function. Plaintiff alleges that at least two other officers were hired in the exact same fashion that Mayor Meade represented was not a council function, i.e., Chief Dill recommended the individuals and the council approved the recommendations. Plaintiff contends *676 that the Defendants' [FN2] selective treatment of Plaintiff was motivated by (1) the Mayor's intention to punish or inhibit him from being able to exercise his constitutional rights; and (2) his parents' political opposition to Mayor Meade. Thus, Plaintiff's contends that Mayor Meade acted in bad faith and with a malicious intention to injure him.

> FN2. Based upon the complaint and as discussed *infra,* the Plaintiff has not raised any factual allegations to suggest that Chief Dill discriminated against Plaintiff or attempted to retaliate against Plaintiff in the police force hiring process. Thus, the district court was correct in finding that there are no factual allegations to support a claim against Defendant Chief Dill.

**5 [3][4] "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Richland Bookmart, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir.2002). Legislation or government action is presumed valid if the classification of groups is rationally related to a legitimate state interest. *City of Cleburne,* 473 U.S. at 440. Where social or economic policy is

concerned, the state has wide latitude in making such policy decisions. *Id.* The general deference to government action, however, yields to a heightened judicial scrutiny when a statute or government act interferes with a person's fundamental rights, such as freedom of speech or religion, or singles out suspect classes by such characteristics as race, alienage, or national origin. *Richland Bookmart,* 278 F.3d at 574; *Equality Foundation of Greater Cincinnati, Inc. v. City of Cincinnati,* 128 F.3d 289, 293 n. 1 (6th Cir.1997).

Plaintiff concedes that he is not a member of a suspect class, and admits that he does not possess a fundamental right to government employment under the Equal Protection Clause. *See United Bldg. & Const. Trades Council of Camden County and Vicinity v. Mayor and City Council of Camden,* 465 U.S. 208, 219, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). Plaintiff contends, however, that "[t]he Fourteenth Amendment's Equal Protection Clause prohibits, among other things, discriminatory administration of a law neutral on its face." *Charles v. Baesler,* 910 F.2d 1349, 1356 (6th Cir.1990) (citation omitted). The state laws and local procedures, which apparently are neutral on their face, were not applied uniformly as to him. In a word, Plaintiff asserts a claim of selective enforcement and punitive application of the Village's hiring process.

In *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the Supreme Court recognized a "class of one" equal protection claim "where the plaintiff alleges that she had been intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment." *Id.* at 564. In *Olech,* Plaintiff alleged that the City's conduct in demanding a 33 foot easement as a condition for water service was "intentional and arbitrary" where the City had agreed to a 15 foot easement from the other property owners seeking access to the municipal water supply. *Id.* at 563, 565. Clearly *Olech* controls here.

For his selective enforcement claim, Plaintiff contends that his complaint adequately alleged that he was similarly situated to two full-time police officers who were hired in the normal procedure used to select the Village officers, and that Mayor *677 Meade's decision to stray from the established Village hiring policy is contrary to Ohio statutory law.

**6 Plaintiff's complaint alleges that he "was just as qualified, if not more so, than other similarly situated

prospective officers that were/have been given full-time commissions." Defendants respond that Plaintiff's complaint fails to show similarly situated individuals because there is no allegation that, like the Plaintiff, any of the other applicants had also been charged with sexual harassment. The district court agreed, stating that "[i]t is not apparent from the complaint that other applicants for the position were similarly situated." The district court's finding of lack of similarity arises from Plaintiff's prior termination as an auxiliary policeman due to an allegation of sexual harassment. Because Plaintiff failed to allege that the other officers had a sexual harassment claim in the record, the district court concluded that Plaintiff was not similarly situated with the other officers.

Under *Olech,* the Plaintiff must allege facts that demonstrate his similarity to the other officer applicants who were appointed. In response to the district court's finding that these candidates were not similarly situated to Plaintiff, Plaintiff notes that the Chief Dill did not differentiate Plaintiff from the other applicants based upon the Plaintiff's prior sexual harassment complaint when he recommended Plaintiff for the Village police force position. Construing Chief Dill's recommendation of Plaintiff and the other two prospective candidates in a light most favorable to the Plaintiff, we conclude that Plaintiff could be deemed to be similarly situated with the other two individuals recommended by Dill for employment on the police force. As noted earlier, Plaintiff has not alleged any facts that tend to show any disparate treatment or discrimination by Chief Dill.

The district court also found that Plaintiff failed to allege facts sufficient to overcome the presumption of rationality of governmental acts. As to the rationality hurdle, the district court cited the Seventh Circuit rule that:

> While we therefore must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting "facts in light of the deferential rational basis standard. To survive a motion to dismiss for failure to state a claim, *a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications."*

*See Wroblewski v. City of Washburn,* 965 F.2d 452, 459-60 (7th Cir.1992)(emphasis added). To be sure, a district court cannot "ignore facts alleged in the complaint that undermine the plaintiff's claim ... [.]" *Wroblewski,* 965 F.2d at 459.

