181 F.3d 100 (Table)  Page 1
**Unpublished Disposition**

**(Cite as: 181 F.3d 100, 1999 WL 357779 (6th Cir.(Mich.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Michael **COON** and Vicki **Coon,** Plaintiffs-Appellants,
v.
Roy **HERON,** Jr., Defendant-Appellee.

**No. 97-1480.**

May 19, 1999.

On Appeal from the United States District Court for the Eastern District of Michigan at Detroit.

Before MARTIN, Chief Judge; and BOGGS and COLE, Circuit Judges.

PER CURIAM.

**\*1** Michael W. **Coon** appeals summary judgment for Roy **Heron** in this 42 U.S.C. § 1983 and state tort action arising out of an incident in which **Heron,** a police officer, shot **Coon,** a fellow officer, in his leg, while both were on duty. For the reasons discussed below, summary judgment was inappropriate and we remand this case for further proceedings.

On April 17, 1993, Coon was working as a dispatcher and supervisor at the county sheriff's department. **Heron,** who was working road patrol, was speaking with **Coon** in the dispatch room. At some point, Heron removed his weapon, a 92F Beretta, from his holster. Heron ejected the clip from the gun but a bullet remained in the chamber. As Heron was rotating the gun downward, the gun discharged. A bullet hit Coon in his left calf.

Deputy Marie Brechelsbauer, who was in an adjoining room at the time of the discharge, stated in her deposition that while she and **Heron** attempted to provide first aid, **Heron** repeatedly apologized to **Coon,** who repeatedly told **Heron** not to worry about the shooting because "it was an accident." Deputy Sherry McClellan, an EMT, and her husband, Deputy-Sheriff Sergeant Mark McClellan, who arrived within minutes of the shooting, also stated in their depositions that **Coon** told them that **Heron** accidentally shot him. However, in his deposition, Coon stated that he does not recall discussing the shooting with anyone or saying that the shooting was accidental.

At the hospital, the Clare County Prosecutor, Ghazey Aleck, visited Coon to investigate the possibility of wrongdoing or criminal activity. In his deposition, Aleck stated that Coon insisted to him that the shooting was accidental. Aleck also stated that one month later, when he re-interviewed Coon, he again stated that the shooting was accidental. Following this visit, Aleck wrote to the Sheriff and advised him that based on his review of the reports and his discussions with Coon, his office would not take any action with regard to this matter. He also stated that Coon's input was the deciding factor.

After Aleck had closed the file, Aleck says that Coon called and changed his story. He said that he had retained an attorney. He also submitted a written statement to Aleck which departed from what Aleck alleged Coon told him during their two prior discussions, and included an allegation that the shooting was not accidental [FN1] Aleck refused to reopen the case.

> FN1. **Coon** attempted to substantiate this allegation by recounting several incidents in which **Heron** behaved irresponsibly with firearms during his police academy training and **Coon's** speculation that **Heron** shot him because **Coon's** remaining in his job might have interfered with a promotion **Heron** sought.

In February 1995, **Coon** filed a civil suit against **Heron,** Clare County, the Clare County Sheriff, and the police academy that graduated **Heron,** in a 42 U.S.C. § 1983 action alleging that the shooting

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

181 F.3d 100 (Table)  
**Unpublished Disposition**

Page 2

**(Cite as: 181 F.3d 100, 1999 WL 357779 (6th Cir.(Mich.)))**

violated **Coon's** state and federal constitutional rights, and also alleging various state tort claims. [FN2] In January 1996, the defendants moved for summary judgment. In March 1997, the district court granted summary judgment and/or motion to dismiss for the defendants, which Coon appeals before this Court. All the defendants, except Heron, have been dismissed from the appeal by prior stipulation of the parties.

> FN2. As additional evidence before the district court, Coon submitted the opinion letters of two experts. In the first letter, a gun expert stated that the shooting could not have been accidental. In the second letter, a psychiatrist stated that Coon could have said that the shooting was accidental on April 16, 1993, because he was in shock and that "in a state of altered consciousness" Coon said that the shooting was an accident "in a reflexive manner based upon limited data."

**\*\*2** Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the plaintiff's complaint must be treated as true. *Janan v. Trammell,* 785 F.2d 557, 558 (6 th Cir.1986).

