UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PATRICIA KAMMEYER, et al.,     :     NO. 1:01-CV-00649
                               :
                               :
          Plaintiffs,          :
                               :     **ORDER**
     v.                        :
                               :
                               :
CITY OF SHARONVILLE,           :
          et al.,              :
                               :
                               :
          Defendants.          :


     This matter is before the Court on the Motion to Dismiss
Plaintiffs' Third Amended Complaint by Defendants Mike Schappa and
the City of Sharonville, Ohio (doc. 121), the Motion to Dismiss
Plaintiffs' Third Amended Complaint by Defendants James I. Cramer
and William Nuss (doc. 124), Plaintiffs' Memorandum in Opposition
(doc. 127), the Reply of Defendants Mike Schappa and the City of
Sharonville (doc. 128), and the Reply of Defendants James I. Cramer
and William Nuss (doc. 129).

     The Court issued an Order on qualified immunity on
February 13, 2003, at which time it indicated that an Order on the
balance of Defendants' Motions to Dismiss (docs. 49 & 54) would be
forthcoming (doc. 93). However, after appeal of the qualified
immunity issue to the Sixth Circuit, Plaintiffs requested leave to
amend their Complaint, which the Court granted (doc. 118). As a
result of Plaintiffs' filing of their Third Amended Complaint, the
issue of qualified immunity was removed from the case (doc. 119).
Plaintiffs dropped federal civil rights claims against Defendants

in their individual capacities (Id.). Consequently, Defendants filed the present motions to dismiss, renewing many of the issues left unaddressed by the Court's prior order, and attacking the Third Amended Complaint.

The allegations of this case have been recited in previous Court Orders (doc. 55). This is a civil rights case in which Plaintiffs allege that their mothers, Marie Wright Schuholz and Starla Burns, were murdered by or at the direction of Albert Schuholz, and that the Defendants covered up facts related to the murder, resulting in a deprivation of the Wright Plaintiffs' rights to inheritance, and precluding an effective wrongful death claim by the Wright and Burns Plaintiffs (doc. 119).

Defendants filed their Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that Plaintiffs have failed to state a claim 1) for a violation of equal protection under the "class of one" theory, 2) for a violation of denial of access to courts, and 3) for a violation of their substantive due process rights (docs. 121 & 124). Defendants further argue that Plaintiffs' claims for state law conspiracy, spoliation of evidence, and intentional infliction of emotional distress (hereinafter "IIED") are barred by Ohio's sovereign immunity statute, Ohio Rev. Code § 2744, while Schappa claims that Ohio Rev. Code § 2744.05(A) shields him from punitive damages (Id.). In addition to the challenges noted above, Defendants Cramer and Nuss argue that Plaintiffs' claim concerning spoliation of evidence fails as Defendants owed no duty to Plaintiffs (doc. 124).

2

Plaintiffs respond that the doctrine of the law of the case applies such that the Court need not address Defendants' arguments pertaining to their federal claims, as the Court addressed the viability of such claims in the first step of its qualified immunity analysis (doc. 127). In the event that the Court would find that the doctrine of the law of the case is inapplicable, Plaintiffs argue that they have adequately stated each of their claims and Defendants' Motions should be denied (<u>Id</u>.).

**I.  Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).**

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which states that, a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Westlake v. Lucas</u>, 537 F.2d 857, 858 (6th Cir. 1976). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 1687 (1974). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99 (1957). A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in <u>Jones v. Sherrill</u>, 827 F.2d 1102, 1103 (6th Cir. 1987):

In reviewing a dismissal under Rule 12(b)(6),

3

>the court must accept as true all factual
>allegations in the complaint. <u>Windsor v. The
>Tennessean</u>, 719 F.2d 155, 158 (6th Cir. 1983),
><u>cert. denied</u>, 469 U.S. 826 (1984). The motion
>to dismiss must be denied unless it appears
>beyond doubt that the plaintiff can prove no
>set of facts in support of the claim which
>would entitle her to relief. <u>Id</u>. at 158;
><u>Conley v. Gibson</u>, 355 U.S. 41 (1957).

<u>Jones</u>, 824 F.2d at 1103.

