## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA KAMMEYER, et al.** | : | **CASE NO.: C-1-01-649** |
| **Plaintiffs,** | : | **Judge Spiegel** |
| | | **(Magistrate Hogan)** |
| **vs.** | : | |
| **CITY OF SHARONVILLE, OHIO, et al.** | : | **MOTION OF DEFENDANT NUSS** |
| | | **TO COMPEL AND FOR SANCTIONS** |
| **Defendants.** | : | **(AFFIDAVIT OF BRIAN E. HURLEY** |
| | | **AND EXHIBITS ATTACHED)** |

Defendant William Nuss (Nuss), by and through counsel and pursuant to Rule 37, Federal Rules of Civil Procedure, hereby moves this Court for an Order: (1) compelling Plaintiffs to respond in full to certain interrogatories and document requests in Nuss's First Set of Interrogatories And Document Requests ("Discovery Request"); and (2) awarding Nuss reasonable expenses, including attorneys' fees, incurred in obtaining this Order.

Respectfully submitted,

CRABBE, BROWN & JAMES LLP

s/Brian E. Hurley
Brian E. Hurley (0007827)
Robert J. Gehring (0019329)
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202-4359
(513) 784-1525 - telephone
(513) 784-1250 - facsimile
Bhurley@cbjlawyers.com
Rgehring@cblawyers.com

Attorneys For Defendant William Nuss

<u>**MEMORANDUM**</u>

**I.    <u>STATEMENT OF RELEVANT FACTS/PROCEDURAL POSTURE</u>**

    **A.    <u>The Murders And The Investigation</u>**

On May 8, 1981, two women, Marie Wright Schuholz and Starla Burns, were murdered in an apartment in the City of Sharonville, Ohio (City).  At that time defendant William Nuss (Nuss) was the police chief of the City, and two other defendants, James Cramer (Cramer) and Mike Schappa (Schappa), were police officers employed by the City.  Cramer was in charge of the investigation of the murders.  Nuss retired from the City in May, 1990, more than ten years before this lawsuit was filed.

    **B.    <u>This Litigation</u>**

        **1.    <u>The Complaint And First And Second Amended Complaints</u>**

On September 25, 2001, more than twenty years after the murders and ten years after Nuss's retirement, Plaintiffs, children of the two women who had been killed, filed the Complaint in this litigation. Thereafter, Plaintiffs filed First and Second Amended Complaints which, for the purposes of this motion, did not have any relevant changes or additions.

In the Complaints filed by Plaintiffs they alleged that the City, Nuss, Schappa and Cramer acted in concert with each other to cover up evidence that incriminates the person, Albert Schuholz, they claim killed the women.  Significantly, in each of these pleadings Plaintiffs brought claims against Nuss, Cramer and Schappa in both their individual and official capacities.  As such, those gentlemen were able to avail themselves of the extremely important defense of qualified immunity.

**2.      The Motions To Dismiss Based On Qualified Immunity And The Third Amended Complaint**

From the inception of this litigation through the end of 2003, Nuss, Cramer and Schappa raised and exercised their qualified immunity rights - rights which include <u>immunity from suit and discovery</u>.[1]  However, just when the Sixth Circuit had obtained jurisdiction over Plaintiffs' claims to review and decide the validity of the legal basis for their claims, Plaintiffs took action so that the Sixth Circuit's jurisdiction would be lost.  More specifically, Plaintiffs filed a notice with the Sixth Circuit, providing that they, by a Third Amended Complaint, intended to dismiss the federal civil rights claims made against Nuss, Schappa and Cramer in their individual capacities, thus effectively eliminating those gentlemen's critical and important qualified immunity defense rights.[2]

On May 20, 2003, the District Court issued an order by which it stated its "intention to grant Plaintiffs' motion to file a third amended complaint and thereby dismissing the individual federal civil rights claims subject to the defense of qualified immunity and permitting this matter to be heard on its merits."  (Doc. 109.)  On June 18, 2003, the matter was remanded by the Sixth Circuit to the District Court (Doc. 114), and, on August 11, 2003, the appeal was dismissed.  (Doc. 116.)

On September 25, 2003, the Third Amended Complaint was filed, and the individual federal claims against Nuss, Schappa and Cramer were not included in that pleading.  (Doc.

