# United States District Court

## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PATRICIA KAMMEYER, et al.

v.

CITY OF SHARONVILLE, OHIO, et al.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:    C-1-01-649

TO:    Jay Clark, Esq.
114 East Eighth Street, Suite 400
Cincinnati, OH 45202

_____ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

_____ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |
| | |

XX
_____ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

All documentation referring, concerning or relating to your clients Patricia Kammeyer and James Wright.

| PLACE | DATE AND TIME |
|---|---|
| Law Offices of Freking & Betz | |
| 215 East Ninth Street, Fifth Floor | February 13, 2003; 10:00 a.m. |
| Cincinnati, OH 45202 | |

_____ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*    Attorney for Defendant James Cramer | January 28, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Leslie E. Ghiz, Esq., FREKING & BETZ, 215 East Ninth Street, Fifth Floor, Cincinnati, OH 45202; 513-721-1975

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

Issued by the
# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO

PATRICIA KAMMEYER, et al.                    SUBPOENA IN A CIVIL CASE

V.                                           Case Number:' C-1-01-649

CITY OF SHARONVILLE, et al.

TO:   RAVERT J. CLARK, ESQ.
      114 East Eighth Street, Suite 400
      Cincinnati, Ohio 45202

___   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time
      specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

XX    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
      deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| Schroeder, Maundrell, Barbiere & Powers, Governor's Knoll, Suite 110, 11935 Mason Rd. Cincinnati, Ohio 45249 | April 26, 2004 @ 9:00 a.m. |

XX    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or
      objects at the place, date, and time specified below (list documents or objects): See attachment.

| PLACE | DATE AND TIME |
| --- | --- |
| Schroeder, Maundrell, Barbiere & Powers, Governor's Knoll, Suite 110, 11935 Mason Rd. Cincinnati, Ohio 45249 | April 26, 2004 @ 9:00 a.m. |

___   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified
      below.

| PREMISES | DATE AND TIME |
| --- | --- |

      Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall
designate one or more officers, directors, or managing agents, or other persons who consent to testify on
its behalf, and may set forth, for each person designated, the matters on which the person will testify.
Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| *Brian E. Hurley* | 3-30-04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Brian E. Hurley, Esq. 30 Garfield Place, Ste. 740, Cincinnati, Ohio 45202 (513) 784-1525

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

'If action is pending in district other than district of issuance, state district under case number.

**ATTACHMENT**

All documents/files that in any way relate to one or more of the following:

1.   Patricia Kammeyer

2.   James Wright

3.   Jan Loraine Miller

4.   Sue Ranielle Baker

5.   Dale Dorning

6.   Albert Schuholz

7.   The City of Sharonville, Ohio

8.   William Nuss

9.   Michael Schappa

10.  James Cramer

If you maintain that some or all of the above-referenced documents/files are for any reason protected from discovery, provide a privilege log that, for each withheld document, state the following information:

1.   the author(s)

2.   the date

3.   the recipient(s)

4.   a brief statement of the topic(s)

5.   a statement of why the document is protected

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA KAMMEYER, et al. | : | CASE NO. C-1-01-649 |
| | : | |
| Plaintiffs, | : | Judge Arthur Spiegel |
| | : | |
| vs. | : | |
| | : | |
| CITY OF SHARONVILLE, OHIO et al. | : | NOTICE OF DEPOSITION |
| | : | OF RAVERT J. CLARK |
| Defendants. | : | |

To:   Alphonse A. Gerhardstein, Esq.
      LAUFMAN & GERHARDSTEIN
      1409 Enquirer Building
      617 Vine Street
      Cincinnati, Ohio 45202

Please take notice that, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure,

Brian E. Hurley, for Defendant Nuss and all other Defendants in this action, hereby gives notice of

the taking of the deposition of Ravert J. Clark. Ravert J. Clark shall appear on April 26, 2004 at

9:00 a.m. at the law offices of Schroeder, Maundrell, Barbiere & Powers, Governor's Knoll, Suite

110, 11935 Mason Road, Cincinnati, Ohio 45249. Said deposition shall continue from day-to-day

until complete.

Respectfully submitted,

CRABBE, BROWN & JAMES LLP

Brian E. Hurley #0007827
Robert J. Gehring #0019329
Attorney for Defendant William Nuss
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202
(513) 784-1525 - Telephone
(513) 784-1250 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Notice of Deposition of Ravert J. Clark was sent to Thomas T. Keating, Keating, Ritchie & Swick, 8050 Hosbrook Road, Suite 200, Cincinnati, Ohio 45236, Randolph H. Freking, 215 E. Ninth Street, Cincinnati, Ohio 45202 and Lawrence E. Barbiere, Schroeder, Maundrell, Barbiere & Powers, 11935 Mason Road, Suite 110, Cincinnati, Ohio 45249 by facsimile and ordinary U.S. Mail on the 24th day of March, 2004.

Brian E. Hurley

\\theserver\firmdocs\NUSS\jayclarknotdepo.wpd

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

114 F.3d 1188 (Table)
**Unpublished Disposition**

**(Cite as: 114 F.3d 1188, 1997 WL 280188 (6th Cir.(Ohio)))**
<KeyCite History>

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Lisa MANN, Appellant/Cross-Appellee,
v.
UNIVERSITY OF CINCINNATI, Robert A. Monast, and Jon D. Clemens, Appellees, University of Cincinnati and Taft, Stettinius & Hollister, Cross-Appellants.

Nos. 95-3195, 95-3292.

May 27, 1997.

On Appeal from the United States District Court for the Southern District of Ohio, No. 92-00852; S. Arthur Spiegel, Judge.

S.D.Ohio, 824 F.Supp. 1190, 152 F.R.D. 119.

AFFIRMED.

Before: SUHRHEINRICH, SILER, and DAUGHTREY, Circuit Judges.

PER CURIAM.

**\*\*1** Plaintiff Lisa Mann, pro se on appeal, appeals the district court's entry of final judgment following a jury verdict for defendants on her claim of sexual harassment against the University of Cincinnati and two teaching assistants. The University and its outside counsel, the Taft law firm, cross- appeal the district court's imposition of sanctions against them.

