UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA KAMMEYER, et al. | : | CASE NO.: C-1-01-649 |
| Plaintiffs, | : | Judge Spiegel |
| | | (Magistrate Perelman) |
| vs. | : | |
| CITY OF SHARONVILLE, OHIO, et al. | : | |
| Defendants. | : | |

JOINT MEMORANDUM OF DEFENDANTS
IN OPPOSITION TO MOTION TO QUASH SUBPOENAS
AND MOTION FOR PROTECTIVE ORDER

Defendants City of Sharonville, Ohio, Schappa, Homer, Nuss and Cramer, by and through counsel, jointly respond to Plaintiffs' Motion To Quash and For Protective Order ("Motions"). Defendant Cramer will make a separate response to the Motion For Sanctions.[1]

I.    **INTRODUCTION**

The Motions should be denied for the following reasons:

1.    Defendants seek documents from Attorney Jay Clark for legitimate and compelling reasons. Those documents contain information that could be central to the resolution of Plaintiffs' claim of denial of access to the courts and Defendants' defenses of statute of limitations and laches.

2.    Plaintiffs do not even attempt to meet their burden of showing that any of Attorney Clark's documents are protected.

3.    Defendants did not seek by the subpoenas the production of any document protected by the attorney-client privilege.

---

[1]The Motion For Sanctions against Defendant Nuss and his counsel has been withdrawn because Plaintiffs have acknowledged that their statement of the factual basis for the motion was inaccurate. More specifically, a copy of the subpoena served on Attorney Clark by Defendant Nuss had been served on Plaintiffs' counsel before the Motions were filed and 21 days before Attorney Clark's deposition. Moreover, no documents were produced in response to that subpoena.

4.     Attorney Jay Clark has not produced even <u>one</u> document protected by the attorney-client privilege.[2]

5.     Most of the documents Attorney Clark produced had no protection whatsoever. Indeed, a large number of those documents are public records.

6.     Even assuming some of the documents produced by Attorney Clark had some protection, that protection has been waived.

7.     No limitation should be placed on Defendants' use of the documents produced by Attorney Clark because they were properly obtained, none contain any information protected by the attorney-client privilege, most were not protected at all, and any work product protection of the other documents has been waived.  Moreover, Plaintiffs cite to no legal authority to support their "exclusionary" request.

8.     Plaintiffs had no legitimate reason to request that their and Attorney Clark's depositions be suspended.

9.     The cases cited by Plaintiffs in support of their request for the imposition on Defendants of the costs of litigating the Motions do not involve circumstances even close to what has occurred in this case.

Conspicuously absent from the Motions is any mention, let alone discussion, of what is Plaintiffs' real motivation for filing the Motions - their counsels' decision to attend depositions in another case on the same days the depositions of Plaintiffs were scheduled and their difficulty in abiding by the scheduling order that they had insisted on.  More specifically, after insisting that this case be set for trial in 2004 and ignoring the significant personal and professional commitments of Defendants' counsel, <u>one</u> of Plaintiffs' counsel recently learned that his professional commitments make it difficult for him to meet the very discovery cut-off and trial dates set in this case that he had insisted on.  By the Motions, Plaintiffs make it appear that it is Defendants' alleged wrongdoing, rather than their own counsels' scheduling conflicts, that will

---

[2]Despite making assertions that Defendants have obtained from Attorney Clark documents protected by the attorney-client privilege, Plaintiffs do not cite to any such documents.  There is a good reason for this  - none were obtained.  In fact, the only documents that at one time were protected by the attorney-client privilege - Attorney Clark's letters to Plaintiffs of March 23, 1999 - were <u>not</u> produced by Attorney Clark.

be the basis of their soon to be made request that the Scheduling Order of January 27, 2004 be vacated.

