**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA  KAMMEYER, et al.** | : | **Case No. C-1-01-649** |
| **Plaintiffs** | : | **Spiegel, J.** |
| | | **Black, MJ.** |
| **vs.** | : | |
| | | **PLAINTIFFS' OBJECTIONS TO** |
| **CITY OF SHARONVILLE, et al.** | : | **MAGISTRATE'S ORDER DENYING** |
| | | **PLAINTIFFS' MOTION FOR** |
| **Defendants** | : | **PROTECTIVE ORDER AND MOTION** |
| | | **TO QUASH SUBPOENAS SERVED ON** |
| | : | **PLAINTIFFS' FORMER ATTORNEY** |
| | | **(DOC. 163)** |

Plaintiffs respectfully submit these objections to the magistrate judge's order of June 14, 2004 (the "June 14 order") (Doc. 163) denying plaintiffs' motion for a protective order and motion to quash subpoenas which had been served upon plaintiffs' former attorney Ravert ("Jay") Clark.  (Doc. 145).  Plaintiffs request that this court modify the June 14 order as follows:

1.  quash the subpoenas issued to attorney Clark;

2.  prohibit the deposition of attorney Clark;

3.  order the return of all copies of attorney Clark's files and prohibit use of the information obtained by subpoena for any purpose at trial.

## I.    Introduction

Plaintiffs were formerly represented in this case by attorney Jay Clark.  Defendants have taken the bold step of subpoenaing attorney Clark's file and seeking to take his deposition.  (Doc. 150, Ex. G).  This is no different from attempting to obtain the file or taking the deposition of current trial counsel.  Plaintiffs filed a motion pursuant to Fed. R. Civ. Proc. 45 and 30(d)(4) seeking to quash two subpoenas which had been served upon attorney Clark.  (Doc. 145).

Plaintiffs also moved for a protective order to protect from disclosure the privileged contents of the improperly obtained subpoenaed materials. The Defendants responded in opposition. (Doc. 150). Plaintiffs subsequently filed a brief reply in which they advised the court of the need for the Court to review the attorney file in question prior to ruling on the motions. (Doc. 156). Counsel further advised the court of issues which were causing his extremely limited availability and requested permission to supplement the reply. (Doc. 156). All parties subsequently met with the District Court on May 18, 2004 and a revised case calendar was agreed upon. (Doc. 160). The magistrate judge then denied plaintiffs' motions without the benefit of the requested supplemental reply. (Doc. 163). Plaintiffs now file this objection to the magistrate judge's order denying their motion for protective order and motion to quash the subpoenas served upon their former attorney. (Doc. 163).

## II.    District Court Standard of Review

Ruling on all motions in this matter was originally reserved by the District Court given the complicated nature of this case. (Doc. 22). Discovery issues were referred to the magistrate judge. (Doc. 134). Congress has vested magistrate judges with authority to determine pretrial matters subject to final determination by the district court. 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. Proc. 72(a). A party may file objections to the magistrate's resolution of the issue. Fed. R. Civ. Proc. 72(a). Under 28 U.S.C. § 636(b)(1)(A), a district court typically reviews magistrate orders in pretrial matters under a clearly erroneous standard.

> Notwithstanding any provision of law to the contrary, a judge may designate a magistrate to hear and determine any pretrial matter pending before the court. . . A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

Civil Rule 72(a) specifically states that "the district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."

Despite the statutorily imposed review of non-dispositive issues under the standard of clearly erroneous, the Sixth Circuit Court of Appeals has held that questions of whether documents are protected by the attorney-client privilege or the work product doctrine is a mixed question of law and fact, subject to de novo review." *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 293-294 (6th Cir. 2002) (citing *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998) (citing *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 253-254 (6th Cir. 1996))).

