### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PATRICIA KAMMEYER, et al.  :  **CASE NO.: C-1-01-649**

    **Plaintiffs,**  :  **Judge Spiegel**
              **(Magistrate Black)**
  **vs.**      :

**CITY OF SHARONVILLE, OHIO, et al.** :

    **Defendants.**  :

### JOINT MEMORANDUM OF DEFENDANTS IN RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER OF JUNE 14, 2004 (AFFIDAVIT OF RAVERT J. CLARK ATTACHED)

Defendants City of Sharonville, Ohio, Schappa, Homer, Nuss and Cramer, by and through counsel, jointly respond to Plaintiffs' Objections ("Objections") to Magistrate Judge's Order of June 14, 2004 ("Order").

## I. INTRODUCTION

The reason Plaintiffs are fighting so hard to prevent discovery of Attorney Clark is that they know that the information and documents he has provided and will provide will conclusively establish that all of their claims must be dismissed as a matter of law. To be blunt, this is not about protecting privileged documents or information. It is, plain and simple, about Plaintiffs' attempt to withhold from Defendants information that will put an end to this case. There is an old adage that goes something like this: "If you let me frame the issue, I'll win the argument." The adage is usually true, and it has great relevance to how Plaintiffs are attempting to convince this Court to set aside the Order. The first way Plaintiffs try to inaccurately frame the issue is on page 1 of the Objections where they state that Defendants' attempts to obtain Attorney Jay Clark's file and question him about his relationship with Plaintiffs "...is no different from attempting to obtain the

file or taking the deposition of current trial counsel." In a word, that argument is nonsense. As more fully discussed below and as found by the magistrate judge, there are occasions where the contents of a file of and information known by a party's former attorney are directly relevant to a claim or defense, and, under these circumstances, discoverable. This is precisely that type of case, and Defendants' requests are not even remotely similar to a request of discovery from Plaintiffs' counsel.

The second way Plaintiffs attempt to incorrectly frame the issue is to argue that the Order is subject to *de novo* review. In fact, it is to be reviewed by the "clearly erroneous or contrary to law" standard. While the magistrate judge's ruling would easily survive a *de novo* scrutiny, using that standard of review would be error.[1]

The Order must be upheld because the following findings by the magistrate judge are not clearly erroneous or contrary to law.

1.      Any technical inadequacies in the service of the subpoenas on Attorney Jay Clark "... did not result in any undue prejudice and Defendants have shown that plaintiffs otherwise had notice of defendants' requests for documents and files."[2] (Oder, p.3).

2.      Contrary to Plaintiffs' conclusory and unsupported arguments, Defendants seek documents from Attorney Clark for legitimate and compelling reasons. Those documents contain information that relate directly to Plaintiffs' claim of denial of access to the courts and Defendants' defenses of statute of limitations and laches.

3.      Attorney Jack Clark has not produced even <u>one</u> document protected by the attorney-

---

[1] The cases cited by Plaintiffs involved appellate review of District Courts' decisions in which no magistrate judge was involved.

[2]  Plaintiffs attempt to create issues of fact in this regard by introducing evidence that was not before the magistrate judge and is flatly refuted by Attorney Clark. As discussed below, if this Court considers this evidence it will be subject to mandamus review.

client privilege.[3]

4.    Most of the documents Attorney Clark produced had no protection whatsoever. Indeed, a large number of those documents are public records or merely communications between and among Plaintiffs and their family members.

> "... plaintiffs have not shown that any materials requested or obtained by defendants as a result of the subpoenas issued to Clark were protected by any privilege."

(Order, p.3).

5.    Even assuming some of the documents produced by Attorney Clark had some protection, that protection has been waived.

> "... if [any of the requested or obtained documents were] protected, that privilege has been waived."

(Order, p. 3).

6.    No limitation may be placed on Defendants' use of the documents and information produced by Attorney Clark because they were properly obtained, none contain any information protected by the attorney-client privilege, most were not protected at all, and any protection of the other documents has been waived.  Moreover, Plaintiffs cite to no legal authority to support their "exclusionary" request.

> "... plaintiffs have presented no grounds for the return of materials obtained through discovery ..."

(Order, p.3).

