UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

04 OCT 12  AM 10: 07

| | | |
|---|---|---|
| PATRICIA KAMMEYER, et al. | : | NO. 1:01-CV-649 |
| Plaintiff | : | (Judge Spiegel)<br>(Magistrate Judge Black) |
| vs. | : | |
| CITY OF SHARONVILLE, et al. | : | **MOTION TO QUASH SUBPOENA** |
| | | **DIRECTED TO NON-PARTIES** |
| Defendants | : | **MICHAEL K. ALLEN HAMILTON** |
| | | **COUNTY PROSECUTOR, JOHN** |
| | | **JAY, INVESTIGATOR AND TERRY** |
| | | **GAINES (FORMER ASST.** |
| | | **PROSECUTOR)** |

**(HEARING REQUESTED)**

Now come non-parties and movants, Michael K. Allen, John Jay and Terry Gaines, by
and through counsel, and moves this Court to quash the subpoenas issued to them by Plaintiffs,
or ordering such other relief as the Court may deem just and proper. This motion is based on
Fed. Civ. R. 26(c) and 45(c) as set forth in the attached memorandum. Movants herein
respectfully request oral argument. Counsel for non-party movants has communicated with
counsel for Plaintiffs in an attempt to resolve this dispute without the Court's involvement but
given the critical nature of the privileged materials requested, no resolution occurred.

The Hamilton County Prosecutor's Office objects to the disclosure of the documents and
materials and the depositions requested upon the bases stated hereinafter.

Respectfully submitted,

MICHAEL K. ALLEN
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO


/s/ Mark C. Vollman (0007040)
/s/ Christian J. Schaefer (0015494)
Assistant Prosecuting Attorneys
Hamilton County, Ohio
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202
513/946-3144
513/946-3048
513/946-3018 (Fax)


## MEMORANDUM

## I.    INTRODUCTION

This is a civil case in federal court that has been pending for over 3 years in which the

Hamilton Prosecuting Attorney is not nor has ever been a party. Plaintiffs' attorneys are seeking

to obtain by subpoena, the work product of assistant prosecuting attorneys, the grand jury

transcript, and information from an investigator employed by the Hamilton County Prosecuting

Attorney.

Plaintiffs' and their attorneys seek to end Grand Jury secrecy and the work product

doctrine for state prosecutors. Plaintiffs' seek to denigrate, for all time, the role of state

prosecutors and make them subservient to parties litigating issues of money in Federal Court.

Plaintiffs and their attorneys could but apparently have not, conducted their own interviews with

witnesses, and pursued their money damage claims without interfering in the state prosecution of

a murder case.

Plaintiffs seek the disclosure of documents which have already been determined to be

"work product exempt from discovery by the defendant in the murder prosecution." (See Court

order, doc. 40 p. 6 attached as Exhibit D hereto).

The subpoenaed documents are contained in the murder indictment file maintained by

Hamilton County Prosecutor's Office in the case of *State of Ohio v. Albert Schuholz*, Case No. B-

9805045.

## II.    SUBPOENAS

On August 17, 2004, Michael K. Allen was served with a subpoena in his official

capacity as Hamilton County Prosecutor issued by Alphonse Gerhardstein, counsel for plaintiffs

in the above captioned matter. A copy of the subpoena is attached hereto as Exhibit A. It seeks

disclosure of the following documents:

(1) The complete file of all documents except for privileged attorney records
referring or relating to the criminal investigation of the homicides of Marie
Schuholz (Wright) and Starla Burns (Case No.B-9805045) which occurred on or
about May 8, 1981 in Sharonville, Ohio, included but not limited to all
investigative notes, audiotapes and documents made by Rick Gibson, John Jay,
Henry Dreschler, Russell Jackson, John Esther and others;

(2) Produce a transcript of the complete grand Jury proceeding in Case No. B-
9805045 and any other grand jury activity involving the murders of Marie
Schuholz and Starla Burns.[1]

