UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA KAMMEYER, et al.** | : | **CASE NO.: C-1-01-649** |
| **Plaintiffs,** | : | **Judge Spiegel** |
| | | **(Magistrate Black)** |
| vs. | : | |
| **CITY OF SHARONVILLE, OHIO, et al.** | : | |
| **Defendants.** | : | |

**JOINT SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT
OF JOINT MOTION OF DEFENDANTS FOR SUMMARY
JUDGMENT ON THE BASIS THAT PLAINTIFFS'
CLAIMS ARE BARRED BY STATUTES OF LIMITATION**

**TABLE OF CONTENTS**

**PAGE**

I.   Introduction ................................................................ 1

II.  First New Argument - The Plaintiffs' Rule 11 Argument
     - Is Meritless ............................................................. 2

     A.   Plaintiffs' First New Argument ....................................... 2

     B.   Attorney Clark Admits that He Had Access To
          Everything In The City's Investigation File, As
          Well As To Everything Plaintiffs Suspected And
          Claimed To Know, And He Was Fully Aware Of
          Dale Dorning's Beliefs About How Defendant
          Cramer Conducted The Murder Investigation ........................... 3

          1.   The City's Investigation File .................................. 3

          2.   Attorney Clark Had Full Knowledge Of
               Plaintiffs' Suspicions About And
               "Knowledge" Of The Alleged Coverup ............................. 3

        3. While He Represented Plaintiffs Attorney Clark Also Represented Dorning, And Knew Of Dorning's Conclusions About The Alleged Coverup .................................................. 5

        4. When Attorney Clark Terminated His Relationship With Plaintiffs He Was Aware Of All Essential "Facts" And Suspicions Alleged In The Original Complaint Filed In this Litigation .................................................. 6

   C. After Two Years Of Investigation Attorney Clark And Dorning Concluded That *No* Claims Could In Good Faith Be Brought Against Defendants Nuss And Schappa .................................................. 6

   D. With Respect To Plaintiffs' Rule 11 Argument Relating To Plaintiffs' Claims Against The City And Defendant Cramer, Attorney Clark Reached Precisely The *Opposite* Conclusion Than That Is Being Argued By Plaintiffs .................................................. 7

   E. Attorney Clark's Testimony Unequivocally Refutes Plaintiffs' First New Argument .................................................. 9

III. Plaintiffs' Second New Argument - The Statute Of Limitations Advice - Is Meritless .................................................. 9

   A. The Second New Argument .................................................. 9

   B. Plaintiffs Could Not Have Relied On The Advice With Respect To Any Claims Except The Wrongful Death Claims Because Attorney Clark Never Advised Them That *Collins* Applied To Anything But The Wrongful Death Claims .................................................. 10

   C. Attorney Clark's Advice Had Nothing To do With Any Federal Claims Plaintiffs Might Have .................................................. 11

   D. Attorney Clark's Testimony Unequivocally Refutes Plaintiffs' Second New Argument .................................................. 11

IV. Conclusion .................................................. 12

**I.     INTRODUCTION**

Attached to Plaintiffs' Memorandum In Opposition To Joint Motion Of Defendants For Summary Judgment is the Declaration of their former Attorney, Ravert J. Clark. At the time Defendants were required to file their Reply Memorandum in support of that joint motion they had not yet had the chance to take the deposition of Attorney Clark. For that reason, they did not have available to them Attorney Clark's testimony to reply to the new arguments Plaintiffs make based upon the Declaration. However, Attorney Clark's deposition was taken on January 7, 2005, and, as more fully discussed below, his testimony makes clear that Plaintiffs' new arguments based upon his Declaration are inaccurate and, in large part, misleading. More important, Attorney Clark's testimony is in no way supportive of Plaintiffs' arguments; rather, in almost all instances, it confirms that the positions taken by Defendants are correct.

