1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - -

```
PATRICIA KAMMEYER, et al.,  .  CIVIL ACTION NO. C-1-01-649
                            .
          Plaintiffs,       .  Cincinnati, Ohio
                            .
        - v -               .  Tuesday, December 7, 2004
                            .  10:00 a.m.  Hearing
CITY OF SHARONVILLE, et al..
                            .  Motion to Quash Subpoena
          Defendants.       .
............................
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE S. ARTHUR SPIEGEL, SENIOR JUDGE
TRANSCRIPT ORDERED BY:  Mark C. Vollman, Esq.

APPEARANCES:
For the Plaintiffs:     GERHARDSTEIN, BRANCH & LAUFMAN
                        BY:  Alphonse A. Gerhardstein, Esq.
                        617 Vine Street, Suite 1409
                        Cincinnati, Ohio   45202

                        FREKING & BETZ
                        BY:  Randolph H. Freking, Esq.
                        215 East Ninth Street
                        Fifth Floor
                        Cincinnati, Ohio   45202

For the Defendants:     SCHROEDER, MAUNDRELL, BARBIERE & POWERS
                        BY:  Lawrence E. Barbiere, Esq.
                        11935 Mason Road, Suite 110
                        Cincinnati, Ohio   45249

For the Movants:        HAMILTON COUNTY PROSECUTOR'S OFFICE
                        BY:  Mark C. Vollman, Esq.
                        Assistant Prosecuting Attorney
                        Hamilton County, Ohio
                        230 E. Ninth Street, Suite 4000
                        Cincinnati, Ohio   45202

Also Present:           Brian E. Hurley, Esq.
Law Clerk:              Eric Young, Esq.
Courtroom Clerk:        Kevin Moser
Court Reporter:         Mary Ann Ranz

2

```
 1                    TUESDAY, DECEMBER 7, 2004
 2                  P R O C E E D I N G S      (10:18 a.m.)
 3           THE COURT:  I left some notes on my table, Kevin.
 4   On my table is some notes on this case.
 5      Ready to proceed?
 6           MR. VOLLMAN:  Yes, sir.
 7           THE COURT:  All right.  You may.  It's your motion.
 8           MR. VOLLMAN:  Thank you, Judge.
 9      Good morning, Judge.  I appreciate the Court giving the
10   County Prosecutor's Office the opportunity to argue this
11   issue, which we think is actually bigger than this case:
12   It's the protection that the Work Product Doctrine provides
13   to the state prosecutor in fulfilling his obligation under
14   the state statutes to prosecute crimes that happen in
15   Hamilton County.
16      The Work Product Doctrine protection I think is
17   essential, is one of the fundamental, long-standing legal
18   principles by which the office operates.
19      We hate to bring this discovery dispute to you, Judge,
20   but this isn't the type of dispute that lends itself to
21   resolution amongst the parties.  It's just something that is
22   so fundamental to the office, it doesn't lend itself to
23   compromise.
24           THE COURT:  I don't think I disagree with you at all
25   about work product.  But what do you think the issue is that
```

```
 1  they're seeking -- seeking -- what the issue is that they're
 2  seeking to establish, they're seeking an answer for?
 3          MR. VOLLMAN:  Well, I think what we've got, Judge,
 4  is on the one hand --
 5          THE COURT:  It has nothing to do with the evidence
 6  of the murder.
 7          MR. VOLLMAN:  Well, on the one hand Mr. Gerhardstein
 8  wants to get into the prosecutor's file and --
 9          THE COURT:  That's just a general statement.  That's
10  not good enough.
11          MR. VOLLMAN:  Well, it's a pending murder
12  prosecution.
13          THE COURT:  As I understand it, the prosecutor, back
14  in 1982 or '83, checked this case out, or -- and decided
15  there was nothing there to proceed with.  And I think they're
16  entitled to find out what had been disclosed to the
17  prosecutor back in the early '80s; not what the evidence of
18  the alleged murder is today that may have been developed
19  since then, but what he knew then, because that ties in with
20  what evidence they may have been able to determine subsequent
21  to that time to establish if there was a cover-up -- not by
22  the prosecutor, but by Mr. Cramer and the Sharonville Police
23  Department.
24          MR. VOLLMAN:  I understand that, Judge, but the only
25  evidentiary material we have in the record before this Court
```

```
 1  is the affidavit of the career prosecutor, Rick Gibson,
 2  that's handling this current murder prosecution.
