UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA KAMMEYER, et al. | : | Case No. C-1-01-649 |
| Plaintiffs | : | Spiegel, J.<br>Black, M.J. |
| vs. | : | |
| CITY OF SHARONVILLE, et al. | : | PLAINTIFFS' PREHEARING<br>SUBMISSION ON PLAINTIFFS' MOTION<br>TO QUASH SUBPOENA |
| Defendants | : | |
| | : | |

The Court has scheduled a hearing on Plaintiffs' Motion to Quash Subpoena (Doc. 197). This memorandum of law is submitted in anticipation of that hearing.

## INTRODUCTION

In their memorandum opposing Plaintiffs' motion to quash (Doc. 203), Defendants use nearly thirty pages to set forth facts that they believe support their argument that Plaintiffs' claims are barred by the statute of limitations. Plaintiffs, of course, disagree both with Defendants' characterization of those facts and the legal conclusions they extract from them. But the merits of Defendants' statute of limitations defense are not directly at issue in the instant motion. Instead, the only question presented by the motion to quash is whether Defendants have satisfied the stringent standard for deposing the attorney of an opposing party. Because they have not done so, Plaintiffs' motion should be granted.

## ARGUMENT

Defendants have served subpoenas on Plaintiffs' attorneys Alphonse A. Gerhardstein and Paul M. Laufman. Their goal? Impeach the credibility of Plaintiffs' former counsel. Defendants seek to call Plaintiffs' current counsel, inquire as to what facts were known to them

when the instant suit was filed, compare that to what was known to Plaintiffs' former counsel, Jay Clark, and then use the testimony of current counsel to impeach Mr. Clark's credibility. Apparently, Defendants intend not just to depose Mr. Gerhardstein and Mr. Laufman, but also to call them as witnesses at trial. The following passage from Defendants' memorandum succinctly summarizes their intent:

> If that information [known to current Plaintiffs' counsel when the instant suit was filed] was the same as the information known to Attorney Clark, it is evidence that directly challenges Attorney Clark's credibility. If that information is materially greater than that which was known by Attorney Clark, it is evidence that could directly challenge Plaintiffs [*sic*] argument of due diligence in their investigation of their claims. Either way, it is not only discoverable and not privileged; it will be admissible at trial.

(Doc. 203 at 21-22.) In other words, Defendants hope to depose Plaintiffs' attorneys and require them to recreate their files as they existed on September 25, 2001, in an effort to prove either (a) Plaintiffs' former counsel, Jay Clark is lying, or (b) that Plaintiffs' themselves are lying. However, other means exist to obtain the information Defendants seek. Further, the evidence they seek is protected work product. And finally, because the evidence that would be obtained through deposing Plaintiffs' counsel would not support Defendants' legal arguments, they cannot show any compelling need for the depositions.

In this circuit, in order to obtain discovery from an opposing counsel, a party must meet the "*Shelton*" factors. Discovery from opposing counsel:

> is limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). Because Defendants have failed to

2

satisfy any of the *Shelton* factors, much less all of them, Plaintiffs' motion to quash should be granted.

**A.  Defendants Had Other Means To Obtain The Information They Seek.**

Defendants state that their goal in deposing Plaintiffs' counsel is to determine what new information was gathered during 2001.  But other means—much less intrusive than deposing opposing counsel—are available to make that determination.  Defendants have propounded countless interrogatories and requests for admissions to Plaintiffs.  Defendants' attorneys have thoroughly deposed each Plaintiff.  James Wright was asked about the reasons for which he retained Mr. Clark.  He was asked about the state of his knowledge at various points over the past two decades.  Defendants have had ample opportunity to test the validity of their statute of limitations defense.  In fact, they acknowledge that deposing Plaintiffs' counsel will not elicit new information.[1]  See Doc. 203 at 24 ("[N]ot only is the information they seek not protected; it is part of the evidence already produced by Plaintiffs to Defendants, albeit in a different form."). That the form in which Defendants currently seek to obtain information to which they already had access—depositions of Plaintiffs' counsel—might be useful or interesting in preparing their defense does not justify the extraordinary step of requiring counsel to submit to a deposition. *See, e.g., Shelton*, 805 F.2d at 1327 ("Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy. The practice of forcing trial counsel to testify as a witness, however, has long been discouraged . . ."). In a case involving a similar discovery request, *Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181

3

F.R.D. 208 (D.P.R. 1998), a district court held that the party seeking to depose his adversary's attorney had not demonstrated that he lacked other means to obtain the sought information. In *Dunkin' Donuts*, the plaintiff's attorney drafted a letter terminating his client's franchise agreement with the defendant. The defendant proposed to depose the attorney in order to determine why the agreement was terminated. The court held that because other avenues existed for such discovery, under *Shelton*, the defendant had no right to depose the plaintiffs' attorneys. *Id.* at 211-12. In the case at bar, Defendants want to find out what information led Plaintiffs to file suit. But avenues other than depositions of counsel exist for this information, and Defendants have utilized them.

