UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA KAMMEYER, et al. | : | NO. 1:01-CV-649 |
| Plaintiff | : | (Judge Spiegel)<br>(Magistrate Judge Black) |
| vs. | : | |
| CITY OF SHARONVILLE, et al. | : | **MOTION TO QUASH SUBPOENA DIRECTED TO SHERIFF SIMON L. LEIS, JR. (FORMER PROSECUTOR)** |
| Defendants | : | |
| | | **(HEARING REQUESTED)** |

Now comes non-party and movant, Sheriff Simon L. Leis, Jr. (hereafter "Sheriff Leis") by and through counsel, and moves this Court to quash the subpoena issued to him by Plaintiffs, or ordering such other relief as the Court may deem just and proper. This motion is based on Fed. Civ. R. 26(c) and 45(c) as set forth in the attached memorandum. Movant Sheriff Leis herein respectfully requests oral argument. Counsel for non-party movant has communicated with counsel for Plaintiffs in an attempt to resolve this dispute without the Court's involvement but given the critical nature of the privileged materials requested, no resolution occurred.

The Hamilton County Prosecutor's Office objects to the disclosure of the documents and materials and the depositions requested upon the bases stated hereinafter.

Respectfully submitted,

JOSEPH T. DETERS
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO


/s/ Mark C. Vollman (0007040)
/s/ Christian J. Schaefer (0015494)
/s/ Michael G. Florez (0010693)
Assistant Prosecuting Attorneys
Hamilton County, Ohio
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202
513/946-3144
513/946-3048
513/946-3018 (Fax)


## MEMORANDUM

### I.     INTRODUCTION

This is a civil case in federal court that has been pending for over 3 years in which the Hamilton Prosecuting Attorney is not nor has ever been a party. Plaintiffs' attorneys are seeking to obtain by subpoena, the work product and attorney-client privileged materials of the former Hamilton County Prosecuting Attorney Sheriff Leis.

Plaintiffs' and their attorneys seek to circumvent the work product doctrine for state prosecutors. Plaintiffs' seek to denigrate, the role of state prosecutors and make them subservient to parties litigating issues of money in Federal Court. Plaintiffs and their attorneys could but apparently have not, conducted their own interviews with witnesses, and pursued their money damage claims without interfering in the state prosecution of a murder case.

Plaintiffs seek the disclosure of documents which have already been determined to be "work product exempt from discovery by the defendant in the murder prosecution." (See Court order, doc. 40 p. 6 attached as Exhibit A hereto).

The subpoenaed documents are contained in the murder indictment file maintained by Hamilton County Prosecutor's Office in the case of *State of Ohio v. Albert Schuholz*, Case No. B-9805045.

## II.    SUBPOENA

On February 25, 2005, Sheriff Leis was served with a subpoena in his official capacity as the former Prosecuting Attorney with the Hamilton County Prosecutor's Office, issued by Alphonse Gerhardstein, counsel for plaintiffs in the above captioned matter. A copy of the subpoena is attached hereto as Exhibit B[1], it seeks testimony in the form of a deposition from Sheriff Leis and disclosure of the following protected documents:

Attachment to subpoenas issued to Sheriff Simon L. Leis, Jr., Terry Gaines, and John Jay on February 26, 2005:

Preliminary Note: All material responsive to this subpoena will be subject to a strict order on confidentiality consistent with prior orders (Doc. 79, 135) regarding the criminal investigation of the murders of Marie Shuholz and Starla Burns. Further, all discovery pursuant to this subpoena shall be filed with the court under seal as specifically ordered by the court (Doc. 195, attached hereto).

Items to be Produced:

---

[1] The subpoena issued to Sheriff Leis, requests "any documents that show what evidence, if any, was available in the 1980's, to the Hamilton County Prosecutor's Office regarding the murders of Marie Schuholz (Wright) and Starla Burns." The affidavit of Richard Gibson attached as Exhibit C states such are his work product and therefore privileged. At this stage of the murder prosecution, even providing an inventory or privilege log describing in general the contents of the prosecutor's file would compromise the state's murder prosecution. The Prosecutor's Office will seek direction from the Court as to how to identify the documents for purposes of this motion without compromising the murder case.

