# EXHIBIT A

93 Fed. Appx. 782 printed in FULL format.

MIDWEST REALTY MANAGEMENT COMPANY, Plaintiff-Appellee, v.
THE CITY OF BEAVERCREEK, Defendant-Appellee, ALOYS NIENHAUS, ROBERT NIECK, TANYA
NIECK, RANDALL LEE AMSTUTZ, Proposed Intervenors-Appellants.

No. 02-3387

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

93 Fed. Appx. 782; 2004 U.S. App. LEXIS 5972

March 22, 2004, Filed

NOTICE: [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE
28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE
CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE
SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY
DISPLAYED IF THIS DECISION IS REPRODUCED.

PRIOR HISTORY: ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF OHIO. 98-00294. Merz. 3/7/02.

DISPOSITION: Order denying intervention reversed.  Agreed Order upon Settlement
vacated and matter remanded.

CASE SUMMARY:

PROCEDURAL POSTURE: Appellants, proposed intervenors, challenged an order of the
United States District Court for the Southern District of Ohio denying their
motion to intervene in a civil action that had been settled between appellees,
company and city, but not yet closed. The proposed intervenors wished to
challenge terms of the pending settlement, but their motion was denied as
untimely.

OVERVIEW: The company entered into a contract to sell a 30-acre parcel of land
in the city, then zoned for agricultural use. The sale was conditioned on
re-zoning of the property for development as a large apartment complex. The city
council approved the requested re-zoning by ordinance. The ordinance was
overturned by referendum. The company sued the city. The parties' proposed
settlement agreement essentially effected a circumvention of the referendum.
Before the settlement agreement was finalized, the parties advised the district
court that a settlement had been reached. The district court issued a
conditional dismissal order. The proposed intervenors filed their motion to
intervene, which was denied as untimely. The appellate court found that the
district court abused its discretion when it denied the motion to intervene as
untimely because since the settlement had not been consummated, it had
jurisdiction to entertain and grant the motion to intervene, and there was no

evidence that any of the proposed intervenors, who filed their motion to intervene on June 4, 2001, had actual knowledge of the possibility of a settlement jeopardizing their legal interests before April 2001.

OUTCOME: Because the motion to intervene was improperly denied, the order denying intervention was reversed. The proposed intervenors shall be allowed to intervene as parties defendant. Further, because the agreed order upon settlement simultaneously issued by the district court was premised on agreement of less than all the parties properly before the court, it was vacated. The matter was remanded to the district court.

CORE TERMS: intervenors, motion to intervene, settlement, negotiations, conditional, settlement agreement, dismissal order, proposed settlement, referendum, intervene, untimely, reopen, timeliness, re-zoning, zoning, motion to dismiss, original parties, discovery, progress, adequately represented, retained jurisdiction, constructive notice, proposed agreement, good cause shown, subject property, agricultural, consummated, pendency, residents, defended

LexisNexis(R) Headnotes

Civil Procedure: Joinder of Claims & Parties: Intervention
[HN1] The denial of a motion to intervene under Fed. R. Civ. P. 24(a) is immediately appealable as a collateral matter. Fed. R. Civ. P. 24 is to be broadly construed in favor of potential intervenors. In order to demonstrate entitlement to intervention as of right under Fed. R. Civ. P. 24(a), the proposed intervenors were required to show: (1) that their motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the pending litigation; (3) that the disposition of the action might impair or impede their ability to protect their legal interest absent intervention; and (4) that the parties to the litigation may not adequately represent their interest.

Civil Procedure: Dismissal of Actions
[HN2] A conditional dismissal order is not final until the time to satisfy the condition expires.

Civil Procedure: Joinder of Claims & Parties: Intervention
[HN3] Timeliness of a motion to intervene is evaluated in the context of all relevant circumstances, including the following considerations: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

Civil Procedure: Joinder of Claims & Parties: Intervention
[HN4] In determining the timeliness of a motion to intervene, the time between the filing of the complaint and the motion to intervene, in itself, is among the least important circumstances. What is more critical is the progress made in discovery and motion practice during the course of the litigation.

Civil Procedure: Settlements

Civil Procedure: Joinder of Claims & Parties: Intervention
[HN5] The mere pendency of settlement negotiations cannot be deemed to trigger an awareness in potential intervenors that their legal interests could be affected. Only notice of objectionable terms in a proposed settlement will ordinarily suffice.

