# EXHIBIT A

93 Fed. Appx. 782 printed in FULL format.


MIDWEST REALTY MANAGEMENT COMPANY, Plaintiff-Appellee, v.
THE CITY OF BEAVERCREEK, Defendant-Appellee, ALOYS NIENHAUS, ROBERT NIECK, TANYA
NIECK, RANDALL LEE AMSTUTZ, Proposed Intervenors-Appellants.


No. 02-3387


UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT


93 Fed. Appx. 782; 2004 U.S. App. LEXIS 5972


March 22, 2004, Filed


NOTICE: [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE
28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE
CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE
SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY
DISPLAYED IF THIS DECISION IS REPRODUCED.

PRIOR HISTORY: ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF OHIO. 98-00294. Merz. 3/7/02.

DISPOSITION: Order denying intervention reversed.  Agreed Order upon Settlement
vacated and matter remanded.

CASE SUMMARY:

PROCEDURAL POSTURE: Appellants, proposed intervenors, challenged an order of the
United States District Court for the Southern District of Ohio denying their
motion to intervene in a civil action that had been settled between appellees,
company and city, but not yet closed. The proposed intervenors wished to
challenge terms of the pending settlement, but their motion was denied as
untimely.

OVERVIEW: The company entered into a contract to sell a 30-acre parcel of land
in the city, then zoned for agricultural use. The sale was conditioned on
re-zoning of the property for development as a large apartment complex. The city
council approved the requested re-zoning by órdinance. The ordinance was
overturned by referendum. The company sued the city. The parties' proposed
settlement agreement essentially effected a circumvention of the referendum.
Before the settlement agreement was finalized, the parties advised the district
court that a settlement had been reached. The district court issued a
conditional dismissal order. The proposed intervenors filed their motion to
intervene, which was denied as untimely. The appellate court found that the
district court abused its discretion when it denied the motion to intervene as
untimely because since the settlement had not been consummated, it had
jurisdiction to entertain and grant the motion to intervene, and there was no

evidence that any of the proposed intervenors, who filed their motion to intervene on June 4, 2001, had actual knowledge of the possibility of a settlement jeopardizing their legal interests before April 2001.

OUTCOME: Because the motion to intervene was improperly denied, the order denying intervention was reversed. The proposed intervenors shall be allowed to intervene as parties defendant. Further, because the agreed order upon settlement simultaneously issued by the district court was premised on agreement of less than all the parties properly before the court, it was vacated. The matter was remanded to the district court.

CORE TERMS: intervenors, motion to intervene, settlement, negotiations, conditional, settlement agreement, dismissal order, proposed settlement, referendum, intervene, untimely, reopen, timeliness, re-zoning, zoning, motion to dismiss, original parties, discovery, progress, adequately represented, retained jurisdiction, constructive notice, proposed agreement, good cause shown, subject property, agricultural, consummated, pendency, residents, defended

LexisNexis(R) Headnotes

Civil Procedure: Joinder of Claims & Parties: Intervention
[HN1] The denial of a motion to intervene under Fed. R. Civ. P. 24(a) is immediately appealable as a collateral matter. Fed. R. Civ. P. 24 is to be broadly construed in favor of potential intervenors. In order to demonstrate entitlement to intervention as of right under Fed. R. Civ. P. 24(a), the proposed intervenors were required to show: (1) that their motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the pending litigation; (3) that the disposition of the action might impair or impede their ability to protect their legal interest absent intervention; and (4) that the parties to the litigation may not adequately represent their interest.

Civil Procedure: Dismissal of Actions
[HN2] A conditional dismissal order is not final until the time to satisfy the condition expires.

Civil Procedure: Joinder of Claims & Parties: Intervention
[HN3] Timeliness of a motion to intervene is evaluated in the context of all relevant circumstances, including the following considerations: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

Civil Procedure: Joinder of Claims & Parties: Intervention
[HN4] In determining the timeliness of a motion to intervene, the time between the filing of the complaint and the motion to intervene, in itself, is among the least important circumstances. What is more critical is the progress made in discovery and motion practice during the course of the litigation.

Civil Procedure: Settlements

Civil Procedure: Joinder of Claims & Parties: Intervention
[HN5] The mere pendency of settlement negotiations cannot be deemed to trigger
an awareness in potential intervenors that their legal interests could be
affected. Only notice of objectionable terms in a proposed settlement will
ordinarily suffice.

COUNSEL: For MIDWEST REALTY MANAGEMENT COMPANY, Plaintiff - Appellee: Roger
Makley, Coolidge, Wall, Womsley & Lombard, Dayton, OH.

For CITY OF BEAVERCREEK, Defendant - Appellee: Stephen M. McHugh, Matthew D.
Stokely, Matthew R. Steinke, Altick & Corwin, Dayton, OH.

For ALOYS T. NIENHAUS, ROBERT C. NEICK, TANYA NEICK, RANDALL LEE AMSTUTZ,
Appellants: Richard D. Schuster, Adam J. Hall, Vorys, Sater, Seymour & Pease,
Columbus, OH.

JUDGES: Before: MARTIN and MOORE, Circuit Judges; and McKEAGUE, District Judge.
*


* The Hon. David W. McKeague, United States District Judge for the Western
District of Michigan, sitting by designation.


OPINION: [*783] PER CURIAM. This is an appeal from an order of the District
Court for the Southern District of[**2] Ohio denying appellants' motion to
intervene in a civil action that had been settled between the parties, but not
yet closed. The proposed intervenors wished to challenge terms of the pending
settlement, but their motion was denied as untimely. Appellants contend the
district court abused its discretion. For the reasons that follow, we agree. The
order denying the motion to intervene will be reversed and the matter remanded
to the district court for further proceedings.

    I

    The seed of the present controversy was first sown in 1996. At that time
plaintiff-appellee Midwest Realty Management Company ("Midwest") entered into a
contract to sell a 30-acre parcel of land in the City of Beavercreek, then zoned
for agricultural use. The sale, to Pedcor Investments, was conditioned on
re-zoning of the property for development as a large apartment complex. The
Beavercreek City Council approved the requested re-zoning by ordinance in
October 1997. The ordinance was overturned, however, by referendum in a May 1998
election.