Moreover, a § 1983 plaintiff's challenge to the lack

of a rational basis for an equal protection claim cannot succeed "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); *City of Cleburne,* 473 U.S. at 440. Those attacking the rationality of a government action under rational basis standard bear the burden "to negative every conceivable basis which might support it." *Beach Communications,* 508 U.S. at 315. When conducting rational basis review, courts should not overturn government action unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [it] can only conclude that the [government's] actions were irrational." ***678****Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 84, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

***7** For the lack of a rational basis, Plaintiff cites the facts that he was appointed as a part-time member of the newly established police reserve on November 12, 1996, and as a part-time officer in December 1996, as well as the fact that Defendant Dill recommended him for the police position, despite his termination from the police auxiliary in June 1996 for the sexual harassment complaint. We conclude that the Plaintiff sufficiently alleged a lack of a rational basis for Plaintiff's non-selection when he alleged disparate treatment in securing the full-time police officer position after Dill's recommendation, as well as his subsequent hiring despite the sexual harassment complaint.

Plaintiff also alleged that there was a lack of rational basis for the Defendants' actions because the Village's hiring process is contrary to state law, given Mayor Meade's assertion that approval of police officers was "not a Council function." *Ohio Rev.Code Ann. § 737.16* provides, in pertinent part, as follows:

> The mayor shall, when provided for by the legislative authority of a village, and subject to its confirmation, appoint all deputy marshals, police officers, night guards, and special police officers. All such officers shall continue in office until removed therefrom for the cause and in the manner provided by section 737.19 of the Revised Code.

*Id.* Ohio courts recognize that the Village council has a role in hiring Village police officers. *West v. Village of Bentleyville,* 42 Ohio App.3d 95, 536 N.E.2d 401, 402 (App.1987) ("Pursuant to R.C. 737.16 only the mayor has the authority to appoint police officers subject to the approval of the Council") (footnote omitted).

To the extent that Plaintiff alleges that Mayor Meade instructed the Village council that approving applications for positions on the Village police force "is not a Council function," (J.A. 8), Mayor Meade's alleged remark and acts are contrary to state law. Moreover, construing the allegations in a light most favorable to the Plaintiff, if other individuals were hired without the Village council's approval, that process would be contrary to Ohio law. These alleged acts, if true, overcome the legal presumption of rationality and demonstrate the lack of a rational basis for the Defendants' acts.

Plaintiff also contends that his selective treatment was motivated (1) by an intention to punish him, in that it was meant to keep him from exercising his constitutional rights to pursue an occupation; [FN3] and (2) by a malicious and bad faith intent to injure him.

FN3. For the reasons stated earlier, Plaintiff failed to show that Defendants interfered with his liberty interest in pursuing an occupation. *See supra* at p. 8.

The factual allegations could be reasonably construed as the Mayor employing the Villages' hiring process to "get" Plaintiff due to Plaintiff's association with his parents who are political opponents of Mayor Meade. This allegation could state a First Amendment claim. *Sowards v. Loudon County, Tenn.,* 203 F.3d 426 (6th Cir.2000). Aside from the issue of whether a First Amendment claim was independently asserted in the complaint, we conclude that Plaintiff's allegations about Mayor Meade's retaliation in his manipulation of the Village police force hiring process due to Plaintiff's family ties are sufficient to state an independent equal protection claim under *Olech.*

**\*679 C. First Amendment Argument**

**\*\*8** [5] Plaintiff also asserts a First Amendment argument based on his right to association, which could state a cognizable § 1983 claim. *See Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). First Amendment rights include the right to be personally free from retaliation for speaking on matters of public concern, *Connick v. Myers,* 461 U.S. 138, 149, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), as well as the rights of association, *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 545, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987), and to be free from retaliation for family association. *Adkins v. Bd. of Educ. of Magoffin County, Kentucky,* 982 F.2d 952 (6th Cir.1993).

The district court recognized that Plaintiff's complaint did not expressly invoke the First Amendment. The district court would have rejected any First Amendment claim, citing *Claybrook v. Birchwell,* 199 F.3d 350, 357 (6th Cir.2000) ("[A] section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort.") The district court reasoned that because Plaintiff had alleged that his parents' rights, rather than his own First Amendment rights, had been violated, the Plaintiff failed to state a First Amendment claim. *See Morris v. Lindau,* 196 F.3d 102, 113 (2d Cir.1999) (holding that police chief's son who alleged that he was denied an interview for a position because his father had criticized the local officials did not have standing to assert the First Amendment rights of his father).

We do not reach the First Amendment issue here because Plaintiff did not plead a First Amendment claim in his complaint. *See Rose v. Hartford Underwriters, Ins. Co.,* 203 F.3d 417, 420 (6th Cir.2000) (court must look only at allegations in the pleading when determining in light of defendant's motion to dismiss whether a claim has been stated). "A failure to identify a right, privilege or immunity secured by the Constitution that was violated merits dismissal of the cause of action for failure to state a claim upon which relief can be granted." *Codd,* 949 F.2d at 882.

**CONCLUSION**

For these reasons, we **AFFIRM** in part the judgment of the district court and **REVERSE** in part to remand Plaintiff's Equal Protection claim as to Defendants-Appellees Mayor Meade and the Village. This action is remanded for further proceedings consistent with this opinion.

44 Fed.Appx. 670, 2002 WL 1752270 (6th Cir.(Ohio))

END OF DOCUMENT