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers and interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The presence of factual disputes will preclude granting summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

At present, a genuine issue of material fact remains as to whether **Heron** intentionally shot **Coon.** Although the defense produced deposition testimony from a variety of sources who said that Coon repeatedly stated that the shooting was accidental, Coon himself has never stated under oath that the shooting was accidental. If Coon can demonstrate at trial that the shooting was intentional, he may have a successful 42 U.S.C. § 1983 claim.

Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution or federal law. *McKnight v. Rees,* 88 F.3d 417, 419 (6 th Cir.1996). The purpose of § 1983 is to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* (citing *Wyatt v. Cole,* 504 U.S. 158, 161 (1992)). To sustain a 42 U.S.C. § 1983 action in this Circuit, a plaintiff must show: (1) a deprivation of a right secured by the federal Constitution or laws of the United States; (2) that the deprivation was caused by someone acting under the color of state law; and (3) that the deprivation occurred without the due process of law. *Chatman v. Slagle,* 107 F.3d 380, 384 (6 th Cir.1997).

To succeed on his § 1983 claim, Coon must first show deprivation of a right secured by the federal Constitution or laws of the United States. *See id.* For a claim brought under substantive due process where a non-fundamental right is implicated, the plaintiff must show that the conduct "shocks the conscience" of the court. *Mertik v. Blalock,* 983 F.2d 1353, 1367-68 (6th Cir.1993); *See Rochin v. California,* 342 U.S. 165, 172-73(1952). In *Webb v. McCullough,* we stated that

> [S]ubstantive due process is concerned with violations of personal rights of privacy and bodily security.... [T]he ... inquiry ... must be whether the force applied caused injury so severe, and was so inspired by malice or sadism ... that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

**\*\*3** 828 F.2d 1151, 1158 (6th Cir.1987). If **Heron** intentionally shot **Coon** in the calf, then such behavior would likely rise to the level of physical abuse which so "shocks the conscience" of the court as to be a violation of his substantive due process rights. [FN3]

> FN3. Examples of cases of physical brutality which "shocks the conscience" include: *Rochin v. California,* 342 U.S. 165 (1952) (police pumped suspect's stomach in search of evidence); *Jones v. Wellham,* 104 F.3d 620 (4 th Cir.1997) (plaintiff raped by uniformed police officer); *Shillingford v.*

*Holmes,* 634 F.2d 263 (5 th Cir.1981) (police officer struck plaintiff with a nightstick in retaliation for plaintiff photographing police officer), *Aldridge v. Mullins,* 377 F.Supp. 850 (M.D.Tenn.1972), *aff'd,* 474 F.2d 1189 (6 th Cir.1973) (police officer shot a fleeing suspect's legs without any probable cause other than suspect running and failing to stop).

The second prong of a 42 U.S.C. § 1983 action is that the deprivation was caused by someone acting under the color of state law. *Chatman,* 107 F.3d at 384. In *Cassady v. Tackett,* we held that a public official acted "under color of state law when he has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." 938 F.2d 693, 695 (6 th Cir.1991) (internal quotations and citations omitted). In that case, the fact that Tackett threatened Cassady with a gun which he possessed by virtue of his position as county jailer was enough to establish that Tackett acted under color of state law. *Id.* Because **Heron** shot **Coon** with a gun which he possessed by virtue of his position as a road patrol officer, presumably **Heron,** too, acted under color of state law. Furthermore, because **Heron** shot **Coon** without due process of law, **Coon** could have all the elements of a successful 42 U.S.C. § 1983 claim, so long as the shooting was intentional.

Moreover, **Heron** would not be entitled to qualified immunity if **Coon** can demonstrate that **Heron** intentionally shot him. Government officials performing discretionary duties are "generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). A defendant has qualified immunity "unless plaintiff's rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct ." *Ramirez v. Webb,* 835 F.2d 1153, 1156 (6 th Cir.1987). Because any officer in Heron's position would have understood that he was under an affirmative duty to refrain from intentionally shooting a fellow officer, qualified immunity would not shield Heron from liability.

We leave to the district court to decide whether **Coon's** state tort claims against **Heron** would be revived if the shooting was proven to be intentional, because the evidence on the record is insufficient to make such a determination at this time.

Because a genuine issue of material fact remains as to whether **Heron** intentionally shot **Coon,** summary judgment was improper. Accordingly, we remand this case for further proceedings.

181 F.3d 100 (Table), 1999 WL 357779 (6th Cir.(Mich.)), Unpublished Disposition

END OF DOCUMENT