The admonishment to liberally construe the plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1106 (7th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1054 (1985) (quoting <u>In Re: Plywood Antitrust Litigation</u>, 655 F.2d 627, 641 (5th Cir. 1981), <u>cert. dismissed</u>, 462 U.S. 1125 (1983)); <u>see also Sutliffe, Inc. v. Donovan Companies, Inc.</u>, 727 F.2d 648, 654 (7th Cir. 1984); Wright, Miller & Cooper, Federal Practice and Procedure: § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

>[W]e are not holding the pleader to an
>impossibly high standard; we recognize the
>policies behind Rule 8 and the concept of
>notice pleading. A plaintiff will not be
>thrown out of court for failing to plead facts

> in support of every arcane element of his
> claim. But when a complaint omits facts that,
> if they existed, would clearly dominate the
> case, it seems fair to assume that those facts
> do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th

Cir. 1988).

## II.  Discussion

### A.  Plaintiffs' Claims Based on Equal Protection, Denial of Access to Courts, and Substantive Due Process Withstand Defendants' Motions.

Plaintiffs invoke the doctrine of the law of the case,

requesting that the Court simply deny Defendants' Motions to

Dismiss as to Plaintiffs' federal claims.  Yet the Court finds

Defendants' arguments that this would be inappropriate in this

instance well-taken, because the Court has not yet explicitly

addressed the issue of the potential liability of Defendant City of

Sharonville (hereinafter, "City") and the individual Defendants in

their official capacities.  Cale v. Johnson, 861 F.2d 943, 947 (6th

Cir. 1988).  The City may only be subjected to liability for its

own policies, customs and law.  Monell v. Department of Social

Services of the City of New York, 436 U.S. 658 (1978).  To prevail

on a claim of municipality liability under Section 1983, Plaintiffs

must establish 1) that they were deprived of a constitutional

right, 2) that the municipality had a "policy," and 3) that the

policy was the moving force behind the constitutional violation.

Id.

Under the law of the case doctrine, a court is ordinarily

precluded from reexamining an issue previously decided by the same

5

Court, or a higher court in the same case. <u>Bowling v. Pfizer, Inc.</u>, 132 F.3d 1147, 1150 (6th Cir. 1998). Defendants are correct that the doctrine of the law of the case is inapplicable in the sense that the issue of the individual Defendants' liability in their official capacities, and Defendant Sharonville's liability, adds a policy-maker element not present in the qualified immunity analysis. The policy-maker issue has not been previously decided by this Court in the context of a motion to dismiss, and so the Court will not deny Defendants' Motions on the basis of the law of the case.

That said, though Defendants are technically correct that the Court's first-prong qualified immunity analysis alone does not merit the denial of their Motions, it is still valid for the Court to incorporate by reference Sections A(1), (2), and (3), the portions of its prior Order (doc. 93) finding Plaintiff's constitutional claims viable. This is valid because the same threshold question, whether a constitutional right was violated, was addressed, and the Defendants have raised substantially identical arguments in relation to City and individual Defendant liability in their official capacity. The Court's findings that Plaintiffs have adequately alleged potential constitutional violations under equal protection "class of one," denial of access to courts, and denial of substantive due process theories therefore do constitute law of the case. Defendants have not proffered persuasive arguments so as to cause the Court to change its

conclusions.[1]  However, these findings alone are not adequate to justify denying Defendants' Motions to Dismiss, and the Court must now address the parties' arguments as to whether Plaintiffs have adequately alleged that an unconstitutional policy resulted in the deprivation of their constitutional rights.

Defendants Cramer and Nuss argue that there is not a single allegation in the Third Amended Complaint of a specific policy, how it was implemented, what it said, or how it affected anyone (doc. 124).  Cramer and Nuss cite to Leisure v. Cincinnati, 267 F. Supp. 2d 848 (S.D. Ohio 2003), in which this Court noted that a written policy was relied upon in identifying the City's policy (Id.).  They further argue that the Court must disregard the assertion that one detective in one case has the authority to set policy (Id.).  In the absence of policy or policy-makers,