---

[1]As such, Nuss, Cramer and Schappa did not conduct any discovery, choosing to wait to hear from the Sixth Circuit whether any of the claims made against them would survive.

[2]Of course, Plaintiffs did <u>not</u> state an intent to dismiss the individual state law claims against Nuss, Schappa and Cramer.  Those claims were not dismissed, and are still pending.

119.)  Shortly thereafter, the City, Nuss, Schappa and Cramer filed motions to dismiss the Third Amended Complaint.  (Doc. 121 and 124.)  Those motions were denied on December 17, 2003, and, because the individual federal claims had been dismissed, those denials could not be appealed  (Doc. 130.)  It was then that the potential conflicts between Nuss and Cramer required that each be represented by separate counsel, and attorney Thomas Keating, who had represented both of those gentlemen up to that time, contacted the undersigned and attorney Randolph Freking to provide that representation.

### 3.    Plaintiffs' Access To The Entire Criminal Investigation File

During virtually the entire life of this litigation Nuss and Cramer have been properly asserting their rights under the qualified immunity defense, including their right to immunity from discovery and suit itself.  As a result, those gentlemen had not until January 15, 2004 conducted any discovery in this case.  That, of course, is not true for Plaintiffs, who sought and obtained access to the City's entire criminal investigation file on the murders, and they have had access to most of it since December, 2002 and to all of it since January, 2003  (Doc. 75 and 79.) Moreover, one of the Plaintiffs, Mr. Wright, has had access to the entire investigation file since 1997.  (See Wright letter of 3-24-97, a true and accurate copy of which is attached hereto as Ex. 1.)

### 4.    Plaintiffs Access To Economic Loss Information Since 1981.

The amount of the alleged economic loss suffered by Plaintiffs Wright and Kammeyer has been known to them since 1981.  That alleged loss is based upon the fact that Albert Schuholz, and not them, received all or the bulk of Marie Wright Schuholz's estate.  (Marie Wright Schuholz is those Plaintiffs' mother, and she was married to Albert Schuholz at the time

of her death.)  As such, there is no legitimate basis for these Plaintiffs not to provide the precise amount of the economic loss they allegedly suffered and the calculations of how they arrived at that figure.  Yet, as discussed below, Plaintiffs provide neither, stating that the information will be provided in the future at some unstated time "by way of separate report."

### 5.     The Discovery Requests Of Nuss That Are The Subject Of This Motion

Immediately after the undersigned was retained to represent Nuss he drafted and served upon each of the Plaintiffs the Discovery Requests.  (True and accurate copies of Plaintiffs' responses are attached hereto as Exs. 2 and 3.)  As more fully discussed below, each interrogatory and document request relates directly to specific claims made by Plaintiffs in the Third Amended Complaint and/or defenses that will be asserted by Nuss.  Further, because of the factually unsupported and conclusory nature of most of Plaintiffs' allegations and the fact that Nuss had been retired for almost fourteen years, a number of the interrogatories are "contention" interrogatories, which the Sixth Circuit has explicitly held are legitimate and appropriate.  However, because many lawyers are either unaware of or choose to ignore the law in this regard, the following was made part of the cover letter sent with the discovery requests.

> For the most part the interrogatories are contention interrogatories, which require your clients to provide a comprehensive factual response to each interrogatory.  Many attorneys believe that contention interrogatories are improper, but they are wrong.  See Starcher v. CMS, 144 F.3d 418, 421-22 (6th Cir. 1998).

(See Hurley letter of 1-15-04, a true and accurate copy of which is attached hereto as Ex. 4.)  In addition, Plaintiffs' counsel was informed of how important it was to Nuss' ability to defend himself that he receive full and timely responses to his discovery requests.

> I recognize that your clients want their day in court, and, if their claims can survive summary judgment, they will get it. However, your clients have made very serious allegations against the defendants about alleged actions most of which occurred over 20 years ago. My client and the other defendants also have rights, and one of those is to be able to fully and properly defend themselves. That right can be protected only if they are given sufficient time to conduct the legitimate discovery to which they are entitled, and a large part of the deposition phase of that discovery cannot commence until your clients have provided full responses to the written discovery.[3]

Id.