I. Appeal
A. Facts

Mann was an undergraduate student at the University of Cincinnati in the College Conservatory of Music between 1985 and 1991. On October 29, 1992, she sued under 42 U.S.C. § 1983 and 20 U.S.C. § 1681(a), alleging that two of her former teaching instructors, graduate students Robert Monast and Jon Clemens, had sexually harassed her and then penalized her academically, in violation of her Fourteenth Amendment right to equal protection. She claimed that defendant University of Cincinnati failed to correct these improprieties, in violation of § 1983. Plaintiff also asserted that she was denied a right to education at the University in violation of 20 U.S.C. § 1681.

Plaintiff alleged that Monast suggested that they have a sexual relationship, and then verbally abused her after she declined. Plaintiff further claimed that after she terminated the student-instructor relationship, he failed to give her a grade. Clemens also allegedly suggested that she sleep with him and then gave her a poor grade in the course because she refused. Finally, plaintiff alleged that university officials did nothing about the incidents, after she complained to them.

Plaintiff sought compensatory and punitive damages. A jury found for defendants. After the district court entered final judgment dismissing Mann's suit, she moved for a new trial. The district court denied it. This appeal follows.

B. Discussion

Plaintiff claims that: (1) the district court should have ordered a new trial on the ground that the verdict was against the weight of the evidence, and (2) that the district court abused its discretion in various rulings.

1. Weight of Evidence

We accord great deference to a district court's denial of a motion for a new trial asserting that the verdict was against the great weight of the evidence. *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1487 (6th Cir.1991). A trial court should not set aside the verdict unless it is against the clear weight of the evidence. *Id.* In other words, it should deny the motion if the verdict that has been reached is reasonable. *Id.* A verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable. *Id.*

### a. Monast

Plaintiff's account of events differs drastically from both Monast's and Clemens' testimony. The jury was free to credit their testimony over hers, as it obviously did. Further, the jury could have reasonably concluded that Monast's conduct was not sexual or discriminatory, because the record showed that he was also verbally abusive with other students. As for the "Incomplete" grade he gave her, Monast testified that not only had she refused to complete the class, but she had not completed enough assignments to warrant a grade. Moreover, he offered plaintiff several alternatives for completing the course, but she did not pursue any of them. Finally, Monast denied making any late-night phone calls to plaintiff. The jury obviously believed him.

### b. Clemens

**\*\*2** Clemens admitted asking Mann if she wanted to have a sexual relationship with him. Clemens explained he was concerned that plaintiff's desire for a sexual relationship might be interfering with her school performance. Moreover, Clemens testified to plaintiff's remarks indicating that plaintiff was interested in him. Plaintiff testified that Clemens, in cahoots with Monast, mocked and embarrassed her. Again, the record reveals that the jury had a sufficient basis to believe either plaintiff or Clemens. It obviously concluded that Clemens had not created a "discriminatorily abusive ... environment." *Cf. Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Moreover, Clemens explained the low grade he gave her on an assignment and for the semester. In short, the jury had ample ground for concluding that plaintiff failed to prove sexual harassment. The district court did not err in denying the motion for a new trial.

### 2. Other Rulings
### a. Disqualification Motion

The magistrate judge found that when plaintiff filed her belated motion to disqualify, defendants would have been prejudiced by having to switch counsel because outside counsel had already performed considerable work on the case. We give wide latitude to such decisions. *United States v. Mays,* 69 F.3d 116, 121 (6th Cir.1995), *cert. denied,* 116 S.Ct. 2504 (1996). In any event, plaintiff failed to preserve that objection for appeal.

### b. Peremptories

The district court's decision to allow defendants to share six peremptory challenges while giving plaintiff only four was well within its discretion. 28 U.S.C. § 1870; Fed.R.Civ.P. 47(b). Clemens and Monast were differently situated. The jury could have found for one or both, while exonerating the University. *See Goldstein v. Kelleher,* 728 F.2d 32, 37 (1st Cir.1984) (holding that district court did not abuse discretion by giving extra peremptory challenges to defendants who "ha[ve] even colorably different interests"). Any error would be harmless anyway, because defendants actually used only one of their peremptory challenges. That is three less than plaintiff, and she did not use all four of her peremptories. *See Mills v. GAF Corp.,* 20 F.3d 678, 679 n. 2 (6th Cir.1994).

### c. For Cause Dismissal

The district court was not required to dismiss for cause the juror who was on the same board of directors as one of Taft's tax lawyers. *Cf. Cox v. Treadway,* 75 F.3d 230, 239 (6th Cir.), (district court's refusal to dismiss venireperson who was related to two DEA agents was not error), *cert. denied,* 117 S.Ct. 78 (1996). In any event, plaintiff did not move to strike this venireperson for cause and therefore forfeited the issue. *Marks v. Shell Oil Co.,* 895 F.2d 1128, 1129 (6th Cir.1990).

### d. Evidentiary Rulings

The district court did not err in preventing plaintiff from learning that defense counsel had inspected her medical records since plaintiff was not seeking additional relief for invasion of privacy or deprivation of her constitutional right to privacy. In fact, it does not appear from the record that the court explicitly barred her from doing so. Nor did the court err in not preventing defendants' psychological expert from testifying simply because she had earned her degrees at the University of Cincinnati, a fact which goes to her credibility. The expert's review of a newspaper article discussing stalking charges Mann filed against another woman was of the type of information allowed by Fed.R.Evid. 703 (experts may consider any information "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject...."). Finally, we hold that the district court did not err in allowing defendants to introduce plaintiff's employment history, that she lived with her grandparents rather than her mother, testimony regarding the fire and the car wreck. *United States v. Hawkins,* 969 F.2d 169, 174 (6th Cir.1992).

II. Cross-Appeal
A. Facts

**3** Defendants and their outside counsel, the Taft law firm, were sanctioned for their conduct in reviewing plaintiff's medical records on file at the University Health Services. [FN1] The magistrate judge held that the University and defense counsel violated plaintiff's constitutional right of privacy, plaintiff's physician-patient privilege, and both the spirit and letter of Fed.R.Civ.P. 45, by voluntarily producing and examining subpoenaed documents before the date specified in the subpoena for compulsory production. *See* 824 F.Supp. at 1195-1203. The magistrate judge prohibited defendants and their counsel "from examining subpoenaed records prior to the return date of the subpoena," and further required them to "provide at least fourteen days notice to opposing counsel on all future subpoenas, absent exigent circumstances." He also barred defendants from using either Dr. Kindel's file or the Student Health Services' file (with the exception of a one-page report by Dr. Hani Abdulla) for any purpose. 824 F.Supp. at 1206. The magistrate judge ordered the University and Taft to pay jointly $2,500 plus costs to plaintiff for violation of her rights.