## II.    STATEMENT OF RELEVANT FACTS/PROCEDURAL POSTURE

### A.    On The Day Of The Murders Plaintiff Kammeyer Concluded That Albert Schuholz Was Responsible For the Murders.

On May 8, 1981, two women, Marie Wright Schuholz and Starla Burns, were murdered in an apartment in the City of Sharonville, Ohio.  Upon being informed of the death of her mother, Ms. Schuholz, Plaintiff Patricia Kammeyer concluded that she had been murdered by Albert Schuholz.

". . . I turned to my daughter and said - well, Albert finally did it."

(See P. Kammeyer Narrative to Dorning, p. 1, attached hereto as Ex. "A.") After arriving at the scene of the murders Kammeyer asked a police officer ". . . if they had arrested Albert Schuholz yet because he did this.   (See p. 2, Ex. "A.") As such, on the same day that the murders occurred, Kammeyer had no doubt that Albert Schuholz was responsible for the murders.

### B.    Within Two Months After The Murders, Plaintiffs Had Concluded That The Investigation Of The Murders Was Being Conducted By A "Dirty Cop" Who Was Trying To Coverup Albert Schuholz's Involvement In The Murders.

The employee of the Sharonville Police Department (SPD) placed in charge of the investigation was Defendant James Cramer, and during the two weeks after the murder Kammeyer had already begun to have questions about how Cramer was conducting the investigation.  (See pp. 2-4, Ex. "A.")  Within two months after the murders Kammeyer and Wright "began to suspect a 'dirty cop'" (i.e. Cramer) and "knew that somehow Cramer was involved in a coverup . . ." (See p. 4 of Ex. "A.")

**C.    In 1997 and 1998 Plaintiffs Had Full Knowledge Of SPD's Investigation Into How Defendant Cramer Handled The Murder Investigations, Stated That They "Always Knew" That Defendant Cramer Was Involved In A Coverup, And Stated That They Intended to Sue Cramer.**

In 1997 Defendant Schappa, who by that time been promoted to Chief of the SPD, authorized SPD Police Officer Dale Dorning to commence a full and unimpeded investigation of the murders.  During the course of that investigation Kammeyer and Wright met with Dorning on several occasions, and on November 9, 1998, Kammeyer provided Dorning with a five page written narrative of her thoughts on the murders and Cramer's handling of the investigation of the murders.  (See Ex. "A.") As part of that narrative Kammeyer states that

> ". . . Among the family we <u>always knew</u> that somehow Cramer was involved in a coverup . . ." (Emphasis added.)

In that narrative Kammeyer also wrote that Cramer "made us [the families] the victims," and stated she would "file a civil lawsuit in an attempt to ruin him financially."  (Id. p. 1.)

**D.    In Early 1999, Plaintiffs Contacted Attorney Clark For The Purpose Of Retaining Him To Represent Them In Connection With The Claims They May Have Had Against The City And/Or Its Employees, And In Early 1999 They Retained Him For That Purpose.[3]**

In early 1999 Plaintiffs Jim Wright and Jan Loraine Miller contacted Attorney Clark for the purposes of retaining him to represent them in connection with two matters: one, possible claims they had against Albert Schuholz; and two, possible claims they had against the City and/or its employees.  Attorney Clark confirmed this contact in a letter he wrote to those Plaintiffs on March 23, 1999.  (See Plaintiffs' "Privilege Log," attached hereto as Ex. "B," and Clark's letter of 4-14-04, attached hereto as Ex. "C.")

Shortly after contacting Attorney Clark, Wright made arrangements to review SPD's

---

[3]<u>None</u> of the facts cited in connection with this section of the memorandum became known to Defendants from the review of the file documents produced by Attorney Clark.

investigation file of the murders, and in mid-March 1997, the SPD gave him access to the entire file. At that time Wright reviewed "half of the first notebook," and informed the SPD that he "intend[ed] to contact [the SPD] to make arrangements to review the other 2 ½ notebooks when I get back from a business trip in 2 weeks or so." (See Wright letter of 3-24-97, attached hereto as Ex. "D.")