Thus, the magistrate judge's order of June 14 should be reviewed de novo. The District Court should grant the plaintiffs' motion for protective order and motion to quash the subpoenas served upon their former attorney, order the return of all copies of attorney Clark's files and prohibit the use of information obtained through Clark's files in violation of attorney-client and work-product privileges at trial

## III.    Factual and Procedural Background

Plaintiffs were initially represented by attorney Jay Clark in regard to their potential claims against the City of Sharonville and its employees arising from the ongoing cover-up surrounding the murder of their mothers. Attorney Clark withdrew and plaintiffs were subsequently represented by undersigned counsel. Undersigned counsel requested that attorney Clark forward a copy of his file. Attorney Clark delivered approximately 67 pages of documents. Counsel believed they possessed the entire case file as held by attorney Clark.

These objections address two subpoenas which were served upon attorney Clark in violation of Fed. R. Civ. Proc. 45. The first subpoena was issued January 28, 2004 by counsel for defendant Cramer. (Doc. 145, Ex. A). That subpoena required attorney Clark to produce "all documentation referring, concerning or relating to your clients Patricia Kammeyer and James Wright." This subpoena was not served on Plaintiff's counsel as required by Rule 45.

In approximately mid-February, attorney Clark contacted attorney Paul M. Laufman by telephone and advised him that he had received the subpoena issued by counsel for defendant Cramer. (See declaration of attorney Paul M. Laufman, attached hereto as Exhibit A). Attorney Laufman advised attorney Clark that plaintiffs had not been served with a copy of the subpoena and were not aware of it. Attorney Laufman asked attorney Clark to forward a copy. No copy of the subpoena was forthcoming from attorney Clark.

Attorney Clark advised attorney Laufman that he was unable to locate his case file. Attorney Clark advised that the copy of the file which had been provided to undersigned counsel was likely the only copy as he was unable to locate any other copies or portions of his file. Attorney Laufman suggested to attorney Clark that he was under no obligation to respond to the subpoena as he had no documents in his possession. Attorney Clark acknowledged that analysis. Attorney Laufman assumed that attorney Clark had forwarded his entire file and was in possession of no further documents responsive to the subpoena.

Attorney Clark requested that attorney Laufman make a copy of the file which had been provided and return it to attorney Clark. Attorney Laufman advised that he did not want to take such action without considering the matter further. Attorney Laufman specifically indicated to attorney Clark that plaintiff would like want to raise an objection to the subpoena. Attorney

Laufman requested that attorney Clark forward a copy of the subpoena.  No copy of the
subpoena was provided at that time.

Counsel for plaintiffs reasonably relied upon the information provided by attorney Clark
and took no further action as they awaited a copy of the subpoena since attorney Clark indicated
he was in possession of no responsive documents.  Counsel's reliance upon attorney Clark's
assertions is supported by attorney Clark's letter of March 12, 2004.  (Doc. 150, Ex. F).  In that
letter, attorney Clark confirms the mid-February conversation and requests a copy of his file
prior to March 19, 2004.  Counsel did not respond to attorney Clark's request for a copy of his
file as counsel believed that the file was privileged.

Unbeknownst to plaintiffs, attorney Clark was apparently still in possession of a copy of
his file.  Not only had he located a copy of his file, he was apparently in possession of far more
documentation that he originally produced to the undersigned.  Still unbeknownst to new counsel
and prior to the March 19, 2004 deadline set forth in his letter, attorney Clark provided hundreds
of pages of his file to counsel for defendant Cramer on March 14, 2004.  A motion has been filed
contemporaneous to these objections to provide these documents to the court under seal.  (See
sealed docs at Bates 001-251).  None of the documents produced by attorney Clark were
forwarded to plaintiffs' counsel at that time by either attorney Clark or defense counsel.

On March 20, 2004 a subpoena was issued by counsel for defendant Nuss commanding
attorney Clark's appearance at a deposition.  (Doc. 151, Ex. G).  The subpoena commanded
attorney Clark to produce all documents and files related to the plaintiffs.  This subpoena  was
not served upon plaintiffs prior to its service upon attorney Clark.  On April 5, 2004, plaintiffs
faxed a letter to all defense counsel requesting an explanation for the improper subpoenas to
attorney Clark and demanding that any documents produced be returned immediately.  (Attached

hereto as Exhibit B).  A copy of the subpoena served upon defendant Clark was provided to plaintiffs on that date.  (Doc. 150, Ex. G).