7.    Plaintiffs failed to present any grounds to preclude Defendants from taking the

---

[3]  Despite making assertions that Defendants have obtained from Attorney Clark documents protected by the attorney-client privilege, Plaintiffs still do not cite to any such documents.  There is a good reason for this - none were obtained.  In fact, the only documents that at one time were protected by the attorney-client privilege - Attorney Clark's letters to Plaintiffs of March 23, 1999 - were not produced by Attorney Clark.

depositions of Attorney Clark or from questioning Plaintiffs about their relationship with Attorney Clark.

> "    plaintiffs have presented no grounds ... for suspending further discovery."

(Order, p. 3).

Nowhere in the Motions to Quash, etc. ("Motions") did Plaintiffs even mention, let alone discuss, their real motivation for filing the Motions - their counsels' decision to attend depositions in another case on the same days the depositions of Plaintiffs were scheduled and their difficulty in abiding by the scheduling order that they had insisted on. More specifically, after insisting that this case be set for trial in 2004 and ignoring the significant personal and professional commitments of Defendants' counsel, one of Plaintiffs' counsel learned just prior to filing the Motions that his professional commitments made it difficult for him to meet the very discovery cut-off and trial dates set in this case that he had insisted on and, as predicted by Defendants, this was the basis for Plaintiffs' request that the Scheduling Order of January 27, 2004 be vacated.

## II.    THE MAGISTRATE JUDGE'S DECISION IS OWED GREAT DEFERENCE

Plaintiffs state that this Court's review of the Order is *de novo*. They are wrong. It is to be reviewed by the "clearly erroneous or contrary to law standard."

Pursuant to Fed.R.Civ.P. 72(a), a magistrate judge's decision on a non-dispositive motion may be set aside only if it is "clearly erroneous or contrary to law." Numerous courts have explained that the deference required by Rule 72(a) assumes particular significance in the discovery context: "Under this deferential standard of review, magistrate judges are considered to have broad discretion over discovery matters, and a party seeking to overturn a magistrate judge's discovery ruling bears a heavy burden." *Hudson v. General Dynamics*, 186 F.R.D. 271 at 273 (D.Conn. 1999) (internal quotations omitted). *See* also, *Doe v. Marsh*, 899 F.Supp. 933, 934 (N.D.N.Y. 1995)

("Pursuant to this highly deferential standard of review, magistrate judges are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if the discretion is abused."); *Schrag v. Dinges*, 144 F.R.D. 121, 123 (D.Kan. 1992) ("Because a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will overrule the magistrate's determination only if this discretion is clearly abused.") Further, this standard of review applies to all factual determinations made by the magistrate judge, as well as to all *inferences* the magistrate judge has drawn from facts. *Franklin County Convention Facilities Auth. v. American Premier Underwriters, Inc.* 240 F.3d 534, 541 (6th Cir. 2001).

A magistrate judge's decision must not be disturbed unless its underlying determination "either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary date." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d. Cir. 1992.) Moreover, it is error the part of the District Court to consider new evidence and materials not presented to the magistrate judge.[4] Id. at 93. Indeed, the Third Circuit held that, if the District Court considers such evidence, that is an appropriate basis for mandamus review. Id.

In *United States v. Perry*, 908 F.2d 56 (6th Cir. 1990) the Sixth Circuit has probably provided the most succinct and easily understood statement of the test it uses to determine if it will uphold a District Court's reversal of a magistrate judge's ruling on a non-dispositive matter. In that case the Sixth Circuit held that clear error means an error so obvious that it "strike[s] us as wrong with the force of a five-week old, unrefrigerated dead fish." Plaintiffs cannot meet that burden because the magistrate judge's ruling is reasonable, logical and in accordance with the law.

---

[4] In connection with their argument that they have not waived whatever protection had attached to Attorney Clark's file, Plaintiffs attempt to introduce through the declaration of Attorney Paul Laufman evidence never presented to the magistrate judge.

III.    **STATEMENT OF FACTS**

    A.    **Introduction**

Plaintiffs' statement of the factual background is grossly incomplete and, in part, inaccurate.

Further, as stated above, it improperly includes "facts" never presented for review by the magistrate

judge.  Indeed, approximately half of the entire statement of the factual background is devoted to

these "new" facts.  For that reason, it is necessary for Defendants to provide a compete and accurate

statement of facts.