---

[1] The subpoena issued to Michael K. Allen Hamilton County Prosecutor, requests "the
complete file except for privileged attorney records." The affidavit of Richard Gibson attached
as Exhibit E states such are his work product and therefore privileged. At this stage of the
murder prosecution, even providing an inventory or privilege log describing in general the
contents of the prosecutor's file would compromise the state's murder prosecution. The
Prosecutor's Office will seek direction from the Court as to how to identify the documents for

On September 15, 2004, John Jay was served with a subpoena in his official capacity as an

investigator with the Hamilton County Prosecutor's Office, issued by Alphonse Gerhardstein,

counsel for plaintiffs in the above captioned matter. A copy of the subpoena is attached hereto as

Exhibit B. It seeks testimony in the form of a deposition from Mr. Jay and disclosure of the

following protected documents:

> 1. All files and documents in your possession regarding the investigation into the
> 1981 murders of Marie Schuholz (Wright) and Starla Burns.

On September 15, 2004, Terry Gaines was served with a subpoena in his official capacity as a

former prosecuting attorney with the Hamilton County Prosecutor's Office, issued by Alphonse

Gerhardstein, counsel for plaintiffs in the above captioned matter. A copy of the subpoena is

attached hereto as Exhibit C. It seeks testimony in the form of a deposition from Mr. Gaines and

disclosure of the following protected documents:

> 1. All files and documents in your possession regarding the investigation into the
> 1981 murders of Marie Schuholz (Wright) and Starla Burns.

Michael K. Allen, Hamilton County Prosecuting Attorney, John Jay and Terry Gaines

respectfully move this Court to quash the subpoenas issued to each of them by the plaintiffs

based upon state statutes prohibiting the release of certain documents as well as interfering with a

pending state court action and federal law also protecting the confidentiality of such documents.

## III.    BACKGROUND

Plaintiffs have brought a claim in Federal Court against the City of Sharonville alleging a

civil rights action against police officers who are alleged to have conspired to destroy evidence

and cover up facts involving the murders of Marie Wright Schuholz and Starla Barns.

---

purposes of this motion without compromising the murder case.

The murders occurred on May 8, 1981 in Sharonville, Hamilton County, Ohio. The identity of the actual killer is unknown at this time. It is alleged that Albert Schuholz ("Schuholz") arranged for the two women to be murdered and that the named defendants in Plaintiffs' civil rights action conspired to cover-up the murder investigation. Plaintiffs maintain that the former detective for the City of Sharonville, James Cramer had an existing association with Schuholz in which he handled Schuholz's "loan-shark" collections and did not properly investigate the murders. The City of Sharonville and certain current and former Sharonville employees and officials are alleged to have engaged in a "cover-up". (See Order of Sept 5, 2002, T.d. 40).

Schuholz subsequently married Norma Schuholz after the death of his former wife Marie Wright Schuholz. In 1998, Schuholz pled guilty in the United States District Court for the Eastern District of Kentucky for the attempted murder of Norma Schuholz. At the time of his sentencing, the Hon. William O. Bertelsman found Schuholz incompetent and ordered him to the custody of the Attorney General for the State of Kentucky. Schuholz is presently being held at a federal hospital and is receiving treatment. The Sheriff of Hamilton County, Ohio has a holder on Schuholz for him to he extradited to Ohio once he has been restored to competency and been sentenced for the attempted murder. Plaintiffs have not submitted any evidence as to the current mental condition of Schuholz or the identity of the actual killer of Marie Wright Schuholz and Starla Barns. (See Order of Sept 5, 2002, T.d. 40; Affidavit of Richard G. Gibson, Assistant Prosecuting Attorney).

Plaintiffs first filed suit on September 25, 2001 and subsequently filed two amended complaints on October 16, 2001 and September 5, 2003. Plaintiffs first sought production of

documents from the non-party movants, Hamilton County Prosecutor Michael K. Allen, former

Assistant Prosecutor Terry Gaines and an investigator for the Hamilton County Prosecutors

office, John Jay on August 17, 2004 and September 15, 2004 respectively.