This Court became aware of the relevance of Plaintiffs' retention of Attorney Clark to the statute of limitations issue [1] when Plaintiffs attempted to prevent discovery of Attorney Clark. More specifically, when Defendants learned that Plaintiff had retained Attorney Clark prior to having retained their current counsel, they had a subpoena duces tecum served on him to obtain his file and take his deposition. Plaintiffs filed a Motion to Quash that subpoena, and that motion was overruled by Magistrate Black (Doc. 156) and Judge Spiegel (Doc. 169). When Attorney Clark produced his file it directly and completely destroyed Plaintiffs' *then* only argument in this regard - i.e. that they had retained Attorney Clark to represent them only in connection with their wrongful death claims against Albert Schuholz and had not retained him in connection with their claims against the City

---

[1] "... once a claimant retains counsel, tolling ceases because she has the means of knowledge of the law's requirements."*Leong v. Potter*, 347 F.3d 1117 (9th Cir. 2003), quoting *Leorna v. U.S. Dept. of State*, 105 F.3d 548 (9th Cir. 1997).

of Sharonville (City) and its employees.

Faced with the conclusive evidence that they had indeed retained Attorney Clark to represent them on *all* claims relating to the murders, including those they may have against the City and its employees, Plaintiffs abandoned their initial argument. In place of that argument and based upon the carefully drafted Declaration of Attorney Clark,[2] they came up with two new arguments to try to explain why his representation should not be fatal to their claims. Defendants addressed these arguments as best they could in their Rely Memorandum without the benefit of Attorney Clark's testimony. By this Supplemental Memorandum, those arguments will now be fully addressed.

## II. FIRST NEW ARGUMENT - THE PLAINTIFFS' RULE 11 ARGUMENT - IS MERITLESS.

### A. Plaintiffs' First New Argument.

In paragraph 3 of his Declaration Attorney Clark states that "I had no access to the actual Sharonville investigation file in this matter and, consistent with my professional obligations under Rule 11, had insufficient evidence with which to proceed ..." Based upon those two statements, Plaintiffs craft the argument that, had Attorney Clark had been able to review the City's file, he would have had sufficient evidence to proceed on the claims against the City and its employees. Attorney Clark's testimony exposes just how meritless and disingenuous that argument is.

---

[2] The Declaration of Attorney Clark was drafted by Plaintiffs' current counsel, not Attorney Clark. (Clark, p. 138).

    **B.**    **Attorney Clark Admits that He Had Access To Everything In The City's Investigation File, As Well As To Everything Plaintiffs Suspected And Claimed To Know, And He Was Fully Aware Of Dale Dorning's Beliefs About How Defendant Cramer Conducted The Murder Investigation.**

        **1.**    **The City's Investigation File.**

Prior to and during Attorney Clark's representation of them, Plaintiffs had *complete* access to the City's investigation file. Indeed, Plaintiff Wright reviewed every piece of paper in that file at least once, and he returned to review parts of the file on several occasions. Moreover, while Plaintiff Wright was reviewing the investigation file he also had *complete* access to Dale Dorning, the Sharonville Police Department Officer in charge of the investigations of the murder and the alleged coverup. (See pp. 5-11 Defendants' Joint Motion for Summary Judgment.)

While it is true that Attorney Clark did not personally review the City's investigation file, the statement that he did not have access to it is both inaccurate and misleading. Attorney Clark never requested access to the file, and, as such, was never denied access to it. (Clark, p. 107). More important, Attorney Clark admits that he knew about the contents of the file through his clients.

> Q.    ... wouldn't it be fair to say ... that you had the equivalent of the information [in the file] through [Plaintiff Wright]?
> A.    Sure ... I would agree with that.

(Clark, p. 110).