 3          THE COURT:  He wasn't handling it back then; was he?
 4          MR. VOLLMAN:  No, sir.
 5          THE COURT:  All right.
 6          MR. VOLLMAN:  But he says --
 7          THE COURT:  I think they're entitled to inquire of
 8  the Prosecutor's Office, from Sheriff Leis, if he was the
 9  prosecutor at that time.
10          MR. VOLLMAN:  Mr. Gibson says that the sharing of
11  information --
12          THE COURT:  I don't care what Mr. Gibson says.
13          MR. VOLLMAN:  -- will compromise the prosecution.
14          THE COURT:  He's somebody today.  I'm only
15  interested in what happened back in the early '80s.
16          MR. VOLLMAN:  And, Judge, there's no -- just because
17  Mr. Leis is still not the prosecutor, his mental
18  impression --
19          THE COURT:  He was the prosecutor at the time.
20          MR. VOLLMAN:  Yes.
21          THE COURT:  But I want to know what information was
22  disclosed by the Sheriff's Department -- by the Sharonville
23  Police Department and its officers to the Prosecutor's Office
24  back in the early '80s which resulted in the Prosecutor's
25  Office not seeking an indictment or proceeding with the
```

1  murder investigation.
2           MR. VOLLMAN:  Your Honor, what Mr. Gerhardstein
3  wants is to make Si Leis --
4           THE COURT:  I tell you what I want now.
5           MR. VOLLMAN:  Well, with all due respect, Judge,
6  *Hickman versus Taylor* and its progeny protect --
7           THE COURT:  We're not talking about work product for
8  the -- for the development of the case against Mr. Schuholz
9  that was developed in the 1990s.  I'm not interested in that.
10 And pretty much that information has been turned over and
11 been protected by a protective order.
12          MR. VOLLMAN:  So, Judge --
13          THE COURT:  All I'm interested in is something that
14 occurred back in the early '80s.
15          MR. VOLLMAN:  Okay.  So --
16          THE COURT:  It's not -- it's not the development.
17 If there was evidence back in the '80s that they knew that
18 there was a murder case and the Prosecutor's Office didn't do
19 anything about it, that's a serious situation.  I don't think
20 that's the situation.  I want to find out what was or -- what
21 was disclosed to the Prosecutor's Office that -- on which
22 they made a decision not to proceed.
23          MR. VOLLMAN:  Right.  So, Judge, if I understand the
24 Court, the current prosecutor's file which was developed
25 since the 1998 indictment of Mr. Schuholz -- and by the way,

1  we keep hearing that this case will never be brought to
2  trial, but there's nothing in the record that says
3  Mr. Schuholz is hopelessly incompetent and will not be
4  restored to competency.
5      We're trying to protect this file for a pending
6  aggravated murder case.  So, if the Court's position is
7  that's not what they're seeking and that's not what the
8  Court's going to order released, then we can focus on --
9          THE COURT:  I think I'm correct.  We'll find out
10 from Mr. Gerhardstein if I'm not.
11         MR. VOLLMAN:  My understanding is, in his response
12 to our motion, Judge, he says he wants, among other things,
13 all the videotapes, and so on and so forth, that are in the
14 prosecutor's file, whether they were developed back then or
15 now.
16         THE COURT:  We'll find out.  We'll find out from Mr.
17 Gerhardstein right now what it is that he wants.
18         MR. VOLLMAN:  Okay.  But --
19         THE COURT:  I'm telling you what I think is relevant
20 that should be disclosed by the Prosecutor's Office, if it's
21 necessary --
22         MR. VOLLMAN:  But the --
23         THE COURT:  -- if there is evidence.  There's no
24 reason why he can't question the prosecutor as to what he
25 knew back then or what the Prosecutor's Office -- information

1  they had back then.  And whoever it was back then that got
2  the information, that person's to be made available to
3  testify.
4       MR. VOLLMAN:  And what our position is, Judge, it's
5  fundamental to the state prosecution of crimes that civil
6  litigants, that think there's evidence in the prosecutor's
7  file that may help their case, are not allowed to discover
8  what's in the prosecutor's file, or much less what's in the
9  prosecutor's mind or head, his mental impressions.
10     We're balancing here the --
11          THE COURT:  You're now talking again about what
12 happened in the '90s that resulted in the indictment.  Not
13 seeking that information.
14          MR. VOLLMAN:  Okay.  I think, Judge --
15          THE COURT:  Let's get that clear, Mr. Vollman.  I'm
16 trying to make clear to you all I think what is relevant in
17 this situation is what happened back in the 1980s.