Defendants also have other means to advance their legal argument. If Defendants' goal is to defeat Mr. Clark's assertion that he could not have filed suit without running afoul of Rule 11, they could retain an expert in order to testify that a reasonable attorney in Mr. Clark's position should have known that Plaintiffs' claims were viable. In fact, the subpoenas at issue are really just a thinly veiled attempt to use Plaintiffs' current counsel as expert witnesses to discredit Mr. Clark. Defendants clearly hope to use the testimony of Plaintiffs' current counsel to demonstrate the Mr. Clark could have filed a lawsuit when he represented Plaintiffs. Defendants have apparently made no effort, other than the subpoena served on Plaintiffs' counsel, to obtain the evidence they now seek. Because they have failed to show that deposing counsel is the only means of obtaining this evidence, the subpoena should be quashed.

**B. The Proposed Depositions Would Vitiate The Work Product Doctrine**

Defendants seek to compel Plaintiffs' current counsel to reveal what documents and evidence they relied upon in advising Plaintiffs to file the instant lawsuit. They seek disclosure

---

[1] As set forth in Part B, *infra*, Plaintiffs believe that deposing counsel will expose their mental impressions and legal reasoning about the case; this, however, is the only additional "information" that could be gleaned from depositions

4

of materials that were clearly prepared in anticipation of litigation. Such discovery cannot be permitted.

In their memorandum, Defendants argue that requiring an attorney to disclose the contents of his file does not implicate his legal reasoning or analysis. That assertion, however, does not reflect the reality regarding the process by which an attorney compiles the materials in his files in the first place. By choosing which evidence is material and relevant and therefore retaining it in his file, an attorney makes reasoned judgments, based on his clients' interests, about what is important and what is not. In fact, the *Shelton* case, which Defendants agree articulates the proper standard deposing opposing counsel, properly recognized the harm to the work product doctrine that would occur were an attorney required to produce his or her files. In *Shelton*, a plaintiff sought to depose one of the defendant's attorneys regarding that attorney's knowledge of the existence (or non-existence) of certain documents concerning an allegedly defectively designed automobile. The court held that the attorney, Burns, could not be required to recount the specific documents of which she was aware, as doing so would necessarily reveal her mental impressions and legal reasoning:

> In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research. We believe Burns' selective review of AMC's numerous documents was based upon her professional judgment of the issues and defenses involved in this case. This mental selective process reflects Burns' legal theories and thought processes, which are protected as work product. Moreover, in these circumstances we believe that any recollection Burns may have of the existence of documents in AMC's possession likely would be limited to those documents she has selected as important to her legal theories concerning this case. Thus, contrary to the plaintiffs' argument, the questions asked require more than merely acknowledging the existence of certain documents. If Burns were compelled to acknowledge whether specifically described documents exist, she necessarily would reveal her mental selective process. Burns' acknowledgment would indicate to her opponent that she had reviewed the

---

of Mr. Gerhardstein and Mr. Laufman.

5

> document and that, since it was important enough to remember, she may be relying on it in preparing her client's case. Consequently, we hold that where, as here, the deponent is opposing counsel and opposing counsel has engaged in a process of selecting and compiling documents in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product.

*Shelton*, 805 F.2d at 1329 (citations omitted). The instant case presents similar concerns. Defendants want to ask Plaintiffs' counsel what was in their files nearly four years ago. Their recollection of what was in the file at the time would no doubt be influenced by which documents they believed to be important. Further, exploring the differences between Mr. Clark's files and those of Mr. Gerhardstein and Mr. Laufman would certainly reveal the latter's strategies, impressions, and reasoning. Production of Plaintiffs' attorneys' files, or requiring Mr. Gerhardstein or Mr. Laufman to recollect the content of them, would necessarily expose the judgments that are part and parcel of an attorney's evaluation of a case's strengths and weaknesses. Thus, the testimony that Defendants now seek is protected by the work product doctrine.

Defendants also urge this Court to find that Plaintiffs have waived the work product privilege by arguing that Plaintiffs' retention of Mr. Clark was not sufficient to trigger the statute of limitations. In support, Defendants cite *Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D. Pa. 1973). That case, however, does not support their argument. In *Bird*, the plaintiff sought to rescind a contract of insurance. The defendants argued that the plaintiffs should have known long ago of the grounds for rescission, and that the statute of limitations had therefore expired on their claims. In ordering the disclosure of documents in the possession of the plaintiffs' attorneys, the court held, "For our present purposes, it is sufficient that to prepare their case adequately, defendants need to know why plaintiffs, through the direction of their attorneys, failed to bring a rescission action sooner." The court permitted the proposed discovery to go

forward because the attorneys in question had represented the plaintiffs for a significant length of time prior to filing suit.