> Any documents that show that evidence, if any, was available in the 1980s to the Hamilton County Prosecutor's Office regarding the murders of Marie Schuholz (Wright) and Starla Burns. Compliance does not require disclosure of privileged attorney records or work-product. Deponent shall provide to the Plaintiffs a privilege log of material withheld as attorney mental impressions, conclusions, opinions, or legal theories. All of this material shall be produced under seal. (See Order, Doc. 195 at p. 3, attached hereto)

Sheriff Leis respectfully move this Court to quash the subpoena issued to him by the plaintiffs based upon state statutes prohibiting the release of certain documents as well as interfering with a pending state court action and federal law also protecting the confidentiality of such documents.

Similar issues involving with the subpoenas issued to Michael Allen, John Jay and Terry Gaines have been fully briefed and argued and decided by the Court. Plaintiffs moved this District Court to have this Court's Order (Doc. 195) applied to Sheriff Lies and the Court has issued a ruling on March 1, 2005 interpreting its prior ruling relative to the deposition of Sheriff Leis.

## III.    BACKGROUND

Plaintiffs have brought a claim in Federal Court against the City of Sharonville alleging a civil rights action against police officers who are alleged to have conspired to destroy evidence and cover up facts involving the murders of Marie Wright Schuholz and Starla Barns.

The murders occurred on May 8, 1981 in Sharonville, Hamilton County, Ohio. The identity of the actual killer is unknown at this time. It is alleged that Albert Schuholz ("Schuholz") arranged for the two women to be murdered and that the named defendants in Plaintiffs' civil rights action conspired to cover-up the murder investigation. Plaintiffs maintain that the former detective for the City of Sharonville, James Cramer had an existing association

with Schuholz in which he handled Schuholz's "loan-shark" collections and did not properly

investigate the murders.  The City of Sharonville and certain current and former Sharonville

employees and officials are alleged to have engaged in a "cover-up".  (See Order of Sept 5,

2002, T.d. 40).

Schuholz subsequently married Norma Schuholz after the death of his former wife Marie

Wright Schuholz.  In 1998, Schuholz pled guilty in the United States District Court for the

Eastern District of Kentucky for the attempted murder of Norma Schuholz.  At the time of his

sentencing, the Hon. William O. Bertelsman found Schuholz incompetent and ordered him to the

custody of the Attorney General for the State of Kentucky.  Schuholz is presently being held at a

federal hospital and is receiving treatment.  The Sheriff of Hamilton County, Ohio has a holder

on Schuholz for him to he extradited to Ohio once he has been restored to competency and been

sentenced for the attempted murder.  Plaintiffs have not submitted any evidence as to the current

mental condition of Schuholz or the identity of the actual killer of Marie Wright Schuholz and

Starla Barns.  (See Order of Sept 5, 2002, T.d. 40; Affidavit of Richard G. Gibson, Assistant

Prosecuting Attorney).

Plaintiffs first filed suit on September 25, 2001 and subsequently filed two amended

complaints on October 16, 2001 and September 5, 2003.  Plaintiffs first sought production of

documents from other non-party movants, Hamilton County Prosecutor Michael K. Allen,

former Assistant Prosecutor Terry Gaines and an investigator for the Hamilton County

Prosecutors office, John Jay on August 17, 2004 and September 15, 2004 respectively.

The state prosecutors as well as Sheriff Leis were *never* involved in of these proceedings

prior to being served with subpoenas.  As such, the non-party movant Sheriff Lies now has to

defend against producing documents and giving testimony without the benefit of participating in

all prior hearings and motions on requests for documents. Despite the fact that he was not a

party had not been served with subpoenas, had no notice, and had no opportunity to be heard,

this Court issued an Order containing the following:

> At this time we conclude that the materials relating to the Cramer Cover-up
> Investigation in the possession of the Hamilton County Prosecutor's Office must
> be disclosed to the Plaintiffs. The Court will review the balance of the documents
> in the murder investigation in camera to determine if there is any other material
> that may be relevant to Plaintiffs' Complaint that should be disclosed to Plaintiff
> for any reason.(See Order of Sept 5, 2002, T.d. 40, page 6).