COUNSEL: For MIDWEST REALTY MANAGEMENT COMPANY, Plaintiff - Appellee: Roger Makley, Coolidge, Wall, Womsley & Lombard, Dayton, OH.

For CITY OF BEAVERCREEK, Defendant - Appellee: Stephen M. McHugh, Matthew D. Stokely, Matthew R. Steinke, Altick & Corwin, Dayton, OH.

For ALOYS T. NIENHAUS, ROBERT C. NEICK, TANYA NEICK, RANDALL LEE AMSTUTZ, Appellants: Richard D. Schuster, Adam J. Hall, Vorys, Sater, Seymour & Pease, Columbus, OH.

JUDGES: Before: MARTIN and MOORE, Circuit Judges; and McKEAGUE, District Judge. *

* The Hon. David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

OPINION: [*783] PER CURIAM. This is an appeal from an order of the District Court for the Southern District of [**2] Ohio denying appellants' motion to intervene in a civil action that had been settled between the parties, but not yet closed. The proposed intervenors wished to challenge terms of the pending settlement, but their motion was denied as untimely. Appellants contend the district court abused its discretion. For the reasons that follow, we agree. The order denying the motion to intervene will be reversed and the matter remanded to the district court for further proceedings.

I

The seed of the present controversy was first sown in 1996. At that time plaintiff-appellee Midwest Realty Management Company ("Midwest") entered into a contract to sell a 30-acre parcel of land in the City of Beavercreek, then zoned for agricultural use. The sale, to Pedcor Investments, was conditioned on re-zoning of the property for development as a large apartment complex. The Beavercreek City Council approved the requested re-zoning by ordinance in October 1997. The ordinance was overturned, however, by referendum in a May 1998 election.

This action followed. In July 1998, Midwest asserted various claims against the City of Beavercreek, alleging that the restored agricultural zoning of its parcel is [**3] [*784] arbitrary and unreasonable and represents an unconstitutional taking without just compensation and without due process. The City initially defended by moving for dismissal of Midwest's claims. After the motion was denied in July 1999, however, settlement negotiations ensued. These negotiations ripened into a proposed settlement agreement that was approved by the City Council by resolution on February 12, 2001. Pursuant to the proposed settlement agreement, the City, in exchange for dismissal of Midwest's claims,

agreed to re-zone the subject property from "Agricultural" to "Residential Planned Unit Development," essentially allowing Pedcor Investments to proceed with development of the apartment complex. In essence, the settlement effected a circumvention of the referendum.

Before the settlement agreement was finalized, the parties advised the district court that a settlement had been reached. The district court issued a "conditional dismissal order" on May 3, 2001, dismissing the action with prejudice, "provided that any of the parties may, upon good cause shown not later than June 4, 2001, reopen the action if settlement is not consummated." The order expressly contemplated subsequent[**4] entry of a judgment order consistent with the settlement agreement and retained to the district court jurisdiction to enforce the settlement agreement.

On June 4, 2001, appellants Aloys Nienhaus, Robert Nieck, Tanya Nieck and Randall Lee Amstutz, all residents of the City of Beavercreek and owners of property adjacent to Midwest's 30-acre parcel, filed their motion for leave to intervene as defendants. The proposed intervenors contended they had interests relating to the subject property that were not being adequately represented by the City. On June 27, 2001, while the motion to intervene was still pending, Midwest and the City submitted their Agreed Order Upon Settlement to the district court for approval. The district court issued its ruling on both matters, denying the motion to intervene and approving the Agreed Order, on March 7, 2002.

The district court denied the motion to intervene as untimely for two reasons. First, it viewed its conditional dismissal order as having been immediately effective to foreclose exercise of continuing jurisdiction except insofar as it had been expressly retained. In its conditional order, the district court had retained jurisdiction only to reopen[**5] the case on motion of any party for good cause shown, to enter a judgment order embodying the parties' settlement agreement, and to enforce the settlement agreement. Finding that the proposed intervention would not serve any of these purposes, the district court denied intervention because its jurisdiction to adjudicate any claim or defense the proposed intervenors would assert had already been extinguished. Secondly, the district court held the motion to intervene was untimely because the movants ought to have known as early as March 31, 2000, when the parties moved to vacate the trial date in order to pursue settlement negotiations, that their interests might not be adequately represented by the City.