    This action followed. In July 1998, Midwest asserted various claims against
the City of Beavercreek, alleging that the restored agricultural zoning of its
parcel is[**3] [*784] arbitrary and unreasonable and represents an
unconstitutional taking without just compensation and without due process. The
City initially defended by moving for dismissal of Midwest's claims. After the
motion was denied in July 1999, however, settlement negotiations ensued. These
negotiations ripened into a proposed settlement agreement that was approved by
the City Council by resolution on February 12, 2001. Pursuant to the proposed
settlement agreement, the City, in exchange for dismissal of Midwest's claims,

agreed to re-zone the subject property from "Agricultural" to "Residential Planned Unit Development," essentially allowing Pedcor Investments to proceed with development of the apartment complex. In essence, the settlement effected a circumvention of the referendum.

Before the settlement agreement was finalized, the parties advised the district court that a settlement had been reached. The district court issued a "conditional dismissal order" on May 3, 2001, dismissing the action with prejudice, "provided that any of the parties may, upon good cause shown not later than June 4, 2001, reopen the action if settlement is not consummated." The order expressly contemplated subsequent[**4] entry of a judgment order consistent with the settlement agreement and retained to the district court jurisdiction to enforce the settlement agreement.

On June 4, 2001, appellants Aloys Nienhaus, Robert Nieck, Tanya Nieck and Randall Lee Amstutz, all residents of the City of Beavercreek and owners of property adjacent to Midwest's 30-acre parcel, filed their motion for leave to intervene as defendants. The proposed intervenors contended they had interests relating to the subject property that were not being adequately represented by the City. On June 27, 2001, while the motion to intervene was still pending, Midwest and the City submitted their Agreed Order Upon Settlement to the district court for approval. The district court issued its ruling on both matters, denying the motion to intervene and approving the Agreed Order, on March 7, 2002.

The district court denied the motion to intervene as untimely for two reasons. First, it viewed its conditional dismissal order as having been immediately effective to foreclose exercise of continuing jurisdiction except insofar as it had been expressly retained. In its conditional order, the district court had retained jurisdiction only to reopen[**5] the case on motion of any party for good cause shown, to enter a judgment order embodying the parties' settlement agreement, and to enforce the settlement agreement. Finding that the proposed intervention would not serve any of these purposes, the district court denied intervention because its jurisdiction to adjudicate any claim or defense the proposed intervenors would assert had already been extinguished. Secondly, the district court held the motion to intervene was untimely because the movants ought to have known as early as March 31, 2000, when the parties moved to vacate the trial date in order to pursue settlement negotiations, that their interests might not be adequately represented by the City.

II

[HN1] The denial of a motion to intervene under Fed. R. Civ. P. 24(a) is immediately appealable as a collateral matter. Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 375, 377, 94 L. Ed. 2d 389, 107 S. Ct. 1177 (1987); Purnell v. City of Akron, 925 F.2d 941, 944 (6th Cir. 1991). Rule 24 is to be broadly construed in favor of potential intervenors. Stupak-Thrall v. Glickman, 226 F.3d 467, 472 (6th Cir. 2000).[**6] In order to demonstrate entitlement [*785] to intervention as of right under Rule 24(a), the proposed intervenors were required to show (1) that their motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the pending litigation; (3) that the disposition of the action might impair or impede their ability to protect their legal interest absent intervention; and (4) that the parties to the litigation may not adequately

represent their interest. Id. at 471; Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990). The district court held that the proposed intervenors had made a prima facie showing sufficient to satisfy all but the first of these four requirements. This holding has not been challenged by the appellees. Hence, the focus of this appeal is on the district court's timeliness determination, which we review for abuse of discretion. Stupak-Thrall, 226 F.3d at 471, 472.

A. Jurisdictional Question

The district court's first rationale for denying the motion to intervene is a jurisdictional one. The court did not hold that it lacked jurisdiction to grant the motion to intervene.[**7] Rather, the court held that if intervention were allowed, it would lack jurisdiction to reopen the merits of the litigation settled. n1 Hence, in effect, the court ruled that the motion to intervene came too late because the action had already been dismissed and the jurisdiction retained was too narrow to accommodate the proposed intervention. n2

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The district court noted that the motion to intervene was not "accompanied by a pleading setting forth the claim or defense for which intervention is sought," as required by Fed. R. Civ. P. 24(c). The court did not rely on this technical defect as grounds for denial of intervention, but was admittedly handicapped in its assessment of the proposed intervenors' position. The court thus presumed that the proposed intervenors' objection to the proposed settlement agreement would entail scrutiny of the merits of Midwest's constitutional claims. Such an inquiry was deemed to be outside the scope of the limited jurisdiction retained by the district court. Appellants insist they have no interest in litigating the merits of Midwest's claims, but merely seek to ensure that any agreement approved by the City is in conformity with the requirements of the City's charter and zoning code. In light of the analysis that follows, the precise nature of the proposed intervenors' claim or defense is of little consequence. [**8]

n2 To the extent the district court's analysis includes a jurisdictional component, we review its determination de novo. Green v. Ameritech Corp., 200 F.3d 967, 972 (6th Cir. 2000).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The district court's ruling is based on a misapprehension of the effect of its conditional dismissal order. [HN2] A conditional dismissal order is not final until the time to satisfy the condition expires. Otis v. City of Chicago, 29 F.3d 1159, 1165 (7th Cir. 1994). Here, the dismissal was subject to a condition subsequent. By the express terms of the order, if the settlement was not consummated and if any party, for good cause shown, moved to reopen not

later than June 4, 2001, the dismissal would be undone.

As of June 4, 2001, the settlement had not been consummated. In fact, the settlement agreement was not even submitted to the court for approval until some three weeks later. And on June 4, 2001, putative parties moved, in effect, to reopen the matter. While the proposed intervenors were not parties to the case when they filed their motion to intervene, they did employ proper[**9] means to become parties before the action was effectively dismissed. In this respect, their motion was timely and the district court clearly had jurisdiction to entertain and grant the motion to intervene.