---

[1] Cramer and Nuss argue that Dotson v. Wilkinson, 329 F.3d 463, 470 (6th Cir. 2003) bars Plaintiffs' due process action. They posit that Dotson holds that a complaint, which rests upon an ultimate legal impact (the conviction of Albert Schuholz), which in turn depends on discretionary factors, does not state a due process cause of action (doc. 124).  However, Plaintiff's Complaint can be fairly read to allege that the cover-up resulted in the loss of evidence that, even absent any criminal conviction, could have served Plaintiffs in separate civil actions.  Cramer and Nuss likewise attempt to superimpose a breach of duty requirement onto Plaintiff's Complaint.  The Court has already rejected this approach as to Plaintiffs' equal protection claim, and finds such argument unpersuasive as to Plaintiff's due process and access to courts claims.
Defendants City and Schappa argue that the cases cited by Plaintiffs in support of their due process theory all involve instances where a state actor invaded into the realm of the plaintiffs' bodily integrity (doc. 121).  Defendants argue that there is no allegation that any action in this case resulted in such an invasion (Id.).  However, neither do Defendants proffer authority showing such an invasion to be prerequisite to a substantive due process claim.

Defendants Cramer and Nuss argue, Plaintiffs' claims against them in their official capacities fail (Id.).

Defendants Schappa and the City of Sharonville similarly argue that the Third Amended Complaint makes no factual allegations to support a finding that the City of Sharonville, its policy makers, or officials, participated in a cover-up (doc. 128). Defendant Schappa specifically points out that he never admitted to engaging in some sort of cover-up, but rather, the allegation is that he told Plaintiffs the murder investigation was delayed by a cover-up (Id.).

Plaintiffs argue that they have alleged that the former and current police chief participated in the cover-up, and the collecting of loan payments from Schuholz clients was similarly pursuant to city policy (doc. 127). Plaintiffs argue that pursuant to Monell, 436 U.S. 658 (1978), municipal liability may be premised upon governmental "custom. . . even though such a custom has not received approval through the official decision-making channels" (Id.). Plaintiffs further argue that such liability may be based upon the decisions of "those whose edicts or acts may fairly be said to represent official policy" (Id. citing Monell, at 694). Plaintiffs cite to two of this Court's cases, Culberson v. Doan, 125 F. Supp. 2d 252, 272-277 (S.D. Ohio, 2000)(police chief was policy-maker regarding criminal investigation), and Leisure, 267 F. Supp. 2d 848, 857 (policy of foot pursuits established by custom), to further bolster their position that the police officials in the case at bar acted pursuant to a cover-up policy.

8

Having reviewed this matter, and taking all reasonable factual inferences in favor of Plaintiffs, the Court finds that the Plaintiffs in this case have pleaded adequate allegations that the deprivations of which they complain were caused by an official policy of the City. The Supreme Court has held that even a single decision by a municipality's policy-maker can constitute a "policy." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986). A municipality is liable for an official's unconstitutional conduct when that official is the one who has the final authority to establish municipal policy with respect to the action ordered, <u>Id</u>. at 481, and the official has made "a deliberate choice to follow a course of action. . .from various alternatives." <u>Id</u>. at 483. In this case Plaintiffs allege that Defendant Cramer, the lead detective in the Marie Wright Shuholz/Starla Burns murder investigation, had a conflict of interest, deliberately removed evidence from the murder scene and the automobile of Marie, repeatedly misled Plaintiffs, and acted in concert with the other Defendants (doc. 119). Construing these facts in favor of Plaintiffs, the police chief at the time of the cover-up, Defendant Nuss, at the very least allowed for a custom of permitting his officers to make loan shark collections, fostered Cramer's conflict of interest, and allowed for Cramer to conduct the investigation as lead detective despite such conflict. Although the case is not as strong against Defendant Schappa, the current police chief, Plaintiffs allege that they were deprived of information over a number of years. Again, construing all facts in the light most

favorable to Plaintiffs, they were deprived of information during years which Schappa may very well have allowed for the custom of cover-up to continue. Although Schappa emphasizes that Plaintiffs allege that he gave them their first reliable information, a jury can weigh that fact among others in arriving at its determination of Schappa's culpability, if any.

Taken together, Plaintiffs' allegations are sufficient enough to support the theory that the named Defendants participated in the cover-up, and deliberately chose to follow a policy of cover-up. The Court finds <u>Culberson</u> analogous to the extent that the action or inaction of the police officials resulted in a deprivation of Plaintiffs' rights. 125 F. Supp. 2d 252. Similarly to <u>Leisure</u>, the Court finds that an informal custom arose by the conduct of police, in this case by the consistent implementation of a policy of cover-up over a number of years. 267 F. Supp. 2d 848, 857. For all of these reasons, the Court finds that Plaintiffs have adequately pleaded that the City and the Defendants in their official capacities deprived them of constitutional rights and did so pursuant to a custom amounting to an illegal policy of cover-up.