On January 22, 2004, counsel met with the District Court to discuss a new scheduling order. At that conference, Plaintiffs' counsel strongly urged that this case be tried before the end of year, and the Court acquiesced in that request. However, the District Court also stated that, if that was to happen, Plaintiffs were required to provide complete and timely responses to Nuss's discovery requests. Plaintiffs' counsel committed to do so. (See Hurley letter of 2-12-04 and 2-16-04, true and accurate copies of which is attached hereto as Exs. 5 and 6.) In addition, the District Court set a discovery cut-off of July 1, 2004.

On February 12, 2004, the undersigned reminded Plaintiffs counsel of the commitment they had made on January 22, 2004 and that, unless the complete responses were received by due date (2-14-04), it was not possible to properly prepare Nuss for his deposition.

> Plaintiffs' responses are due on February 14, 2004. I cannot properly prepare my client for his deposition unless I have received full responses to the discovery requests on that date. Incomplete or vague responses, baseless objections, and/or "will supplement" responses are not acceptable and will jeopardize my client's deposition and possibly the trial date.

---

[3]Plaintiffs' counsel was also aware that the undersigned would be outside of the United States between February 24 and March 1, 2004.

(See Ex. 5) Plaintiffs' counsel were again reminded of the appropriateness of "contention interrogatories."

> I again remind you that the Sixth Circuit has held that contention interrogatories are appropriate, and your clients are required to provide complete, factual responses to those type of interrogatories.

Id.

### 6.    Plaintiffs' Failure To Respond In A Timely Manner And Refusal To Respond In Full To The Contention Interrogatories

Plaintiffs' responses to the Discovery Requests were due on February 14, 2004. Despite Nuss's urgent need for them (again, the murders took place over twenty years ago and Nuss has been retired for fourteen years) and Plaintiffs' commitment and obligation to make complete and timely responses, none were received on February 14, 2004. The undersigned promptly contacted Plaintiffs' counsel, and informed them that their "conduct is severely prejudicing [Nuss's] ability to prepare his defense." (See Ex. 6.)

In response to the undersigned's letter of February 16, 2004, Plaintiffs: (1) provided no responses to Nuss's discovery requests; (2) for the first time stated their intent to provide incomplete responses to the contention interrogatories ("We do object to the contention interrogatories"); and (3) stated that Plaintiffs' incomplete responses would be made on February 24, 2004 - when the undersigned would be out of the country. (See Gerhardstein letter of 2-16-04, a true and accurate copy of which is attached hereto as Ex. 7.)

In response to Mr. Gerhardstein's letter of February 16, 2004 the undersigned informed Mr. Gerhardstein that he would agree to an extension to February 19, 2004 to receive complete responses to the discovery request. (See Hurley letter of 2-17-04, a true and accurate copy of

which is attached hereto as Ex. 8.)  Plaintiffs provided no responses on February 19, 2004.

On February 23, 2004, Mr. Gerhardstein wrote a letter to the undersigned, and on February 24, 2004, served their responses to the discovery requests.  (See, Exs. 2 and 3 and Gerhardstein's letter of 2-23-04, a true and accurate copy of which is attached hereto as Ex. 9.)

On March 2, 2004, the day he returned from Costa Rica, the undersigned did an initial review of Plaintiffs' objections and responses to the discovery requests.  Because the objections were untimely and many of the responses were incomplete and/or inadequate, the undersigned made another attempt to resolve the disputes.  (See Hurley letter of 3-3-04, a true and accurate copy of which is attached hereto as Ex. 10.)  Plaintiffs' counsel did not respond to that letter.

On March 10, 2004, Nuss's co-counsel, Robert Gehring, made a last attempt to resolve these disputes.  On that day he spoke by telephone with Attorney Gerhardstein, who told him that he was too busy to address the disputes but that his co-counsel, Paul Laufman, would contact Attorney Gehring.  Attorney Laufman did not contact Attorney Gehring.

## II.    ARGUMENT

### A.    Rules 26, 33 And 34 And The Scope Of Discovery

#### 1.    Rule 26

The Federal Rules of Civil Procedure permit discovery on any matter that is relevant to a claim or defense of any party in the pending action and is not privileged.  *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000).  The rules and interpretive case law provide vast leeway to discover nearly everything there is to know about a case.  Further, the party who opposes discovery carries a "heavy burden" of showing why discovery should not be allowed. See *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  In short, the plain meaning of this rule

permits a party to obtain from another party all relevant, non-privileged, information merely by asking.