> FN1. The district court adopted the factual findings of the magistrate judge, after a hearing on plaintiff's motion for a protective order and for sanctions. *See Mann v. University of Cincinnati,* 152 F.R.D. 119 (S.D. Ohio 1993) (district court opinion; quoting 824 F.Supp. 1190, 1192-95 (S.D. Ohio 1993) (magistrate judge's opinion)). They are lengthy; we therefore incorporate them by reference here.

The district court upheld the magistrate's analysis regarding plaintiff's right to privacy and Rule 45. 152 F.R.D. at 127; *see also* 152 F.R.D. at 120 n. 1 (disagreeing with his treatment of physician-patient privilege). The court also adopted the sanctions imposed.

On appeal, defendants maintain that all three of the magistrate judge's rulings are wrong. They also question the court's authority to sanction.

B. Discussion
1. Constitutional Privacy Right

The lower courts held that the medical records at issue were of such a private and personal nature that plaintiff enjoyed constitutional protection. This Court has consistently rejected such constitutional claims, however. *See J.P. v. DeSanti,* 653 F.2d 1080, 1090 (6th Cir.1981) (concluding that "the Constitution does not encompass a general right to nondisclosure of private information"; juveniles had no privacy right in their social histories prepared by state probation authorities); *Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir.1994) (rejecting inmate's claim that his constitutional right to privacy was violated by the disclosure of his HIV infection to a corrections officer; citing *DeSanti* ); *Jarvis v. Wellman,* 52 F.3d 125, 126 (6th Cir.1995) (holding that unauthorized release of rape victim's medical records did not rise to level of breach of right recognized as "fundamental" under Constitution; following *DeSanti* and *Wigginton* ). The imposition of sanctions cannot be based upon this basis.

2. Physician-Patient Privilege

Although the district court rejected the magistrate judge's conclusion that the Sixth Circuit would recognize a physician-patient privilege, *see* 152 F.R.D. at 120 n. 1, we address the question for the sake of completeness. [FN2] In answering this question, we look to the federal common law of privilege. Fed.R.Evid. 501; *Hancock v. Dodson,* 958 F.2d 1367, 1372-73 (6th Cir.1992).

> FN2. In fact, the magistrate judge, "invite[d] defendants to appeal this ruling so that the Sixth Circuit may speak with specificity regarding the constitutional privacy right and the doctor-patient privilege associated with medical records under the circumstances existing in this case." 824 F.Supp. at 1198.

**4** The magistrate judge erred in concluding that the Sixth Circuit would recognize a doctor-patient privilege under federal common law. Contrary to the magistrate judge's opinion, *Hancock* expressly holds that federal courts do not recognize a federal physician-patient privilege. *Id.* at 1373. *See also Patterson v. Caterpillar, Inc.,* 70 F.3d 503, 506-07 (7th Cir.1995) (same). Because no privilege exists in the federal courts, this likewise cannot be the peg on which to impose sanctions.

3. Rule 45

The magistrate judge held that although defendants' attorney and the University properly issued a Rule 45

subpoena, they improperly obtained the records and violated Rule 45. Defendants argue that under Rule 45 lawyers obviously cannot require the custodians of documents to produce those documents ahead of schedule, but that it does not bar the custodians from choosing to do so.

We need not decide today exactly how Rule 45 applies in every hypothetical case, [FN3] because in this case it cannot be disputed that the University and defendants' attorney knew that plaintiff wished to assert a privilege over her medical records, and therefore should have known that she had standing to challenge the subpoena, regardless of her ultimate success. *See* 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995) (noting that "[o]rdinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought"). [FN4]

> FN3. Read literally, Rule 45(a)(1)(C) seems to mean simply what it says: the person subpoenaed must produce the specified documents "at" the time and place specified, not before and not after. One could argue that use of the term "at" instead of "on or by" or "on or before" said date intends production at a precise moment in time, as opposed to a period of compliance up and until a certain date. As defendants point out, most of the time early production of the documents is not a problem, because the person subpoenaed is the only person with standing to contest the subpoena and he or she has no objections. However, because of the possibility of objections, which Rule 45 clearly contemplates, and accounts for, it would also appear that a set date is necessary to establish a time frame for filing those objections. Other parts of the rule confirm this interpretation: subsection (b)(1) requires that prior notice of any commanded production of documents and things or inspection of premises before trial "shall be served on each party in the manner prescribed by Rule 5(b)." *See* 5A James W. Moore's Federal Practice, ¶ 45.05[3] (1995) ("This provision [ (b)(1) ], added in 1991, affords other parties the opportunity to object to the production or inspection, or to serve a subpoena requiring additional production at the same time and place." (citing Committee Note of 1991)).

> FN4. Although plaintiff does not have a substantive right in the physician-patient privilege under federal common law, she does under Ohio law. *See* Ohio Rev. Code § 2317.02(B)(1). Hospital records containing privileged communications are included within the privilege. *State v. McKinnon*, 525 N.E.2d 821 (Ohio 1987). The privilege is, however, subject to exceptions, including the situation where patient turns litigant. *See* O.R.C. § 2317.02(B)(1)(a)(iii) (stating that the testimonial privilege does not apply "[i]f a civil action ... is filed by the patient"). However, even that waiver of privilege is limited. *See* § 2317.02(B)(3)(a) (providing that physician "may be compelled to testify or to submit to discovery under the Rules of Civil Procedure only as to a communication made to him by the patient in question in that relation, or his advice to the patient in question, that related causally or historically to physical or mental injuries that are relevant to issues in the ... civil action").