During the summer of 1999 Attorney Clark, as legal counsel for Plaintiffs, made contact with Sharonville's legal counsel to discuss the murder investigation, as well as to discuss how Cramer had conducted and Nuss had overseen that investigation. Further, later in 1999 Attorney Clark made a settlement demand on behalf of Plaintiffs to the City. (See Clark letter of 3-14-04, attached hereto as Ex. "E.")

>        **E.    Litigation Was Not Commenced Until September 25, 2001.**

On September 25, 2001, Plaintiffs filed the Complaint in this action. By that Complaint, the Amended Complaints, and virtually every other paper they have filed in this litigation Plaintiffs have explicitly asserted that all of their claims are based on the alleged coverup by the SPD and certain of its employees of Albert Schuholz's role in the murders. The original Complaint was filed:

1.    More than 20 years after they had first concluded that Cramer was a "dirty cop" and had concluded that Cramer was involved in a coverup.

2.    More than 2 years after Kammeyer wrote that she and the rest of her family "always knew" that Cramer was involved in a coverup;

3.    More than two years after Kammeyer wrote that she intended to commence litigation as a result of the alleged coverup; and

4.    More than 2 years after Plaintiffs had retained legal counsel to represent them in connection with their possible claims against Sharonville and/or its employees.

F.    **The January 22, 2004 Scheduling Conference.**

At the scheduling conference of January 22, 2004, Plaintiffs' counsel argued that it was necessary that this case go to trial in 2004. Defendants' counsel, two of whom were new to the case, stated that their personal and professional commitments would make such an aggressive schedule very difficult for them to meet, and they suggested a trial date of just one to two months later (i.e. in January or February of 2005). However, that was unacceptable to Plaintiffs' counsel, who said that other attorneys in the respective firms of Defendants' counsel could attend depositions, hearings etc.[4] The Court agreed with Plaintiffs' counsel, and issued a Scheduling Order by which a July 1, 2004 discovery cut-off and November 16, 2004 trial were set. Thus, the Court imposed upon the parties a period of 5 months to complete discovery in a case that involves twenty year old facts, dozens of potential witnesses, thousands of documents, and damage claims in the millions of dollars. Out of necessity Defendants were forced to "fast track" discovery, and Plaintiffs almost immediately deposed two Defendants Schappa and Cramer and scheduled, but cancelled, the deposition of Defendant Nuss. However, because of the Motions, Defendants have not been able to depose <u>any</u> witnesses.

After January 22, 2004 Defendants' counsel, with difficulty and at significant expense, re-arranged their commitments in order to comply with the scheduling order. Now, Plaintiffs move to have their and Attorney Clark's depositions suspended, and intend to move to have the scheduling order vacated. Why? Because:

1.    Even though the depositions of Plaintiffs in this case had since March 4, 2004 been scheduled by agreement to be taken during the week of April 19, 2004, Attorney

---

[4]Plaintiffs' counsel also committed to making full and timely responses to the discovery requests that had been served on Plaintiffs by each of the Defendants. Plaintiffs reneged on that commitment.

Gerhardstein wanted to attend depositions in another case during that week;[5] and

2.    Attorney Gerhardstein's professional commitments now make it difficult for him to comply with the deadlines and trial date set forth in the January 27, 2004 Scheduling Order.

### G.    The First Subpoena

#### 1.    Plaintiffs Were Aware Of The First Subpoena At Least 30 Days Before Attorney Clark Produced Any Documents.

On January 28, 2004, Randy Freking, counsel for Defendant Cramer, had a subpoena *duces tecum* served on Attorney Clark. Plaintiffs' counsel claim that they did not receive a copy of the subpoena,[6] but even assuming that is true, they were aware no later than mid-February, 2004 that it had been served on Attorney Clark.  (See Clark letter of 3-12-04, attached hereto as Ex. "F.")[7]

Attorney Clark did not produce any documents in response to the subpoena until March 14, 2004.  (See Ex. "E.") Between mid-February, 2004 and March 14, 2004 Plaintiffs took none of the required steps (e.g. filing a motion for a protective order or a motion to quash) to stop Attorney Clark from complying with the subpoena.