On April 8, 2004, attorney Clark forwarded nearly 300 additional pages of documentation to Counsel for defendant Cramer.  (See sealed docs at Bates 252-534).  These documents were similarly not forwarded to plaintiffs' counsel by either attorney Clark or counsel for defendant Cramer.  On April 13, 2004, counsel for defendant Cramer finally delivered to plaintiffs' counsel copies of all documents which had been provided by attorney Clark.  (Attached hereto as Exhibit C).  Plaintiffs filed their initial motion to quash the subpoenas and motion for protective order on April 15, 2004.

## IV.    Objections to the Magistrate Judge's Order

There are three reasons to modify the magistrate judge's order.  First, the subpoenas were pursued in violation of Rule 45 as they were not provided to plaintiffs' counsel prior to their service upon defendant Clark.  Second, the material sought by the subpoena was protected by either the attorney-client privilege or as attorney work product.  Third, there has been no waiver of any such privilege.

### A.    The subpoenas were pursued in violation of Civil Rule 45 as they were not provided to plaintiffs' counsel prior to their service upon defendant Clark

The secret subpoenas are unenforceable because they were not served on plaintiffs prior to their service upon attorney Clark in violation of Fed. R. Civ. Proc. 45 (b)(1).  Rule 45 makes clear that "Prior notice of any commanded production of documents . . . before trial shall be served on each party . . ." Fed. R. Civ. Pro. 45(b)(1).  "Prior notice" means prior to the service of the subpoena rather than prior to production.  *Biocore Medical Technologies, Inc. v. Khosrowshahi*, 181 F.R.D. 660 (D. Kan. 1998).  *See also, Schweizer v. Mulvehill*, 93 F. Supp.2d 376 (S.D. NY 2000); *Anderson v. Government of Virgin Islands*, 180 F.R.D. 284 (Virgin Islands

1998) (mere notice not sufficient; notice must be prior to service); *Spencer v. Steinman*, 179

F.R.D. 484 (PA 1998) (paralegal's issuance of subpoena without prior notice to all parties

violated Rule 45 and because supervising attorney signed the subpoenas and directed them to be

issued, he was directly liable for the violation).  The purpose of prior notice is to "'afford other

parties an opportunity to object to the production or inspection, or to serve a demand for

additional documents.'"  Spencer at 488, quoting Fed. R. Civ P. 45 committee note to 1991

amendments.  The subpoenas should be quashed due the failure to provide notice to plaintiffs'

counsel prior to service upon attorney Clark.

**B.    The magistrate judge erroneously held that attorney Clark's file was not protected by the attorney-client privilege or work product doctrine**

    1.    The file of attorney Jay Clark

But for two letters to his clients, attorney Clark apparently forwarded his entire case file

to the defense counsel in case in which he had previously represented the plaintiffs.  A review of

the 534 pages produced reveals the expected contents of an attorney's personal case file.  The

file consists of documents which clearly show the inner working and though process of an

attorney working a case.  The file contains numerous pages of handwritten notes documenting

telephone calls, contacts with parties and witnesses, and a list of steps to take during the

litigation. (See e.g. sealed docs at Bates 018-022, 048, 051-065, 077-083).  Attorney Clark's

thoughts regarding theories of liability and possible defenses are made clear by the research

which he performed. (See e.g. sealed docs at Bates 253-336).  Various documents make clear

that attorney Clark was conducting an asset analysis. (See e.g. sealed docs at Bates 023-036,

048-E, 066, 114-251, 338-534).  Taken as a whole, the documents produced to defense counsel

clearly depict attorney Clark's mental impressions, conclusions, opinions, and legal theories

concerning the litigation.

2.    The magistrate judge applied the incorrect legal standard

The magistrate judge began his analysis by outlining the burden born by the plaintiffs in this context.  The magistrate judge first notes that Fed. R. Civ. P. 26(c) permits the limitation of discovery when justice requires such a limitation "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  (Doc. 163, p. 2).  The magistrate judge next notes that Fed. R. Civ. P. 45(c)(3)(A)(iv) permits the court to quash or modify an subpoena directed to a non-party if it subjects the person to undue burden.  The magistrate judge concludes by stating that "plaintiff have not demonstrated that permitting discovery to go forward will subject them to an undue burden."  This is clearly erroneous.