    B.    **Defendants Already Have Discovered Sufficient Facts To Establish That All Of Plaintiffs' Claims Are Barred By The Statute of Limitations And At Least One Claim Fails On Its Merits.**

        1.    **Introduction**

Consistent with their attempt to incorrectly frame the issue before the Court, Plaintiffs

completely ignore the facts that support Defendants' assertions for the need for information from

Attorney Clark and his file.  The magistrate judge correctly found that these facts established that

need.  Moreover, the facts also established that Defendants' attempts to obtain the information and

file is <u>nothing</u> at all like an attempt to obtain discovery from Plaintiffs' current counsel because it's

the timing and scope of the conduct of the former counsel, Attorney Clark, that is at issue here, and

<u>that</u> is why the documents and information are needed.

        2.    **The Facts**

On pages 3-5 of their Joint Memorandum in Opposition to the Motion, Defendants set forth

a detailed statement of the relevant facts.  Defendants will not repeat them in their entirety here, but

incorporate them as if fully stated.  Briefly, those facts establish the following:

        a.    On the day of the murders of Marie Wright Schuholz and Starla Burns,

Plaintiff Kammeyer had already concluded that Albert Schuholz was responsible for the murders.

      b.    Within two months after the murders Plaintiffs had already concluded that the investigation of the murders was being conducted by a "dirty cop" (Defendant Cramer) who was trying to coverup Albert Schuholz's involvement in the murders.

      c.    In 1997 and 1998 Plaintiffs had full knowledge of the investigation conducted by the Sharonville Police Department into how Defendant Cramer has handled the murder investigation, had stated that they "always knew" that Defendant Cramer was involved in a coverup, and had said they intended to sue Cramer.

      d.    In March, 1999 Plaintiffs contacted Attorney Clark for the purpose of retaining him to represent them in connect6ion with claims they may have had against the City of Sharonville and/or its employees, and in early 1999 they retained him for that purpose.

> "From March 23, 1999, until March 8, 2001, I was retained to represent James Wright and Patricia Kammeyer with respect to pursuing <u>any available claims</u> as a result of the homicide of Marie Schuholz on May 7, 1981."

(*See* par. 1, Clark Affidavit, attached hereto, emphasis added.)

      e.    This action was not filed until September 25, 2001, which is:

- more than twenty years after Plaintiffs had first concluded that Cramer was a "dirty cop" and was involved in a coverup;

- more than two years after Plaintiff Kammeyer wrote that she and the rest of her family "always knew" that Cramer was involved in a coverup;

- more than two years after Plaintiff Kammeyer wrote that she intended to commence litigation as a result of the alleged coverup; and

- more than two years after Plaintiffs had retained legal counsel to represent them in connection with their possible claims against Sharonville and/or its employees.

(*See* Exhibits "A"-"D", attached to Defendants' Memorandum In Opposition To The Motions.)

The longest statute of limitations for any of Plaintiffs' claims in this action is two years, and Plaintiffs must establish why, in light of the above facts, their claims are not time-barred. The <u>only</u> way that can happen is for the Plaintiffs to show that there was a legitimate reason for their delay in bringing suit, and the information known by and in the files of Attorney Clark go directly to the heart of that issue.

### C.    <u>The Fist Subpoena</u>

### 1.    **Plaintiffs Were Aware Of The First Subpoena At Least 30 Days <u>Before Attorney Clark Produced Any Documents</u>.**

On January 28, 2004, Randy Freking, counsel for Defendant Cramer, had a subpoena *duces tecum* served on Attorney Clark. Plaintiffs' counsel were aware no later than mid-February, 2004 that the subpoena had been served on Attorney Clark. (*See* Clark letter of 3-12-04, attached to the Defendants' Memorandum In Opposition To The Motions as Exhibit "F".)

Attorney Clark did not produce <u>any</u> documents in response to the subpoena until March 14, 2004. (*See* Exhibit "E" attached to Defendants' Memorandum In Opposition To The Motions). Between mid-February, 2004 and March 14, 2004 Plaintiffs took <u>none</u> of the required steps (e.g. filing a motion for a protective order or a motion to quash) to attempt to stop Attorney Clark from complying with the subpoena.

Based upon the facts presented to him, the magistrate judge made the following finding:

> "... the alleged failure of defendants to serve plaintiffs with the copies of the subpoenas issued to Clark did not result in undue prejudice. Defendants have shown that plaintiffs have otherwise had notice of defendants' intentions to take Clark's deposition and of their requests for documents and files."

(Order, p. 3). To challenge that finding Plaintiffs now attempt through Attorney Laufman's Declaration to introduce new "facts" to explain why Plaintiffs took no steps to prevent Attorney

Clark from disclosing information or producing documents to Defendants. Under these circumstances, it is error for this Court to consider this new evidence, and the consideration by this Court of the evidence is subject to mandamus review.