The state prosecutors were *never* involved in of these proceedings prior to being served

with subpoenas within the past sixty-days. As such, the non-party movants now have to defend

against producing documents and giving testimony without the benefit of participating in all prior

hearings and motions on requests for documents. Despite the fact that they were not parties, had

not been served with subpoenas, had no notice, and had no opportunity to be heard, this Court

issued an Order containing the following:

> At this time we conclude that the materials relating to the Cramer Cover-up
> Investigation in the possession of the Hamilton County Prosecutor's
> Office must be disclosed to the Plaintiffs. The Court will review the balance of the documents
> in the murder investigation in camera to determine if there is any other material
> that may be relevant to Plaintiffs' Complaint that should be disclosed to Plaintiff
> for any reason.(See Order of Sept 5, 2002, T.d. 40, page 6).

Inexplicably, Plaintiffs' made no request of the non-party movants ( collectively "prosecutors")

during the two years following Judge Speigel's determination, without notice or opportunity to

be heard, that the prosecutors could not protect their "work product" made in anticipation of the

trial of the murder charge against Albert Schuholz.

Counsel for the prosecutors, since they learned that Judge Speigel considered and denied

their right to protect their work product without notice and opportunity to be heard have made

efforts to ascertain the scope of the depositions sought and the necessity of the documents sought

from movants. In response, counsel for Plaintiffs rely on Judge Spiegel's order entered

September 5, 2002, (attached hereto as exhibit D[2]). It appears that this Court, in Plaintiffs' view, determined this issue two years before movants were ever aware that this discovery was being sought from them by Plaintiffs.

This motion to quash is movants first opportunity to argue against the production and testimony being sought and movants are in the unenviable position of having had their issues being decided by this Court without due process guaranteed by the Fifth Amendment to the United States Constitution.

## IV.    ARGUMENT

### A.    Abstention Doctrine Considerations

Whether it is next month or next year, the Hamilton County Prosecutor's Office will prosecute a criminal case against Albert Schuholz for the double murder of Marie Wright Schuholz and Starla Barns. This Court, in resolving this request to depose and obtain documents outlining the prosecutor's work product must preserve for both Mr. Schuholz and the State of Ohio the opportunity to fully and fairly present their cases to a state jury.

The United States Supreme Court established the abstention doctrine to protect state criminal proceedings from interference by the federal judiciary. The principles behind the abstention doctrine were discussed in *Juidice v. Vail*, 430 U.S. 327, 334, 97 S. Ct. 1211, 1217 (1977) as follows:

> As we emphasized in *Huffman*, the "'more vital consideration'" behind the
> Younger doctrine of nonintervention lay not in the fact that the state criminal

---

[2]Judge Speigel's order states unequivocally on page 5 and 6 "that the material pertaining to the Schuholz/Burns murder investigation in possession of the Hamilton County Prosecutor's Office no doubt would be work product exempt from discovery by the defendant in the murder prosecution".

process was involved but rather in "'the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Huffman,* 420 U.S., at 601, quoting *Younger,* 401 U.S., at 44.

This is by no means a novel doctrine. *In Ex parte Young,* 209 U.S. 123 (1908), the watershed case which sanctioned the use of the Fourteenth Amendment to the United States Constitution as a sword as well as a shield against unconstitutional conduct of state officers, the Court said:

"But the Federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court. *Taylor* v. *Taintor,* 16 Wall. 366, 370; *Harkrader* v. *Wadley,* 172 U.S. 148." *Id.,* at 162.

Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is "an offense to the State's interest... likely to be every bit as great as it would be were this a criminal proceeding," *Huffman, supra,* at 604. n12 Moreover, such interference with the contempt process not only "unduly interfere[s] with the legitimate activities of the [State]," *Younger, supra,* at 44, but [**1218] also "can readily be interpreted 'as reflecting negatively upon the state court's ability to enforce constitutional principles,'" *Huffman, supra,* at 604. n13

While the abstention doctrine does not directly apply because the Plaintiffs are not parties to the State Criminal case, the principles behind the abstention doctrine — the notion of comity and respect for state governmental functions — must be considered in determining this motion to quash the subpoena.

These are the same principles that would be at play, should the plaintiffs' attorneys, their notes, records, interviews, and other work product which are the result of the use of the "tongue, pen and head" be subpoenaed to help the state prosecute Albert Schuholz or Albert Schuholz subpoena the same material in order to present a defense to the murder charge. If both

proceedings, under the test from *Younger v. Harris*, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746
(1971), can continue simultaneously because they are independent, they should proceed in an
independent fashion.

Instead of Plaintiffs' developing there own theories of the case and evidence, Plaintiffs
have invited this Court to allow them to rummage through the prosecutor's files and destroy  the
balance between the obligation of the State of Ohio to prosecute a murder case and the rights of
the accused to have a fair trial. This destroys the concepts of comity and respect for state
functions that *Younger v. Harris*, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971). This
Court should use its discretion to protect the state criminal prosecution from the type of
interference that Plaintiffs propose.

The types of interference with Ohio's criminal prosecution are:

1.      Grand Jury Secrecy - Plaintiffs want the grand jury transcript. Grand Jury proceedings
are secret per Ohio Criminal Rule 6(E) and at this point the Court should honor this long-
standing rule. Ohio has a procedure for obtaining a grand jury transcript by application to the
Court of Common Pleas which supervises the Grand Jury. Plaintiffs should be required to follow
the state procedure. See *In Re Special Grand Jury Investigation Concerning Organic
Technologies* 74 Ohio St. 3d 30 (1995); *State v. Coley* 93 Ohio St. 3d 253 (2001). Plaintiff's
make a hollow offer of a "protective order".

The only reason to obtain a transcript of prior sworn testimony is to use it to cross-
examine witnesses at trial. Unless this Court is going to conduct the civil trial in secret, the
protective order offers no relief. And why do Plaintiffs' want the Grand Jury transcript? If not
for impeachment during trial, it is because they have failed to conduct their own witness

interviews, develop their own theories of the case, and independently conduct the civil litigation. Finally, if the Grand Jury transcript is disclosed outside the state procedure, under Ohio law it is likely that arguments will be made that it has become a public record and subject to disclosure to the public. *State ex Rel Gannet Newspapers v. Petro* 80 Ohio St. 3d 261 (1997).

2.      Discovery - Ohio does not have open file discovery in criminal cases. Instead, for witness lists, documents and tangible items, and reports of examinations and tests, there is reciprocal discovery. The prosecutors' duty under Ohio Criminal Rule 16(C) is to disclose certain items depending upon the criminal defendants agreement to provide similar items to the prosecutor. Even if there is a protective order, Albert Schuholz will be able to learn the state's witness list, the reports of examinations and tests, and documents and tangible things in possession of the state without subjecting himself to reciprocal discovery. In this federal case, Plaintiffs must prove that Albert Schuholz committed the double murder to show that Sharonville Police covered it up. If Plaintiffs examine the work product, take depositions of the prosecutors, and examine all of the records maintained by the prosecutors, prior to presenting there case, Albert Schuholz in defending against the murder charge will know that the prosecutor have no evidence beyond that presented by Plaintiffs in this case.[3] That knowledge will prejudice the states criminal prosecution because Albert Schuholz will not have to provide a witness list, documents and tangible evidence, or reports of examinations and tests conduct for him prior to their presentation at the Criminal Trial. (See Affidavit of Richard Gibson)

---

[3] Albert Schuholz was originally a defendant in the federal case and was a party defendant at the time of Judge Speigel's September 5, 2002 order that the Hamilton County Prosecutor's Office disclose its murder file.