        **2.**    **Attorney Clark Had Full Knowledge Of Plaintiffs' Suspicions About And "Knowledge" Of The Alleged Coverup.**

It is undisputed that, within two months after the murders, Plaintiffs suspected and claimed to have known that the investigation of the murders was a coverup being conducted by a "dirty cop." (See p. 1 Joint Motion For Summary Judgment and p. 4 of Ex. 2.) Further, by the time they retained Attorney Clark, Plaintiffs had thoroughly reviewed the City's investigation file, had complete access

to Dorning, had been told by Dorning of his belief that Cramer had engaged in a coverup, and had confirmed in their minds that a coverup had taken place. By that time Plaintiffs also believed that they had claims against the City and certain of its employees. (See pp. 1-11 of Joint Motion For Summary Judgment.)[3]

Attorney Clark testified that, during his representation of Plaintiffs, they told him everything they suspected and claimed to know about the alleged coverup.

> Q. Did they inform you about their suspicions and beliefs that Jim Cramer was involved in a coverup?
> A. Yeah.
> Q. Did they inform you that they thought he was a dirty cop?
> A. . . . Yeah.

(Clark p. 28.)

> . . . . . . . . . . . . .
> . . . If you're asking when did I find out that they believed that they thought Cramer was dirty? It would have been within probably the first ten minutes of my conversation with Jim Wright . . . their concern was Al Schuholz having set up the murder and Cramer having covered it up. That would have been one of the first things I ever talked to Jim Wright about.

(Clark, pp. 37, 38.)

> . . . . . . . . . . .
> . . . if you ever sit down and talk to Jim and say, Jim, tell me about your mom's death, [Wright] you don't have to ask much and he'll tell you everything he knows.

(Clark, p. 106.) Further, Attorney Clark states that Plaintiff Kammeyer provided him with a copy

---

[3]During the time Attorney Clark represented them Plaintiffs had also already been told that any claims they might have against the City and its employees were time-barred.
> . . . I don't think now is the time - even to our lawyer. At the time was proceed against Sharonville will be the right time. Also, you need to know that suing Sharonville and winning the case is going to be difficult at best due to the statute of limitations.

(Ex. 1.)

-4-

of her November, 1998 e-mail to Dorning which provides in part:

> Very shortly into the case - - within two months - - our family began to suspect a "dirty cop" -- at one point we heard (and I can't remember the specifics) that Kramer had taken a payoff from Al. Just his whole approach and demeanor shouted that things just weren't right. Among the family we always knew that somehow Kramer was involved in a cover up or in not following through but even when I talked to Homer and Shappa they'd say he just had an ego and this was his case and if we went to the public with our suspicions we'd hurt the case so we had to keep quite. And yet - - both of them were critical of the way things were bing handled but neither of them blew the whistle or offered us help on how to deal with him.

(Ex. 2, p. 4). Finally, Attorney Clark states that Plaintiffs told him about their beliefs about the evidence that was allegedly missing from the murder investigation file.

> Q. . . . When your clients met with you in 1999 . . . they made it clear to you that they thought [Cramer] had destroyed or removed evidence, correct?
> A. Correct.

(Clark, p. 165; also see Clark, pp. 106, 119, 120, 123-125.)

### 3. While He Represented Plaintiffs Attorney Clark Also Represented Dorning, And Knew Of Dorning's Conclusions About The Alleged Coverup.

While he was representing Plaintiffs, Attorney Clark also represented Dorning. With respect to that representation, Attorney Clark made the following statement:

> While these issues were pending I commenced the representation of Dale Dorning, the detective who had assumed responsibility for the Schuholz investigation in 1997. . . . [H]e had uncovered misconduct by other Sharonville employees in the Schuholz case.

(Declaration, par. 6.) In short, during this time, the City employee in charge of the murder investigation and the investigation of the alleged coverup (i.e. Dorning) explicitly and unequivocally informed Attorney Clark that he had "uncovered [the] misconduct" that is at the core of Plaintiffs'

-5-

claims.

As counsel for Dorning Attorney Clark also came to realize that, by allowing Dorning to have full discretion in how to conduct the investigation of the murders and the alleged coverup, the City was fully committed to finding the truth.