18     You asked a question in your brief --
19          MR. VOLLMAN:  Yes, sir.
20          THE COURT:  -- something to the effect --
21          MR. VOLLMAN:  If I may, Judge, I think we did ask a
22 rhetorical question:  Upon what basis are they seeking to
23 have the Court to abrogate the Work Product Doctrine?
24     And basically, they don't cite one case, Judge, in the
25 body of their brief that supports this Court ordering the

```
 1   County Prosecutor's Office to release information about this
 2   pending murder investigation that would support that
 3   proposition.
 4       We've cited the applicable federal jurisprudence, *Hickman*
 5   *versus Taylor* and its progeny, which clearly, Judge, says
 6   that federal civil litigants are not permitted to interfere
 7   or discover what's going on in a pending state criminal
 8   prosecution.
 9       We're trying to balance, Judge, Mr. Gerhardstein's
10   request for information that he thinks may advance his cause
11   in a federal civil case over monetary damages versus
12   compromising the federal --
13           THE COURT:  I don't know how much it's going to
14   compromise your situation in any way to find out what, if
15   any, investigation the prosecutor's office did back in 1981
16   or '82 when this murder occurred, and there was some sort of
17   a presentation or something between the Sharonville Police
18   Department and the County Prosecutor's Office --
19           MR. VOLLMAN:  And the compromise, Judge --
20           THE COURT:  -- of the murder.  That is what I want
21   to find out about.
22           MR. VOLLMAN:  Yeah.  The compromise is that evidence
23   about this case -- which under the Criminal Rule 16, the
24   state criminal rule, the defendant has never requested --
25   evidence about this case that is released in the affidavit of
```

1   the career prosecutor, he states it will compromise the
2   pending murder investigation.  There's no evidence.
3              THE COURT:  Tell me how it could compromise it.
4              MR. VOLLMAN:  Okay.  If Si Leis starts talking about
5   his impressions of the case and who the witnesses were and
6   who they interviewed, that has not been requested to date by
7   the criminal --
8              THE COURT:  We know today from the discovery that's
9   been accomplished that there was a cover-up.  You even know
10  that from the Sharonville Police Department.  Somebody did
11  the research and the information's been disclosed.  Now, I
12  want to find out how much of that information that is
13  currently known was or was not turned over to the County
14  Prosecutor in 1981 or '82.
15             MR. VOLLMAN:  And, Judge, that, in and of itself,
16  compromises the case because that evidence --
17             THE COURT:  Not at all.
18             MR. VOLLMAN:  -- that evidence then makes it to the
19  public realm.
20     I appreciate the Court entering the protective order for
21  the materials that have been released thus far, but with all
22  due respect, Judge, the protective order can only go so far.
23             THE COURT:  You say in your brief here,
24  "Inexplicably, they waited" -- the plaintiffs -- "...for
25  Detective Dorning to reopen the case in 1997 and for the

1  prosecutors to seek and obtain an indictment before
2  proceeding with the request for civil remedies."
3          MR. VOLLMAN:  Well, that, Judge --
4          THE COURT:  Why did they wait?  In other words, why
5  did they wait until Dorning opened it up?  Because nobody
6  knew anything about it.
7          MR. VOLLMAN:  Well, they cite, Judge --
8          THE COURT:  I want to find out -- I think they're
9  entitled to have the evidence to firmly establish that there
10 was a cover-up.
11         MR. VOLLMAN:  On pages 10 to 21 of their pleading,
12 Judge, they give a detailed recitation of evidentiary
13 materials that they claim were available in 1981.  So, if
14 they were available -- if they know, why didn't -- why didn't
15 the families of the victims in 1981 --
16         THE COURT:  Because that information wasn't turned
17 over to the families in 1981.  That's the whole point.
18         MR. VOLLMAN:  They claim this was available in 1981.
19 Furthermore, Judge, the -- I don't know --
20         THE COURT:  I don't want to hear anymore arguments.
21 I made my point and you've made your point.  I want to hear
22 from Mr. Gerhardstein.
23         MR. VOLLMAN:  Thank you, Judge.
24         MR. GERHARDSTEIN:  Judge, you're correct:
25 Plaintiffs seek information in possession of the prosecutor

1   that was presented to the prosecutor back in the '80s in
2   order to determine just what information the prosecutor had
3   and thereby to test Cramer's statement that he was just
4   following what the prosecutor told him to do.  He claims that
5   he gave everything to the prosecutor, and now we're in a
6   position where we need to know from the prosecutor's side --
7              THE COURT:  Who was the prosecutor he talked to in
8   1980?