The instant case, however, is different. As Defendants concede, Plaintiffs' current attorneys filed suit on Plaintiffs' behalf shortly after they were retained. Defendants' rest their statute of limitations defense on the state of Plaintiffs' knowledge ***before*** Mr. Gerhardstein and Mr. Laufman became involved in the case. They have ascertained evidence relevant to that argument by acquiring Mr. Clark's file and taking Mr. Clark's deposition. What current counsel knows or knew has no bearing on whether, at some time prior to retaining Mr. Gerhardstein and Mr. Laufman, Plaintiffs were or should have been on notice that there existed a valid cause of action against Sharonville and the other defendants. Instead, the reasonableness of Mr. Clark's advice to Plaintiffs must be measured objectively and against the information known to him; decisions made by current counsel have no bearing on that measurement. Thus, depositions of Mr. Gerhardstein and Mr. Laufman would require the disclosure of work product, and the privilege against that disclosure has not been waived.

**C.  Deposing Plaintiffs' Counsel Is Not Crucial To Preparation Of Defendants' Case**

Defendants have failed to justify how deposing Mr. Gerhardstein and Mr. Laufman is "crucial" to their case. Resolution of the statute of limitations defense rests on this Court's application of equitable tolling and equitable estopple principles. Plaintiffs are the victims of crime, and Defendants were or are in charge of investigating those crimes. Plaintiffs remain dependent on the defendants for the successful prosecution of Albert Schuholz now that he is indicted. Defendants have covered up evidence both of the identity of Plaintiffs' mothers murderer and their own tortious conduct towards Plaintiffs for more than two decades. Requiring a party to pursue a lawsuit, under those circumstances, defies the very notion of

7

equity. In this case, the Court should not allow Defendants to benefit from their misconduct. It was their actions, their deceit, their cover-up, that delayed the plaintiffs in vindicating their rights. These defendants should not now be able to claim that because they were so adept at their continuing course of wrongdoing that Plaintiffs cannot recover for the damages the wrongdoing caused. Thus, determining what Plaintiffs' current counsel knew when this action was filed does not advance the statute of limitations analysis. Instead, in order to successfully assert that Plaintiffs' claims are time-barred, Defendants will need to prove that their cover-up of the evidence proving Schuholz was the murderer was not "so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." *Bell v. Milwaukee*, 746 F.2d 1205, 1231 (7th Cir. 1984).

In the briefs responsive to Defendants' motion for summary judgment, Plaintiffs have demonstrated that Defendants have had a "longstanding and demonstrable policy of constitutional violation." The City of Sharonville sat idly by as Defendant misled Plaintiffs, the Hamilton County Prosecutor, and the public regarding the facts of this case. The City has consistently worked to cover up the truth about Schuholz's crimes. Even through today, Defendants continue a policy and pattern of obfuscation and obstruction. Defendants' tortious conduct has continued unabated since the early 1980's. For a more thorough analysis of the Plaintiffs' arguments regarding the statute of limitations, see Plaintiffs' Memorandum In Opposition to Motion of Defendants for Summary Judgment on the Basis that Plaintiffs' Claims Are Barred by the Statute of Limitations (Doc. 187, filed under seal), pages 20-26.

Even assuming the Defendants' have articulated a correct legal framework of analysis, deposing Plaintiffs' counsel does not aid them in proving their arguments. As argued above with reference to waiver, deposing Plaintiffs' current counsel sheds no light on Defendants'

8

invocation on the statute of limitations. If, as Defendants argue, Plaintiffs knew enough to file suit by the time they had retained Mr. Clark, then Mr. Clark's file, declaration, and deposition would have revealed that. Whether Plaintiffs exercised diligence in pursuing their investigation and claims could have been—and was—ascertained by interrogatories to Plaintiffs and during Plaintiffs' depositions. Further, deposing Plaintiffs' counsel is unlikely to lead to admissible evidence. Defendants assert that the testimony of Plaintiffs' counsel could be used to impeach the credibility of Mr. Clark. But Federal Rule of Evidence 608(b) plainly precludes a party from using extrinsic evidence to cast doubt on a witness's credibility. Deposing Mr. Gerhardstein and Mr. Laufman adds nothing to Defendants' ability to prove their case, other than to provide Defendants valuable insight into Mr. Gerhardstein's and Mr. Laufman's thoughts about and strategies regarding the litigation. Therefore, taking Plaintiffs' counsel's depositions is not crucial to Defendants' case, and their attempts to do so should be thwarted.

## CONCLUSION

Defendants have failed to meet their burden to establish that *any* of the three *Shelton* factors are satisfied—and their burden is to prove that the factors are *all* satisfied. Accordingly, this Court should grant Plaintiffs' motion to quash.

**Respectfully submitted,**

/s/ Alphonse A. Gerhardstein
Alphonse A. Gerhardstein # 0032053
Trial Attorney for Plaintiffs
Paul Laufman  #0066667
Donald R. Caster #0077413
Attorneys for Plaintiffs
GERHARDSTEIN BRANCH & LAUFMAN
617 Vine Street, Suite 1409
Cincinnati, Ohio 45202
(513) 621-9100
(513) 345-5543 fax

agerhardstein@gblfirm.com
plaufman@gblfirm.com
dcaster@gblfirm.com

**Certificate of Service**

I here by certify that on February 10, 2005, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Alphonse A. Gerhardstein
Alphonse A. Gerhardstein