Inexplicably, Plaintiffs' made no request of the non-party movants ( collectively "prosecutors")

during the two years following Judge Speigel's determination, without notice or opportunity to

be heard, that the prosecutors could not protect their "work product" made in anticipation of the

trial of the murder charge against Albert Schuholz.

     Counsel for the  prosecutors, since they learned that Judge Speigel considered and denied

their right to protect their work product without notice and opportunity to be heard have made

efforts to ascertain the scope of the depositions sought and the necessity of the documents sought

from movants. In response, counsel for Plaintiffs rely on Judge Spiegel's order entered

September 5, 2002, (attached hereto as exhibit D[2]). It appears that this Court, in Plaintiffs' view,

determined this issue two years before movants were ever aware that this discovery was being

sought from them by Plaintiffs.

     This motion to quash is the first opportunity for Sheriff Leis to argue against the

production and testimony being sought and movants are in the unenviable position of having had

---

[2]Judge Speigel's order states unequivocally on page 5 and 6 "that the material pertaining
to the Schuholz/Burns murder investigation in possession of the Hamilton County Prosecutor's
Office no doubt would be work product exempt from discovery by the defendant in the murder
prosecution".

their issues being decided by this Court without due process guaranteed by the Fifth Amendment to the United States Constitution.

## IV.    ARGUMENT

### A.    Abstention Doctrine Considerations

Whether it  is next month or next year, the Hamilton County Prosecutor's Office will prosecute a criminal case against Albert Schuholz for the double murder of Marie Wright Schuholz and Starla Barns.  This Court, in resolving this request to depose and obtain documents outlining the prosecutor's work product must preserve for both Mr. Schuholz and the State of Ohio the opportunity to fully and fairly present their cases to a state jury.

The United States Supreme Court established the abstention doctrine to protect state criminal proceedings from interference by the federal judiciary.  The principles behind the abstention doctrine were discussed in *Juidice v. Vail*, 430 U.S. 327, 334, 97 S. Ct. 1211, 1217 (1977) as follows:

> As we emphasized in *Huffman,* the "'more vital consideration'" behind the Younger doctrine of nonintervention lay not in the fact that the state criminal process was involved but rather in "'the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Huffman,* 420 U.S., at 601, quoting *Younger,* 401 U.S., at 44.

> This is by no means a novel doctrine. *In Ex parte Young,* 209 U.S. 123 (1908), the watershed case which sanctioned the use of the Fourteenth Amendment to the United States Constitution as a sword as well as a shield against unconstitutional conduct of state officers, the Court said:

> "But the Federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court. *Taylor* v. *Taintor,* 16 Wall. 366, 370; *Harkrader* v. *Wadley,* 172 U.S. 148." *Id.,* at 162.

> Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is "an offense to the State's interest... likely to be every bit as great as it would be were this a criminal proceeding," *Huffman, supra,* at 604. n12 Moreover, such interference with the contempt process not only "unduly interfere[s] with the legitimate activities of the [State]," *Younger, supra,* at 44, but [**1218] also "can readily be interpreted 'as reflecting negatively upon the state court's ability to enforce constitutional principles,'" *Huffman, supra,* at 604. n13

While the abstention doctrine does not directly apply because the Plaintiffs are not parties to the State Criminal case, the principles behind the abstention doctrine — the notion of comity and respect for state governmental functions — must be considered in determining this motion to quash the subpoena.

These are the same principles that would be at play, should the plaintiffs' attorneys, their notes, records, interviews,  and other work product which are the result of the use of the "tongue, pen and head" be subpoenaed to help the state prosecute Albert Schuholz or Albert Schuholz subpoena the same material in order to present a defense to the murder charge.  If both proceedings, under the test from *Younger v. Harris,* 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971), can continue simultaneously because they are independent, they should proceed in an independent fashion.

Instead of Plaintiffs' developing there own theories of the case and evidence, Plaintiffs have invited this Court to allow them to rummage through the prosecutor's files and destroy  the balance between the obligation of the State of Ohio to prosecute a murder case and the rights of the accused to have a fair trial.  This destroys the concepts of comity and respect for state functions that *Younger v. Harris,* 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971).  This

Court should use its discretion to protect the state criminal prosecution from the type of interference that Plaintiffs propose.