II

[HN1] The denial of a motion to intervene under Fed. R. Civ. P. 24(a) is immediately appealable as a collateral matter. Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 375, 377, 94 L. Ed. 2d 389, 107 S. Ct. 1177 (1987); Purnell v. City of Akron, 925 F.2d 941, 944 (6th Cir. 1991). Rule 24 is to be broadly construed in favor of potential intervenors. Stupak-Thrall v. Glickman, 226 F.3d 467, 472 (6th Cir. 2000).[**6] In order to demonstrate entitlement [*785] to intervention as of right under Rule 24(a), the proposed intervenors were required to show (1) that their motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the pending litigation; (3) that the disposition of the action might impair or impede their ability to protect their legal interest absent intervention; and (4) that the parties to the litigation may not adequately

represent their interest. Id. at 471; Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990). The district court held that the proposed intervenors had made a prima facie showing sufficient to satisfy all but the first of these four requirements. This holding has not been challenged by the appellees. Hence, the focus of this appeal is on the district court's timeliness determination, which we review for abuse of discretion. Stupak-Thrall, 226 F.3d at 471, 472.

A. Jurisdictional Question

The district court's first rationale for denying the motion to intervene is a jurisdictional one. The court did not hold that it lacked jurisdiction to grant the motion to intervene.[**7] Rather, the court held that if intervention were allowed, it would lack jurisdiction to reopen the merits of the litigation settled. n1 Hence, in effect, the court ruled that the motion to intervene came too late because the action had already been dismissed and the jurisdiction retained was too narrow to accommodate the proposed intervention. n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The district court noted that the motion to intervene was not "accompanied by a pleading setting forth the claim or defense for which intervention is sought," as required by Fed. R. Civ. P. 24(c). The court did not rely on this technical defect as grounds for denial of intervention, but was admittedly handicapped in its assessment of the proposed intervenors' position. The court thus presumed that the proposed intervenors' objection to the proposed settlement agreement would entail scrutiny of the merits of Midwest's constitutional claims. Such an inquiry was deemed to be outside the scope of the limited jurisdiction retained by the district court. Appellants insist they have no interest in litigating the merits of Midwest's claims, but merely seek to ensure that any agreement approved by the City is in conformity with the requirements of the City's charter and zoning code. In light of the analysis that follows, the precise nature of the proposed intervenors' claim or defense is of little consequence.
[**8]

n2 To the extent the district court's analysis includes a jurisdictional component, we review its determination de novo. Green v. Ameritech Corp., 200 F.3d 967, 972 (6th Cir. 2000).

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

The district court's ruling is based on a misapprehension of the effect of its conditional dismissal order. [HN2] A conditional dismissal order is not final until the time to satisfy the condition expires. Otis v. City of Chicago, 29 F.3d 1159, 1165 (7th Cir. 1994). Here, the dismissal was subject to a condition subsequent. By the express terms of the order, if the settlement was not consummated and if any party, for good cause shown, moved to reopen not

later than June 4, 2001, the dismissal would be undone.

As of June 4, 2001, the settlement had not been consummated. In fact, the settlement agreement was not even submitted to the court for approval until some three weeks later. And on June 4, 2001, putative parties moved, in effect, to reopen the matter. While the proposed intervenors were not parties to the case when they filed their motion to intervene, they did employ proper[**9] means to become parties before the action was effectively dismissed. In this respect, their motion was timely and the district court clearly had jurisdiction to entertain and grant the motion to intervene.