It follows that the district court's concerns about the limits of jurisdiction retained [*786] post-judgment were inapposite. The limits of jurisdiction retained post-judgment simply do not come into play because the efficacy of the conditional dismissal order was nullified by the occurrence of the condition subsequent. n3 Accordingly, whether the district court's first rationale for denying intervention is deemed to be a function of its assessment either of subject matter jurisdiction, subject to de novo review, or of timeliness, subject to review for abuse of disaction, we find the analysis flawed and erroneous.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -


n3 Interesting in this regard is the district court's reliance on the terms of the proposed Agreed Order Upon Settlement as defining the limits of its retained jurisdiction. The Agreed Order Upon Settlement was not submitted to the court for approval until well after the motion to intervene had been filed and was not approved and issued by the court until the motion to intervene was denied, on March 7, 2002. The Agreed Order Upon Settlement can hardly be deemed to have retroactively limited the court's authority to afford redress to the proposed intervenors.


- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[**10]

B. Timeliness

Secondly, the district court denied the motion to intervene as untimely based on its finding that the movants had constructive notice of the settlement negotiations between Midwest and the City as early as March 31, 2000 and their failure to move for intervention until after the case was settled was inexcusable.  [HN3] Timeliness of a motion to intervene is evaluated in the context of all relevant circumstances, including the following considerations:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed

intervenors' failure to promptly intervene after they knew or reasonably should
have known of their interest in the case; and (5) the existence of unusual
circumstances militating against or in favor of intervention.


Stupak-Thrall, 226 F.3d at 472-73 (quoting Jansen, 904 F.2d at 340).

    The district court's denial of the motion to intervene was based at least
implicitly on the[**11] first three of these considerations. The district
court was troubled by the fact that Midwest's action was commenced in July 1998,
had progressed to the point of a tentative settlement, and was subject to a
conditional dismissal order by the time the proposed intervenors filed their
motion on June 4, 2001. This chronology, viewed in the abstract, undeniably
militates against allowing intervention. Yet,  [HN4] the time between the filing
of the complaint and the motion to intervene, in itself, is among the least
important circumstances. See Stupak-Thrall, 226 F.3d at 475. What is more
critical is the progress made in discovery and motion practice during the course
of the litigation. Id. Here, it appears that after the City's motion to dismiss
was denied, although the discovery period had expired, little or no energy was
devoted to discovery before the parties embarked on settlement negotiations. For
this reason, the first factor weighs only slightly against intervention.

    Considering the purpose for intervention, the district court characterized it
as an attempt to uphold the referendum in order to prevent development of the
subject property. This purpose was significant[**12] to the district court
only insofar as it portended a reopening of the merits of the litigation, a
purpose which the district court erroneously deemed outside the scope of its
retained jurisdiction. In other words, the district court did not expressly
[*787] evaluate the purpose of intervention in terms of the importance of the
legal interests asserted, the ability of the proposed intervenors to otherwise
protect those interests, or the adequacy of existing parties' representation of
those interests. The court did, however, find that a satisfactory prima facie
showing of legitimate purpose for intervention had been made. Decision and
order, p.3, J.A. 217. This finding, essentially unchallenged on appeal and
adequately supported in the record, weighs in favor of allowing intervention. n4


- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -


    n4 Midwest and the City argue that the proposed intervenors' motivation is
selfish, not noble. They question the sincerity of the avowed desire to
vindicate the integrity of the citizens' right of referendum and maintain the
proposed intervenors are determined simply to prevent development of the
property, irrespective of the best interests of the City and its residents.
While we express no opinion on the merits of the proposed intervenors' objection
to the settlement agreement, we are satisfied, considering the zoning
controversy surrounding this parcel, that the legal interests asserted are
substantial and deserving of further consideration.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[**13]

   Third, and most troubling to the district court, was the length of time the
proposed intervenors knew or should have known of their interest in the case
before they finally moved to intervene. The district court implicitly recognized
that the proposed intervenors were entitled to rely on the City to protect their
interests as it defended against Midwest's claims when the litigation began. The
reasonableness of this reliance was confirmed by the City's motion to dismiss
Midwest's claims, in which the City vigorously defended the integrity of the
referendum process. After the motion to dismiss was denied and the case was set
for trial in April 2000, there was no reason to question the adequacy of the
City's representation of the proposed intervenors' interests until March 31,
2000, when the parties moved to adjourn the trial in order to pursue settlement
negotiations. Then, in the opinion of the district court, "a person attentive to
the docket of this case would have known as early as thirteen months before the
Conditional Dismissal Order that the City of Beavercreek was willing to
negotiate a settlement with Midwest, i.e., that it was probably not going to
insist on the complete victory[**14] which the Proposed Intervenors seek."
Decision and order p. 4, J.A. 318. That is, the mere fact of settlement
negotiations was deemed to represent constructive notice to interested residents
that the City might compromise their interests. Acknowledging that the
negotiations were conducted privately, the court nonetheless held that the
pendency of negotiations represented inquiry notice to a person interested in
the progress of the case.

   There is no evidence that any of the proposed intervenors had actual
knowledge of the possibility of a settlement jeopardizing their legal interests
before April 2001. They contend they first learned of the "collusive
negotiations" between the parties in late April 2001, shortly before the
conditional dismissal order issued. They maintain that they moved to protect
their rights by the June 4, 2001 deadline established by the conditional
dismissal order even though they were unaware of the terms of the proposed
settlement agreement until after June 27, 2001, when the parties finally reached
agreement and submitted the Agreed Order Upon Settlement to the court. They
insist the mere pendency of negotiations cannot be deemed to have put them on
notice[**15] that the City would collude in subverting or circumventing the
law.

   The proposed intervenors undoubtedly knew that this litigation could affect
their legal interests from the beginning. However, it was not until there was
reason to believe their interests were not being adequately represented by the
City that they [*788] would have been alerted to the need to seek
intervention. See Jansen, 904 F.2d at 341.  [HN5] The mere pendency of
settlement negotiations cannot be deemed to trigger such awareness. Only notice
of objectionable terms in a proposed settlement will ordinarily suffice. See
Beckert v. TPLC Holdings, Inc. (In re Telectronics Pacing Sys.), 221 F.3d 870,
882 (6th Cir. 2000). Here, on the present record, it appears the proposed
intervenors did not have actual notice of such objectionable terms until after
June 27, 2001. In other words, they moved to intervene even before their
suspicions of inadequate representation were confirmed.