**B. Defendants are Not Entitled to Sovereign Immunity from Plaintiffs' State Law Claims for Conspiracy, Spoliation of Evidence, and Intentional Infliction of Emotional Distress**

As for the state law claims at issue in this case, Defendants City and individual Defendants in their official capacities invoke sovereign immunity under Ohio Rev. Code § 2744 (docs. 121 & 124). Section 2744 shields political subdivisions with broad immunity from civil liability:

10

> For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Ohio Rev. Code § 2744.02(A).  The broad immunity is subject to exceptions listed at § 2744.02(B)(1)-(5) of the Ohio Rev. Code:

> (1) Injuries caused by the negligent operation of a motor vehicle;
> (2) Injuries caused by the negligent performance of proprietary functions;
> (3) Injuries caused by the failure to keep open roads, highways and streets open, in repair and free from nuisance;
> (4) Injuries caused by negligence on the grounds of a building used for governmental purposes; or
> (5) Injuries for which liability expressly is imposed by the Ohio Revised Code.

Id. (emphasis added); see also, <u>Wilson v. Stark County Dep't of Human Servs.</u>, 70 Ohio St. 3d 450, 452, 639 N.E.2d 105, 107 (1994) ("There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress.").

Plaintiffs concede that under this Court's holding in <u>Culberson v. Doan</u> 125 F. Supp.2d at 281-283, to the extent that the state law claims allege intentional torts, the City of Sharonville may be entitled to immunity (doc. 127).  However, Plaintiffs contend that the Ohio sovereign immunity statute is unconstitutional under the Ohio Constitution, and argue that the Court should hold so, consonant with its duty under <u>Kirk v. Hanes Corp.</u>, 16 F.3d 705 (6th Cir. 1994), to decide issues of state law as it predicts the state's highest court would decide them (<u>Id.</u>).

11

Plaintiffs aver that the Ohio Supreme Court certainly suggested in <u>Butler v. Jordan</u>, 92 Ohio St.3d 354 (2001) that if the issue were properly presented, it would hold the sovereign immunity statute unconstitutional with respect to state and local governments (<u>Id</u>.). Defendants Schappa and City cite <u>Cicco v. Stockmaster</u>, 89 Ohio St.3d 95, 98 (2000), arguing that Plaintiffs have not followed the proper procedure for challenging the constitutionality of a state statute so that this Court lacks the jurisdiction to decide the constitutional challenge (doc. 121). Under <u>Cicco</u>, Defendants argue, Plaintiffs are required to both allege the unconstitutionality of the sovereign immunity statute in their Complaint and to serve the Attorney General of Ohio with a copy of the Complaint (<u>Id</u>.).

It is clear from the Court's review of Ohio case law that police services have always been considered a government function, not a proprietary function. <u>Haverlack v. Portage Homes, Inc.</u>, 2 Ohio St. 3d 26, 442 N.E.2d 749, 752 (1982). Furthermore, except as specifically provided in Section 2744.02(B)(1)-(5), with respect to government functions, political subdivisions retain their cloak of immunity stemming from an employee's negligent or reckless acts. <u>Garrett v. City of Sandusky</u>, 68 Ohio St. 3d 139, 141, 624 N.E.2d 704, 706 (1994). The Court finds that there are no statutory exceptions to political subdivision immunity for intentional torts, such as intentional infliction of emotional distress. <u>See</u>, <u>e.g.</u>, <u>Fabrey v. McDonald Village Police Dep't</u>, 70 Ohio St. 3d 351, 354-55 639 N.E.2d 31, 34-35 (1994); <u>Nungester v. City of Cincinnati</u>, 100

12

Ohio App. 3d 561, 564-66, 654 N.E.2d 423, 426-27 (1995). As such, the Ohio statutory scheme, if constitutional, shields the City of Sharonville and the individual Defendants in their official capacities from claims of conspiracy, spoliation of evidence, and intentional infliction of emotional distress. However, as noted above, Plaintiffs challenge the validity of Ohio Rev. Code § 2744 under the Ohio Constitution, arguing that the Court should decide the law as it predicts the Ohio Supreme Court would (doc. 127).