All non-privileged information relevant to the subject matter[4] involved in the pending case is discoverable.  The term "relevant" encompasses any matter "that bears on or that reasonably could lead to the other matter that could bear on any issue that is or may be in the case."  See, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Oil Chemical & Atomic Workers Local Union v. N.L.R.B.*, 711 F.2d 348, 360 (D.C. Cir. 1983).  Requests for discovery are proper if there is any possibility that the information sought may be relevant to any issue (e.g. matters relating to a claim or defense and/or credibility of a witness) in the action, even if it is already known to the discovering party.  See, *Detweiler Brothers v. John Graham & Co.*, 412 F. Supp. 416, 422 (E.D. Wash. 1976), 8 C. Wright & Miller, Federal Practice and Procedure §§ 2008 and 2014 (1970).  Finally, a request seeking any information which provides any sources or leads about potential trial evidence is proper.  See Wright & Miller, Federal Practice and Procedure, §2015, at 113-121 (1970).

## 2.    Rule 33

Rule 33(a) provides in pertinent part:

> Any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served.

Interrogatories may relate to any matter which can be inquired into under Rule 26(b)(2).  (This Rule must be read in a manner "consistent with the principles of Rule 26(b)(2)."  See Rule

---

[4]The term "subject matter" relates to any matter in the case, including the credibility of a witness and the merits and the case.  4 moore's Federal Practice §26.56[1], at 26-117 (2d Ed. 1988).

33(a).)   In short, Rule 33 <u>requires</u> the production of non-privileged information that is discoverable and in the possession of and/or known by the parties and their legal counsel upon whom the request is served.

> Discovery by interrogatory requires candor in responding . . . The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information.

*Dollar v. Long Mfg., N.D., Inc.*, 561 F.2d 613, 616-617 (5th Cir. 1977), <u>cert.</u> <u>denied</u> 435 U.S. 996 (1978).  <u>See</u> <u>also</u> *Trane Co. v. Klutznick*, 87 F.R.D. 473, 476-477 (W.D. Wis. 1980); *Dykes v. Morris*, 85 F.R.D. 373, 374-377 (N.D. Ill. 1980).  Moreover, incomplete answers are treated the same as a failure to answer.  Rule 37(a)(3); *Dotsun v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003).

Interrogatories are properly used as a means to obtain a more definite explanation of the allegations of pleadings and facts that support the pleadings' assertions.  These questions force the disclosure of <u>all</u> pertinent facts and documents the opposition relies upon to prove their case, as well as those facts and documents that do not support those claims and assertions.  <u>See</u> <u>e.g.</u>, *Lincoln Gateway Realty Co. v. Carri-Craft, Inc.*, 53 F.R.D. 303, 308 (W.D. Mos. 1970); *B-H Transp. Co. v. Great Atl. & Pac. Tea Co.*, 44 F.R.D. 436, 438 (N.D. N.Y. 1968); *In re: Anthracite Coal Antitrust Litigation*, 81 F.R.D. 516, 522 (N.D. Pa. 1979).  Further, contrary to the position taken by Plaintiffs' counsel, "contention" interrogatories are "perfectly permissible," and, indeed, in cases such as this one, are essential.

> Contention interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims.  The general view is that contention interrogatories are a perfectly permissible form of discovery . . .

*Starcher v. CMS*, 144 F.3d 418, 421-22 (6th Cir. 1998).

-10-

Finally, attorneys with knowledge of facts not covered by attorney-client privilege or work product protection are subject to discovery.  *United Phosphorus Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245 (D.Kan. 1995).   As such, when responding to Nuss's interrogatories Plaintiffs may not limit their responses to <u>their</u> knowledge of facts and documents; their responses must include their attorney's knowledge of responsive, non-privileged information. The inclusion of this information is particularly critical in this type of case where, as here, it is primarily Plaintiffs' counsel, not Plaintiffs themselves, who are in the position to provide complete responses in the most timely and least expensive manner.   ("Note that plaintiffs themselves have not seen the sealed documents maintained by the Court; only counsel has see (sic) those documents.   <u>See</u> response to Interrogatory No. 1, Ex. 2.)   Indeed, Plaintiffs themselves most probably will never be able to provide complete responses.