By seeking signed medical releases from plaintiff, defendants' attorney initially communicated her shared belief in plaintiff's putative right to assert a doctor-patient privilege. At some point however, defendants' attorney apparently decided that plaintiff had no privilege to assert and that there were no remaining impediments to defendants' viewing the medical records. The problem is that she failed to reveal this change of heart to plaintiff's counsel, so that plaintiff could develop other possible strategies for protecting the medical records. The deception began when defense counsel served a copy of the subpoena (which assumes that the documents are beyond the control of the requesting party) on plaintiff's counsel, but did not send along the ex parte letter served on the records custodian informing the custodian that she could turn the documents over early. This had the not unpredictable effect of depriving plaintiff of an opportunity to utilize the mechanism available in Rule 45 for objecting on grounds of privilege in clause (c)(2)(B)(iii). To top it off, defense counsel went and looked at the documents, not even waiting for early, voluntary, ex-parte compliance.

When plaintiff's counsel described the nature of the dispute to the magistrate judge during their telephone conference on plaintiff's motion for a protective order and to quash the subpoena, defendants' attorney made

4

no mention of the fact that she had already reviewed the documents in question. Defendants' attorney remained silent when the magistrate judge ordered plaintiff to review the documents, produce those to which she had no objection, and turn over to the court for in camera review those to which she wanted protected, i.e. those that she did not want anyone else to see. Although defendants' attorney had stated in her responsive pleading that she had already viewed the documents (which the magistrate judge did not receive prior to the telephone conference), her silence at critical points in the telephone conference can only be characterized as material omissions. Defendants' deception went undiscovered until Mann went to the University Health Services and was informed by the records custodian that defense counsel had already seen and copied her medical records.

**5 Under these circumstances, we agree that, at a minimum, defendants violated the spirit of Rule 45. This is true even though, as we have just held, plaintiff ultimately could not have prevented defendants from viewing the documents based on either a physician-patient privilege or constitutional right. As the magistrate judge put it: "Whether the privacy or privilege claim is valid is not the question. When a colorable claim is asserted, it is the court which must resolve the issue not the attorney seeking discovery." 824 F.Supp. at 1201. Here defendants' attorney created the false impression that she was complying with the discovery schedule set up by Rule 45, but then subverted that procedural scheme when she: (1) sent an ex parte letter seeking early compliance, (2) viewed and copied the records with no notice to plaintiff or her attorney, thereby depriving plaintiff of an opportunity to challenge the subpoena, and (3) remained strangely silent during the telephone conference called by the magistrate judge to establish procedures for protecting the documents. The discovery rules exist to facilitate the exchange of relevant information between litigants; they were not meant to be tools of deception. That is precisely how defendants' attorney used them here, and in the process, wasted the time of the court and the parties.

Given this conclusion, we need not address defendants' other objections to the lower court's rulings regarding Rule 45. [FN5]

> FN5. Defendants also object to the magistrate judge's requirement that subpoenas must provide at least 14 days' notice to opposing counsel, absent exigent circumstances. 824 F.Supp. at 1206.

Defendants are correct that Rule 45(a)(1)(C) allows the lawyer issuing the subpoena to select the return date, subject only to the requirement that he or she "take reasonable steps to avoid imposing undue burden or expense on a *person subject to that subpoena.*" Fed.R.Civ.P. 45(c)(1) (emphasis added). However, the rule must be read as a whole. Rule 45(c)(2)(B), which states that the person commanded to produce documents "may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service," file objections. Implicit in the rule then is the assumption that in general, more than 14 days' notice will be provided. *See generally* 9A Wright & Miller, § 2463 (noting that "fourteen-day objection period only applies to subpoenas demanding the production of documents or the inspection of premises"). What binds the issuing attorney to this assumption of reasonableness is his signature on the subpoena. *See generally* 1991 Advisory Committee Notes ("Necessarily accompanying the evolution of this power of the lawyer as officer of the court is the development of increased responsibility and liability for the misuse of this power. The latter development is reflected ... in the requirement imposed by paragraph (3) of this subdivision that the attorney issuing a subpoena must sign it."). In short, to the extent the magistrate judge's opinion holds that Rule 45 "requires" at least fourteen days notice to opposing counsel, he was incorrect, both because the rule does not explicitly set a time and only addresses notice on the subject of the subpoena. However, to the extent that the magistrate judge deemed fourteen days to be the measure of reasonableness, he was correct. In any event, for the right to object to have any meaning, notice of counsel must be simultaneous with notice to the subject of the subpoena. This hardly places an extra burden on the issuing attorney. In all events, this issue is moot.

#### 4. Sanctions [FN6]

> FN6. The nonmonetary sanctions are now moot, as they restricted the conduct of defense counsel in this case.

Without articulating the source of his power, the magistrate judge ordered sanctions. 824 F.Supp. at 1203-05. Invoking the Federal Rules of Civil Procedure generally and its inherent authority, the district court affirmed and adopted these sanctions. 152 F.R.D. at 127. Defendants argue that because no particular rule authorizes sanctions here, [FN7] the sanctions rest entirely on the "inherent powers" of federal courts, and that such power is unavailable here because no bad faith was shown.

> FN7. Defendants were not sanctioned for presenting frivolous legal contentions to the court in a signed pleading, motion or other paper. *See* Fed.R.Civ.P. 11. Nor were they sanctioned for signing the subpoenas in the first place, *see* Fed.R.Civ.P. 26(g)(3), or for disobeying a court order requiring them to release documents. *See* Fed.R.Civ.P. 37. They were not sanctioned for imposing undue burdens or expenses on the Student Health Services. *See* Fed.R.Civ.P. 45(c)(1).

It is well settled that courts have inherent authority to impose sanctions on a party and attorney for bad faith conduct during the course of litigation. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-50 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765-66 (1980); *Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc.,* 858 F.2d 317, 320-21 (6th Cir.1988); *Shimman v. International Union of Operating Engineers, Local 18,* 744 F.2d 1226, 1230 (6th Cir.1984) (en banc). We review a district court's award of sanctions for abuse of discretion. *Chambers,* 501 U.S. at 55. Before any such sanction may issue, the trial court must find that the conduct at issue "constituted or was tantamount to bad faith." *Roadway Express,* 447 U.S. at 767; *Scharer,* 858 F.2d at 321-22. A "mistake" would not meet the requirements for sanctions. *Scharer,* 858 F.2d at 322.