#### 2.    Attorney Freking Did Not Request And Attorney Clark Did Not Produce Any Document Protected By The Attorney-Client Privilege.

Before Attorney Clark produced any documents Attorney Freking made clear that

---

[5]Mr. Gerhardstein's co-counsel, Paul Laufman, was available to attend these depositions, and he has two other members of his firm who could attend one or more of these depositions.

[6]As more fully discussed below, Plaintiffs' counsel also asserted that they had not received a copy of the second subpoena served on Attorney Clark.  That assertion is inaccurate, as shown by the facsimile confirmation sheet that conclusively shows that it was received by Plaintiffs' counsel.

[7]Plaintiffs correctly point out that the notice requirement of Rule 45 is to afford the parties an opportunity to object to the production or inspection of documents.  That purpose has been met here because Plaintiffs had a least 30 days notice of the first subpoena prior to the time Attorney Clark produced any records to make their objections.

documents protected by the attorney-client privilege should not be produced, and Attorney Clark complied with that directive.

> . . . As you directed in your letter of March 4, 2004, I have not produced anything I believe to be privileged.

(See Ex. "E.") Moreover, contrary to Plaintiffs' conclusory assertion,[8] a review of the documents produced by Attorney Clark makes clear that he is correct - he did not produce any documents protected by the attorney-client privilege.  Finally, as more fully discussed below, most of the other documents produced by Attorney Clark never had any protection from discovery, and any work product protection provided the other documents has been waived.

### H.    The Second Subpoena.

#### 1.    Plaintiffs' Statement That The Second Subpoena Was Not Served On Their Counsel Is Inaccurate.

On page 2 of the Motions Plaintiffs assert that the second "subpoena was also never served on Plaintiffs' counsel."  That statement is inaccurate.  A copy of the subpoena that had been served on Attorney Clark was sent to Plaintiffs' counsel by facsimile on April 5, 2004 - 9 days before the Motions were filed and 21 days before the date of Attorney Clark's deposition. (See Hurley letter of 4-5-04, attached hereto as Ex. "G.")

#### 2.    No Documents Truly Protected By The Attorney-Client Privilege Were Sought, And None Have Been Produced.

The Attachment to the Subpoena makes clear that Defendants were not by the subpoena seeking any truly protected documents.  (See Ex. "G.") This was confirmed on April 6, 2004 when counsel for Defendant Nuss informed Attorney Clark that "[n]one of the defense counsel are asking that any document that is truly protected by the privilege be produced."  (See Hurley

---

[8]Defendants point out that Plaintiffs do not cite to even one document to support their inaccurate conclusion.

letter of 4-6-04, attached hereto as Ex. "H.")

Not only have no protected documents been produced in response to the second subpoena
- <u>no</u> documents whatsoever have been produced in response to that subpoena.

## III.    <u>ARGUMENT</u>

### A.    **Plaintiffs Do Not Even Attempt To Meet Their Burden Of Establishing That The Subject Documents Are Protected.**

As an initial matter, it is important to point out that the burden of establishing that a
document is protected from discovery is on the party asserting the protection.  Further, that
burden is not met where the party asserting the privilege rests on the blanket and conclusory
statement that the documents are protected.  *In Re: Grand Jury Investigation No. 83-2-35*, 723
F.2d 447, 454-455 (6th Cir. 1983).  Because Plaintiffs have done nothing more than make a
blanket and conclusory assertion of privilege, they have not met their burden, and the Motions
must be denied.

### B.    **Defendants Sought The Production Of Documents From Attorney Clark For Legitimate And Compelling Reasons.**

Plaintiffs have alleged in part that their rights to access to the courts have been denied.
In addition, Defendants have asserted that Plaintiffs' claims are barred the relevant statutes of
limitations and/or laches.  The documents sought from Attorney Clark contain information that
could be critical to both issues, and, for that reason and as more fully discussed below, the
documents are discoverable.