Plaintiffs' motion never alleged that either plaintiffs or attorney Clark would be subject to undue burden.  Rather, the thrust of plaintiffs' motion was that the subpoenas in question sought material that was privileged as either attorney-client communication or attorney work product.  Civil Rule 45(3)(A)(iii) states that, "the court by which a subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of privileged or other protected matter and no exceptions or waiver applies."  The question for the court was whether the documents in question are privileged.  Both subpoenas at issue seek the files of plaintiff's former attorney.  It seems axiomatic that the files of plaintiffs' former attorney remain just as protected as those of their current counsel.  Both subpoenas seek documents protected by either the attorney-client privilege or the attorney work product doctrine.

3.    Attorney-client privilege

The attorney-client privilege has long been recognized as necessary to promote justice by encouraging a client to communicate completely and honestly with his attorney.  *In re Antitrust*

*Grand Jury*, 805 F.2d 155, 162 (6th Cir.1986). This allows a client to assist in the preparation of his defense without fear that his own admissions can be used against him through the compelled testimony of his attorney, including his former attorney. *See In re Grand Jury Subpoena* Dated Oct. 22, 2001, 282 F.3d 156, 160 (2nd Cir. 2002) (quashing subpoena requesting attorney to testify about statements made by former client).

Claims of attorney-client privilege are "narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit." *In re Grand Jury Proceedings* Dated October 12, 1995, 78 F.3d 251, 253-54 (6th Cir. 1996). The privilege "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *In re Antitrust Grand Jury*, 805 F.2d at 162, (citing Fisher v. United States, 425 U.S. 391, 403 (1975)). The Clark file contains one document which is clearly covered by attorney-client communication. (Sealed docs at 048). Therefore, both subpoenas should be quashed.

4. Work product doctrine

The work product doctrine is an independent source of immunity from discovery, distinct from and broader than the attorney-client privilege. *In re Antitrust Grand Jury*, 805 F.2d at 163; *see also Vilastor-Kent Theater Corp. v. Brandt*, 19 F.R.D. 522, 524 (S.D.N.Y.1956). Where only confidential communications are protected by the attorney-client privilege, the work product doctrine protects any documents prepared in anticipation of litigation by or for the attorney. *In re. Antitrust Grand Jury*, 805 F.2d 155, 163 (1986).

The policies and purposes of the work product doctrine differ from those underlying the attorney-client privilege. The purpose of the attorney-client privilege is to encourage the complete disclosure of information between an attorney and his client. The privilege belongs to

9

the client, and it is intended to secure a cloak of privacy for confidential communications made

in the course of seeking or rendering legal advice.  *See Burlington Industries v. Exxon Corp.*, 65

F.R.D. 26, 32 (D.Md.1974).  The work product doctrine, on the other hand, is aimed at

protecting the effectiveness of a lawyer's trial preparations by immunizing such materials from

discovery.  *Kirkland v. Morton Salt Co.*, 46 F.R.D. 28 (N.D.Ga.1968).  The doctrine assures an

attorney that his private files shall remain free from intrusions of opposing counsel in the

absence of special circumstances.  *Burlington Industries*, 65 F.R.D. at 33.  Moreover, while only

the client may assert the attorney-client privilege, either the attorney or the client may invoke the

work product doctrine. *In re Special September 1978 Grand Jury*, 640 F.2d 49 (7th Cir. 1980).

Federal Rule of Civil Procedure 26(b)(3), which covers the scope of the attorney-work

product privilege, states that in requiring the discovery of certain materials, the court "shall

protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of

any attorney or other representative of a party concerning the litigation."  The Supreme Court

outlined the contours of the work product doctrine in the seminal case of *Hickman v. Taylor*, 329

U.S. 495 (1946).  The court was clearly cognizant of the inherent danger posed by permitting the

disclosure of an attorney's work product:

> 'Historically, a lawyer is an officer of the court and is bound to work for the
> advancement of justice while faithfully protecting the rightful interests of his
> clients.  In performing his various duties, however, it is essential that a lawyer
> work with a certain degree of privacy, free from unnecessary intrusion by
> opposing parties and their counsel.  Proper preparation of a client's case demands
> that he assemble information, sift what he considers to be the relevant from the
> irrelevant facts, prepare his legal theories and plan his strategy without undue and
> needless interference.  That is the historical and the necessary way in which
> lawyers act within the framework of our system of jurisprudence to promote
> justice and to protect their clients' interests.  *This work is reflected, of course, in
> interviews, statements, memoranda, correspondence, briefs, mental impressions,
> personal beliefs, and countless other tangible and intangible ways—aptly though
> roughly termed by the Circuit Court of Appeals in this case as the 'work product
> of the lawyer.'*  Were such materials open to opposing counsel on mere demand,

much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

\* \* \*

[A]n attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. . . falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

329 U.S. at 510-11, 67 S.Ct. at 394 (emphasis added).

The Court in *Hickman* acknowledged that the work product exists in interviews, statements, memoranda, correspondence, briefs and "countless other tangible and intangible ways" which reflect the mental impressions, personal beliefs, and legal theories of the attorney. The documents turned over in the present case are precisely the work-product contemplated by the Court in *Hickman*. Taken as a whole, the documents turn over to the defense demonstrate the mental impression and strategies of attorney Clark. They make clear the steps which attorney Clark was taking (see e.g. sealed docs at Bates 018-022, 048, 051-065, 077-083), his thoughts on liability and defenses (see e.g. sealed docs at Bates 023-036, 048-E, 066, 114-251, 253-336, 338-534), and at one point set forth his step-by-step strategy for the litigation (see e.g. sealed docs at Bates 056).

The documents handed over to defense counsel by prior attorney Clark were privileged under the attorney-work product doctrine. The court should quash the subpoenas, grant the Plaintiff's motion for protective order, and order the return of all documents.

**C.    The magistrate judge erroneously found that plaintiff had waived any privilege**

The magistrate judge held, without discussion, that in the event any of the documents in question were protected, any privilege had been waived.  That is clearly erroneous.  In order for waiver to occur, the actions of either attorney or client show a "conscious disregard" for the privilege.  *In re. Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981).  "In other words, to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.  *Id.*

1.    Counsel's reasonable reliance upon assertions by attorney Clark does not waive any privilege

Counsel herein reasonably expected to limit the future use of attorney Clark's file based upon the assertions of attorney Clark.  Defendant Cramer, in Defendant's Memorandum in Opposition to Motion to Quash Subpoenas and Motion for Protective Order, argues that Clark did not produce any documents in response to the subpoena until March 14, 2004, and that Plaintiffs' counsel were aware of the subpoena no later than mid-February 2004.  (Doc. 150).  However, when Clark talked to Plaintiff's counsel Paul Laufman in February 2004, Clark stated that he had given Plaintiffs' counsel all of his files and that he needed to get a copy for the purposes of the subpoena.  (*See* Ex. A, Declaration of Paul Laufman).  Before Plaintiffs' counsel could reply to Clark, he found not only the files he had originally sent to Plaintiffs' counsel, but also additional files never turned over to Plaintiff's counsel, and promptly sent them to defense counsel.  Plaintiffs' counsel detrimentally relied on the statements of Clark, assuming that he did not have any attorney work-product to turn over to the Defendants.  Thus, Plaintiffs' counsel reasonably failed to perceive the need to file a motion for protective order or a motion to quash to stop Clark from complying with the subpoena, due to the reliance on Clark's statements that

he did not possess any files in regards to this case.  It can not be argued that counsel showed a

"conscious disregard" for the protected materials.  There has therefore been no waiver and the

documents remain protected.

 2. Attorney Clark's disclosure of his case file to defense counsel does
 not waive any privilege

Defendants argue that Clark produced his file only after careful analysis and deliberation,

and he did not do so inadvertently, thus waiving attorney-work product.  (Doc. 150, p. 13).

Defendants further state that Clark only produced documents after one and a half months had

passed since the subpoena, and only after Clark discussed the subpoena with Plaintiffs' counsel.