In addition to it being error to consider the new evidence, it is important to point out that Attorney Laufman's Declaration is in direct conflict with Attorney Clark's statement about his conversations with Attorney Laufman. According to Attorney Clark, he advised Attorney Laufman that he, Clark, still had part of his (Clark's) file. More specifically, Attorney Clark had <u>not</u> advised Attorney Laufman that he "had forwarded his entire file to Attorney Laufman's office and that he was no longer in possession of any documents which would be subject to the subpoena." (*See* par. 3 and 4, Clark Affidavit, attached hereto.)

### 2. Attorney Freking Did Not Request And Attorney Cark Did Not <u>Produce Any Document Protected By The Attorney-Client Privilege.</u>

Before Attorney Clark produced any documents Attorney Freking made clear that documents protected by the attorney-client privilege should not be produced, and Attorney Clark complied with that directive.

> "... As you directed in your letter of March 4, 2004, I have not
> produced anything I believe to be privileged."

(*See* Exhibit "E" attached to Defendants' Memorandum In Opposition To The Motions.) Moreover, contrary to Plaintiffs' conclusory assertion, a review of the documents produced by Attorney Clark makes clear that he is correct - he did not produce <u>any</u> documents protected by the attorney-client privilege.[5] Finally, as more fully discussed below, most of the other documents produced by Attorney Clark never had <u>any</u> protection from discovery, and, in any event, any protection provided the other documents has been waived.

---

[5] Defendants again point out that Plaintiffs do not cite to <u>even one</u> document to support their inaccurate assertion.

### D.    The Second Subpoena

When Plaintiffs filed their Motions they incorrectly asserted that the "second subpoena also was never served on Plaintiffs' counsel." (*See* p. 2 of Motions.)  That assertion was false, causing Plaintiffs to admit its falsity and dismiss its request that sanctions be imposed on Defendant Nuss. Further, Plaintiffs' counsel was served with the notice of Attorney Clark's deposition on March 30, 2004, 27 days <u>before</u> Attorney Clark's deposition.  Both the notice and second subpoena, as well as correspondence to Attorney Clark, make clear that by the second subpoena Defendant Nuss was not attempting to obtain any document or information that is truly privileged. (*See* Notice of Second Subpoena and Exhibit "G" attached to the Defendants' Memorandum In Opposition to The Motions.)  Finally, not only have no protected documents been produced in response to the second subpoena - <u>no</u> documents whatsoever have been produced in response to that subpoena.  Under these circumstances, the second subpoena has absolutely no relevance to any issue before this Court.

## IV.    RELEVANT PROCEDURAL POSTURE

### A.    The January 22, 2004 Scheduling Conference

At the scheduling conference of January 22, 2004, Plaintiffs' counsel argued that it was necessary that this case go to trial in 2004.  Defendants' counsel, two of whom were new to the case, stated that their personal and professional commitments would make such an aggressive schedule very difficult for them to meet, and they suggested a trial date of just one to two months later (i.e. in January or February of 2005).  However, that was unacceptable to Plaintiffs' counsel, who said that other attorneys in the respective firms of Defendants' counsel could attend depositions, hearings etc.[6]  The Court agreed with Plaintiffs' counsel, and issued a Scheduling Order by which a July 1,

---

[6]Plaintiffs' counsel also committed to making full and timely responses to the discovery requests that had been served on Plaintiffs by each of the Defendants.  Plaintiffs reneged on that commitment, and Defendants still have not received most of the discovery they requested.

2004 discovery cut-off and November 16, 2004 trial were set. Thus, the Court imposed upon the parties a period of 5 months to complete discovery in a case that involves twenty year old facts, dozens of potential witnesses, thousands of documents, and damage claims in the millions of dollars. Out of necessity Defendants were forced to "fast track" discovery, and Plaintiffs almost immediately deposed two Defendants Schappa and Cramer and scheduled, but cancelled, the deposition of Defendant Nuss. However, because of the Motions and Objections, Defendants still have not been able to depose <u>any</u> witnesses.