3.    Pre-Trial Publicity - A prosecutor in a criminal case cannot use pretrial publicity to unfairly to prejudice an accused. If the Plaintiffs' civil case goes to trial and the grand jury transcript, testimony of the prosecutors, and evidence and statements developed by the prosecutors is admitted, short of conducting a secret trial, there is no way to protect the prospective criminal jury pool from exposure publicity about the matter. See Code of Professional Responsibility, DR 7-107.

4.    Trial Strategy - Finally the most important thing a criminal prosecutor brings to a criminal case are his thoughts. Unlike civil cases, most often a criminal prosecutor has little concept of what defense the accused may offer until it is presented at trial. Because of the Fifth Amendment there are no pretrial depositions of the accused to learn his theory of the case, his proposed testimony, and in many instances even the witnesses the defense will call. The items created by the criminal prosecutor, the "intangible things, the results of the [prosecutors] use of his tongue, his pen, and his hand" are the only tools to offset the advantage our system gives to the accused in a heightened burden of proof and permitted element of surprise. Revelation of those items will be highly prejudicial to a successful prosecution.

**B.    The Testimony and Production of Documents Sought by the Subpoenas Issued to Non-Party Movants are within the protections of both the Attorney-Client Privilege and the Work-Product Doctrine.**

Instead of creating their own work product, Plaintiffs are seeking the prosecutors work product, their files, and their knowledge on a *pending* criminal case, a pending murder indictment no less. Specifically, Plaintiffs are requesting the following information:

1) From Hamilton County Prosecutor Michael K. Allen, Plaintiffs are seeking the "production of the complete file of all documents except for privileged attorney record referring or relating to criminal investigation of the

homicides of Marie Schuholz (Wright) and Starla Burns (Case No. B-9805045) which occurred on or about May 8, 1981 in Sharonville, Ohio, including but not limited to all investigative notes, audiotapes and documents made by Rick Gibson, John Jay, Henry Dreschler, Russell Jackson, John Esther and others;" and to "produce a transcript of the complete grand jury proceeding in Case No. B-9805045 and any other grand jury activity involving the murders of Marie Schuholz and Starla Burns.

     2) From movants Mr. Terry Gaines[4], a former assistant prosecuting attorney and John Jay, an investigator with the Hamilton County Prosecutor's office, Plaintiffs are seeking testimony as well as "(a)ll files and documents in [their] possession regarding the investigation into the 1981 murders of Marie Schuholz (Wright) and Starla Burns.

These requests upon the prosecutors are both unprecedented and unusual in that Plaintiffs are seeking discovery about a criminal case for a civil case when that criminal case is still pending. The appropriate standard in this instance with which to analyze the merits of Plaintiffs request while balancing the concerns of a pending criminal case which concerns matters of attorney-client privilege and work-product is set out in *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) nd its progeny.

The work product doctrine arises out of the need to provide an attorney with a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). It protects "intangible things, the results of the lawyer's use of his tongue, his pen and his head, for his client." *Hickman v. Taylor*, 153 F.2d 212, 223 (3d Cir. 1945), aff'd, 329 U.S. 495 (1947). It provides an attorney with a "zone of privacy" within which to think, plan, weigh facts and legal theories, and prepare a case. *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 142-43 (D. Del. 1982) (citing *Costal States Gas*

---

    [4]Even though Mr. Gaines is no longer an assistant prosecutor, having been retired, he still has knowledge and information that is imputed to his successors now in the position to prosecute Albert Schuholz.

*Corp. v. Department of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980)); *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136 (D. Del. 1977). The Ohio Supreme Court in *State ex rel Jackson v. Steckman*, explained that "It is difficult to conceive of anything in a prosecutor's file, in a pending criminal matter, that would not be either material compiled in anticipation of litigation of a specific criminal proceeding or in personal trial preparation of the prosecutor".