> . . . I remember something that stuck out in terms of what I was impressed by at the time, the City's commitment to getting a resolution.

(Clark, p. 104.) In sum, Attorney Clark confirms what Dorning has stated - if there was any coverup, the coverup ended 1997 or 1998 when Dorning was put in charge of the investigation.

    **4.**    **When Attorney Clark Terminated His Relationship With Plaintiffs He Was Aware Of All Essential "Facts" And Suspicions Alleged In The Original Complaint Filed In this Litigation.**

By making their Rule 11 argument Plaintiffs necessarily argue that their current counsel had *additional* evidence that enabled them to in good faith file the original Complaint in this lawsuit. However, Attorney Clark makes clear that is not true. When Attorney Clark was asked to review the original Complaint, he testified that, when he represented Plaintiffs, he was aware of all essential facts and suspicions alleged in that pleading. (Clark, pp. 144-162.)

    **C.**    **After Two Years Of Investigation Attorney Clark And Dorning Concluded That *No* Claims Could In Good Faith Be Brought Against Defendants Nuss And Schappa.**

Plaintiffs attempt to make it appear that, had Attorney Clark had more time to investigate and been given direct access to the City's murder investigation file, he would have obtained additional evidence to bring claims against Defendants Nuss and Schappa. This is, quite simply, precisely the opposite of what occurred. The truth is that even after two years of investigation and access to a tremendous amount of information, including the information in the City's investigation file,

Attorney Clark concluded that any lawyer who brought a claim against either Defendant Nuss or Schappa would do so in violation of Rule 11.

> . . . I have investigated the case, and everything I know about it, there's not anything to believe that Nuss has done anything wrong, improper here . . . nothing at all that would justify a claim.

(Clark, p. 20, 21; also see p. 100.)

> . . . Chief Schappa . . . would have been at the same level [as Nuss] . . . even Jim Wright led me to believe he didn't think Schappa . . . had [done] anything improper to that would give rise to a claim.

(Clark, pp. 68, 69.)

> . . . I was not going to win a suit against Nuss, Homer or Schappa.

(Clark, p. 69.) In fact, after recently reviewing the City's investigation file, Dorning informed Clark that "he still doesn't understand why Chief Nuss is in the case." (Clark, p. 22.)

> **D.    With Respect To Plaintiffs' Rule 11 Argument Relating To Plaintiffs' Claims Against The City And Defendant Cramer, Attorney Clark Reached Precisely The *Opposite* Conclusion Than That Is Being Argued By Plaintiffs.**

Plaintiffs have taken a Declaration that was intentionally drafted in a very general way by their current counsel to make an argument that is, for the most part, false. To fully and accurately understand the Declaration and the advice Attorney Clark gave Plaintiffs when their relationship was terminated, it is necessary to consider both in conjunction with the following testimony given by Attorney Clark in his recent deposition:

1.    As more fully discussed below, Attorney Clark's statements and advice had *nothing* to do with any federal claims Plaintiffs have or may have against *any* of the Defendants. All of his statements and advice relate exclusively to state law claims. (Clark, pp. 10-12, 15, 45, 61, 62, 68, 77.)

-7-

> Q.   . . . I never had at any point in time a thought that there was any kind of federal claim.

(Clark, p. 12.)

> Q.   . . . Again, it [your advice] had nothing to do with the §1983 claims?
> A.   Nothing federal.

(Clark, p. 77.)

2.   As discussed above, when he terminated the relationship, Attorney Clark had previously concluded and informed Plaintiffs that no claims could in good faith be brought against either Defendants Nuss or Schappa.

As such, when their relationship was terminated, Attorney Clark's advice to Plaintiffs was limited to the *state* law claims Plaintiffs may have against only Schuholz, the City and Cramer, and his advice did not relate to *any* claims against Nuss or Schappa. It is with these limitations that Attorney Clark's Declaration must be analyzed.