9              MR. GERHARDSTEIN:  He said Si Leis.  There's also
10  evidence -- in his later interview he says he talked to Terry
11  Gaines, which is why we also sought the deposition of Terry
12  Gaines.
13     But, Judge, we're all in support of the notion that we
14  need to do everything we can to protect the integrity of the
15  potential criminal prosecution.  There's no problem there.
16  We want the strictest protective order possible.  We're
17  willing to go in baby steps.  You know, we've proposed that
18  they produce documents first where -- and we've said, "All
19  right.  Hold off on the grand jury.  Let's just look at what
20  documents existed in the prosecutor's file relating to 1981."
21     The only part I want to expand on is that we know there
22  was the Cramer investigation as late as '98.  And we've been
23  told, at least in the City of Sharonville, that the Cramer
24  investigation was part of the murder investigation.  I assume
25  that's also true at the Prosecutor's Office.  That's why we

1   asked for a privilege log, so that we can be sure that the
2   material that they withhold isn't part of the Cramer
3   investigation.  Some of these witnesses that came up as
4   murder witnesses in '98 may have been asked, "What did you
5   say to Cramer?  What did he say to you?"  We would want
6   access to that, because that's part of an investigation of a
7   closed, potential criminal case against Cramer, because they
8   obviously didn't proceed against Cramer.  So -- but, you
9   know, we can -- we can cross each of these bridges as we get
10  to them.
11      First, they produce the material *in camera*.  We put it
12  under a strict protective order.  We take each type of
13  information separately.  We could even do the deposition of
14  Si Leis.  I've proposed written questions.  I've proposed an
15  affidavit.  None of its good enough.  We could even do that
16  in front of the Court, you know, in order to be as
17  constrained as possible.
18      We don't want to compromise any criminal prosecution, but
19  we also don't want the plaintiffs in this case continuing to
20  be in the Catch-22 of having been told by all the defendants
21  in their answers that they relied on advice of counsel, which
22  obviously has to be the prosecutor, and not being able to get
23  that evidence.
24      One other point --
25          THE COURT:  I don't see any reason why I can't issue

1   an order that the plaintiffs have an opportunity to take
2   discovery from Sheriff Leis, who was County Prosecutor back
3   then, as to what information was disclosed to him about this
4   murder which led to a conclusion that there was nothing to
5   proceed on, and whoever -- and Terry Gaines if he was --
6   that's far as I'd go.
7            MR. GERHARDSTEIN:  I did the same thing up in
8   Cleveland.  I represent a person who was wrongfully
9   convicted.  His conviction was exonerated on DNA evidence.
10  So, now, that's an open criminal case because his conviction
11  was vacated.  And I took the deposition -- I got the
12  prosecutor's file --
13           THE COURT:  The depositions can be sealed --
14  obviously available to the Court but not available to anybody
15  else.  I think that -- but limit it to just what occurred
16  back at the time -- at the time and shortly after the murders
17  were discovered where the Prosecutor's Office was contacted
18  by somebody and decided not to proceed.  That's what I want
19  to find out about.
20           MR. GERHARDSTEIN:  Okay.
21           THE COURT:  That's the limit that I'd go.
22           MR. GERHARDSTEIN:  All right.
23           THE COURT:  It can't go into anything else.
24      Understand, Mr. Vollman?
25           MR. VOLLMAN:  I'm not sure I do, Judge.

1        THE COURT:  They can depose or take testimony from
2   Mr. Gaines and Sheriff Leis, if the sheriff was the
3   prosecutor at the time, and Gaines who was the Assistant
4   Prosecutor who had some dealings with somebody at the
5   Sharonville Police Department about whether to proceed with
6   an indictment or not to proceed because there wasn't
7   sufficient evidence.  I just want to find out who it was and
8   what was said and that was it.  That's not -- and limit it to
9   that.
10       MR. VOLLMAN:  And, Judge --
11       THE COURT:  That's 20 years -- that's it.
12       MR. VOLLMAN:  Is there any documentary evidence
13  required to be revealed?
14       THE COURT:  If there's documentary evidence, it has
15  to be disclosed *duces tecum*, what evidence there was at the
16  time that the Prosecutor's Office decided not to proceed back
17  in 1980 with it -- or in the 1980s with an indictment, or to
18  proceed to investigate this matter.
19       MR. VOLLMAN:  Could I just be heard on a follow-up,
20  Judge?
21       THE COURT:  Go ahead.
22       MR. VOLLMAN:  Judge, I think with all due respect an
23  order such as this, Judge, opens up the proverbial Pandora's
24  box.  From now on, Judge, in civil cases, in federal civil
25  cases, it's going to become the state-of-the-art for somebody

1  that's charged with a crime in state court to have a relative
2  initiate litigation in the federal courts and make a request
3  for the -- to look into the prosecutor's file.  And it's
4  going to be --
5        THE COURT:  I'm not -- I'm not making any kind of an
6  order like that at all.