The types of interference with Ohio's criminal prosecution are:

1.    Discovery - Ohio does not have open file discovery in criminal cases. Instead, for witness lists, documents and tangible items, and reports of examinations and tests, there is reciprocal discovery. The prosecutors' duty under Ohio Criminal Rule 16(C) is to disclose certain items depending upon the criminal defendants agreement to provide similar items to the prosecutor. Even if there is a protective order, Albert Schuholz will be able to learn the state's witness list, the reports of examinations and tests, and documents and tangible things in possession of the state without subjecting himself to reciprocal discovery. In this federal case, Plaintiffs must prove that Albert Schuholz committed the double murder to show that Sharonville Police covered it up. If Plaintiffs examine the work product, take depositions of the prosecutors, and examine all of the records maintained by the prosecutors, prior to presenting there case, Albert Schuholz in defending against the murder charge will know that the prosecutor have no evidence beyond that presented by Plaintiffs in this case.[3] That knowledge will prejudice the states criminal prosecution because Albert Schuholz will not have to provide a witness list, documents and tangible evidence, or reports of examinations and tests conduct for him prior to their presentation at the Criminal Trial. (See Affidavit of Richard Gibson)

2.    Pre-Trial Publicity - A prosecutor in a criminal case cannot use pretrial publicity to unfairly to prejudice an accused. If the Plaintiffs' civil case goes to trial and the grand jury

---

[3] Albert Schuholz was originally a defendant in the federal case and was a party defendant at the time of Judge Speigel's September 5, 2002 order that the Hamilton County Prosecutor's Office disclose its murder file.

transcript, testimony of the prosecutors, and evidence and statements developed by the prosecutors is admitted, short of conducting a secret trial, there is no way to protect the prospective criminal jury pool from exposure publicity about the matter. See Code of Professional Responsibility, DR 7-107.

3.      Trial Strategy - Finally the most important thing a criminal prosecutor brings to a criminal case are his thoughts.  Unlike civil cases, most often a criminal prosecutor has little concept of what defense the accused may offer until it is presented at trial.  Because of the Fifth Amendment there are no pretrial depositions of the accused to learn his theory of the case, his proposed testimony, and in many instances even the witnesses the defense will call.  The items created by the criminal prosecutor, the "intangible things, the results of the [prosecutors] use of his tongue, his pen, and his hand" are the only tools to offset the advantage our system gives to the accused in a heightened burden of proof and permitted element of surprise.  Revelation of those items will be highly prejudicial to a successful prosecution.

**B.      The Testimony and Production of Documents Sought by the Subpoena Issued to Non-Party Movant Sheriff Leis is within the protections of both the Attorney-Client Privilege and the Work-Product Doctrine.**

Instead of creating their own work product, Plaintiffs are seeking the prosecutors work product, their files, and their knowledge on a *pending* criminal case, a pending murder indictment no less.  Specifically, Plaintiffs are requesting the following information:

Attachment to subpoenas issued to Sheriff Simon L. Leis, Jr., Terry Gaines, and John Jay on February 26, 2005:

Preliminary Note: All material responsive to this subpoena will be subject to a strict order on confidentiality consistent with prior orders (Doc. 79, 135) regarding the criminal investigation of the murders of Marie Shuholz and Starla Burns.  Further, all discovery pursuant to this subpoena shall be filed with the court under seal as specifically ordered by the court (Doc. 195, attached hereto).

Items to be Produced:

Any documents that show that evidence, if any, was available in the 1980s to the Hamilton County
Prosecutor's Office regarding the murders of Marie Schuholz (Wright) and Starla Burns.
Compliance does not require disclosure of privileged attorney records or work-product.  Deponent
shall provide to the Plaintiffs a privilege log of material withheld as attorney mental impressions,
conclusions, opinions, or legal theories.  All of this material shall be produced under seal.  (See
Order, Doc. 195 at p. 3, attached hereto)

These requests upon the prosecutors are both unprecedented and unusual in that Plaintiffs are

seeking discovery about a criminal case  for a civil case when that criminal case is still pending.

The appropriate standard in this instance with which to analyze the merits of Plaintiffs request

while balancing the concerns of a pending criminal case which concerns matters of attorney-

client privilege and work-product is set out in  _Hickman v. Taylor_, 329 U.S. 495, 510 (1947) and

its progeny.