It follows that the district court's concerns about the limits of jurisdiction retained [*786] post-judgment were inapposite. The limits of jurisdiction retained post-judgment simply do not come into play because the efficacy of the conditional dismissal order was nullified by the occurrence of the condition subsequent. n3 Accordingly, whether the district court's first rationale for denying intervention is deemed to be a function of its assessment either of subject matter jurisdiction, subject to de novo review, or of timeliness, subject to review for abuse of disaction, we find the analysis flawed and erroneous.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 Interesting in this regard is the district court's reliance on the terms of the proposed Agreed Order Upon Settlement as defining the limits of its retained jurisdiction. The Agreed Order Upon Settlement was not submitted to the court for approval until well after the motion to intervene had been filed and was not approved and issued by the court until the motion to intervene was denied, on March 7, 2002. The Agreed Order Upon Settlement can hardly be deemed to have retroactively limited the court's authority to afford redress to the proposed intervenors.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[**10]

B. Timeliness

Secondly, the district court denied the motion to intervene as untimely based on its finding that the movants had constructive notice of the settlement negotiations between Midwest and the City as early as March 31, 2000 and their failure to move for intervention until after the case was settled was inexcusable. [HN3] Timeliness of a motion to intervene is evaluated in the context of all relevant circumstances, including the following considerations:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed

intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

Stupak-Thrall, 226 F.3d at 472-73 (quoting Jansen, 904 F.2d at 340).

The district court's denial of the motion to intervene was based at least implicitly on the[**11] first three of these considerations. The district court was troubled by the fact that Midwest's action was commenced in July 1998, had progressed to the point of a tentative settlement, and was subject to a conditional dismissal order by the time the proposed intervenors filed their motion on June 4, 2001. This chronology, viewed in the abstract, undeniably militates against allowing intervention. Yet, [HN4] the time between the filing of the complaint and the motion to intervene, in itself, is among the least important circumstances. See Stupak-Thrall, 226 F.3d at 475. What is more critical is the progress made in discovery and motion practice during the course of the litigation. Id. Here, it appears that after the City's motion to dismiss was denied, although the discovery period had expired, little or no energy was devoted to discovery before the parties embarked on settlement negotiations. For this reason, the first factor weighs only slightly against intervention.

Considering the purpose for intervention, the district court characterized it as an attempt to uphold the referendum in order to prevent development of the subject property. This purpose was significant[**12] to the district court only insofar as it portended a reopening of the merits of the litigation, a purpose which the district court erroneously deemed outside the scope of its retained jurisdiction. In other words, the district court did not expressly [*787]evaluate the purpose of intervention in terms of the importance of the legal interests asserted, the ability of the proposed intervenors to otherwise protect those interests, or the adequacy of existing parties' representation of those interests. The court did, however, find that a satisfactory prima facie showing of legitimate purpose for intervention had been made. Decision and order, p.3, J.A. 217. This finding, essentially unchallenged on appeal and adequately supported in the record, weighs in favor of allowing intervention. n4

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n4 Midwest and the City argue that the proposed intervenors' motivation is selfish, not noble. They question the sincerity of the avowed desire to vindicate the integrity of the citizens' right of referendum and maintain the proposed intervenors are determined simply to prevent development of the property, irrespective of the best interests of the City and its residents. While we express no opinion on the merits of the proposed intervenors' objection to the settlement agreement, we are satisfied, considering the zoning controversy surrounding this parcel, that the legal interests asserted are substantial and deserving of further consideration.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[**13]

Third, and most troubling to the district court, was the length of time the proposed intervenors knew or should have known of their interest in the case before they finally moved to intervene. The district court implicitly recognized that the proposed intervenors were entitled to rely on the City to protect their interests as it defended against Midwest's claims when the litigation began. The reasonableness of this reliance was confirmed by the City's motion to dismiss Midwest's claims, in which the City vigorously defended the integrity of the referendum process. After the motion to dismiss was denied and the case was set for trial in April 2000, there was no reason to question the adequacy of the City's representation of the proposed intervenors' interests until March 31, 2000, when the parties moved to adjourn the trial in order to pursue settlement negotiations. Then, in the opinion of the district court, "a person attentive to the docket of this case would have known as early as thirteen months before the Conditional Dismissal Order that the City of Beavercreek was willing to negotiate a settlement with Midwest, i.e., that it was probably not going to insist on the complete victory[**14] which the Proposed Intervenors seek." Decision and order p. 4, J.A. 318. That is, the mere fact of settlement negotiations was deemed to represent constructive notice to interested residents that the City might compromise their interests. Acknowledging that the negotiations were conducted privately, the court nonetheless held that the pendency of negotiations represented inquiry notice to a person interested in the progress of the case.