   The district court's reliance on its assessment of what "a person attentive
to the docket of this case" would have deduced from the parties' joint motion

to adjourn trial creates a standard that is neither substantiated by legal
authority nor supported[**16] by a reasonable interpretation of the record
facts. We simply are unwilling to endorse such a standard in the absence of
other corroborating evidence that the proposed intervenors, or a reasonable
person in their position, should have been aware of the pending negotiations and
should have had reason to believe the City would not defend the referendum vote
which restored the agricultural zoning of the property.

Midwest and the City insist that constructive notice of the terms of the
settlement agreement was afforded by the February 12, 2001 City Council meeting,
when the City Council expressed its willingness to approve the proposed
agreement. There is no evidence that any of the proposed intervenors was present
at the meeting. Nor does the record disclose whether the terms of the proposed
agreement were published at the meeting. Further, although the City Council
approved the proposed agreement at the meeting, Midwest did not actually do so
until June 26, 2001. Finally, even if publication of the proposed terms of
settlement at the meeting was deemed to put the proposed intervenors on notice
of the need to intervene, the passing of four months before they filed their
motion, during[**17] which apparently no progress was made in the
litigation, does not constitute the sort of undue delay or reflect the sort of
unexcused dilatoriness that would disqualify them from intervention --
especially in the absence of any showing of prejudice to Midwest or the City
resulting from that four-month delay.

In denying the motion to intervene for untimeliness, we therefore conclude,
the district court abused its discretion. This conclusion is buttressed by
consideration of the last two governing factors, which the district court
appears not to have considered. As indicated above, there is no evidence of
prejudice sustained by the original parties due to the proposed intervenors'
failure to intervene until almost four months after the February 12, 2001
meeting. Moreover, we are satisfied that this case does present unusual
circumstances justifying intervention even though the dispute between the
original parties was nearly settled. Where the City's first re-zoning of this
property to allow residential development was overturned by referendum, the
City's second attempt to accomplish the same re-zoning, arguably in derogation
of both local and state law, through settlement of litigation[**18] under
the imprimatur of federal court order, certainly poses conflicts of legitimate
interests that bear further scrutiny. Based on evaluation of all the relevant
circumstances we thus hold that the motion to intervene was not untimely.

III

For all the foregoing reasons, and recognizing that Rule 24 intervention is
to be broadly allowed, we conclude the motion to intervene was improperly
denied. The order denying intervention is therefore REVERSED. [*789]
Appellants Aloys Nienhaus, Robert Nieck. Tanya Nieck and Randall Lee Amstutz
shall be allowed to intervene as parties defendant.

Further, because the Agreed Order Upon Settlement simultaneously issued by
the district court was premised on agreement of less than all the parties
properly before the court, it too must be VACATED. While we express no opinion
on the merits of the intervenors' objections to the proposed settlement
agreement, it is clear they are entitled to assert their interests in this
litigation and are entitled to an adjudication thereof by the district court in
the first instance. This matter is accordingly REMANDED to the district court

for further proceedings consistent[**19] with this opinion.

# EXHIBIT B

[Cite as *Tomcany v. Range Constr.*, 2004-Ohio-5314.]

# THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| RICHARD TOMCANY, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NO. 2003-L-071** |
| RANGE CONSTRUCTION, et al., | : | |
| Defendants, | : | 9/30/04 |
| WESTFIELD INSURANCE COMPANY, | : | |
| Intervening Defendant-Appellant. | : | |

Civil Appeal from Lake County Court of Common Pleas, Case No. 01 CV 001727.

Judgment:  Reversed and remanded.

*Kent R. Minshall, Jr.*, 2189 Professor Avenue, Cleveland, OH  44113 (For Plaintiffs-Appellees, Richard Tomcany and Tammy Tomcany).

*Shawn W. Maestle*, 2500 Terminal Tower, 50 Public Square, Cleveland, OH  44113-2241 (For Intervening Defendant-Appellant).

JUDITH A. CHRISTLEY, J.

{¶1}    Appellant, Westfield Insurance Company, appeals from a judgment of the Lake County Court of Common Pleas denying its motion to intervene in the instant matter.  For the reasons set forth below, we reverse the judgment of the trial court,

dissolve the stay previously granted in this matter, and remand this matter for further proceedings consistent with this opinion.

{¶2}    This matter involves various claims asserted by Richard and Tammy Tomcany (the "Tomcanys") arising out of the construction of an addition to their home that began in 1998.   The Tomcanys hired Range Construction and David Range ("Range") to expand their home.   They also hired A&B Plumbing ("A&B") to perform the related plumbing work.   A&B thereafter retained Armand Iaboni, Sr., Bernadette Iaboni, and Armand Iaboni, Jr. (collectively, "the Iabonis") as subcontractors to perform heating and plumbing services for the project.   The Tomcanys also retained Home Design and Planning ("Home Design") and Ray Holsopple ("Holsopple") as architects.   Advantage Construction ("Advantage"), Richard Ross ("Ross"), and Yanesh Brothers Construction ("Yanesh Brothers") were subsequently hired to remedy alleged defects and/or finish construction.   At all times, according to the Tomcanys, the city of Mentor, Ohio ("Mentor"), Scott Amos ("Amos"), and Donald Marti ("Marti") were responsible for inspections and code compliance pursuant to Ohio and Mentor law.

{¶3}    On October 31, 2001, the Tomcanys filed a complaint against Range Construction, Range, A&B, the Iabonis, Advantage, Ross, Mentor, Amos, Marti, Home Design, and Yanesh Brothers.[1]   The Tomcanys asserted claims under both tort and contract theories.   Relevant to the instant appeal, the Tomcanys alleged that A&B failed to complete the work, performed the work poorly, did not comply with the relevant building code, did not obtain a permit for the work, and did not comply with the architectural plans.