The Court does not find Defendants' arguments well-taken under <u>Cicco</u>, 89 Ohio St.3d 95, that Plaintiffs must allege the unconstitutionality of the sovereign immunity statute in their Complaint and serve the Ohio Attorney General. <u>Cicco</u> involves a procedural requirement in the Ohio Court system that is not binding upon this Court, and would only foster unjust delay for the Plaintiffs, who after twenty years deserve speedy resolution of this case. <u>Bell v. Marinko</u>, 235 F. Supp.2d 772, 780 (N.D. Ohio 2002)(such requirements arising from Ohio Rev. Code § 2721.12 are not binding on federal court, have "no effect on this court's jurisdiction or procedures, and failure to have served or joined the Ohio Attorney General likewise has no effect on this court's jurisdiction"); <u>Clay v. Fisher</u>, 588 F. Supp. 1363, 1365 (S.D. Ohio 1984)("[W]e observe that § 2721.12 governs proceedings in state courts. It, therefore cannot function to expand the power of the federal court.") The Court therefore follows the Ohio Supreme Court's direction as signaled in <u>Butler v. Jordan</u>, 750 N.E. 2d 554 (2001).

In Butler, the Ohio Supreme Court provided a detailed recounting of the history of the doctrine of sovereign immunity, concluding that the concept of sovereign immunity for political subdivisions is "faulty," "not soundly based in legal history or the law" and "is also faulty when the Ohio Constitution. . .is examined."  750 N.E.2d 554, 568.  The plurality opinion did not strike down statutory sovereign immunity as unconstitutional under the Ohio Constitution because it found that the issue was not before it.  750 N.E.2d 554, 558, 572.  However, the Ohio high court found that the application of Section 2744 would violate the Butler plaintiff's right to trial by jury guaranteed by Section 5, Article I of the Ohio Constitution, and possibly her right to remedy under Section 16, Article I.  Id. at 568-572.  Furthermore, the Butler Court clearly found that sovereign immunity does not attach to political subdivisions, as they, unlike the state, are not sovereign.  Id. at 570-571.

Having reviewed this matter, the Court finds that the Ohio Supreme Court has provided more than adequate direction for the Court to conclude that the invocation of sovereign immunity by the City and the individual Defendants violates the Plaintiffs' rights to trial by jury and to remedy under the Ohio Constitution. The Court finds it unimaginable that the Constitution would permit Ohio law to allow municipalities to cloak themselves against liability for a murder cover-up.  As such, the Court will not dismiss Plaintiffs' claims for conspiracy, spoliation of evidence, and intentional infliction of emotional distress based on Ohio

14

Revised Code § 2744, which the Court holds violates Section 5, Article I and Section 16, Article I of the Ohio Constitution.

      **C.    Plaintiffs State Viable Claims for Punitive Damages Against the Individual Defendants**

Plaintiffs have not made a claim in their Complaint against Defendant Sharonville for punitive damages, consonant with federal law. <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 261 n.20 (1981). However, Plaintiffs seek punitive damages against Defendants Schappa, Cramer, and Nuss.

Defendant Schappa raises the shield of Ohio Revised Code 2744.02, which as explained immediately above, the Court finds to be invalid under the Ohio Constitution. Defendants Cramer and Nuss argue that Plaintiffs' allegations do not demonstrate that Defendants acted in any way to directly cause harm to Plaintiffs or aimed at "getting" them (doc. 124). Defendant Schappa similarly states that he "did not act with the requisite ill will or malice" to support a claim for punitive damages. The Court has already found that the Defendants have alleged viable constitutional claims, and in doing so, the Court stated that if the conduct alleged in this case "does not demonstrate malicious intent, there is not much conduct that would qualify" (doc. 93). Accordingly, Plaintiffs' claims for punitive damages withstand Defendants' challenges.

      **D.    Plaintiffs Have Stated a Claim for State Law Conspiracy, Spoliation of Evidence, and for Intentional Infliction of Emotional Distress**

In addition to challenging Plaintiffs' state law claims based on statutory sovereign immunity, Defendants Cramer and Nuss challenged the substance of each claim (doc. 124). Defendants Cramer and Nuss essentially posit that a state law conspiracy claim requires an allegation that two or more people conspired in such a way as to intend to cause harm to the victims of their conspiracy (Id.). They argue that investigating officers regularly identify important data and disregard other data they determine to be unimportant (Id.). Cramer and Nuss argue that Plaintiff has failed to allege what evidence was destroyed or lost by Cramer (Id.). Moreover, argue Defendants, the Complaint fails to state that such actions were wilful, wanton, or reckless, so any such loss would be merely negligent (Id.). As for any alleged destruction of evidence of prior contact with Schuholz, Defendants argue such actions could have caused sanctions under Ohio civil service laws or Ohio's criminal laws, but that no duty has been alleged toward Plaintiff (Id.).