### 3.    <u>Rule 34</u>

Rule 34(a) also provides that a party may obtain, merely by asking, all non-privileged documents etc. within the same parameters and scope as Rules 26 and 33.

> The rule authorizes the broadest sweep of access, inspection, examination, copying, and photographing of documents or objects in possession or control of another party.

(<u>See</u> 8 Wright & Miller, Federal Practice & Procedure, §2206, at 607; *Belcher v. Basset Furniture*, 588 F.2d 904 (4th Cir. 1978).  Further, both Rule 34(b) and Nuss's discovery requests require that a party respond to <u>each</u> request separately.

### B.    **Plaintiffs Are Required To Respond In Full And Without Objection To Nuss's Discovery Requests.**

#### 1.    <u>Plaintiffs Have Waived Any Right They May Have Had To Object.</u>

The information and documents sought by Nuss relate <u>directly</u> to claims made by

Plaintiffs and/or defenses Nuss intends to assert.  For that reason, Plaintiffs cannot in good faith raise an objection to Nuss's discovery requests.  However, even if that were not the case, Plaintiffs have waived any right to raise objections.

Rule 33(b)(1) provides that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer."[5]  (An incomplete answer is treated as a failure to answer, and it can support even the most serious sanctions.  Rule 37(a)(3); *Dotsun*, supra.)  Rule 33(b) provides that objections must be made ". . . within 30 days after service of the interrogatories."  Moreover, all grounds for objection must be specifically stated in a timely response or they are waived.  *Maloney v. Universalcom, Inc.*, 2001 WL 8589 (E.D.La 2001); *Starlight International, Inc. v. Herlihy*, 181 F.R.D. 494, 496 (D. Kan. 1998) (objections in response served 4 days late deemed waived).  *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003); *Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94 (W.D.N.Y. 2000).  The same requirements apply to document requests.  *Land Ocean Logistics, Inc. V. Aqua Gulf Corp.*, 181 F.R.D. 229, 236-37 (W.D.N.Y., 1998); *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255 (M.D. N.C. 2001).

Plaintiffs' responses to Nuss's discovery requests were due February 14, 2004, and Plaintiffs' counsel, while arguing for both a very short discovery period and an early trial date, represented to the District Court that full and timely responses would be made.  Moreover, Plaintiffs were fully aware that Nuss needed full and timely responses to prepare for his

---

[5]Rule 34 has an identical requirement that objections be made in a timely manner or they are waived.

deposition <u>and</u> that the undersigned would be out of the United States the week before the date Nuss's deposition was scheduled.  Yet Plaintiffs made no response to the discovery requests on the date they were due.  Rather, they stated that incomplete responses would be made and that the incomplete responses would be sent when the undersigned was out of the country.  (<u>See</u> Ex. 7.)  Plaintiffs did not make their objections until February 24, 2004.  Under these circumstances, Plaintiffs have waived any right to raise objections to the discovery requests.

### 2.   Nuss's Discovery Requests

Nuss recognizes that he may seek information that ". . . could lead to other matters that could bear on any issue that is or may be in the case."  However, his interrogatories and document requests are not nearly so broad.  Rather, by <u>every</u> one of his discovery requests he merely seeks the production of facts and/or documents that are <u>directly</u> and <u>undeniably</u> relevant to one or more of Plaintiffs' claims or a defense to the claims.  The following is a discussion of each of those discovery requests and Plaintiffs' responses.

### Interrogatories

a.   The "Contention" Interrogatories (Kammeyer and Wright (K&W) Interrogatory numbers 1-6, 11, 12, 16 and Miller and Baker (M&B) Interrogatory numbers 1-4, 11, 16).

It is hard to imagine any type of interrogatory by which a party seeks the discovery of more relevant evidence.  With these interrogatories, Nuss <u>quoted verbatim</u> from Plaintiffs' Third Amended Complaint, and by them he merely seeks the disclosure of all of the facts supporting the specific allegations made by Plaintiffs and Plaintiffs' sources of information of those facts. As the Sixth Circuit in *Starcher* held, these types of "interrogatories are a perfectly permissible form of discovery," and it is one of the forms of discovery Nuss chose to use.  That Plaintiffs

would prefer Nuss to choose another form is, quite simply, immaterial.