Defendants claim that neither the magistrate judge nor the district court made a finding of bad faith and that the record does not support such a finding. Defendants seize upon the magistrate judge's statement that "it has not been demonstrated that the University or defendants' counsel have done anything illegal or unethical; nor have they disobeyed a Court order." 824 F.Supp. at 1205. Defendants' recitation of an isolated passage is a red herring; the inherent authority to sanction exists for situations where a party or attorney's conduct is not covered by one of the other sanctioning provisions. *See Chambers,* 501 U.S. at 50 (noting that if bad-faith conduct during

course of litigation can be adequately sanctioned under the Rules, the court should ordinarily rely on the Rules rather than its inherent power, though it may certainly do so in its informed discretion). To say that the magistrate judge did not make the requisite findings is to ignore the very core of the magistrate's findings that defendants "violated both the letter and the spirit of the discovery rules in general and Rule 45 in particular" by the issuance of the ex parte communication suggesting early compliance. 824 F.Supp. at 1202. In the magistrate judge's view,

> **6 [t]he statements of defendants' attorney and University counsel to the effect that they unilaterally determined that plaintiff's attorney had sufficient time to file a motion by the morning of April 6, 1993 is indicative of the overly aggressive style of litigation they practiced, which is deserving of sanctions. Defendants' attorney knew plaintiff's attorney would not be prepared by April 6 to oppose the subpoena, because he told her on April 1 that he needed until April 9 to resolve the issue.
>
> The ex parte instruction to the subpoena recipient to produce the records before the deadline indicates an intent to deprive Ms. Mann of her opportunity to challenge the subpoena. Defendants' attorney's failure to advise plaintiff's attorney that she would examine the records on April 6 strongly supports the conclusion that she did not intend to provide him with an opportunity to object. Indeed, in her brief she argued she was not required to notify him. (Doc. 10, p. 3). The failure of defendants' attorney and University counsel to advise plaintiff's attorney that the records had already been examined after they learned he had contacted the Student Health Services on April 6 indicates that they knew they had done something improper.
>
> ....
>
> There is no justification for defendants' attorney secretly travelling to the Student Health Services on April 6, 1993, reviewing Ms. Mann's medical records before Ms. Mann had a reasonable opportunity to object, and sharing the information with University counsel.

824 F.Supp. at 1202-03. *See also id.* at 1204 ("Furthermore, defendants' attorneys have shown no professional respect for their opponent's right to limit improper discovery.").

The district court, for its part, stated:

> Based on the facts of this case, we conclude, without any hesitation, that this is exactly one of those "appropriate" cases warranting "the most

severe in the spectrum of sanctions."
....

Consequently, in an effort to deter the Defendants and others for [sic] engaging in such harmful and improper conduct--conduct for which the Defendants have shown not the slightest remorse--as well as to compensate the Plaintiff, and as a punitive measure, we hereby ORDER the Defendants and their attorneys to pay Ms. Mann $2,500.   Furthermore, with respect to the Plaintiff's Application for Award of Attorney's Fees and the Defendants' Objections, we conclude that the Plaintiff's additional request for $3,307.45 for the costs associated with preparing and arguing the Plaintiff's motions for protective order and to quash subpoena, is also reasonable in light of the outrageous and inexplicable conduct in which the Defendants have engaged in this case.

152 F.R.D. at 127.   These findings are more than "tantamount" to a finding of bad faith on the part of defendants; they are explicit findings of bad faith.

For the foregoing reasons, the judgment of the district court in Appeal No. 95-3195 is AFFIRMED; and the judgment of the district court in Appeal No. 95-3295 is also AFFIRMED.

SILER, Circuit Judge, concurring in part and dissenting in part.

**7 I concur in the majority opinion's conclusion that the appeal by the plaintiff Lisa Mann should be affirmed.   However, I respectfully dissent from the majority opinion's conclusion that the cross-appeal by the University of Cincinnati and counsel should be affirmed.

Initially, I agree with the conclusions of the majority that there is no constitutional right of privacy or a physician-patient privilege involved here.     My dissent only goes to the authority of the court to sanction the University and its counsel under the facts of this case.   In reaching this conclusion, I do not approve of the conduct of defense counsel, because I feel that it is uncivil.   However, uncivil conduct not amounting to a violation of the rules of the court or not rising to the level of unprofessional conduct, contemptuous conduct, or deliberate delaying of the proceedings is not sanctionable.

The conduct which justifies sanctions according to the majority was the *ex parte* letter served on the records custodian, counsel's viewing and copying the records after the subpoena was served, and silence on the part of defense counsel during the telephone conference pertaining to the motion by the plaintiff for a protective order.

First, I do not think that we should fashion a rule that counsel cannot have *ex parte* communications with a potential witness, especially one who is employed by the client.     In this case, the one to whom the communication was addressed was an employee of the University of Cincinnati, represented by counsel in this case.     Second, if the records custodian was going to deliver the documents anyway, the viewing or copying of the documents by counsel on the day following the service of the subpoena seems to be immaterial.   For instance, if the records custodian had delivered the records to defense counsel on Wednesday, April 7, 1993, before plaintiff's counsel filed his motion for a protective order and to quash, the documents still would have been provided to counsel without violating Rule 45.   But Rule 45 was never violated at all.   The majority indicates that defendants violated the "spirit of Rule 45."     However, Rule 45 does not require the custodian of the records to hold the documents for a specified time period before delivering them to counsel, nor does it mandate that counsel refrain from accepting them until after opposing counsel can object.   If we sanction a party for violating the spirit of the rule without violating the language of the rule, we are essentially rewriting the rule, which would be a mistake on our part.

Now, perhaps counsel should have advised the court during the telephonic conference that she had copied and retained the health records of the plaintiff.   Nevertheless, counsel did not lie to the court in response to a question either by the court or by opposing counsel as to whether she had copies of the records.   The failure on the part of counsel to advise the magistrate judge that such records had been obtained did not delay the court, as counsel for the plaintiff would probably have filed the motion to quash and to return the copied records, had he known defense counsel possessed the records.