### C.    **Attorney Clark Has Never Produced Any Document Protected By The Attorney-Client Privilege.**

Plaintiffs assert that certain of the documents produced by Attorney Clark are protected
by the attorney-client privilege.  That assertion is false.  The <u>undisputed</u> record establishes the

following:

      1.     Attorneys Freking and Hurley explicitly told Attorney Clark that they were not by the subpoenas seeking <u>any</u> documents protected by the attorney-client privilege.

      2.     Before producing any documents, Attorney Clark reviewed his file for the purposes of withholding all documents protected by the attorney-client privilege; and

      3.     When Attorney Clark produced documents in response to the first subpoena he did, in fact, withhold the two documents he determined to be protected by the attorney-client privilege - his letters of March 23, 1999 to Plaintiffs.

Moreover, it is important to note that Plaintiffs do not cite to even one document that was produced that is protected by the attorney-client privilege. As stated above, the reason for this is that no such document was produced.

      **D.**     **Many Of The Documents Produced By Attorney Clark Are Copies Of Public Records.**

Of the documents produced by Attorney Clark, a large number were copies of papers filed in the Probate Court in connection with the Estate of Marie Schuholz and copies of documents relating to assets owned by Albert Schuholz. All of the originals of these documents are public records.

      **E.**     **Most Of The Other Documents Produced By Attorney Clark Are Not Protected.**

Some of the documents protected by Attorney Clark set forth that he was retained by Plaintiffs. Others merely disclose that Plaintiffs retained Attorney Clark for a particular purpose - i.e. to represent them in connection with their possible claims against the City and/or its employees. This information is not protected. *Evans v. Atwood*, 177 FRD 1 (D. D.C. 1997).

> The attorney-client privilege has never been construed to prevent the disclosure that a person obtained the attorney for a particular purpose . . . Learning the purpose does not necessarily disclose what the client might have told the attorney in confidence once the attorney had been retained.

*Evans*, at p. 4.

> **F.    Even If Some Of The Documents Produced By Attorney Clark And Information Sought by Defendants Were At One Time Protected, Plaintiffs Have Waived Any Right To The Relief They Seek.**

> **1.    Introduction**

The Sixth Circuit in *Columbia/HCA Healthcare Corporation Billing Practices Litigation*, 293 F.3d 289, 304 (6th Cir. 2002) held that "[t]here is no dispute that a party may waive the protections of the work product privilege."

> . . . there is no reason to transform the work product doctrine into another 'brush on the attorneys' palette', used as a sword rather than a shield.

Id., at p. 307.  In so holding the Sixth Circuit also stated that "there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege."  Id., p. 306.[9]

Here, Plaintiffs have waived any protection of Attorney Clark's documents and their communications with Attorney Clark by the following:

1.    the filing of this lawsuit, by which they put the allegedly protected information directly in issue;

2.    the voluntarily production by Attorney Clark of the documents and the telephone conversations and settlement discussions Attorney Clark had with the City; and

3.    the failure on the part of Plaintiffs' current counsel to do anything to protect those documents before they were produced by Attorney Clark.

> **2.    Plaintiffs Waived Any Protection When They Commenced This Litigation.**

Once a party asserting a privilege places the information protected thereby in issue when he files a lawsuit, the privilege is lost.  The reason for this is that a plaintiff may not commence

---

[9]As more fully discussed below, the waiver can occur in a number of ways, including placing the protected matter in issue by some affirmative act such as filing a lawsuit, entering into settlement discussions, and even inadvertently producing the documents.

litigation, and then deny the defendants the evidence necessary to defend themselves.

> When the activities of counsel are inquired into because they are at issue in the action before the court, there is cause for production of documents that deal with such activities, though they are 'work product' . . . [and] while Rule 26(b)(3) provides that protection against discovery of the attorney's . . . 'mental impressions, conclusions, opinions or legal theories' shall be provided, such protection would not screen information directly at issue . . .