Defendants' counsel relied on *Carter v. Gibbs*, a case in which the government inadvertently

appended an internal memorandum protected by attorney-client privilege to a motion filed before

the court.  *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990).  The court found that

inadvertent, although voluntary disclosure of confidential information to a third party constitutes

waiver of attorney-client privilege.  *Id.*

The *Carter* case is distinguishable.  While the Defendants argue that the disclosure by

Clark was not inadvertent, and only after careful analysis and deliberation, the Defendants have

failed to address the standard of a voluntary act.  The court in *Carter* wanted to convey that when

an attorney inadvertently, yet voluntarily discloses information to a third party, it is no longer

protected by attorney-client privilege.  The basis of the court's reasoning was that the attorney

voluntarily attached the internal memorandum to a motion, and it does not matter if it was

inadvertent.  In the present case, Plaintiffs' counsel made no such voluntary act.  Plaintiff's

counsel detrimentally relied on the fact that Clark stated he did not have any documents from the

present case.  (*See* Ex. A, Declaration of Paul Laufman).  It is this detrimental reliance that

caused the Plaintiffs not to file a protective order or motion to quash, because of the mistaken belief that Clark did not have any work-product concerning this case.

    3.    Plaintiffs do not waive any privilege merely by commencing litigation

Defendants' argument that once a party asserting a privilege places the information in issue by filing a lawsuit, thereby losing the privilege, is without merit. By merely commencing a lawsuit, attorney-client privilege and work-product privilege are not lost. The cases relied upon by Defendants have no application to the present case. In *Handsgards, Inc. v. Johnson & Johnson*, the court held that calling one's own attorney to the witness stand in order to demonstrate that prior lawsuits were pursued on the basis of competent legal advice necessarily waived the attorney-client privilege as to the communications relating to the issue of the good-faith prosecution of the prior lawsuits. *Handsgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 930 (N.D. Cal. 1976). The court in *Handsgards* found that an attorney's opinion work product is discoverable where such information is directly at issue and the need for production is compelling. However, the present case is not remotely similar to the *Handsgards* decision. The Plaintiffs are not placing the opinions of the undersigned at issue, and further, the defendants have failed to produce a compelling reason for the production of attorney files.

    4.    A defendant's assertion of a certain defense does not waive any privilege

Defendant relies on *Bird v. Penn Central Co.*, for the proposition that the no privileged exists where one party possesses information which supports a defense. *Bird v. Penn Central Co.*, 61 F.R.D. 44, 46 (1973). In *Bird*, the relevant inquiry was into what the plaintiffs knew or should have know concerning their rescission action, and when the plaintiffs knew or should have known the grounds alleged for the rescission action. While the defendants herein are arguing statute of limitations as a defense, they fail to meet the standards set forth in *Bird*. The

relevant standard is whether the moving party has demonstrated a substantial need.  Defendant have failed to provide any substantial need for documents contained in attorney Clark's file.  Nor have then shown an inability to obtain its equivalent by other means.  The documents should be considered protected under the attorney-work product doctrine.

 **V.     Conclusion**

For the foregoing reasons, Plaintiffs' respectfully requests that the District Court should set aside the magistrate judge's order denying the Plaintiffs' motions to quash the subpoena to the former attorney and protective order.  The Plaintiffs further requests that the Court

1.  quash Cramer's subpoena and Nuss' subpoena issued to attorney Clark;

2.  prohibit the deposition of attorney Clark;

3.  grant an order requiring the return of all copies of attorney Clark's files and prohibiting use of the information obtained by subpoena for any purpose at trial.

**Respectfully submitted,**

  s/ Alphonse A. Gerhardstein
Alphonse A. Gerhardstein # 0032053
Trial Attorney for Plaintiffs
Paul Laufman  #0066667
Attorney for the Plaintiff
617 Vine Street, Suite 1409
Cincinnati, Ohio 45202
(513) 621-9100
(513) 345-5543 fax
agerhardstein@laufgerhard.com
plaufman@laufgerhard.com

**Certificate of Service**

I here by certify that on July 1, 2004, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an

appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

     s/ Paul M. Laufman
Attorney for Plaintiffs