After January 22, 2004 Defendants' counsel, with difficulty and at significant expense, re-arranged their commitments in order to comply with the scheduling order. Plaintiffs then moved to have their and Attorney Clark's depositions suspended and later moved to have the Scheduling Order vacated. Why? Because:

1.    Even though the depositions of Plaintiffs in this case had since March 4, 2004 been scheduled by agreement to be taken during the week of April 19, 2004, Attorney Gerhardstein wanted to attend depositions in another case during that week;[7] and

2.    Attorney Gerhardstein's professional and personal commitments made it difficult for him to comply with the deadlines and trial date set forth in the January 27, 2004 Scheduling Order.

As predicted, Plaintiff's sought a change of Scheduling Order, and a revised Order was issued on May 21, 2004.

**B.    <u>The Motions</u>**

On May 28, 2004, Plaintiffs' filed the Motions that are the subject of the Order. After all papers relating to the Motions had been filed, the magistrate judge categorically and explicitly rejected <u>each</u> argument made by Plaintiffs. On July 1, 2004, Plaintiffs filed the Objections.

---

[7]Mr. Gerhardstein's co-counsel, Paul Laufman, was available to attend these depositions, and he has two other members of his firm who could attend one or more of these depositions.

## V.    ARGUMENT

### A.    The Order Must Be Affirmed Because The Magistrate Judge Was Not Clearly Erroneous When He Held That Plaintiffs Had Not Met Their Burden.

The magistrate judge correctly held that the burden of persuasion on a motion to quash a subpoena and for a protective order is borne by the movant and Plaintiffs had not met this burden. One of the reasons for this holding is that Plaintiffs had done nothing more than rest on the blanket and conclusory statements that the documents and information are protected.  In re: *Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 454-55 (6th Cir., 1983), cert denied sub nom, *Durant v. United States*, U.S. 1246 (1984).

> ". . . plaintiffs have not shown that any materials requested or obtained by defendants as a result of the subpoena issued to Clark were protected by any privilege . . ."

(Order, p. 3.)

A great deal of the Objections is nothing more than Plaintiffs' statement of how important the protection provided by the attorney-client privilege and work-product doctrine is.  Defendants do not in any way dispute this rather obvious statement of the law.  However, when it comes to applying the law to the facts, Plaintiffs fail.  Once again, Plaintiffs do nothing more than make blanket and conclusory assertions that the documents and information at issue are protected.  In fact, Plaintiffs have yet again refused to even provide a real privilege log for Attorney Clark's documents they possess.  Further, Plaintiffs have not even attempted to establish, let alone establish, that the magistrate judge's findings are clearly erroneous.[8]

Finally, with respect to any documents that may have at one time been protected, by the Objections Plaintiffs themselves have established, albeit inadvertently, one of the reasons why the

---

[8]For example, despite the fact that Plaintiffs know which documents Defendants have received from Attorney Clark (534 pages), they make no attempt to establish for even one of those documents how the magistrate judge's decision was clearly erroneous.

protection is waived.  More specifically, the evidence referred to above directly supports Defendants' argument that Plaintiffs' claims are barred by the statute of limitations, and certain of the Attorney Clark's documents already produced solidify this argument even more.  However, as Plaintiffs state, the remaining documents relate directly to Attorney Clark's representation of Plaintiffs "regarding theor[ies] of liability and possible defenses" about precisely the same alleged claims that are the subject of this lawsuit.  (Objections, p. 7.)  Indeed, Attorney Clark himself states that in March, 1999 he was retained to represent Plaintiffs Kammeyer and Wright "to pursu[e] <u>any</u> available claims as a result of the homicide of Marie Schuholz on May 7, 1981."  Defendants respectfully submit that, because these documents relate to Plaintiffs' claims against the City and/or City employees and the documents were either created before September 25, 1999 or relate to pre-September 25, 1999 conduct concerning those claims, they must be produced.  To permit Plaintiffs to hide evidence that their claims are time-barred is not only clear error; it permits Plaintiffs to perpetrate a fraud on the Court and Defendants.

**B.    The Order Must Be Affirmed Because The Magistrate Judge Was Not Clearly Erroneous When He Held That Defendants' Reasons For Seeking <u>The Documents And Information Were Legitimate And Compelling.</u>**

Plaintiffs have alleged in part that their rights to access to the courts have been denied.  In addition, Defendants have asserted that Plaintiffs' claims are barred the relevant statutes of limitations and/or laches.  As discussed above and below, the documents and information sought from Attorney Clark relate directly to both issues, and, for that reason, the Order is not clearly erroneous.

**C.    The Magistrate Judge's Finding That Many Of The Clark Documents Were <u>Never Protected Is Not Clearly Erroneous.</u>**

The Magistrate held that "plaintiffs have not shown that any of the materials requested or obtained as a result of the subpoenas issued to Clark were protected by any privilege."  (Order, p.