The work product doctrine is intended to aid trial preparation, most frequently as a bar to discovery in civil litigation, but "its role in assuring the proper functioning of the criminal justice system is even more vital," for "fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

The holding in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), in which counsel was seeking depositions of opposing counsel is instructive. The *Shelton* Court held that:

> [t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and cost of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent.

While the prosecutors are not technically opposing counsel in the present case; however, their reasons and argument regarding protected information are tantamount to that of counsel in *Shelton*, in so far as there is a pending criminal case and much, if not all, of the information being

sought by Plaintiffs, exceeds the scope of what is allowable in discovery of criminal cases (*See generally Ohio Revised Code Criminal Rule 16*). *See also Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (addressing the work product doctrine stating, "Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared  or formed by an adverse party's counsel in the course of his legal duties.  As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims."); *Marco Island Partners v. Oak Development Corp.*, 117 F.R.D. 418, 420 (N.D. Ill. 1987) (recognizing that the deposition of opposing counsel "provides a unique opportunity for harassment; it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness"). Indeed, movants maintain that the same basic principles govern the instant attempts to depose the non-party former prosecuting attorney and the Investigator.

All of the materials and documents maintained in the Prosecutor's office file were either prepared and/or compiled by Richard Gibson in anticipation of preparing for and successfully prosecuting the case against Albert Schuholz for aggravated murder.  The disclosure of the information would greatly compromise the prosecution of Albert Schuholz. (Affidavit of Richard Gibson)

### C.    Procedure for Resolving Work product claims between Parties

If the Prosecutors were parties, there work product would be protected by the procedure set out in *Toledo Edison vs. GA Technologies, Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988), the Sixth Circuit of Appeals adopted a detailed procedure for litigating such work product claims:

In order to adjudicate a claim of work product immunity under Fed.R.Civ.P.26(b)(3), a court must follow this sequence of steps:

1. The objecting party must make the claim that the materials have been prepared in anticipation of litigation or for trial; [Done herein.] (See Affidavit of Richard Gibson)

2. The party requesting the materials must then show and the court must find that they are (1) relevant to the subject matter of the litigation and (2) not privileged; [Not done herein.]

3. The burden then shifts to the objector to show (1) that the materials were in fact prepared in anticipation of litigation or for trial, (2) that the material was prepared by or for the party or the party's representative, including attorney, consultant, surety, indemnitor insurer, or agent; [Done herein.]

4. The burden then shifts to the requester to show (1) he has a substantial need of the materials to prepare his case and (2) he is unable without substantial hardship to obtain the substantial equivalent of the materials by other means; [Not done herein.]

5. Even if step four is met, the objector can still prevent disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation.

Everything that Plaintiffs want is clearly trial preparation materials as defined in

F.Civ.26(b)(3). Therefore, pursuant to that rule, they are exempt from discovery absent a

showing that petitioner has substantial need of them in the preparation of his case, and that he is

unable without undue hardship to obtain the substantial equivalent of the materials by other

means.

While the Hamilton County Prosecutor is not a party to the instant case, it is helpful in

resolving this situation. Plaintiffs have not satisfied their burden of demonstrating at a minimum

that they are unable to obtain the represented information by other means.

Plaintiffs have merely subpoenaed these documents; no made any claim of substantial need or unavailability from other sources has been demonstrated. It is difficult to conceive of a situation where the need for the protection of work product of prosecutors is more critical.

Plaintiffs have presented no indication of why he needs the materials or why the substantial equivalent of the material sought cannot be had from other means. Plaintiffs could simply arrange interviews with the witnesses to the events. Nothing is presented to indicate hardship or need by Plaintiffs. Plaintiffs are asking for the notes of prosecutors. These obviously contain "the mental impressions, conclusions, opinions, or legal theories" of the prosecutors. Fed. Civ. R.P. 26(b)(3) provides:

> ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The purpose behind the work-product doctrine is to protect the adversary relationship and give a lawyer a "zone of freedom" in which to plan trial strategy without fearing disclosure to an opponent. *United States v. Nobles*, 422 U.S. 225, 238 (1975). This Court should deny access to the Prosecutors files in a pending murder indictment.