Attached to the Declaration is Attorney Clark's letter of March 8, 2001 by which he terminated his relationship with Plaintiffs. (Attached to this memorandum as Ex. 1.) Yet conspicuously absent from Plaintiffs' discussion of and arguments based on that letter is any reference to a statement in the letter that directly contradicts Plaintiffs' Rule 11 argument.

> . . . [I] have every reason to believe that [Plaintiffs] will prevail on the merits.

By making that statement, Attorney Clark was advising Plaintiffs that, with respect to the state law claims they had against Schuholz, the City and Cramer,[4] it was his belief that there was sufficient

---

[4]Again, Attorney Clark admits that *none* of his research or advice relate in any way to the federal claims Plaintiffs may have against *any* of the defendants and that he had already concluded and told Plaintiffs that no claims, federal or state, could be in good faith brought against Nuss or Schappa.

-8-

evidence to successfully prosecute those claims *at trial*. As such, with respect to the *state* law claims against Schuholz, the City and Cramer, Attorney Clark had by then not only concluded that there was enough information for claims to be brought (i.e. he had sufficient evidence to meet his Rule 11 obligations); he had also concluded that Plaintiffs had sufficient information that they could actually win at trial on the claims against Schuholz and Cramer.

### E. Attorney Clark's Testimony Unequivocally Refutes Plaintiffs' First New Argument.

Plaintiffs' first new argument is based entirely on the Declaration of Attorney Clark. However, the above-cited testimony of Attorney Clark reveals that, when the Declaration is read in conjunction with that testimony, it is without any merit.

### III. PLAINTIFFS' SECOND NEW ARGUMENT - THE STATUTE OF LIMITATIONS ADVICE - IS MERITLESS.

#### A. The Second New Argument.

In order to understand Plaintiffs' second new argument, the legal research Attorney Clark did with respect to the state law wrongful death claims against Schuholz must be discussed. As part of his research Attorney Clark discovered the Ohio Supreme Court's decision in *Collins v. Sotka* (1998), 81 Ohio St.3d 306. In *Collins* that Court held that, in cases involving a murder, a *wrongful death claim* does not accrue until the killer has been convicted. Although he found no case law on point, Attorney Clark concluded *to himself* that a "logical extension" of *Collins* is that it also applied to what he characterized as the "derivative" state claims against the City and Cramer. (Clark, pp. 46, 47.) Based upon this research, Attorney Clark in his termination letter advised Plaintiffs that "as there has been no criminal conviction in relation to the murder of your mom, the applicable statute of limitation has not yet began to run." (Ex. 1 to this memorandum.) It is this advice that is the basis

-9-

of Plaintiffs' second new argument.

As more fully discussed above and below, none of the advice Attorney Clark gave Plaintiffs about the accrual dates of their claims related to *any* claims, federal or state, against Nuss and Schappa, and it did not relate to any federal claims against the City or Cramer. Moreover, even with respect to the state law claims against the City and Cramer, Plaintiffs can hardly have relied on that advice because Attorney Clark never told Plaintiffs about his thought that *Collins* might apply to those claims. (Clark, p. 47.) Despite this, Plaintiffs' make the second new argument that the accrual dates for all of their claims against Defendants are tolled because they argue[5] that they relied on the legal advice Attorney Clark gave them in the termination letter. That argument is also meritless.

**B.  Plaintiffs Could Not Have Relied On The Advice With Respect To Any Claims Except The Wrongful Death Claims Because Attorney Clark Never Advised Them That *Collins* Applied To Anything But The Wrongful Death Claims.**

Plaintiffs attempt to convince this Court that the statute of limitations for their claims against Defendants should be tolled because of the advice they received in the termination letter. That argument fails for four reasons. First, as discussed above, Attorney Clark had already concluded that no good faith claims could be brought against Nuss or Schappa, and, as such, nothing in the termination letter relates to those defendants. Second, as discussed above and below, none of the advice in the letter relates to federal claims against any Defendant, and, as such, nothing in the termination letter relates to Plaintiffs' federal claims. Third, Plaintiffs could not have relied on the advice with respect to the state law claims against the City and Cramer because Attorney Clark never discussed the "logical extension" part of his analysis with Plaintiffs, and he did not give them any

---

[5]This is completely lawyer-made assertion. Nowhere in the record is there any evidence that Plaintiffs relied on Attorney Clark's advice with respect to when they could bring any claims against Defendants.

advice about the statute of limitations about those claims. (Clark, p. 46.)