7        MR. VOLLMAN:  Judge, the defendant in the murder --
8  the defendant in the pending aggravated murder case, two
9  counts of aggravated murder, he was previously a defendant in
10 this case, and he's been dismissed out.  I see no scenario,
11 Judge, where his request to intervene in this case could be
12 denied.
13       THE COURT:  He's probably been dismissed.
14       MR. VOLLMAN:  He's been dismissed.  But once all
15 this information is shared and they have -- the plaintiffs
16 have access to the prosecutor's file --
17       THE COURT:  Appeal.
18       MR. VOLLMAN:  -- certainly the defendants have to
19 get access to the file.  And what's going to happen, Judge,
20 is Schuholz can -- he can intervene in this case and you
21 could have the --
22       THE COURT:  He's not going to get -- He's only going
23 to find out the evidence -- as I understand it, that's going
24 to be revealed that there was no evidence.
25       MR. VOLLMAN:  Well --

1          THE COURT:  And that's the reason the prosecutor
2    didn't proceed.  The evidence on which you're basing was
3    developed subsequently or disclosed subsequently, but at the
4    time was not developed.
5          MR. VOLLMAN:  Judge --
6          THE COURT:  So, I think your argument doesn't wash.
7    I'm sorry.
8          MR. VOLLMAN:  Judge, all I'm saying is the body of
9    federal case law, there's been no citation by plaintiffs, not
10   one case in their brief, that would in any way suggest that
11   this Court -- there's a basis for this Court to abrogate --
12         THE COURT:  Ever been involved in a case like this
13   before?
14         MR. VOLLMAN:  Have I, Judge?
15         THE COURT:  Yeah, with a cover-up, an alleged
16   cover-up by a police department or a police officer who also
17   is allegedly the strong-arm for somebody that's running a
18   loan-shark operation?
19         MR. VOLLMAN:  Well, I probably have been involved in
20   cases where --
21         THE COURT:  It's a serious situation and I'm going
22   to get to the bottom of it.
23         MR. VOLLMAN:  I understand, Judge, and I respect
24   that.  But, I've never been involved in a situation where
25   there's issues of money on one hand and then the issues of

1  successfully prosecuting someone for the murders of two
2  people, and the money issues become paramount to the
3  successful prosecution of the --
4          THE COURT:  Probably find that most federal judges,
5  including this one, would not permit a civil proceeding to
6  proceed until the federal prosecution has been completed, if
7  the civil -- if the civil -- permitting the civil process to
8  proceed would interfere with the defendant's constitutional
9  rights.  That is the situation here.
10         MR. VOLLMAN:  I think what Mr. Gerhardstein is
11 seeking, Judge, and the question he proposed in the letter he
12 sent me, this is a question he wants Si Leis to answer.
13         THE COURT:  I've already told you what -- what -- I
14 don't know what's in the letter, but what this Court is going
15 to permit is that Sheriff Leis can be interrogated about what
16 was disclosed to him as a prosecutor with any documentary
17 material that was disclosed at that time, which should
18 support the fact that Sheriff Leis decided there was nothing
19 -- nothing to proceed on, and that's all.
20         MR. VOLLMAN:  And that's --
21         THE COURT:  That's not going to get -- I don't see
22 how that's going to get involved in the County Prosecutor's
23 prosecution of the murder case now.
24         MR. VOLLMAN:  And let's assume that doesn't open any
25 issues in the current murder prosecution.  But there's four

```
 1  other parties in this case, Judge.  And when Mr. Gerhardstein
 2  gets the information he wants, how can we deny the other
 3  defendants, you know, the right to get the information we
 4  want, Judge?  I mean, with all due respect, Judge, this issue
 5  we feel is so important that --
 6           THE COURT:  Well, I told you how --
 7           MR. VOLLMAN:  I think I'll consult with the County,
 8  but I think their prerogative would be to appeal this.
 9           THE COURT:  Go ahead.  They have that right.
10           MR. VOLLMAN:  Okay.  I -- well, thank you, Judge.
11           THE COURT:  Thank you.
12           THE CLERK:  All rise.              (10:38 a.m.)
13                             - - -
14                      PROCEEDINGS CONCLUDED
15                             - - -
```

C E R T I F I C A T E

    I, Mary Ann Ranz, the undersigned, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


s/Mary Ann Ranz
Official Court Reporter