The work product doctrine arises out of the need to provide an attorney with a "certain

degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."

_Hickman v. Taylor_, 329 U.S. 495, 510 (1947).  It protects"intangible things, the results of the

lawyer's use of his tongue, his pen and his head, for his client."  _Hickman v. Taylor_, 153 F.2d

212, 223 (3d Cir. 1945), _aff'd_, 329 U.S. 495 (1947).  It provides an attorney with a "zone of

privacy" within which to think, plan, weigh facts and legal theories, and prepare a case. _James

Julian, Inc. v. Raytheon Co._, 93 F.R.D. 138, 142-43 (D. Del. 1982) (citing _Costal States Gas

Corp. v. Department of Energy_, 617 F.2d 854, 864 (D.C. Cir. 1980)); _Hercules, Inc. v. Exxon

Corp._, 434 F. Supp. 136 (D. Del. 1977).  The Ohio Supreme Court in _State ex rel Jackson v.

Steckman,_ explained that "It is difficult to conceive of anything in a prosecutor's file, in a

pending criminal matter, that would not be either material compiled in anticipation of litigation

of a specific criminal proceeding or in personal trial preparation of the prosecutor".

The work product doctrine is intended to aid trial preparation, most frequently as a bar to

discovery in civil litigation, but "its role in assuring the proper functioning of the criminal justice

system is even more vital," for "fair and accurate resolution of the question of guilt or innocence

demand that adequate safeguards assure the thorough preparation and presentation of each side

of the case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

The holding in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), in

which counsel was seeking depositions of opposing counsel is instructive.  The *Shelton* Court

held that:

> [t]aking the deposition of opposing counsel not only disrupts the
> adversarial system and lowers the standards of the profession, but it
> also adds to the already burdensome time and cost of litigation.
> It is not hard to imagine additional pretrial delays to resolve
> work-product and attorney-client objections, as well as delays to resolve
> collateral issues raised by attorney's testimony.  Finally, the practice of
> deposing opposing counsel detracts from the quality of client
> representation.  Counsel should be free to devote his or her time and efforts
> to preparing the client's case without fear of being interrogated by
> his or her opponent.

While the prosecutors are not technically opposing counsel in the present case; however, their

reasons and argument regarding protected information are tantamount to that of counsel in

*Shelton,* in so far as there is a pending criminal case and much, if not all, of the information

being sought by Plaintiffs, exceeds the scope of what is allowable in discovery of criminal cases

(*See generally Ohio Revised Code Criminal Rule 16*).  *See also Hickman v. Taylor*, 329 U.S.

495, 510 (1947) (addressing the work product doctrine stating, "Here is simply an attempt,

without purported necessity or justification, to secure written statements, private memoranda and

personal recollections prepared  or formed by an adverse party's counsel in the course of his

legal duties.  As such, it falls outside the arena of discovery and contravenes the public policy

underlying the orderly prosecution and defense of legal claims.");  *Marco Island Partners v. Oak

Development Corp.*, 117 F.R.D. 418, 420 (N.D. Ill. 1987) (recognizing that the deposition of

opposing counsel "provides a unique opportunity for harassment; it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness"). Indeed, movants maintain that the same basic principles govern the instant attempts to depose the non-party former prosecuting attorney and the Investigator.

All of the materials and documents maintained in the Prosecutor's office file were either prepared and/or compiled by Richard Gibson in anticipation of preparing for and successfully prosecuting the case against Albert Schuholz for aggravated murder. The disclosure of the information would greatly compromise the prosecution of Albert Schuholz. (Affidavit of Richard Gibson)

### C.    Procedure for Resolving Work product claims between Parties

If the Prosecutors were parties, there work product would be protected by the procedure set out in _Toledo Edison vs. GA Technologies, Inc._, 847 F.2d 335, 339-40 (6th Cir. 1988), the Sixth Circuit of Appeals adopted a detailed procedure for litigating such work product claims:

> In order to adjudicate a claim of work product immunity under Fed.R.Civ.P.26(b)(3), a court must follow this sequence of steps:
>
> 1.  The objecting party must make the claim that the materials have been prepared in anticipation of litigation or for trial; [Done herein.] (See Affidavit of Richard Gibson)
>
> 2.  The party requesting the materials must then show and the court must find that they are (1) relevant to the subject matter of the litigation and (2) not privileged; [Not done herein.]
>
> 3.  The burden then shifts to the objector to show (1) that the materials were in fact prepared in anticipation of litigation or for trial, (2) that the material was prepared by or for the party or the party's representative, including attorney, consultant, surety, indemnitor insurer, or agent; [Done herein.]