There is no evidence that any of the proposed intervenors had actual knowledge of the possibility of a settlement jeopardizing their legal interests before April 2001. They contend they first learned of the "collusive negotiations" between the parties in late April 2001, shortly before the conditional dismissal order issued. They maintain that they moved to protect their rights by the June 4, 2001 deadline established by the conditional dismissal order even though they were unaware of the terms of the proposed settlement agreement until after June 27, 2001, when the parties finally reached agreement and submitted the Agreed Order Upon Settlement to the court. They insist the mere pendency of negotiations cannot be deemed to have put them on notice[**15] that the City would collude in subverting or circumventing the law.

The proposed intervenors undoubtedly knew that this litigation could affect their legal interests from the beginning. However, it was not until there was reason to believe their interests were not being adequately represented by the City that they [*788] would have been alerted to the need to seek intervention. See Jansen, 904 F.2d at 341. [HN5] The mere pendency of settlement negotiations cannot be deemed to trigger such awareness. Only notice of objectionable terms in a proposed settlement will ordinarily suffice. See Beckert v. TPLC Holdings, Inc. (In re Telectronics Pacing Sys.), 221 F.3d 870, 882 (6th Cir. 2000). Here, on the present record, it appears the proposed intervenors did not have actual notice of such objectionable terms until after June 27, 2001. In other words, they moved to intervene even before their suspicions of inadequate representation were confirmed.

The district court's reliance on its assessment of what "a person attentive to the docket of this case" would have deduced from the parties' joint motion

to adjourn trial creates a standard that is neither substantiated by legal authority nor supported[**16] by a reasonable interpretation of the record facts. We simply are unwilling to endorse such a standard in the absence of other corroborating evidence that the proposed intervenors, or a reasonable person in their position, should have been aware of the pending negotiations and should have had reason to believe the City would not defend the referendum vote which restored the agricultural zoning of the property.

Midwest and the City insist that constructive notice of the terms of the settlement agreement was afforded by the February 12, 2001 City Council meeting, when the City Council expressed its willingness to approve the proposed agreement. There is no evidence that any of the proposed intervenors was present at the meeting. Nor does the record disclose whether the terms of the proposed agreement were published at the meeting. Further, although the City Council approved the proposed agreement at the meeting, Midwest did not actually do so until June 26, 2001. Finally, even if publication of the proposed terms of settlement at the meeting was deemed to put the proposed intervenors on notice of the need to intervene, the passing of four months before they filed their motion, during[**17] which apparently no progress was made in the litigation, does not constitute the sort of undue delay or reflect the sort of unexcused dilatoriness that would disqualify them from intervention -- especially in the absence of any showing of prejudice to Midwest or the City resulting from that four-month delay.

In denying the motion to intervene for untimeliness, we therefore conclude, the district court abused its discretion. This conclusion is buttressed by consideration of the last two governing factors, which the district court appears not to have considered. As indicated above, there is no evidence of prejudice sustained by the original parties due to the proposed intervenors' failure to intervene until almost four months after the February 12, 2001 meeting. Moreover, we are satisfied that this case does present unusual circumstances justifying intervention even though the dispute between the original parties was nearly settled. Where the City's first re-zoning of this property to allow residential development was overturned by referendum, the City's second attempt to accomplish the same re-zoning, arguably in derogation of both local and state law, through settlement of litigation[**18] under the imprimatur of federal court order, certainly poses conflicts of legitimate interests that bear further scrutiny. Based on evaluation of all the relevant circumstances we thus hold that the motion to intervene was not untimely.

III

For all the foregoing reasons, and recognizing that Rule 24 intervention is to be broadly allowed, we conclude the motion to intervene was improperly denied. The order denying intervention is therefore REVERSED. [*789] Appellants Aloys Nienhaus, Robert Nieck. Tanya Nieck and Randall Lee Amstutz shall be allowed to intervene as parties defendant.

Further, because the Agreed Order Upon Settlement simultaneously issued by the district court was premised on agreement of less than all the parties properly before the court, it too must be VACATED. While we express no opinion on the merits of the intervenors' objections to the proposed settlement agreement, it is clear they are entitled to assert their interests in this litigation and are entitled to an adjudication thereof by the district court in the first instance. This matter is accordingly REMANDED to the district court

for further proceedings consistent[**19] with this opinion.