---

1. This complaint was a refiling of a complaint filed in 2000, case number 00 CV 00026, which was dismissed by the trial court.  The original complaint has not been made part of the record in this matter.

{¶4}   All defendants answered.  A&B and the Iabonis cross-claimed against Range Construction, Range, and Yanesh Brothers.  Holsopple cross-claimed against Range, Advantage, Ross, and Yanesh Brothers.  All cross-claims were answered.

{¶5}   Bernadette Iaboni and Armand Iaboni, Jr. were dismissed from the matter on February 19, 2002.  Mentor, Amos, and Marti subsequently moved to be dismissed.  On April 29, 2002, the trial court dismissed Mentor and denied the motions of Amos and Marti.[2]

{¶6}   Amos and Marti moved for summary judgment on October 28, 2002.  The Tomcanys opposed this motion, and Amos and Marti replied.  On January 30, 2003, the trial court granted Amos and Marti's motion for summary judgment.

{¶7}   In a judgment entry, dated January 10, 2003, the trial court ordered the Tomcanys to provide expert reports by February 28, 2003 and to complete depositions of all defendants by April 30, 2003.  A jury trial was scheduled for June 16, 2003.

{¶8}   The Tomcanys settled their claims against Holsopple and Home Design on March 20, 2002.  The Tomcanys' complaint thereafter remained against Range Construction, Range, A&B, Armond Iaboni, Sr., Advantage, Ross, and Yanesh Brothers.

{¶9}   On April 4, 2003, a little over two months before trial, appellant moved to intervene in this matter pursuant to Civ.R. 7(B), 24, and 49(B).  Appellant did not specifically state in its motion whether it moved to intervene permissively or as of right.  The language of appellant's motion, however, indicates that appellant claimed intervention of right.

---

2. The Tomcanys appealed this judgment.  This court affirmed the trial court's dismissal of Mentor in the instant matter.

{¶10} Appellant stated that it insured A&B and had been providing a defense to A&B under a reservation of rights pursuant to the applicable insurance policy, which it attached to the motion. Appellant wanted to ascertain whether the Tomcanys' various claims and potential damages would be covered under appellant's policy, as the policy did not provide coverage for breach of contract or for work performed improperly. Appellant stated in its motion that it requested intervention "by active participation, and to submit interrogatories to the jury on coverage issues raised in [appellant's] reservation of rights letter."[3]

{¶11} Appellant specifically argued that:

{¶12} "[t]he court should allow [appellant] to intervene to protect its interests as to whether the damages alleged by [the Tomcanys] are covered under [appellant's] policy. Disposition of this case may impair or impede [appellant's] interests.

{¶13} "If the court or jury entered a general verdict, without interrogatories, for [the Tomcanys] against A&B, [appellant] might be barred by collateral estoppel from denying coverage for the verdict. Interrogatories to the jury are necessary to determine whether any damages the jury awards [the Tomcanys] against A&B are covered under [appellant's] policy."

{¶14} No party opposed appellant's motion. The trial court denied appellant's motion on April 29, 2003. In its judgment entry, the trial court reviewed Civ.R. 24 and then stated:

{¶15} "**** [Appellant] fails to demonstrate that it is so situated that the disposition of this action may as a practical matter impair or impede its ability to protect its interests.

---

3. According to appellant's appellate brief, it stated in its motion to intervene that it intended to have limited participation in the matter and primarily submit jury interrogatories at the trial.

More importantly, [appellant's] Motion to Intervene fails to meet the 'timeliness' requirements of Civ.R 24(A) & (B). The within action was a 'refiling' of [the Tomcanys'] previously dismissed Complaint in case number 00CV000262. [Appellant's] insured was a party defendant in both the original case, and the current case, which was filed in October 2001. In addition, [appellant] clearly had notice of its potential interest in this case, as evidenced by the letter it sent to A & B in *December 1999* acknowledging receipt of A & B's claim. *** Consequently, [appellant] could have sought intervention at any time during the eighteen month pendency of this action, rather than waiting until two months before the scheduled trial date." (Emphasis sic.)

{¶16} Appellant appealed from this judgment entry on May 28, 2003, and appellant simultaneously moved to stay the trial pending the appeal. The trial court granted appellant's motion to stay and assigned this matter to this court's accelerated calendar. Appellant puts forth the following assignments of error:

{¶17} "[1.] [Appellant's] request to intervene two and one-half months before trial was timely since such intervention was limited to submission of jury interrogatories and limited participation surrounding the issues raised in those interrogatories.

{¶18} "[2.] [Appellant's] rights may be impaired or impeded if not permitted to intervene to submit jury instructions on coverage issues and limited participation on questions of coverage.

{¶19} "[3.] Where no party objected to [appellant's] intervention and common questions of fact as to the coverage issues between A&B Plumbing and [appellant] exists, permissive intervention should have been granted."

{¶20}  An appellate court reviews a trial court's decision on a motion to intervene for an abuse of discretion. *State ex rel. First New Shiloh Baptist Church v. Meagher*, 82 Ohio St.3d 501, 503, 1998-Ohio-192.   See, also, *Young v. Equitec Real Estate Investors Fund* (1995), 100 Ohio App.3d 136, 138; *Widder & Widder v. Kutnick* (1996), 113 Ohio App.3d 616, 624.  "An abuse of discretion is more than an error of law or of judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶21}  Intervention, whether permissive or as a matter of right, is specifically provided for in the Rules of Civil Procedure.  Civ.R. 24 delineates the requirements an intervenor must satisfy to prevail on such a motion.   Civ.R. 24(B) outlines the requirements for permissive intervention and states:

{¶22}  "[U]pon timely application anyone may be permitted to intervene in an action:

{¶23}  "****

{¶24}  "(2)  [w]hen an applicant's claim or defense and the main action have a question of law or fact in common.   ***   In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

{¶25}  Civ.R. 24(A) pertains to intervention of right and provides:

{¶26}  "[U]pon timely application anyone shall be permitted to intervene in an action:

{¶27}  "****

6

{¶28} "(2) [w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties."