Plaintiffs cite Hoover v. Radabaugh, 123 F. Supp.2d 412, 426 (S.D. Ohio 2000)(quoting Williams v. Aetna Financial Co., 700 N.E. 2d 859, 868 (1998) for the proposition that state law conspiracy consists of "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone resulting in actual damages" (doc. 127). Plaintiffs argue that their Complaint does indeed allege state law conspiracy, as the Defendants have combined to cover-up both the role of Albert Schuholz in the murders, and the role of Cramer, who aided Schuholz in avoiding prosecution (Id.). The Court finds

16

Plaintiffs' arguments well-taken that they have sufficiently alleged the elements required for state law conspiracy under Williams. 700 N.E. 2d 859, 868 (1998).

Defendants Cramer and Nuss further argue that Plaintiffs' claim concerning spoliation of evidence does not state a cause of action under Ohio law and must be dismissed (doc. 124). Cramer and Nuss argue that absent a duty owed to the Plaintiffs, there can be no such claim (Id.). Cramer and Nuss contend, based on Conn v. Gabbert, 526 U.S. 286 (1993), that the duty concerning the preservation of evidence is owed by the investigating officers to the government, which employs them, and not to the Plaintiffs (Id.)

Plaintiffs have asserted two separate claims, (1) Intentional Spoliation of Evidence and (2) Negligent Spoliation of Evidence. The Court will address whether Plaintiffs' allegations constitute viable claims under Ohio law. Defendants' argument does not address an Intentional Spoliation of Evidence Claim. The necessary elements for such a claim, as set forth by the Ohio Supreme Court, are "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." Smith v. Howard Johnson, 67 Ohio St. 3d 28 (1993). This claim is recognized between the parties to the primary action and against third parties, and may be brought at the same time as the primary action. Id. Defendants Cramer and

17

Nuss argue that they owed no duty to Plaintiffs to preserve evidence from spoliation.  Under <u>Smith</u>, there is no duty element in a claim for intentional spoliation.  As such, Defendants' argument does not address this claim.  Plaintiffs allege that Defendants Cramer, Nuss, Schappa, and Doe(s) have willfully destroyed evidence related to the murder investigation of Marie Wright Schuholz and Starla Burns thereby disrupting Plaintiffs' ability to pursue their present claims (doc. 119).  Under <u>Smith</u>, the Court finds that Plaintiffs have stated a claim for intentional spoliation of evidence.

Plaintiffs also submit a claim of Negligent Spoliation. (doc. 58).  While Ohio has yet to explicitly recognize such a claim, it has implied that one exists.  See <u>Tomas</u> 79 Ohio App.3d 624.  Under <u>Tomas</u>, as in any negligence formulation, duty appears to be a required element of such a claim:

> When negligence is the basis of the suit alleging an economic injury resulting from the destruction of evidence, a duty on behalf of the defendant arising from the relationship between the parties or some other special circumstance must exist in order for the cause of action to survive.

79 Ohio App.3d 624, 630 (<u>quoting Koplin v. Rosel Well Perforators, Inc.</u> 241 Kan. 206 (1987)).  Furthermore, under <u>Tomas</u>, in order to state a claim for negligent spoliation, Plaintiffs must demonstrate that an effort to pursue a separate civil action was unsuccessful due to the absence of the destroyed evidence. (<u>Id.</u>)

The core of Defendants' argument is based on their alleged lack of duty to these specific Plaintiffs (doc. 124).

Though the Tomas case involved a bailment of evidence owned by the plaintiff, it did not articulate that a negligent spoliation claim requires that a plaintiff have a property interest in the spoliated evidence.   The duty cited by    Tomas  is  rather  rooted  in  the relationship   between   the   parties   or   "some   other   special circumstance."  79 Ohio App.3d at 630.  Defendants argue that their duty was to their employer, the Sharonville Police Department, and suggest that they owe no clearly established constitutional duties to families of murder victims (doc. 62).  Tomas, however, implies that circumstances can create duty.  79 Ohio App. 3d at 630.  This reasoning of Tomas is consonant with the traditional "public duty rule," under which police officers owe a general duty of care to the public at large, but they owe no duty to any particular member of the public, absent a special relationship.  Wright v. Ozark, 715 F.2d 1513, 1516 (11th Cir. 1983), Mills v. Overland Park, 251 Kan. 434, 446 (1992), Benavidez v. San Jose Police Dept., 71 Cal.  App. 4th 853, 859-60 (Cal. Ct. App. 1999).