By these interrogatories Nuss appropriately expects to discover, in one document and in the shortest amount of time and least expensive manner, the factual basis of Plaintiffs' claims. More specifically, by these interrogatories Nuss can, as he is entitled to do, learn <u>all</u> of the non-privileged facts and information known by Plaintiffs' and/or their attorneys relating to a specific allegation.  By them, Nuss can also learn the identity of the source of all of these facts and information.  To use any other form of discovery would be extremely time-consuming and very expensive, and, in the end, not nearly as productive or efficient.  Moreover, it is the form most fair to and chosen by Nuss.

Plaintiffs' responses to these interrogatories are inadequate and incomplete.  First, as stated above, their objections have been waived.  Second, even if the objections were timely, they are baseless.  The Sixth Circuit in *Starcher* has made clear that contention interrogatories are appropriate and the 1985 decision of a California District Court cited by Plaintiffs is not even persuasive, let alone controlling.  Finally, rather than respond in full to these interrogatories, Plaintiffs give a <u>few examples</u> of facts that they maintain support specific allegations[6] and then direct Nuss to attempt to discern by and for himself the other facts by searching disks (with over 5000 documents) provided by Plaintiffs.[7]  With all due respect to Plaintiffs, that does not come close to providing the <u>full</u> responses they are required to make.

     b.    <u>The Identity Of People With Whom Plaintiffs Have Communicated About Any</u>

---

[6]Those examples are themselves not appropriate because they are not responsive to the specific interrogatory.

[7]Making this task even more difficult, if not impossible, the documents provided by Plaintiffs are not separated in response to specific requested to particular interrogatories.

<u>Aspect Of Their Claims</u> (K&W and M&B Interrogatory Number 7).

Plaintiffs do not provide the identity of even <u>one</u> of these persons. Rather, they direct Nuss to certain documents and their responses to the discovery requests of other defendants (which are, at best, only partially responsive to these interrogatories). This response is both incomplete and improper.

c.    <u>Pecuniary Damages Allegedly Suffered By Plaintiffs</u> (M&B Interrogatory Numbers 5, 8 and 10 and KW Interrogatory Number 10).

This litigation was commenced two and one-half years ago, and, in each of the complaints filed by Plaintiffs they make allegations about the economic damage (loss of inheritance) they have allegedly suffered as a result of what happened in the early 1980's. As such, this information has been available to Plaintiffs for almost twenty-five years, yet Plaintiffs do not provide the amount of the alleged loss, how it was calculated, or when one or both will be provided. Rather, they say they are still investigating, and the information will be provided in the future at some unstated time "by way of separate report." This response is both incomplete and improper.

d.    <u>Plaintiffs' Contacts With/Knowledge About Sharonville Police</u> (M&B Interrogatory Numbers 9, 12 and 14 and K&W Interrogatory Numbers 9, 12 and 14).

By these interrogatories Nuss seeks information about contacts Plaintiffs claim to have had with the Sharonville police department, contacts specifically referred to in the Third Amended Complaint. This information relates directly to a number of relevant issues, including, but not limited to, what, if anything, a member of the police department said about the investigation. Yet, here, as they did in response to interrogatory number 7, Plaintiffs refer Nuss

to certain documents and their responses to the discovery requests of other defendants (which are, at best, only partially responsive to these interrogatories) and certain documents. This response is both incomplete and inappropriate.

e.    The City's Policies, Customs And Practices (M&B Interrogatory Number 15 and K&W Interrogatory number 15).

In the Third Amended Complaint Plaintiffs explicitly allege that their injuries were caused, in whole or in part, by the City's policies, customs and practices. Nuss certainly has a right to know which policies, customs, and practices to which Plaintiff refer in that pleading, as well as all other information Plaintiffs have relating to those matters. Yet Plaintiffs, after making specific allegations of the City's policies, customs and practices, state that "identification of policies and practices must await further discovery."

f.    Denial Of Access To Courts (M&B Interrogatory Number 18 and K&W Interrogatory Number 18).

One of Plaintiffs' claims is that they were denied access to the courts. These interrogatories go directly to that claim, and, indeed, seek the disclosure of facts that Plaintiffs must introduce at trial to successfully prosecute this claim. Yet Plaintiffs respond by stating that "[e]fforts to recover are set out in the probate file," apparently directing Nuss to figure them out for himself. That response is incomplete and improper.

g.    Unequal/Different Treatment (M&B Interrogatory Number 17 and K&W Interrogatory Number 17).