**8 The district court sanctioned the University and counsel under its inherent authority for bad faith conduct during the course of litigation.     The defendants, as the majority asserts, claim that neither the magistrate judge nor the district court found bad faith, and that is correct.   However, I agree with the majority that bad faith is implied in the opinion of the district court.   It is insufficient under law for bad faith to be implied before sanctions are imposed; the court must make an explicit finding that there was bad faith.   *See Roadway Express, Inc. v. Piper,* 447

7

U.S. 752, 767 (1980); *Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc.,* 858 F.2d 317, 321 (6th Cir.1988). Nevertheless, I would find as a matter of law that the conduct by defense counsel and the University did not constitute bad faith which would give rise to any sanctions against them. They did not violate any right of privacy or a privilege. They did not violate Rule 45. I disagree with the majority's conclusion that counsel's conduct "wasted the time of the court and the parties," because the motion to quash would have been heard, anyway. Finally, there is no evidence in the record that counsel received any special advantage for trial by viewing these records.

This case does not present circumstances that approximate the egregious facts in cases cited by the majority and Mann to uphold the sanctions imposed. For instance, in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 41 (1991), the conduct was: (1) acts of fraud, (2) filing false and frivolous pleadings, and (3) using tactics of delay, oppression, harassment and massive expense to "reduce [the] plaintiff to exhausted compliance." Moreover, in *Roadway Express, Inc.,* 447 U.S. at 754-56, the conduct was counsel's failure to follow court orders and deliberately delaying the resolution of the case. Finally, in the two cases from this circuit, sanctions were not warranted in *Shimman v. International Union of Operating Engineers, Local 18,* 744 F.2d 1226, 1238 (6th Cir.1984) (en banc); and the district court did not follow the correct procedure in effecting sanctions in *Ray A. Scharer & Co.,* 858 F.2d at 321- 22. I would hold that it was an abuse of discretion for the court to impose sanctions under the circumstances of this case. Therefore, I would REVERSE the order imposing sanctions upon the University and its counsel.

END OF DOCUMENT

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHMOND MEDICAL CENTER FOR     :         NO. 1:03-MS-00046
WOMEN, et al.,                  :
                                :
          Plaintiffs,           :
                                :
     v.                         :     **ORDER**
                                :
                                :
DAVID M. HICKS, et al.,         :
                                :
          Defendants.           :

          This matter is before the Court on Defendants' Objections to Magistrate's Order Awarding Sanctions Pursuant to Rule 45 in the Amount of $1,960 and Memorandum of Authorities in Support (doc. 5), Martin Haskell's Response to Defendants' Objections (doc. 9), and Defendants' Reply (doc. 11).  The Court held a hearing on this matter on February 19, 2004.

**I.  Background**

          This is a dispute over a deposition subpoena Defendants issued in this district to Dr. Haskell, a Cincinnati physician, concerning his published opinion about partial birth abortion.  The underlying case is pending in the Eastern District of Virginia, and is a challenge brought against Virginia's "partial birth infanticide" ban.  Less than fourteen days before the discovery cut-off in the Virginia case, October 7, 2003, Defendants issued a subpoena to Dr. Haskell in order to attack his opinion.  Defendants aver that they were impeded in part from issuing the subpoena earlier by power outages and other problems caused by Hurricane Isabel.  The subpoena required Dr. Haskell to appear for deposition

in Cincinnati on October 6, 2003, and to produce "any and all medical articles, medical papers, medical treatises, medical presentation, and any other documents" regarding "the risks, complications, health benefits, or morbidity and mortality of the [partial birth abortion] procedures" (doc. 4). Dr. Haskell, who is not a retained expert or fact witness in the Virginia litigation, obtained counsel, Jennifer Branch, to handle the subpoena for him.

At the February 19, 2004 hearing, Jennifer Branch averred that after agreeing to represent Dr. Haskell in the matter, she telephoned the attorney who issued the subpoena, Ed McNelis, whose first words to her were "You can't talk me out of this." Although Mr. McNelis' affidavit indicates that he signaled to Branch flexibility in scheduling another date for the deposition, he also indicates that Branch told him Dr. Haskell would not be deposed at all (doc. 5). Branch stated at the hearing that as a result of the telephone conversation, she and Mr. McNelis agreed that they would have to litigate the matter, and so she commenced the necessary work in order to move to quash his subpoena.

On October 30, 2003, Defendants withdrew the subpoena. On November 20, 2003, the Magistrate Judge denied Dr. Haskell's Motion to Quash as moot, but issued sanctions against the attorney who issued the subpoena, thereby compensating Dr. Haskell for his expense in retaining counsel to bring the Motion to Quash (doc. 4).

Defendants objected to the Magistrate Judge's Order, arguing that the Magistrate Judge should have issued a Report and Recommendation, because her Order is essentially dispositive as to

2

the matter in this district, so that the Court's standard of review should be de novo (doc. 5).    Defendants argue the Court should reject the Magistrate Judge's Order, because it interferes with their formulation of a reasonable defense strategy and their duty to zealously represent their clients (Id.).    Defendants further argue the Order fails to apply the correct balancing test required under Fed. R. Civ. P. 45(c) and 26(g), and that they acted reasonably under these rules (Id.).    Defendants posit that the Order improperly awarded sanctions in an amount not requested by Dr. Haskell's Motion to Quash, and Defendants were not given a chance to respond to the request for attorneys fees in the amount of $1,960.00 (Id.).

Dr. Haskell argues that the Magistrate Judge properly issued an Order as opposed to a Report and Recommendation, as this issue involves a discovery matter that is not dispositive of the case, which is still pending in the Eastern District of Virginia (doc. 9).  Accordingly, Dr. Haskell posits that the proper standard of review is that of Fed. R. Civ. P. 72(a), under which the Court should only set aside the Magistrate Judge's order if any portion is clearly erroneous or contrary to law (Id.).  Dr. Haskell argues that even if the de novo standard of review applies, the Court should affirm the Magistrate Judge's Order because Defendants did not take reasonable steps to avoid an undue burden upon him in violation of Rule 45, and they improperly sought privileged records (Id.).  Dr. Haskell further argues that the award of $1,960.00 was reasonable, supported by the record, and unrebutted by Defendants

3

(doc. 9).