*Handgards, Inc. V. Johnson & Johnson*, 413 F. Supp. 926, 932 (N.D. Cal. 1976).

> . . . However, exceptions [to privilege] have been made where such information is directly at issue, and the need for its production is compelling . . .  To the extent that legal opinions and observations made by counsel for plaintiffs suggest reasons to bring or not bring a suit . . ., they are to be produced

*Bird v. Penn Central Co.,* 61 F.R.D. 43, 47 (E.D. Pa. 1973).   (Discovery permitted because documents related to statute of limitations/laches defenses.)

> . . . because the matters discussed in the requested documents are central to a resolution not only of plaintiff's claims, but also of defendant's defense, the need for discovery outweighs the need for secrecy.

*Cleveland Indians Baseball Co. v. United States of America*, 1998 U.S. Dist. Lexis 1459; 98 - 1 U.S. Tax Cos. (CCH) PSO, 197.   Also see *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975); *American Standard, Inc. v. Bendix Corp,* 80 F.R.D. 706 (W.D. MS. 1978); *Rutgard v. Haynes*, 185 F.R.D. 596 (S.D. Cal. 1999); *4 Moore, Fed. Practice*, P. 26.64 [4], at 26-447 (2d. Ed. 1975).

When Plaintiffs commenced this litigation they made a claim of denial of access to the courts and defendants raised the defenses of statute of limitations and laches.  In short, the nature of that claim and those defenses place the activities of Plaintiffs' former counsel directly at issue in this case, and, for that reason, any protection previously afforded Attorney Clark's documents

has been waived.

### 3.    Any Protection Was Waived When Attorney Clark Voluntarily Produced The Documents And Had Telephone Conversations And Settlement Discussions With The City.

After receiving the subpoena, Attorney Clark produced his file to Defendants only after careful analysis and deliberation, and he did not do so inadvertently.[10]  Indeed, he did so more than 1 ½ months after they had been subpoenaed, and only after he had discussed the subpoena with Plaintiffs' counsel and made a careful analysis of which documents he believed should and should not be produced.  In short, Attorney Clark's production of the documents was deliberate and purposeful, and it was made 1 ½ months after they had been subpoenaed.  Neither he nor Plaintiffs' current counsel filed a motion for protective order within that 1 ½ months.  Moreover, during the course of Attorney Clark's representation of Plaintiffs he had several contacts with the City in which he discussed his representation of Plaintiffs and conducted settlement negotiations.  In doing so, any protection attaching to the nature of Attorney Clark's representation of Plaintiffs and the content of the settlement negotiations has been waived. *Columbia*, at p. 304.

### 4.    By Choosing Not To Take Any Action After Learning Of The Subpoena Plaintiffs Have Waived Any Protection.

Even if Plaintiffs' counsel did not receive a copy of the first subpoena when it was served on Attorney Clark, they were aware of it no later than mid-February 2004.  No documents were produced by Attorney Clark until mid-March 2004, 1 month later.  During that 30 days Plaintiffs did <u>nothing</u> to prevent Attorney Clark from meeting his obligation to comply with the subpoena.

---

[10]Even if this had been an inadvertent production, a waiver has occurred.  *Carter v. Gibbs*, 709 F.2d 1450 (Fed. Cir. 1990).  "Granting the motion would do more than seal the bag from which the cat has already escaped."

They have waived their right to attempt to do so now.

**G.    No Limitation Should Be Placed On Defendants' Use Of The Documents Produced By Attorney Clark.**

Plaintiffs move this Court to issue an order by which Defendants are directed "to return all copies [of Clark's files] and not use any information derived from those files for any purpose." (See p. 7 of Motions.) That request must be denied because it is not supported in fact or law.