3.)  That holding is not clearly erroneous, in part because any claim that certain of the documents are protected does not even have a modicum of credibility.

## PUBLIC RECORDS

Many of the Clark documents are merely copies of pubic records (e.g. those documents relating to the assets owned by Albert Schuholz and those relating to the legal action taken by the Estate of Marie Schuholz against Albert Schuholz).  None of these documents are protected, and the magistrate judge's holding that they are not protected is not clearly erroneous.

## DOCUMENTS DISCLOSING WHEN AND
## WHY PLAINTIFFS RETAINED ATTORNEY CLARK

Many of the Clark documents merely set forth when and why Plaintiffs retained Attorney Clark's services.  Those documents are not protected, and the magistrate judge's decision in this regard is not clearly erroneous.

> The attorney-client privilege has never been construed to prevent the disclosure that a person obtained the attorney for a particular purpose . . .  Learning the purpose does not necessarily disclose what the client might have told the attorney in confidence once the attorney had been retained.

*Evans v. Atwood*, 177 F.R.D. 1, at 4 (D.D.C. 1997).

## THE E-MAILS BETWEEN AND AMONG
## MEMBERS OF PLAINTIFFS' FAMILY

A number of the Clark documents are nothing more than communications between and among family members.  (Bates Nos. 300013-17, 300024-25, 3000139-145 and 3000101.  See Privilege Log attached hereto as Exhibit "A.") While Defendants agree that these e-mails may well be "private" or "confidential" as Plaintiffs have characterized them, they are not protected, and the magistrate judge's ruling that they are not protected is not clearly erroneous.

**D.    The Magistrate Judge's Finding That, Even If Some Of Attorney Clark's Documents And Information Were At One Time Protected, The Protection Was Waived Is Not Clearly Erroneous.**

On page 3 of the Order the magistrate judge, after carefully reviewing the <u>facts</u> presented to him, decided that ". . . if [any of Attorney Clark's documents were] protected, . . . the privilege has been waived."  That decision was not only not clearly erroneous; it was correct.

**1.    Introduction**

The Sixth Circuit in *Columbia/HCA Healthcare Corporation Billing Practices Litigation*, 293 F.3d 289, 304 (6th Cir. 2002) held that "[t]here is no dispute that a party may waive the protections of the work product privilege."

> . . . there is no reason to transform the work product doctrine into another 'brush on the attorneys' palette', used as a sword rather than a shield.

Id., at p. 307.  In so holding the Sixth Circuit also stated that "there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege."  Id., p. 306.[9]

Here, Plaintiffs have waived any protection of Attorney Clark's documents and their communications with Attorney Clark by the following:

1.    the filing of this lawsuit, by which they put the allegedly protected information directly in issue;

2.    the voluntarily production by Attorney Clark of the documents and the telephone conversations and settlement discussions Attorney Clark had with the City; and

3.    the failure on the part of Plaintiffs' current counsel to do anything to protect those documents before they were produced by Attorney Clark.

---

[9]As more fully discussed below, the waiver can occur in a number of ways, including placing the protected matter in issue by some affirmative act such as filing a lawsuit, entering into settlement discussions, and even inadvertently producing the documents.

### 2.     Plaintiffs Waived Any Protection When They Commenced This Litigation.

Once a party asserting a privilege places the information protected thereby in issue when he files a lawsuit, the privilege is lost.  The reason for this is that a plaintiff may not commence litigation and then deny the defendants the evidence necessary to defend themselves.

> When the activities of counsel are inquired into because they are at issue in the action before the court, there is cause for production of documents that deal with such activities, though they are 'work product' . . . [and] while Rule 26(b)(3) provides that protection against discovery of the attorney's . . . 'mental impressions, conclusions, opinions or legal theories' shall be provided, such protection would not screen information directly at issue . . .

*Handgards, Inc. V. Johnson & Johnson*, 413 F. Supp. 926, 932 (N.D. Cal. 1976).

> . . . However, exceptions [to privilege] have been made where such information is directly at issue, and the need for its production is compelling . . .  To the extent that legal opinions and observations made by counsel for plaintiffs suggest reasons to bring or not bring a suit . . ., they are to be produced

*Bird v. Penn Central Co.,* 61 F.R.D. 43, 47 (E.D. Pa. 1973).  (Discovery permitted because documents related to statute of limitations/laches defenses.)