## C. The Hamilton County Prosecutor is not at liberty to produce Grand Jury transcripts or information associated with the Grand Jury Proceeding.

The Ohio Rules of Criminal Procedure, like their federal counterparts, make the grand jury proceedings secret. See Ohio Criminal Rule 6(E) and Federal Criminal Rule 6(e).

The Ohio Supreme Court in *State vs. Greer*, 66 Ohio St.2d 139 (1981) set out the Ohio rule on grand jury secrecy and disclosure as follows:

> Grand jury proceedings are secret, and an accused is not entitled to inspect grand
> jury transcripts either before or during trial unless the ends of justice require it and
> there is a showing by the defense that a particularized need for disclosure exists
> which outweighs the need for secrecy. (Paragraph three of the syllabus in *State v.*
> *Patterson*, 28 Ohio St.2d 181, 57 O.O.2d 422, approved and followed.)

Even when the criminal proceedings end, the prosecutor in Ohio has no authority to release grand

jury proceedings. The Ohio Grand Jury is under the control and direction of the Court of

Common Pleas. *State ex rel Ney vs. Allen*, 64 Ohio App3d 574 (1990).

Similarly, the United States Supreme Court has explained in *Douglas Oil vs. Petro Stops*, 441

U.S. 211 99 S.Ct. 1667 (1979) that:

> "We consistently have recognized that the proper functioning of our grand jury
> system depends upon the secrecy of grand jury proceedings."

The Court went on in *Douglas Oil* to hold that the burden rests upon the person seeking

disclosure to demonstrate that the need for disclosure outweighs the public interest in secrecy.

Plaintiff's subpoenas to "produce a transcript of the complete grand jury proceedings in

Case No. B-9805045 and any other grand jury activity involving the murders of Marie Schuholz

and Starla Barns.

The Ohio Supreme Court has recognized the importance of keeping grand jury testimony

secret. Only the Court that supervised the grand jury can authorize the release of the records.

"Such disclosure can be ordered only after the court carefully weighs the need to maintain the

secrecy of the grand jury proceedings against petitioner's need for the information and

determines that justice can only be done if disclosure is made." *Petition for Disclosure of*

*Evidence*, 63 Ohio St. 2d 212, 218; 407 N.E.2d 513 (1980). The person seeking disclosure must

establish a "particularized need" for the information that outweighs the need for secrecy.

Examples of particularized need include, to impeach a witness, to refresh a witness's

recollection, to test the credibility of a witness and similar needs. *Wurth v. Emro Marketing Co.*,

125 Ohio App. 3d 494, 500; 708 N.E.2d 1057 (Lucas Co. App. 1998).

Therefore, if the plaintiff seeks production of Grand Jury testimony, the plaintiff must

petition the Court of Common Pleas, Hamilton County, Ohio for an order releasing the

testimony.


## IV.    CONCLUSION

Based upon the foregoing, this Court should quash the subpoenas issued for Michael K.

Allen Hamilton County Prosecutor, John Jay, Investigator And Terry Gaines (Former Asst.

Prosecutor). The Hamilton County Prosecutor respectfully requests an order under Fed. Ci. R.

26(c)(1) that the discovery sought should not be allowed.


Respectfully submitted,

MICHAEL K. ALLEN
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO

/s/Mark C. Vollman, 0007040P
/s/ Christian J. Schaefer 0015494P
Assistant Prosecuting Attorneys
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202
513/946-3144

-18-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served by upon each party or attorney of record in the proceedings by ordinary U.S. mail or electronically on this 12ᵗʰ day of October, 2004.

/s/Mark C. Vollman 0007040
Assistant Prosecuting Attorney