> That was my thought to myself.

(Clark, p. 47.) And fourth, nowhere in the record is there any support for the argument that Plaintiffs relied on this advice with respect to anything but the wrongful death claims against Schuholz.

### C. Attorney Clark's Advice Had Nothing To do With Any Federal Claims Plaintiffs Might Have.

Contrary to what Plaintiffs have argued based upon the carefully worded Declaration, Attorney Clark did *not* do *any* research relating to the accrual dates or the statute of limitations of any potential federal claims (Clark, pp. 10-12), and he did not give Plaintiffs any advice about the statute of limitations of their federal claims.

> Q. . . . you weren't advising them on the statute of limitation with respect to . . . any civil rights claims, correct?
>
> A. That would be fair . . .

(Clark, p. 15; also see pp. 11, 45.)

> . . . it had nothing to do with the section 1983 cases.

(Clark, p. 77.) As such, even if Plaintiffs had relied on the advice given by Attorney Clark in the termination letter, that reliance could not have extended to their federal claims, but is, in fact, limited to the state wrongful death claims.

### D. Attorney Clark's Testimony Unequivocally Refutes Plaintiffs' Second New Argument.

Like their first new argument, Plaintiffs' second new argument is based entirely on the Declaration of Attorney Clark. Also, as with the first argument, when the Declaration is read in conjunction with Attorney Clark's testimony, the second argument fails.

## IV.    CONCLUSION

For the reasons set forth in Defendants' Joint Motion For Summary Judgment, their Reply Memorandum and this Supplemental Reply Memorandum, Defendants' are entitled to have judgment entered in their favor.

Respectfully submitted,

s/Brian E. Hurley
Brian E. Hurley (0007827)
Robert J. Gehring (0019329)
Crabbe, Brown & James LLP
Attorneys For Defendant William Nuss
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202-4359
(513) 784-1525 - telephone
(513) 784-1250 - facsimile
Bhurley@cbjlawyers.com
Rgehring@cblawyers.com

s/Randolph H. Freking
Randolph H. Freking, Esq. 0009158
Freking & Betz
Counsel For Defendant Cramer
215 East Ninth Street, 5th Floor
Cincinnati, Ohio 45202
(513) 721-1975 - telephone
(513) 651-2570 - facsimile
email: randy@frekingandbetz.com

s/Lawrence E. Barbiere
Lawrence E. Barbiere, Esq. 0027106
Schroeder, Maundrell, Barbiere & Powers
Counsel For Defendants Schappa and City
 of Sharonville
119 Mason Road, Suite 110
Cincinnati, Ohio 45249-3703
(513) 583-4210 - telephone
(513) 583-4203 - facsimile
email: lbarbiere@schroederlaw.com

s/Thomas T. Keating
Thomas T. Keating, Esq. (0011359)
Keating, Richie & Swick
Counsel For Defendants Schappa and City
 of Sharonville
8050 Hosbrook, Suite 200
Cincinnati, Ohio 45236
(513) 891-1530 - telephone
(513) 891-1537 - facsimile
tkeating@krslawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2005, a copy of the Joint Supplemental Reply Memorandum Of Defendants for Summary Judgment on the Basis that Plaintiffs' Claims Are Barred By Statutes of Limitation was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties my access this filing through the Court's system.

s/Brian E. Hurley
Brian E. Hurley

\\theserver\firmdocs\NUSS\msjsupplement.wpd