-13-

4.  The burden then shifts to the requester to show (1) he has a substantial need of the materials to prepare his case and (2) he is unable without substantial hardship to obtain the substantial equivalent of the materials by other means; [Not done herein.]

5.  Even if step four is met, the objector can still prevent disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation.

Everything that Plaintiffs want is clearly trial preparation materials as defined in F.Civ.26(b)(3).  Therefore, pursuant to that rule, they are exempt from discovery absent a showing that petitioner has substantial need of them in the preparation of his case, and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

While the Hamilton County Prosecutor is not a party to the instant case, it is helpful in resolving this situation.  Plaintiffs have not satisfied their burden of demonstrating at a minimum that they are unable to obtain the represented information by other means.

Plaintiffs have merely subpoenaed these documents; no made any claim of substantial need or unavailability from other sources has been demonstrated.  It is difficult to conceive of a situation where the need for the protection of work product of prosecutors is more critical.

Plaintiffs have presented no indication of why he needs the materials or why the substantial equivalent of the material sought cannot be had from other means.  Plaintiffs could simply arrange interviews with the witnesses to the events.  Nothing is  presented to indicate hardship or need by Plaintiffs. Plaintiffs are asking for the notes of prosecutors.  These obviously contain "the mental impressions, conclusions, opinions, or legal theories" of the prosecutors. Fed. Civ. R.P. 26(b)(3) provides:

ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions,

opinions, or legal theories of an attorney or other representative of a party
concerning the litigation.

The purpose behind the work-product doctrine is to protect the adversary relationship and

give a lawyer a "zone of freedom" in which to plan trial strategy without fearing disclosure to an

opponent.  *United States v. Nobles*, 422 U.S. 225, 238 (1975).  This Court should deny access to

the Prosecutors files in a pending murder indictment.

IV.    **CONCLUSION**

Based upon the foregoing, this Court should quash the subpoena issued for Sheriff Leis,

former Hamilton County Prosecutor respectfully requests an order under Fed. Ci. R. 26(c)(1) that

the discovery sought should not be allowed.


                                    Respectfully submitted,

                                    JOSEPH T. DETERS
                                    PROSECUTING ATTORNEY
                                    HAMILTON COUNTY, OHIO


                                    */s/Mark C. Vollman*, 0007040P
                                    /s/ Christian J. Schaefer 0015494P
                                    */s/* Michael G. Florez, 0010693
                                    Assistant Prosecuting Attorneys
                                    230 East Ninth Street, Suite 4000
                                    Cincinnati, Ohio 45202
                                    513/946-3144

                          **CERTIFICATE OF SERVICE**

           I hereby certify that on March 3, 2005, I electronically filed the foregoing with
the Clerk of Courts using the CM/ECF system which will send notification of such filing to the
following, and I hereby certify that I have mailed by United States Postal service the document
to  non CM/ECF participants.

Lawrence E. Barbiere, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio  45249

Thomas T. Keating, Esq.
Keating, Ritchie & Swick
8050 Hosbrook Road, Suite 200
Cincinnati, Ohio 45236

Randolph H. Freking, Esq.
Leslie E. Ghiz, Esq.
Freking & Betz
215 East Ninth Street, Fifth Floor
Cincinnati, Ohio 45202

Alphonse A. Gerhardstein, Esq.
Paul Laufman, Esq.
617 Vine Street, Suite 1409
Cincinnati, Ohio 45202

Brian E. Hurley, Esq.
Robert J. Gehring, Esq.
Crabbe, Brown & James
30 Garfield Place, Suite 940
Cincinnati, Ohio 45202

<u>/s/ Mark C. Vollman 0007040</u>
Assistant Prosecuting Attorney