{¶29} Whether representation of an intervenor's interest by existing parties is considered inadequate hinges upon whether there has been a showing of collusion, adversity of interest, possible nonfeasance, or incompetence. *Valley Asphalt Corp. v. Frame-Henson Asphalt Paving, Inc.* (Apr. 10, 1989), 2d Dist. No. 88-CA-74, 1989 Ohio App. LEXIS 1327, at 8, citing *United States v. Internatl. Business Machines Corp.* (S.D. N.Y. 1974), 62 F.R.D. 530, 537.

{¶30} The movant has the burden of showing inadequacy, and that burden is minimal. *Valley Asphalt Corp* at 8, citing *Blake v. Pallan* (C.A.9, 1977), 554 F.2d 947 and *Bush v. Vitera* (C.A.5, 1984), 740 F.2d 350. A trial court should consider three factors when determining whether a movant has satisfied this minimal burden. The trial court should ask: "*** (1) are the [interests] of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former, (2) is the present party capable and willing to make such arguments, and (3) if permitted to intervene, would the intervenor add some necessary element to the proceeding which would not be covered by the parties in the suit?" *Valley Asphalt* at 9, citing *Blake* at 954-955.

{¶31} We will address appellant's first two assignments in a consolidated fashion for the sake of clarity. In these assignments of error, appellant essentially argues that

7

the trial court erred by denying its motion because it had a right to intervene and its motion was timely. We agree.

{¶32} Appellant fulfilled the requirements of Civ.R. 24(A) and clearly had a right to intervene in the matter. First, it is apparent from appellant's motion to intervene that appellant claimed an interest relating to the parties' litigation, and this interest was not adequately represented by the parties. Appellant insured A&B, and appellant wanted to ascertain whether the Tomcanys' various claims and potential damages would be covered under appellant's policy, as the policy did not provide coverage for breach of contract damages or for work performed improperly.

{¶33} It would appear that both the Tomcanys and A&B could have a common interest in obtaining a general verdict untested by interrogatories because that would foreclose appellant from ascertaining the legal basis of the jury's verdict and preclude appellant from denying coverage. See, e.g., *Schmidlin v. D & V Enterprises* (June 1, 2000), 8th Dist. No. 76287, 2000 Ohio App. LEXIS 2336, at 14. Only appellant had an interest in identifying the basis for any verdict in the Tomcanys' favor because that would determine whether appellant would have a duty to indemnify A&B under the relevant insurance policy. See, e.g., *Schmidlin* at 14.

{¶34} Accordingly, appellant satisfied the three-part test set forth in *Valley Asphalt* and demonstrated that its interests were adverse to those of both parties. The interests of appellant are not aligned with either party, as neither party is capable or would likely be willing to argue that appellant is not obligated to indemnify A&B for the amount of any award granted to the Tomcanys and against A&B for breach of contract or work not performed properly. If appellant would be permitted to intervene, appellant

8

could submit jury instructions enabling it to ascertain whether any potential damages would be covered under the relevant insurance policy, and appellant's intervention would thus add an element to the proceeding which would not exist absent its intervention.

{¶35} Appellant is also so situated that the action may impair or impede its ability to protect its interests. If appellant's motion were denied, appellant would theoretically be limited to a declaratory judgment action to determine coverage. However, this mechanism is ineffective because the legal basis for a verdict in favor of the Tomcanys could only be determined by jury interrogatories submitted in *this* matter. Again, only appellant has an interest to obtain that determination. See, e.g., *Schmidlin* at 15-16.

{¶36} If appellant were not permitted to intervene in this action, a general verdict without interrogatories in favor of the Tomcanys, and against A&B, might bar appellant by collateral estoppel from denying coverage for the verdict. *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 367, (Collateral estoppel bars privies of litigants who could have intervened in the proceeding from relitigating issues in later proceedings.). See, also, *Schmidlin* at 15-16.

{¶37} It is also worth noting that no party objected to appellant's motion, and we can thus presume that granting appellant's motion would not prejudice the remaining parties in any way.

{¶38} Accordingly, appellant has satisfied the elements of Civ.R. 24(A) and had a right to intervene in the matter. Appellant claimed an interest in the action which was not adequately represented by the parties. Thus, disposition of the action could impair or impede appellant's ability to protect its interest. As stated earlier, if appellant were

not permitted to intervene in this matter, a general verdict without interrogatories in favor of the Tomcanys and against A&B might bar appellant from denying coverage for the verdict.

{¶39} The only question now remaining is whether appellant's motion was timely. Our analysis reveals that appellant's motion was indeed timely, and the trial court thus abused its discretion by denying appellant's motion to intervene.

{¶40} The timeliness of a motion to intervene depends on the individual facts of the case. *First New Shiloh Baptist Church* at 503, citing *Norton v. Sanders* (1989), 62 Ohio App.3d 39, 42 and *NAACP v. New York* (1973), 413 U.S. 345, 366. "The following factors are considered in determining timeliness: '(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's [delay in moving for intervention]; and (5) the existence of unusual circumstances militating against or in favor of intervention.'" *First New Shiloh Baptist Church* at 503, quoting *Triax Co. v. TRW, Inc.* (C.A.6, 1984), 724 F.2d 1224, 1228.

{¶41} "'In general, the basis of an alleged right to intervene is balanced against trial convenience and potential prejudice to the rights of original parties. *Intervention as of right \*\*\* may be granted at a time in the proceedings when permissive intervention \*\*\* would not.* That is, in cases of permissive intervention, greater consideration may be given to undue delay and prejudice in adjudicating the rights of the original parties, whereas *in cases of intervention of right, the court may give the greater consideration to*

*possible prejudice to the intervenor in protecting his interest if intervention is not granted.'"* (Emphasis added.) *Blackburn v. Hamoudi* (1989) 29 Ohio App.3d 350, 352, quoting *Likover v. Cleveland* (1978), 60 Ohio App.2d 154, 158-159. "'Timeliness must be examined from all the circumstances.'" *Fouche v. Denihan* (1990), 66 Ohio App.3d 120, 123, quoting *NAACP* at 365-366. Likewise, when analyzing a motion to intervene by right, timeliness is not a chronological concept, and it must be examined within the context of the proceedings.