The Court finds that under Tomas the circumstances of the Plaintiffs in this case qualify as special.  The Plaintiffs allege that the police officers actively covered up a particular double murder due to a conflict of interest, and then maintained the cover-up over twenty years.  Plaintiffs were a part of a clearly identifiable group at a risk of harm, as opposed to members of the general public, or even as opposed to members of the "group" of families of murder victims.  Defendants in such a case knew or should have known that their actions forseeably prejudiced the Plaintiffs in pursuing successful civil probate and wrongful death

19

actions.  Indeed, Plaintiffs meet their burden in demonstrating such prejudice, as they failed to block Albert Schuholz from electing against Marie Wright Schuholz's will.  Such proceedings were unsuccessful absent evidence indicating Schuholz was the killer.  Construing these facts liberally in favor of the Plaintiffs, their negligent spoliation of evidence claim withstands Defendants' challenges.

Finally, Defendants Cramer and Nuss posit that Plaintiffs' state law claim for intentional infliction of emotional distress claim must be dismissed (Id.).  Defendants argue again that they owed no duty to Plaintiffs (Id.).

Plaintiffs cite <u>Yeager v. Local Union 20</u>, 6 Ohio St. 3d 369 (1983) for the proposition that "[o]ne who intentionally by extreme and outrageous conduct or recklessly causes severe emotional distress to another is subject to liability for such emotional distress" (doc. 127).  Specifically, on a claim for intentional infliction of emotional distress, a plaintiff must show that:

> (1) the defendant either intended to cause emotional distress, or knew or should have known that the actions taken would result in serious emotional harm to the plaintiff;
>
> (2) the defendant's conduct was extreme and outrageous;
>
> (3) the defendant's actions proximately caused plaintiff's psychic injury; and
>
> (4) the mental distress suffered by the plaintiff was serious.

<u>Piro v. Franklin Township</u>, 656 N.E.2d 1035, 1043 (1995).  The Plaintiffs in this case have stated a claim for intentional

20

infliction of emotional distress.  Defendants should have known that a cover-up of a murder could result in serious emotional harm to the children of the murder victims.  The alleged police cover-up of a murder was extreme and outrageous, beyond all possible decency, and intolerable in a civilized community.  <u>Yeager</u>, 6 Ohio St. 3d 369, 375.    The alleged cover-up forseeably could cause serious psychic injury.

**CONCLUSION**

Plaintiffs' constitutional and state law claims survive Defendants' Motions to Dismiss.  Plaintiffs have adequately alleged potential constitutional violations under equal protection "class of one," denial of access to courts, and denial of substantive due process theories, as well as adequately alleging that such deprivations were pursuant to a municipal policy.  For these reasons, Plaintiffs' first claim, pursuant to 42 U.S.C. § 1983, withstands Defendants' challenge.

As for the remaining state claims at issue, Defendant City, and the individual Defendants in their official capacities, are not entitled to sovereign immunity, because such immunity is in direct conflict with Plaintiffs' right to a trial by jury and right to remedy under the Ohio Constitution.  <u>Butler v. Jordan</u>, 92 Ohio St.3d 354 (2001).  The Court does not find well-taken Defendants' additional arguments that Plaintiffs have failed to adequately plead allegations supporting their state law claims.  Finally, Plaintiffs have stated viable claims for punitive damages against Defendants Cramer, Nuss, and Schappa.

Accordingly, the Court DENIES the Motion of the

21

Defendants Mike Schappa and the City of Sharonville, Ohio, to Dismiss Plaintiffs' Third Amended Complaint (doc. 121), and the Motion to Dismiss Third Amended Complaint by Defendants James I. Cramer and William Nuss (doc. 124).

        SO ORDERED.


Date: December 16, 2003    /s/ S. Arthur Spiegel

                           S. Arthur Spiegel
                           United States Senior District Judge