One of Plaintiffs' claims is that the defendants treated them differently than they did other individuals. Nuss clearly has the right to know the factual basis of that claim, including the

-16-

identities of each person treated differently and how they were treated differently. Yet Plaintiffs' response is the uninformative statement of "other crime victims and families of other crime victims." That response is incomplete and improper.

       h.     <u>Plaintiffs' Expert Witnesses</u> (M&B Interrogatory Number 19 and K&W Interrogatory Number 19).

       At the insistence of Plaintiffs' counsel, the discovery cut-off for this case is July 1, 2004. As such, it is essential that at this time Defendants learn the identities of each expert witness Plaintiffs intend to call at trial and the opinions of each of those witnesses. Plaintiffs respond that this information will be provided in accordance with the Court's scheduling order regarding this issue. However, the Court's scheduling order does not even address this issue.

<strong><u>Document Requests</u></strong>

       a.     <strong><u>All Requested Documents Are Discoverable.</u></strong>

       Virtually every one of Nuss's document requests tracks a specific interrogatory sent by him, and the others address a very specific subject. Moreover, Plaintiffs do not object to any request on the basis of relevancy. Therefore, Nuss will not repeat what he has stated with respect to the interrogatories, but merely identify the specific interrogatories to which the document request relates and/or state the general subject matter of the request.

       1.     <u>Documents reviewed and/or relied upon by Plaintiffs in responding to the specific interrogatory</u> M&B Document Request Numbers 1-6, 8-10, 13, 14, 16-20 and K&W Document Request Numbers 1-6, 7, 9, 12, 13, 15-22.

       2.     <u>Emotional harm allegedly suffered by Plaintiffs</u> M&B Document Request Number 7 and K&W Document Request Number 8.

-17-

3.    <u>Pecuniary damages allegedly suffered by Plaintiffs</u> M&B Document Request Numbers 12 and 22 and K&W Document Request Numbers 6, 11, 14 and 22.

4.    <u>Divorce and related proceedings</u> K&W Document Request Number 11.

5.    <u>Expert Witnesses</u> M&B Document Request Number 21 and K&W Document Request Number 23.

6.    <u>Trial Exhibits</u> M&B Document Request Number 23 and K&W Document Request Number 25.

7.    <u>Catchall (for all other documents which support Plaintiffs' claims but not produced in response to another request)</u> M&R Document Request Number 24 and PK Document Request Number 26.

**b.    Plaintiffs Have Failed To Respond Separately To Each Discovery Request.**

Under Rule 34, a party to whom document requests are made must respond separately to each such request.

> A party who produces documents for inspection shall . . . organize them and label them to correspond with the categories in the request.

<u>See</u> Rule 34(b); *Stiller v. Arnold*, 167 F.R.D. 68, 71 (N.D. Ind. 1996) (Discovery sanctions were warranted where producing party failed to organize and label the large number of documents it produced.)  In addition, by his Directions in his document requests, Nuss instructed Plaintiffs to do what they were already to do under Rule 34.

> 1.    Please respond to <u>each</u> of these requests <u>separately</u> and in <u>full</u>.  More specifically, please designate by reference to each request the documents which are being produced in response to that specific request.

Plaintiffs have completely failed to meet their obligations in this regard.  Rather than

providing documents in a manner that corresponds with the specific document requests, Plaintiffs have simply provided them in bulk.[8]  This is not only improper; Nuss can only guess at which documents apply to which request(s).

>    **c.    Certain Of The Document Withheld By Plaintiff s Are Not Protected.**

Plaintiffs have withheld a number of documents on the basis of some claim of privilege.  However, those documents are merely communications between and among Plaintiffs, and possibly members of their families.  (These are described as "e-mail among family."  Bates Nos. 300013-17, 300024-25, 3000139-143, and 300101.)   These documents may be "private," as Plaintiffs describe them.  However, they are not privileged or protected, and Plaintiffs' refusal to produce them is improper.

>    **d.    Plaintiffs Have Failed To Provide A Real Privilege Log For The Other Documents Withheld By Plaintiffs.**

Plaintiffs have withheld a number of other documents on the basis of attorney-client privilege, and vaguely described those documents in what they have labeled as a privilege log.  However, Plaintiffs have refused to provide the information necessary to assess the claim of privilege.  See Rule 26(b)(5).