## II.  Standard of Review

        As mentioned above, the parties dispute the appropriate
standard of review in this case.   Pretrial rulings involving
discovery are generally considered non-dispositive and are reviewed
under the "clearly erroneous or contrary to law" standard of
review.    28  U.S.C.  §  636(b)(1)(A);  Fed.  R.  Civ.  P.  72(a).
Defendants argue that the ruling in this instance is dispositive,
as  it  will  terminate  all  matters  pending  before  the  Southern
District  of  Ohio,  yet  the  Court  does  not  find  such  argument
persuasive.  Indeed, the Northern District of Illinois has rejected
the  same  sort  of  argument.   See  Channelmark  Corp.  v.  Destination
Products,  Internat'l,  Inc.,  Case  No.  99-C-214,  2000  U.S.  Dist.
LEXIS  9854  *4  (N.D.  Ill.  July  7,  2000)(court  applied  clearly
erroneous  review  to  Magistrate  Judge's  order  denying  motion  to
enforce  subpoena,  despite  the  fact  that  the  resolution  of  such
motion  would  have  the  effect  of  terminating  all  matters  pending
before the court, because the parties could still proceed to trial
on  the  merits),  see  also,  Scott  Sumner  Segal  v.  L.C.  Hohne
Contractors,  Inc.,  Civil  Action  No.  2:02-1260,  2004  U.S.  Dist.
LEXIS  764  *14  (S.D.  W.V.  January  22,  2004)(court  observed  that
"[m]otions for sanctions are not dispositive by nature, regardless
of the label" in choosing to apply clearly erroneous standard of
review).

        In this case, the resolution of this motion for sanctions
will have no bearing on the merits of the case, which is still

pending in the Eastern District of Virginia. As such, the Magistrate Judge's Order is not dispositive in nature, and is reviewable for clear error. "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364 (1948). Pursuant to this highly deferential standard of review, Magistrate Judges are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused. Conway v. Icahn, 16 F.3d 504, 510 (2d Cir. 1994).

## III.    The Magistrate Judge's Order

The Magistrate Judge found that sanctions were appropriate under Fed. R. Civ. P. 45(c)(1) against the issuing attorney (doc. 4). The Magistrate Judge found that the issuing attorney did not take reasonable steps to avoid imposing an undue burden or expense to Dr. Haskell in merely discussing flexibility about the particulars of the subpoena after the fact of already having issued it (Id.). The Magistrate Judge further found the language of the subpoena overbroad, and the timing of its issuance on the eve of the close of discovery ( Id.). Finally, the Magistrate Judge found that Defendants made no representation of any efforts on their own behalf, prior to issuing the subpoena, to locate the reference sources identified within Dr. Haskell's writings (Id.). For these reasons, and for the reason that the fees sought by Dr. Haskell are reasonable, the Magistrate Judge

5

ordered that Dr. Haskell's Motion for Sanctions be granted, and that Defendants compensate him in the amount of $1,960.00 (<u>Id</u>.).

## IV. Defendants' Objections

Defendants argue that the Magistrate Judge's Order unduly interferes with their formulation of a reasonable defense strategy and their duty to represent their clients zealously (doc. 5). Defendants argue that Plaintiffs in the underlying litigation rely heavily on the factual findings accepted by the Supreme Court in the pivotal case of <u>Stenberg v. Carhart</u>, 530 U.S. 914 (2000), which includes references to Dr. Haskell, and that one of Plaintiffs' experts relied on a text that includes an article by Dr. Haskell (<u>Id</u>.). Consequently, argue Defendants, their subpoena of Dr. Haskell was reasonable, and brought in good faith (<u>Id</u>.).

Next, Defendants argue that the discovery rules, Fed. R. Civ. P. 45(c) and 26(g) require a balancing of interests to determine whether a subpoena imposes an undue burden (<u>Id</u>.). Defendants argue that the Magistrate Judge failed to balance their interests and the importance of the issue at stake in the litigation (<u>Id</u>.). Defendants argue that it is entirely proper to subpoena an unretained expert when they can show a substantial need for the testimony that cannot otherwise be met without undue hardship, citing <u>Exxon Shipping Co. V. United States Dep't of Interior</u>, 34 F.3d 774, 779 (9 [th] Cir. 1994), and <u>Anker v. G.D. Searle</u>, 126 F.R.D. 515, 518-521 (M.D.N.C.)(the court denied the Motion to Quash of an unretained expert after weighing the interests of the involuntary witness against the societal interest

in full and complete litigation)(<u>Id</u>.).   Defendants posit that
"[N]on-retained or involuntary experts or researchers do not have
any federal statutory, case law, or common law privilege which
protects  against  their  having  to  involuntarily  share  their
expertise with the parties in the litigation" (<u>Id</u>. <u>quoting</u> <u>Anker</u>,
126 F.R.D. at 519).   Defendants argue that Dr. Haskell is the only
possible source of information able to provide the evidence upon
which he published his opinions.   Defendants argue therefore that
the benefit of the deposition of Dr. Haskell would outweigh the
burden on Dr. Haskell   (<u>Id</u>.).   Defendants argue that the Magistrate
Judge applied an <u>ad</u> <u>hoc</u> standard rather than the required balancing
test, and therefore deprived them of due process (<u>Id</u>.).   Finally,
Defendants argue that Dr. Haskell's attorneys have not established
the reasonableness of the rates of $250 and $350 per hour which
they seek (<u>Id</u>.).

        At the February 19, 2004 hearing, Defendants further
argued that there is no requirement under Fed. R. Civ. P. 45 that
reasonable steps to avoid burden be taken <u>before</u> the issuing of a
subpoena,  and  that  they  fully  intended  to  conduct  such
negotiations.   Defendants argued that a subpoena is only an
"opening volley," and that they never had a chance in this case to
get to the negotiations concerning the scope of the subpoena.
Because they ultimately withdrew the subpoena, argue Defendants,
there  was  no  undue  burden  at  all  placed  upon  Dr. Haskell.
Defendants conclude that the Magistrate Judge's Order awards
sanctions against them for having issued a subpoena in conformity

7

with Rule 45.