First, as discussed above, <u>all</u> of the documents received from Attorney Clark were properly obtained. Second, <u>none</u> of those documents contain any information protected by the attorney-client privilege, and a large number of the other documents were never protected. Indeed, many are copies of public records. Third, for those documents that may have at one time been protected, that protection has been waived. Finally, Plaintiffs cite absolutely no legal authority for their "exclusionary" request, which, if granted, would preclude Defendants from using highly relevant and unprotected information to defend themselves in this action.

**H.    The Depositions Of Attorney Clark And Plaintiffs Should Not Have Been Suspended.**

Plaintiffs move to suspend their own and Attorney Clark's depositions on the grounds that they and Attorney Clark would be subjected to questions regarding about privileged information and the relationship between Attorney Clark and Plaintiffs. Neither ground is valid. With respect to the former, Plaintiffs have waived any work product protection that may have existed, and, as discussed below, they have also waived the attorney-client privilege with respect to their communications with Attorney Clark. With respect to the latter, Defendants have the absolute right to question Plaintiffs and Attorney Clark about non-privileged aspects of their relationships that relate to issues in this case, and Plaintiffs cite no authority to the contrary.

A party may waive the attorney-client privilege by the voluntary disclosure of their privileged communications with counsel, as well as by conduct that implies a waiver of the privilege.   *Columbia*, at 294.  Moreover, once that waiver has occurred, the entire privilege has been waived.

> . . . we reject the concept of selective waiver in any of its forms.

Id., at 302.  Here, Plaintiffs have, as they did with respect to Attorney Clark's alleged work product, voluntarily waived the attorney-client protection of their communications with Attorney Clark.  They did so:

1. by commencing this litigation, which put their denial of access to the courts claim and the defenses of statute of limitations and laches directly in issue;

2. when Attorney Clark had contacts with the City during which he disclosed the fact and nature of his representation of Plaintiffs; and

3. when Attorney Clark entered into settlement discussions with the City.

Accordingly, Plaintiffs have waived the right to argue that Defendants may not question them and Attorney Clark about matters that might have been protected by either the attorney-client privilege or work product doctrine.   Moreover, there is no legitimate basis to preclude Defendants from questioning them about non-privileged aspects of their relationship.

The reasons given by Plaintiffs for the Motion are pretexts, and relate back to the scheduling conference in this case that occurred on January 22, 2004.  At that conference Plaintiffs' counsel insisted upon a short discovery period and a November 2004 trial date despite the significant 2004 personal and professional commitments of Defendants' counsel.  The schedule insisted upon by Plaintiffs' counsel was accepted by this Court, and Defendants' counsel were informed that, if necessary, other members of their respective firms could attend

the depositions etc. if they could not.[11]  Now, ironically, the professional commitments of one of

Plaintiffs' counsel, Mr. Gerhardstein, made it difficult for him to attend Plaintiffs' depositions[12]

or be able to try this case in November 2004.  Under these circumstances Plaintiffs could hardly

use Mr. Gerhardstein's professional scheduling conflicts as the basis of their motion to suspend

Plaintiffs' and Attorney Clark's depositions or vacate the scheduling order.  For that reason,

Plaintiffs have raised a frivolous argument to suspend those depositions (which has now already

been accomplished), and will attempt to use the suspension of the depositions as one of the

reasons to vacate the scheduling order.[13]  The unfairness and inequities to Defendants of this

situation are so obvious they do not need to be stated.

    **I.**    **Defendants Have Done Nothing To Justify An Award Of Costs And Expenses Against Them, And The Cases Cited by Plaintiffs In Support Of Their Request Do Not Come Close To Supporting Their Position.**

The cases cited by Plaintiffs in support of their argument that the cost of litigating the

Motions should be imposed on Defendants do not involve facts even close to what happened in

this case.[14]  In *Mann v. University of Cincinnati*, 152 F.R.D. 119 (S.D. Ohio 1993), Aff'd 1997

WL 280188 (6th Cir. 1997), counsel for the defendant was sanctioned because he had: (1)

---

[11]When that order was issued Defendants' counsel with considerable difficulty and expense re-arranged their schedules in order to be able to meet the terms of the order.