> . . . because the matters discussed in the requested documents are central to a resolution not only of plaintiff's claims, but also of defendant's defenses, the need for discovery outweighs the need for secrecy.

*Cleveland Indians Baseball Co. v. United States of America*, 1998 U.S. Dist. Lexis 1459; 98 - 1 U.S. Tax Cos. (CCH) PSO, 197.  Also see *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975); *American Standard, Inc. v. Bendix Corp,* 80 F.R.D. 706 (W.D. MS. 1978); *Rutgard v. Haynes*, 185 F.R.D. 596 (S.D. Cal. 1999); *4 Moore, Fed. Practice*, P. 26.64 [4], at 26-447 (2d. Ed. 1975).

Plaintiffs do not in any meaningful or substantive way discuss why Defendants' argument in this regard is wrong.  Rather, consistent with their approach taken throughout the Objections,

Plaintiffs simply talk about how important the protection provided by the work-product doctrine and attorney-client privilege is, and state in completely conclusory terms that Defendants are wrong.

When Plaintiffs commenced this litigation they made a claim of denial of access to the courts and defendants raised the defenses of statute of limitations and laches. In short, the nature of that claim and those defenses place the activities of Plaintiffs' former counsel directly at issue in this case. Ironically, Plaintiffs' assertion that Defendants' discovery of Attorney Clark ". . . is <u>no</u> <u>different</u> from attempting to obtain the file or taking the deposition of current trial counsel" (p. 1 of Objections, emphasis added) actually supports Defendants' position. More specifically, by making this assertion Plaintiffs have now admitted that Attorney Clark was retained in connection with and working on <u>precisely the same legal matters</u> for which their current counsel are retained. That being the case, Plaintiffs have admitted that their claims are time-barred, and their admission buttresses the fact that the magistrate judge's ruling is not clearly erroneous.

> **3. The Magistrate Judge's Holding That Any Protection Was Waived When Attorney Clark Voluntarily Produced The Documents And Had Telephone Conversations And Settlement Discussions With The <u>City Is Not Clearly Erroneous</u>.**

One of the reasons why the magistrate judge found that any protection had been waived is that Attorney Clark voluntarily produced the documents and had settlement discussions with the City. More specifically, after receiving the subpoena, Attorney Clark produced his file to Defendants only after careful analysis and deliberation, and he did so voluntarily. Indeed, he did so more than 1 ½ months after they had been subpoenaed, and only after he had discussed the subpoena with Plaintiffs' counsel and made a careful analysis of which documents he believed should and should not be produced. In short, Attorney Clark's production of the documents was deliberate and purposeful, and it was made 1 ½ months after they had been subpoenaed.

Plaintiffs now challenge Attorney Clark's production of parts of his file by claiming that the

production was not voluntary. That argument is specious. Of course it was voluntary - it was done intentionally by Attorney Clark and only after 1 ½ months of careful analysis and deliberation. What Plaintiffs are really arguing is that only they and their current counsel had the right to waive the protection, but Attorney Clark did not. That argument, too, has no merit. The documents at issue here are the work product of <u>Attorney Clark</u>, drafted and gathered by <u>him</u> in connection with his representation of Plaintiffs. As such, with respect to those documents, Attorney Clark had both the right to invoke and the right to waive any work-product protection they had. *Carte Blanche v. Diners Club International, Inc.*, 130 F.R.D. 28, 32, (S.D.N.Y. 1990) ("However, it seems clear that the attorney may waive the benefit of the privilege because it is the attorney's material, not the client's, receiving protection."); *S.N. Phelps & Company v. Circle K Corp.*, 199 B.R. 92, 99 (Bankr. S.D.N.Y. 1996) ("The work product doctrine protects attorney's materials, and consequently the attorney may waive the benefit of the privilege."); *Data General Corporation v. Grumman Systems Support Corporation*, 139 F.R.D. 556 (Dist. Mass. 1991).

Finally, during the course of Attorney Clark's representation of Plaintiffs he had several contacts with the City in which he discussed his representation of Plaintiffs and conducted settlement negotiations. In doing so, any protection attaching to the nature of Attorney Clark's representation of Plaintiffs and the content of the settlement negotiations has been waived. *Columbia*, at p. 304.