{¶42} Accordingly, a different standard must be applied depending on whether the proposed intervenor has a right to intervene or may do so only permissively. "Where an intervenor has a right to intervene, the scales tip in favor of allowing intervention despite the existence of conditions which might otherwise militate against intervention, including timeliness." *HER, Inc. v. Parenteau*, 153 Ohio App.3d 704, 2003-Ohio-4370, at ¶14. See, also, *Blackburn* (holding that an insurer's motion to intervene, by right, which was filed three weeks before the trial, was not untimely); *Fouche.*

{¶43} We note that appellant filed its motion to intervene just two months before the scheduled trial. While this fact does not favor appellant, it must be noted that intervention as of right under Civ.R. 24(A) may be granted at a time in the proceedings when permissive intervention would not. See, e.g., *Schmidllin* at 9. Indeed, appellant acknowledged that the matter had been pending since October 31, 2001, and it had ample opportunity to intervene. However, courts must give liberal consideration to requests to intervene as of right. *Schmidlin* at 12. See, also, *Blackburn* at 354, (A motion to intervene, even when arising shortly before trial, should be given consideration consistent with a liberal construction of Civ.R. 24(A).).

11

{¶44}  While appellant could have sought intervention at an earlier stage in the proceedings, intervention would presumably have been unnecessary if, for instance, a settlement was reached with A&B.  Further, the earlier stages of litigation, including pleading practice, motion practice, discovery, and court appearances, did not impede appellant's interests.  Appellant's intervention from day one of the litigation would have accomplished nothing but increasing appellant's attorney fees and costs.

{¶45}  As stated earlier, no party opposed appellant's motion to intervene.  We therefore presume that granting this motion would cause no prejudice to the remaining parties.  We also note that appellant's interests are limited to submission of jury interrogatories to determine the basis for any jury award to the Tomcanys and against A&B. While appellant's involvement might cause the parties to adjust their trial strategy, there is no reason to think that any continuance or further discovery would be necessary. Further, the trial court could have easily limited appellant's intervention to submission of jury interrogatories and conditioned appellant's intervention upon no continuances in its favor.  The existing parties would thus not be prejudiced by the granting of appellant's motion.

{¶46}  There is no reason to think that this matter could not have proceeded to trial as scheduled, with appellant's participation limited to that which it requested, or that appellant's participation would have prejudiced the parties.  Permitting narrow intervention in the instant matter was the only practical means to allow these legal claims to be decided efficiently and consistently and without extreme prejudice to appellant.

{¶47} Accordingly, the trial court abused its discretion by denying appellant's motion to intervene as of right, and appellant's first and second assignments of error are well-taken. We decline to address appellant's third assignment of error. We hereby reverse the judgment of the trial court, dissolve the stay previously granted in this matter, and remand this matter for further proceedings consistent with this opinion.

WILLIAM M. O'NEILL, J.,

DIANE V. GRENDELL, J.,

concur.

13

# EXHIBIT C

[Cite as *Alhamid v. Great Am. Ins. Cos.*, 2003-Ohio-4740.]

STATE OF OHIO, MAHONING COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

| | | |
|---|---|---|
| MUSA ALHAMID, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | |
| GREAT AMERICAN INSURANCE COMPANIES, | ) | |
| DEFENDANT-APPELLANT, | ) | |
| ST. PAUL INSURANCE COMPANY, | ) | CASE NO. 02-CA-114 |
| PLAINTIFF, | ) | OPINION |
| VS. | ) | |
| MUSA ALHAMID, ET AL., | ) | |
| DEFENDANTS. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Common Pleas Court
Case No. 00CV00827

JUDGMENT:    Reversed and remanded

APPEARANCES:

For Appellee:    (no brief filed)

For Defendant-Appellant:    Attorney James N. Kline
Ulmer & Berne LLP
Penton Media Building
1300 East Ninth Street, Suite 900
Cleveland, Ohio 44114-1583

JUDGES:
Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 5, 2003

DONOFRIO, J.

{¶1}   Defendant-appellant, Great American Insurance Companies ("Great American"), appeals a decision of the Mahoning County Common Pleas Court denying its motion for leave to intervene.

{¶2}   The complex history of this case has its beginning with an automobile accident which occurred on May 29, 1997.   One of the vehicles involved in the accident was driven by George O'Hare ("O'Hare"), who was insured by plaintiff St. Paul Insurance Company ("St. Paul").  A police investigation concluded that the other vehicle was driven by plaintiff/defendant, Musa Alhamid ("Musa"), and owned by his brother, defendant Faisal Alhamid ("Faisal").   Musa denied any involvement in or knowledge of the accident.   A traffic citation issued to Musa was subsequently dismissed.

{¶3}   Nevertheless, on November 6, 1998, St. Paul filed suit against Musa and Faisal for amounts it had paid to its insured, O'Hare, as a result of the accident.   The case, captioned *St. Paul Ins. Co. v. Musa Alhamid*, was assigned case No. 98 CV 2554.  After considerable delay, Musa ultimately referred the suit to his insurer, Great American.  For various reasons, Great American declined Musa's request to defend the case and for indemnification.   Consequently, Musa filed suit against Great American.   That case, captioned *Musa Alhamid v. Gen. Am. Ins. Co.*, was assigned case No. 00 CV 827.[1]

{¶4}   At the request of St. Paul, the trial court granted a motion to consolidate the two cases on September 29, 2000.   Each of the parties filed motions to dismiss and/or for summary judgment.   On April 20, 2001, the court filed a judgment entry

---

[1] The caption in Musa's complaint erroneously named his insurer as General American.   That error continued to appear in all subsequent filings.   On July 31, 2002, this court filed a journal entry indicating that the correct name, Great American, be used in all subsequent filings.

ruling on those motions. In case No. 98 CV 2554, concerning St. Paul's claims against Musa and Faisal, the court granted Faisal's motion for summary judgment since St. Paul did not respond to it and denied Musa's motion for summary judgment, determining that genuine issues of fact existed. In Case No. 00 CV 827, concerning Musa's claim against Great American seeking defense and indemnification for case No. 98 CV 2554, the court found that Great American had a duty to defend Musa.