The requirement that the party asserting that its documents are protected by the attorney-client privilege must produce a privilege log is not a novel idea.  Indeed, it is a well-accepted and necessary device to enable the other party to assess the claim of privilege in a meaningful way.  *Guy v. United Healthcare Corp.* (S.D. Ohio 1993), 154 F.R.D. 172; *Browne of New York City, Inc. v. Ambase Corporation* (S.D.N.Y. 1993), 150 F.R.D. 465; *In re Shopping Carts Antitrust*

---

[8]They are provided with the statement that they are their "RESPONSE TO ALL REQUESTS."

*Litigation* (S.D.N.Y. 1982), 95 F.R.D. 299; *In re Grand Jury Investigation* (C.A. 9 1992), 974 F.2d 1068; *Dole v. Milonas* (C.A. 9 1989), 889 F.2d 885, 890; *Viacom, Inc. V. Sumitomo Corp.* (*In re Copper Market Antitrust Litig.*) (S.D.N.Y. 2001), 200 F.R.D. 213; *In re: Search Warrant at Law Office Of Garea* (C.A. 6 3/5/99), No. 97-4112, 1999 U.S. App. LEXIS 3861.  Further, merely calling something a privilege log is not sufficient.   The log must contain enough information for Nuss to be able to assess whether none, some or all of these documents are protected and, if they are, if a waiver has occurred.

> [T]hose seeking to invoke the attorney-client privilege must provide the reviewing court with enough information for it to make a determination that the document in question was, in fact, a confidential communication involving legal advice.   A cryptic privilege log is not enough to make this showing when review of the documents themselves fails to reveal whether they were produced or transmitted in the course of legal representation.

*In re: Search Warrant,* 173 F.3d 429, 1999 U.S. App. LEXIS 12732 (6th Cir. 1999), full opinion reported at 1999 Lexis 3861.

> . . . if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of the legal requirements for application of the privilege, his claim will be rejected.

*United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).

Plaintiffs have claimed that all of the documents described as "Jay Clark letter" (30003-4), "Jay Clark file" (180001-67), and "Notes from attorney contact" (300154) are protected by the attorney-client privilege.   This description does not provide Nuss with the information necessary to assess the claims of privilege, and Plaintiffs' refusal to do so should result in either a rejection of the claim of privilege or, in the alternative, an order directing Plaintiffs to provide the following information for each withheld document.

-20-

    a.      the date of the document;

    b.      the author(s);

    c.      the recipient(s), including those who were copied with the document;

    d.      the identity of each person who has reviewed the document;

    e.      a brief description of the nature of the document; and

    f.      the basis for the assertion of privilege.

**C.    All Expenses Incurred By Nuss In Securing This Order Should Be Borne By Plaintiffs**

Rule 37(a) provides that a party has an absolute duty to respond and serve timely answers or objections to properly served interrogatories and document requests, and the court in which the action is pending may enforce that duty by imposing any of a wide range of sanctions for its violation, including those sought by this motion. Rule 37(b)(4) clearly authorizes and, indeed, requires an award of expenses to the moving party where, as in this case, the opposing party completely ignores a commitment it has made and fails to respond to properly served interrogatories and document requests. <u>See</u> e.g. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, rehearing denied, 429 U.S. 874 (1976).

**III.    <u>CONCLUSION</u>**

For the reasons stated above, this motion should be granted, and this Court should issue an Order:

1.    compelling Plaintiffs to respond in full to the Discovery Requests; and

2.    awarding Nuss his reasonable expenses, including attorneys' fees, incurred in obtaining this Order.

Respectfully submitted,

CRABBE, BROWN & JAMES LLP


s/Brian E. Hurley
Brian E. Hurley (0007827)
Robert J. Gehring (0019329)
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202-4359
(513) 784-1525 - telephone
(513) 784-1250 - facsimile
Bhurley@cbjlawyers.com
Rgehring@cblawyers.com

Attorneys For Defendant William Nuss

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2004, a copy of the forgoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties my access this filing through the Court's system.



s/Brian E. Hurley
Brian E. Hurley


\\theserver\firmdocs\NUSS\motiontocompel.beh.wpd