## V.  Dr. Haskell's Response

Dr. Haskell responds that he is a stranger to this litigation and therefore he is entitled to sanctions against Defendants (doc. 9).  Dr. Haskell argues that Defendants did not take reasonable steps to avoid imposing a burden upon him, in that they filed their subpoena knowing full well that he would need to hire counsel in order to file a motion to quash (<u>Id</u>.).  Dr. Haskell avers that he was not assured that he would be reasonably compensated, in violation of Fed. R. Civ. P. 45(c)(3)(B)(iii)(<u>Id</u>.).  Haskell argues that Defendants failed to show a substantial need to subpoena him as an unretained expert, in violation of Fed. R. Civ. P. 45(c)(3)(B)(ii)(<u>Id</u>.).  Haskell argues that he is merely one of three authors of an article relied upon by Plaintiff in the underlying litigation, and the Sixth Circuit clearly prohibits a subpoena being issued to the author of a report relied upon by paid experts in litigation (<u>Id</u>. <u>citing</u> <u>Buchanan v. American Motors Corp.</u>, 697 F.2d 151 (6th Cir. 1983).

Haskell argues next that the subpoena is overbroad and seeks privileged patient files (<u>Id</u>.).  Haskell argues that Defendants offered no patient consent forms (<u>Id</u>.).

At the February 19, 2004 hearing, Haskell argued that Local Rule 37.1 requires attorneys to communicate, and that in this case, instead, Defendants stonewalled.[1]  Haskell stated that the

---

[1] The Court notes that Local Rule 37.1, which applies to Fed. R. Civ. P. 26 and 37, does not necessarily apply to Fed. R.

Department of Justice, in contrast to Defendants, used proper means to obtain information from Dr. Haskell. Haskell indicated that he is a target of much discovery, and his only protection is Fed. R. Civ. P. 45.

Finally, Haskell argues that an award of $1,196 is reasonable, supported by the record, and is unrebutted by Defendants (Id.). Haskell argues that during the same week that he filed his Response, Judge Marbley approved a fee award to his counsel at the exact same rate (Id.).

**VI. Discussion**

Having reviewed this matter, the Court does not find the Magistrate Judge's Order clearly erroneous or contrary to law. Moreover, out of an abundance of caution, in conducting the required balancing of a de novo review, the Court reaches the same conclusion.

Although the Court does not find that Defendants acted in bad faith in tardily issuing the subpoena, and acknowledges the particular difficulty Defendants' counsel faced with Hurricane Isabel, the Court does sense that Defendants acted arrogantly in stonewalling Dr. Haskell's counsel. Defendants initiated the dispute by issuing the subpoena, and then indicated by telephone that they were ready to fight a Motion to Quash. In such a circumstance, Dr. Haskell could have either devoted time and

---

Civ. P. 45. In any event, the Introductory Statement on Civility indicates that common courtesy and an attitude of cooperation are requirements in the Southern District of Ohio. Stonewalling does not comport with an attitude of cooperation.

expense to responding to the subpoena, or incurred expense in filing a Motion to Quash. Dr. Haskell is a complete stranger to the Virginia litigation so that incurring any such expense is arguably burdensome. As Defendants correctly point out in their Objections, courts may enforce a subpoena for information from an un-retained expert, "if a party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated" (doc. 5 citing Fed. R. Civ. P. 45(c)(3)(B)(ii),(iii)). In this case, however, Dr. Haskell indicates that he was not assured that he would be reasonably compensated.[2] Instead, he was greeted with "[y]ou can't talk me out of this." Dr. Haskell therefore was forced by Defendants to incur burdensome expense in resisting the subpoena.

The Court's conclusion is further bolstered by a review of the Sixth Circuit's decision in Buchanan v. American Motors Corporation, 697 F.2d 151 (6th Cir. 1983). In Buchanan, the Court found relevant in affirming the district court's decision to quash a subpoena the fact that the expert had no direct connection to the litigation and would have had to spend many days testifying and

---

[2] Although Defendants argue that Dr. Haskell raised this issue for the first time, thus implicitly acknowledging that the correct standard of review is de novo, the Court finds that it is actually Defendants who raised the issue on page nine of their Objections with citation to Fed. R. Civ. P. 45(c)(3)(B)(ii),(iii) (doc. 5). It is only fair play for Dr. Haskell to respond, and this is no evidence that Dr. Haskell makes any acknowledgment as to the proper standard fo review.

disclosing raw data, including thousands of documents accumulated over the course of a long and detailed research study. 697 F.2d 151, 152. Although the issue before the Court is not the propriety of the Motion to Quash, as such Motion became moot with Defendants' withdrawal of the subpoena, the same issue of burden to an expert with no direct connection to the litigation arises here. In the light of <u>Buchanan</u>, Defendants should have proceeded with more sensitivity to the issue of burden on Dr. Haskell.

Although Defendants protest that the Magistrate Judge failed to balance their interests in issuing the subpoena, the Court finds that she weighed Defendants' arguments that they had a substantial need for the information and could not obtain it from any other source. The Magistrate Judge also found that Defendants made no representation of any efforts to locate the reference sources identified in Dr. Haskell's writings, and that the interpretation that the subpoena required disclosure of patient records was not unreasonable. The Court finds no clear error in the Magistrate Judge's conclusion, after weighing Defendants' arguments, that they failed to take reasonable steps to avoid imposing an undue burden on Dr. Haskell.

As the Court noted above, it does not find bad faith on the part of Defendants, and so it is reluctant in arriving at its conclusion. However, in balancing the interests of the parties, the Court finds that when a stranger to litigation puts up a fight to an arguably overbroad subpoena, and when the issuer of such subpoena only belatedly expresses a willingness to cover reasonable

11

expenses, the subpoena target is entitled to his reasonable expenses in resisting the subpoena.

Finally, the Court does not find the requested fees exorbitant. The Court is satisfied that Dr. Haskell's counsel has adequately justified that the request for $1,960.00 is supported by the record.

Accordingly, the Court AFFIRMS the Magistrate Judge's November 10, 2003 Order, and GRANTS Dr. Haskell his attorneys' fees and expenses in bringing this action, in the amount of $1,960.00.

SO ORDERED.

Dated: March 7, 2004          /s/ S. Arthur Spiegel

                              S. Arthur Spiegel
                              United States Senior District Judge

12