[12]Mr. Laufman was available to attend Plaintiffs' depositions, and Mr. Gerhardstein has two other partners in his firm.

[13]Despite all of this Defendants were willing to agree to a new scheduling order with a trial date after May 15, 2005 and suspend Plaintiffs' and Attorney Clark's depositions if Plaintiffs would agree to merely provide by April 16, 2004 a privilege log that had been due since February 14, 2004. Plaintiffs refused to do so.  That privilege log, as well as a significant amount of other discovery, has yet to be produced.

[14]The other case cited by Plaintiffs, *Spencer v. Steinmen*, 179 F.R.D. 484 (E.D. Pa. 1998), is directed to Defendant Cramer and his counsel, who will respond to the request for sanctions against them by separate memorandum.

secretly obtained the documents sought through the subpoena <u>prior</u> to the subpoena due date, "thereby giving plaintiff's counsel no time to object;" and (2) during a hearing concealed this fact from the Court.  Neither of those occurred in this case.  More specifically, no documents were obtained from Attorney Clark until long <u>after</u> the due date and at least 30 days after Plaintiffs' counsel were aware of the subpoena.  Further, Defendants' counsel have made no misrepresentations to or concealed anything from the Court.

Likewise, *Richmond Medical Center for Women v. Hicks*, S.D. Ohio Case No. 1:03-MC-46, Doc. 14 does not support Plaintiffs' position.  The complaining party in *Hicks*, Dr. Haskell, was a "stranger to the litigation," being neither a fact witness or a retained expert.  Here, Attorney Clark is not a stranger to the litigation, but rather someone who has knowledge of relevant facts that could be essential to Plaintiffs' claims and one or more of the defenses of Defendants.  Second, in *Hicks* the issuing party did not take reasonable steps to avoid imposing an undue burden or expense on Dr. Haskell.  No such assertion has been made by Attorney Clark because Defendants' counsel have made every effort to make the burden and expense on Attorney Clark as minimal as possible.  And third, the subpoena sent to Dr. Haskell was overbroad, which is not the case here.  The documents requested of Attorney Clark relate directly to persons and issues that are subjects of this litigation.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' Motions to Quash And For A Protective Order must be denied.

Respectfully submitted,


 s/Brian E. Hurley
Brian E. Hurley (0007827)
Robert J. Gehring (0019329)
Crabbe, Brown & James LLP
Attorneys For Defendant William Nuss
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202-4359
(513) 784-1525 - telephone
(513) 784-1250 - facsimile
Bhurley@cbjlawyers.com
Rgehring@cblawyers.com



s/Randolph H. Freking
Randolph H. Freking, Esq. 0009158
Freking & Betz
Counsel For Defendant Cramer
215 East Ninth Street, 5th Floor
Cincinnati, Ohio 45202
(513) 721-1975 - telephone
(513) 651-2570 - facsimile
email: rfreking@frekingandbetz.com



 s/Lawrence E. Barbiere
Lawrence E. Barbiere, Esq. 0027106
Schroeder, Maundrell, Barbiere & Powers
Counsel For Defendants Schappa and City
 of Sharonville
119 Mason Road, Suite 110
Cincinnati, Ohio 45249-3703
(513) 583-4210 - telephone
(513) 583-4203 - facsimile
email: lbarbiere@schroederlaw.com

s/Thomas T. Keating
Thomas T. Keating, Esq. (0011359)
Keating, Richie & Swick
Counsel For Defendants Schappa and City
 of Sharonville
8050 Hosbrook, Suite 200
Cincinnati, Ohio 45236
(513) 891-1530 - telephone
(513) 891-1537 - facsimile
tkeating@krslawyers.com


### CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2004, a copy of the forgoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties my access this filing through the Court's system.


s/Brian E. Hurley
Brian E. Hurley


\\theserver\firmdocs\NUSS\memooppmotquashsub.wpd