### 4. The Magistrate Judge's Holding That Plaintiffs, By Choosing Not To Take Any Action After Learning Of The Subpoena, Waived Any <u>Protection Is Not Clearly Erroneous.</u>

Another reason why the magistrate judge found that any protection that may have existed had been waived is that Plaintiffs took no action to stop the production by Attorney Clark of his documents. <u>That finding was based on the following facts presented to the magistrate judge.</u>

Plaintiffs' counsel were aware of the first subpoena no later than mid-February 2004. No documents were produced by Attorney Clark until mid-March 2004, 1 month later. During that 30 days Plaintiffs did <u>nothing</u> to prevent Attorney Clark from meeting his obligation to comply with the subpoena, and, <u>based upon those facts</u>, the magistrate judge correctly found that a waiver had happened. That finding was not clearly erroneous.

Plaintiffs now attempt to introduce new "facts" to establish that their current counsel were not aware that Attorney Clark had in his possession any documents relating to Plaintiffs and they had told Attorney Clark that all of the Clark documents are protected. As stated above, Plaintiffs' attempt to introduce these new "facts" is not appropriate and problematic. First, this Court may not consider those "facts," and, if it does, that consideration is subject to a mandamus action. Two, the new "facts" are categorically denied by Attorney Clark.

> **E.    The Magistrate Judge's Holding That Plaintiffs Have Presented No Grounds For Requiring The Return Of Attorney Clark's Files And Prohibiting Use Of The Information Obtained By The Subpoenas For Any Purpose At Trial Is <u>Not Clearly Erroneous.</u>**

Part of the relief Plaintiffs seek is "an order requiring the return of all copies of Attorney Clark's files and prohibiting the use of the information obtained by subpoena for any purpose at trial." Plaintiffs did not cite <u>any</u> legal support for this request in the Motions, and do not cite any in the Objections. The reason for this is simple. None exists.

The magistrate judge correctly rejected this request based on the following grounds. First, as discussed above, <u>all</u> of the documents received from Attorney Clark were properly obtained. Second, <u>none</u> of those documents contain any information protected by the attorney-client privilege, and a large number of the other documents were never protected. Third, for those documents that may have at one time been protected, that protection has been waived. Finally, Plaintiffs cite absolutely no legal authority for their "exclusionary" request, which, if granted, would preclude

Defendants from using highly relevant and unprotected information to defend themselves in this action.

Defendants fully understand why Plaintiffs are so desperate to prevent Defendants from using Attorney Clark's documents and information in connection with the motion for summary judgment that will be filed. The reason they are fighting so hard is that they know the documents and information are fatal to their claims. While that may be a legitimate reason for not wanting to produce them, it is not a legitimate reason for not producing them. Moreover, by prohibiting Defendants from using the documents and information this Court will permit Plaintiffs to continue to prosecute claims that must be dismissed as a matter of law.

## VI.    CONCLUSION

For the reasons stated above, this Court must affirm the magistrate judge's Order of June 14, 2004.

Respectfully submitted,


 s/Brian E. Hurley
Brian E. Hurley (0007827)
Robert J. Gehring (0019329)
Crabbe, Brown & James LLP
Attorneys For Defendant William Nuss
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202-4359
(513) 784-1525 - telephone
(513) 784-1250 - facsimile
Bhurley@cbjlawyers.com
Rgehring@cblawyers.com

s/Randolph H. Freking
Randolph H. Freking, Esq. 0009158
Freking & Betz
Counsel For Defendant Cramer
215 East Ninth Street, 5th Floor
Cincinnati, Ohio 45202
(513) 721-1975 - telephone
(513) 651-2570 - facsimile
email: rfreking@frekingandbetz.com


s/Lawrence E. Barbiere
Lawrence E. Barbiere, Esq. 0027106
Schroeder, Maundrell, Barbiere & Powers
Counsel For Defendants Schappa and City
  of Sharonville
119 Mason Road, Suite 110
Cincinnati, Ohio 45249-3703
(513) 583-4210 - telephone
(513) 583-4203 - facsimile
email: lbarbiere@schroederlaw.com


s/Thomas T. Keating
Thomas T. Keating, Esq. (0011359)
Keating, Richie & Swick
Counsel For Defendants Schappa and City
  of Sharonville
8050 Hosbrook, Suite 200
Cincinnati, Ohio 45236
(513) 891-1530 - telephone
(513) 891-1537 - facsimile
tkeating@krslawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2004, a copy of the forgoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties my access this filing through the Court's system.


s/Brian E. Hurley
Brian E. Hurley