{¶5}   Following a pretrial in November 2001, the court filed a judgment entry on December 4, 2001, setting forth various rulings. Although there is nothing in the record to indicate that Great American was terminated as a defendant by way of the judgment entry granting Musa's motion for summary judgment on the duty to defend, the court stated that Great American "may intervene."

{¶6}   The case was ultimately set for trial on July 1, 2002. On April 22, 2002, Great American filed a motion for leave to intervene and motion for leave to file an amended answer instanter as an intervening party. Although the court had previously granted leave to Great American to intervene, the court denied both of Great American's motions on May 17, 2002, without explanation. This appeal followed.

{¶7}   Great American's sole assignment of error states:

{¶8}   "The trial court erred in denying Appellant Great American Insurance Company's Motion for Leave to Intervene and Motion for Leave to File an Answer Instanter as an Intervenor."

{¶9}   Great American posits the following issue for review:

{¶10} "Whether a defendant's liability insurer has a right to intervene and file an answer as an intervenor in a lawsuit against its insured for the limited purpose of

propounding jury interrogatories and/or jury instructions, where the jury interrogatories and/or jury instructions will be designed to determine whether any verdict which may be rendered against the insured is covered or not covered by the insured's liability insurer?"

{¶11} Great American alleges that it has met all of the essential elements required for intervention of right.  First, Great American argues that it has an interest relating to the transaction below because of its status as the liability insurer for Musa.  Great American argues that since Musa sought coverage from Great American for St. Paul's claims, it has a very direct, pecuniary interest in the outcome of the case.  Next, Great American argues that it acted timely in filing its motion to intervene, and that its interest will be prejudiced and impaired if intervention is not granted.  In the event of a verdict in St. Paul's favor, Great American argues that it will be necessary to identify the basis of the imposition of liability upon Musa.  Great American argues that a general verdict would be insufficient to determine the coverage issue and thus in order to protect its interest it would need to serve jury interrogatories.  Lastly, Great American argues that its interest would not be adequately represented by the existing parties.  Great American argues that the principal interest of St. Paul is the subrogation rights it derived from its own insured, O'Hare, and to collect money under any theory which allows them to do so.  Concerning Musa, Great American argues that his interest is simply in avoiding liability and, if there is liability, to maximize coverage under his policy with Great American.  Great American argues that only it has any interest in determining the basis of any judgment in favor of St. Paul so that it

may determine the indemnification issue as well.  As such, Great American argues that the trial court abused its discretion in denying its motion to intervene.

{¶12}  Civ.R. 24(A)(2) provides:

{¶13}  "Upon timely application anyone shall be permitted to intervene in an action * * * when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

{¶14}  Civ.R. 24 is given a liberal construction in favor of intervention.  *State ex rel. Smith v. Frost* (1995), 74 Ohio St.3d 107, 108, 656 N.E.2d 673.

{¶15}  In order for an applicant to succeed in a claim for intervention of right, the applicant must meet the four requirements set forth in Civ.R. 24(A)(2).  First, the applicant must have a protectable interest relating to the property or transaction that is the subject of the action.  Second, there must be a timely application.  Third, the applicant must be in a position such that the disposition of the action may, as a practical matter, impair or impede the applicant's interest.  Finally, the applicant's interest must be inadequately represented by the existing parties to the suit.  *Myers v. Basobas* (1998), 129 Ohio App.3d 692, 696, 718 N.E.2d 1001.  Thus, Great American would be entitled to intervene only if the record establishes that each of those four elements has been met.

{¶16}  Ohio courts apply an abuse of discretion standard in reviewing Civ.R. 24(A)(2) motions.  *State ex rel. First New Shiloh Baptist Church v. Meagher* (1998), 82

Ohio St.3d 501, 503, fn. 1, 696 N.E.2d 1058. Abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶17} In this case, the trial court abused its discretion in denying Great American's motion to intervene. Great American has met all of the requirements set forth above. The court clearly found that Great American has a duty to defend Musa. In order to protect its interest, it must be given the opportunity to intervene and file an amended answer. The original answer filed by Musa seeks simply to deny liability primarily by denying any involvement in or knowledge of the accident. Musa's answer in no way protects Great American's interest to minimize any potential coverage based on Musa's actions. Rather, Musa's interest is maximizing coverage under the policy. The most reasonable opportunity to determine the extent of coverage issue (separate and apart from the duty to defend issue), which was left undetermined by the trial court, is during this trial through the simple submission of jury interrogatories.

{¶18} In addition, Great American cites *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 544 N.E.2d 878, to illustrate its assertion that it must intervene in order to protect its interest. In *Howell*, the defendant fired a gun into a truck occupied by the plaintiff, causing him serious injury. The plaintiff filed suit against the defendant for intentional tort and negligence. After a trial, the court determined that the defendant had acted negligently and not intentionally, and entered judgment for the plaintiff based on the negligence theory. Unable to obtain satisfaction of the judgment, the plaintiff then instituted a supplemental action against the defendant's insurer. After a

trial, both parties filed motions for directed verdict. The court determined that the defendant's culpable mental state had been conclusively resolved in the earlier action. On appeal, the insurer argued that the doctrine of collateral estoppel should not have been applied to it with regard to its desire to relitigate the defendant's culpable mental state. The Ohio Supreme Court disagreed noting:

{¶19} "Inasmuch as [the insurer] possessed a contractual relationship with [the defendant] and, in any event, could have intervened in the prior proceeding, it is precluded from relitigating the issue of [the defendant's] mental state.

{¶20} "* * * The insurance company may legitimately decline to defend where it believes in good faith that its insured acted intentionally. It may nevertheless enter the action and participate as a third-party defendant so as to defeat any liability on its part (*i.e.*, by demonstrating that the acts of the insured/tortfeasor were intentional).

{¶21} "It is this opportunity that must be seized. Otherwise, whether seized or not, the opportunity to litigate in the original action will preclude relitigation of liability in the supplemental proceeding." Id. at 367-368, 544 N.E.2d 878.

{¶22} Accordingly, Great American's sole assignment of error has merit.

{¶23} The judgment of the trial court is hereby reversed and this matter is remanded for further proceedings according to law and consistent with this opinion.

Vukovich and Waite, JJ., concur.