UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA KAMMEYER, et al.** | : | CASE NO.: C-1-01-649 |
| **Plaintiffs,** | : | Judge Spiegel |
| | | (Magistrate Black) |
| **vs.** | : | |
| **CITY OF SHARONVILLE, OHIO, et al.** | : | |
| **Defendants.** | : | |

**REPLY MEMORANDUM OF DEFENDANT WILLIAM NUSS TO PLAINTIFFS'
MEMORANDUM IN OPPOSITION TO MOTIONS
<u>FOR SUMMARY JUDGMENT</u>**

**I.    <u>INTRODUCTION</u>**

The United States Supreme Court has made clear that one of the purposes of Rule 56 is to prevent plaintiffs from merely replacing the conclusory allegations of their Complaint with the conclusory allegations of their legal counsel in a memorandum in opposition to the defendants' motion for summary judgment. *Lujan v. National Wildlife Fed'n.*, 497 U.S. 871, 888 (1990). In other words, statements of legal counsel in such a memorandum are not competent to oppose a motion for summary judgment. *Orson, Inc. v. Miramax Film Corp*, 79 F.3d 1358, 1372 (3rd Cir. 1996) (Legal memoranda are not evidence, and cannot independently create a genuine issue of disputed fact to preclude summary judgment). *Lopez v. Coporacion Azucarera de Puerto Rico*, 938 F.2d 1510 n.11 (1st Cir. 1991). It is for these reasons that Defendant William Nuss ("Nuss") at page six of his motion for summary judgment ("Motion") made the following request of this Court:

> . . . Nuss respectfully requests that this Court require Plaintiffs to support their assertions and arguments with *facts* rather than with their speculation and theories, as well as with correct citations to

the record that actually support the assertions for which they are cited.

Nuss followed that request with the prediction that Plaintiffs would not be able to do so. He was correct.

Plaintiffs have done just what Nuss anticipated they would do because they *cannot* introduce the admissible facts necessary to support their claims against him. More specifically, Plaintiffs have done the following to hide that their claims against Nuss cannot survive summary judgment.

1. Plaintiffs' stated reason for responding to the separate motions for summary judgment (i.e. efficiency) is, in a word, nonsense. The truth is that Plaintiffs cannot cite to *evidence* sufficient to support their claims against Nuss so they have attempted to conceal this by including him in the arguments they make against Defendants collectively. For example, on page 1 of Plaintiffs' memorandum in opposition they state that "[a]s set forth in detail below, over the years Cramer and the defendants lost evidence, lied to the prosecutor, and lied to the plaintiffs." That "detail" is never provided as it relates to Nuss because Nuss never lost any evidence or lied to the prosecutor or the plaintiffs.

2. For some of their "facts", Plaintiffs do not even bother to cite to anything. Rather, Plaintiffs simply make conclusory allegations, apparently assuming that this Court will believe that the allegations must be supported somewhere in the record.

3. For other "facts" Plaintiffs do not cite to the record. They instead refer this Court to a Declaration of one of their lawyers, a portion of which is his "Summary Chart of Evidence . . ." That chart is not "evidence" of anything, and the "summary" is in reality Plaintiffs'

counsels' inaccurate mischaracterization of the record.[1]

4.   Much of Plaintiffs' argument in support of their claims against Nuss consists of the "expert" opinions of Plaintiffs' counsel of how the chief of police of a relatively small police department should run the department.  While Plaintiffs have correctly, albeit belatedly, recognized that they cannot successfully prosecute their claims against Nuss (or Defendants City of Sharonville ("City") and Michael Schappa ("Schappa") for that matter) without the expert testimony of a qualified law enforcement expert, they cannot use the opinions of their legal counsel as a substitute for those of a qualified expert.

5.   After a combined six years of investigation, both Dale Dorning ("Dorning"), the former SPD police officer and Plaintiffs' key witness, and Jay Clark ("Clark"), Plaintiffs' former counsel, concluded that Nuss did absolutely nothing wrong and no legitimate claims could be brought against him.  In the entire sixty-one pages of Plaintiffs' memorandum, Plaintiffs do not devote even one sentence to these conclusions.

These attempts to divert the Court's attention from the lack of evidence to support their claims against Nuss are not only transparent.  They serve to highlight just how meritless those claims are.

On page 2 of his Motion, Nuss asks **"WHERE'S THE EVIDENCE?** that supports Plaintiffs' claims against him.  Sixty-one pages later, the answer is a clear and resounding **"NOWHERE, BECAUSE IT DOES NOT EXIST."**

---

[1] Defendants have contemporaneously with the filing of this memorandum filed a Joint Motion To Strike Declaration of Alphonse A. Gerhardstein.

II.   **PLAINTIFFS CANNOT DEFEAT NUSS'S MOTION BY ATTEMPTING TO ASSOCIATE HIM WITH THE ALLEGEDLY WRONGFUL ACTS OF OTHER DEFENDANTS WHEN THERE IS NO EVIDENCE THAT NUSS HAD ANYTHING TO DO WITH THOSE ACTS.**

On page 1 of their memorandum in opposition to the Defendants' three separate summary judgment motions Plaintiffs state that efficiency is the reason for responding to the three motions in a single brief.

> . . . by responding in this single brief plaintiffs are able to efficiently and with fewer pages address all of the arguments without restating facts as would be necessary if they filed separate briefs opposing the arguments of each defendant.

Id., fn. 1.  As stated above, that explanation is nonsense.  Plaintiffs not only *do not restate* facts; they do not *state any* facts that support their claims against Nuss.

The real reason Plaintiffs have filed a single brief is that the undisputed evidence and Plaintiffs' memorandum itself make clear that they cannot introduce sufficient *facts* to support *any* claims against Nuss.  In short, Plaintiffs attempt to keep Nuss in this case by including him in the allegations they make against all of the Defendants.  Unfortunately for Plaintiffs, the record does not support their conclusory allegations against him, and they have introduced no facts to tie him in any way to the allegedly wrongful acts of the other Defendants.[2]

III.  **PLAINTIFFS HAVE CITED NO *EVIDENCE* TO SUPPORT THEIR CLAIMS AGAINST NUSS, BUT HAVE RESORTED TO MAKING ALLEGATIONS FOR WHICH THEY PROVIDE NO CITATION AT ALL OR FOR WHICH THEY CITE TO THEIR LAWYERS' INADMISSIBLE "SUMMARY CHART OF THE EVIDENCE."**

On pages 4 and 5 of the Motion, Nuss sets forth the undisputed facts that require the dismissal of all claims made against him.  A careful review of Plaintiffs' memorandum makes

---

[2] Nuss does not concede that any of the other Defendants engaged in wrongful conduct.

clear that they have not introduced any *evidence* to place in dispute even one of those facts.

Using the list of facts he has set forth in the Motion, Nuss asks this question for each of those facts: have Plaintiffs introduced any *evidence* to place in dispute that

1. Nuss did not participate in the alleged coverup?  **No!**
2. Nuss did not know about the alleged coverup?  **No!**
3. Nuss supervised Defendant James Cramer ("Cramer") in the same manner as he did other employees of the SPD?  **No!**
4. Nuss did not give any special treatment to Cramer?  **No!**
5. Nuss was never informed by any member of the SPD that he or she believed that he gave Cramer special or favored treatment?  **No!**
6. Nuss did not permit SPD police officers, including Cramer, to be hired by outside employees to collect loans or bad checks for employers?  **No!**
7. Assuming SPD police officers, including Cramer, were hired by outside employers to collect loans or bad checks for employers, Nuss had no knowledge of this conduct? **No!**
8. Assuming Cramer had some sort of business or personal relationship with Albert Schuholz before May 8, 1981, Nuss had no knowledge of it?  **No!**
9. Nuss believed that Cramer was qualified to lead the murder investigation?  **No!**
10. Nuss at all times thought that it was Cramer's belief that Albert Schuholz had either killed Marie Schuholz or had hired someone to kill her?  **No!**
11. During the time Cramer was the lead detective on the Schuholz/Burns murder investigation, he informed Nuss that he had met with the Prosecutor's Office and had told a member or members of that office of his (Cramer's) desire to have criminal charges brought against Schuholz?  **No!**
12. Cramer told Nuss that the Prosecutor's Office had decided not to bring charges against Schuholz?  **No!**
13. If Cramer withheld information from a member or members of the Prosecutor's Office when he met with them to discuss Schuholz and his alleged role in the Marie Schuholz and Starla Burns murders, Nuss did not know, believe, or have any reason to believe that this had happened?  **No!**
14. At no time while Nuss was Chief of the SPD did he know, believe or have any reason to believe that Cramer was conducting the Schuholz/Burns murder investigation to protect Schuholz from prosecution for his alleged role in the murders?  **No!**
15. Nuss at all times believed that Cramer was conducting the investigation to identify and charge those responsible for the murders?  **No!**
16. Nuss never took action or failed to take action with the intent to in any way protect the individuals responsible for the murders of Marie Schuholz and Starla Burns from prosecution?  **No!**
17. At no time did any Plaintiffs inform Nuss of their belief that Cramer was a dirty cop or that he was attempting to cover up Schuholz's alleged role in the murders of Marie Schuholz and Starla Burns?  **No!**

  18. At no time did Nuss destroy or intentionally lose evidence in the Schuholz/Burns murder investigation, and he did not know, believe or have any reason to believe that Defendant Cramer had done so?  **No!**
  19. Nuss took no action, and did not refuse to take any action, with the intent to harm any of the Plaintiffs?  **No!**
  20. When Nuss appointed Gregory Homer (Homer) to replace Cramer as the head of the SPD Detective Division, he gave Homer full authority to decide for himself how to proceed on the Schuholz/Burns murder investigation?  **No!**

In short, Plaintiffs have failed to place in dispute any of the facts that require the dismissal of their claims against Nuss.

  Plaintiffs attempt in three different ways to hide that they do not have sufficient evidence to prosecute their claims against Nuss.  First, as stated above, they simply include him in their allegations against all of the Defendants, ignoring the fact that Nuss had absolutely nothing to do with the alleged conduct that is the subject of those allegations.  Second, in some instances Plaintiffs do not even bother to cite to the record.  Instead, they make conclusory allegations, and hope that this Court will assume that the allegations are true.  Third, in many other instances Plaintiffs cite to the Declaration of one of their attorneys and the "Summary Chart of Evidence" that is part of the Declaration.[3]  However, the Declaration is not *evidence*, and it is definitely not an accurate "summary of facts."  Rather, it is an inaccurate, misleading and incomplete summary of Plaintiffs' *arguments and beliefs* that Plaintiffs' counsel have simply mislabeled and mischaracterized as evidence.  Moreover, for the reasons set forth in Defendants' motion to strike, it cannot even be considered by this Court.

---

[3]The usual and best approach to citing the facts that support an allegation is to cite to admissible, specific facts in the record itself, and not require the Court to first read a "summary" of the evidence in a Declaration in order to try to find those facts in the record.  Nuss submits that there is a good reason Plaintiffs used their convoluted approach; if the relevant part of the record is ever found, it does not support the allegation with admissible, specific facts for which the statement has been indirectly and incorrectly cited.

IV.  **PLAINTIFFS' ARGUMENT AGAINST NUSS IS FOR THE MOST PART THE INADMISSABLE "EXPERT" OPINION OF THEIR COUNSEL ABOUT HOW NUSS SHOULD HAVE RUN THE SPD.**

When reduced to its essence, Plaintiffs' claim against Nuss is their counsels' opinion that, as Chief of the SPD, he did not adequately supervise Cramer. This opinion is sprinkled throughout Plaintiffs' memorandum, and is summarized in the first full paragraph of page 54. One fatal problem with Plaintiffs' claims against Nuss is that they cannot survive summary judgment without the support of a qualified law enforcement expert.[4]

Expert testimony is necessary where it concerns matters that are not within the every day knowledge and experience of a lay juror. *Kopf v. Skyrm*, 993 F.2d 374 (9th Cir. 1993). In other words, a plaintiff must "put on expert testimony to establish what the standard of care is if the subject in question is so distinctly related to some science, profession, or occupation to be beyond the ken of the average lay person." *Butera v. Dist. of Columbia*, 235 F.3d 367 (2001).

The profession of chief of a police department is one of those professions that is "beyond the ken of the average lay person," and the opinion of a qualified expert witness is necessary to support Plaintiffs' allegations about how a chief of police manages and operates his department. This is particularly true in cases involving smaller police departments. See e.g. *Vineyard v. County of Murray*, 990 F.2d 1207 (11th Cir. 1993). The failure to introduce the opinion of a

---

[4]This requirement is in essence the same requirement the federal courts have imposed in cases involving claims of improper prison administration and medical care. See e.g. *Procunier v. Martinez,* 416 U.S. 396 (1974). (The United States Supreme Court held that the evaluation of medical care for inmates and prison administration are "two areas where the courts have acknowledged their limited expertise.") "The approach in such cases may be similar to the one in medical malpractice cases. . . . In those 'police malpractice' cases plaintiffs should use the testimony of the expert to establish causation." *Police Misconduct, Law and Litigation*, §3.4(c)(4), p. 3-23, National Lawyer's Guild.

qualified expert under these circumstances almost always requires the dismissal of the plaintiff's claims.

> . . . To survive the inevitable motion for summary judgment and get to the jury at trial [in police misconduct cases] the assistance of an expert witness is usually necessary.
>
> . . . . . . . . . . . . .
>
> . . . When the plaintiff seeks to hold a supervisor . . . liable for the constitutional wrong to the plaintiff, then the expert is essential.

Ryal, *Discovery And Proof In Police Misconduct Cases, Why And When To Use An Expert In Police Misconduct Cases*, §7.2, p. 361; *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir. 1991). Also see *Estate of Jackson v. City of Rochester*, 705 F.Supp. 779, 784 (W.D. N.Y., 1989), where the court granted summary judgment to defendant in part on the basis that "[t]here is no expert evidence before the court that [defendant's] actions were unreasonable, arbitrary or contrary to accepted police practices."

That Plaintiffs recognize the necessity of expert opinion testimony to successfully prosecute their claims against Nuss is clearly demonstrated in their memorandum. Indeed, with respect to those claims, their arguments are nothing more than their own counsels' opinions about how Nuss allegedly failed to adequately perform his duties as the Chief of SPD. However, Plaintiffs have failed to introduce the opinion of any expert, let alone a qualified one, to support their arguments, and, for that reason, their claims against Nuss must be dismissed.

V.  **PLAINTIFFS HAVE TAKEN THE "OSTRICH" APPROACH TO THE TESTIMONY OF DORNING AND CLARK THAT NUSS HAS DONE NOTHING WRONG.**

Dorning is Plaintiffs' key witness in this case. Clark is the first lawyer Plaintiffs hired to represent them in connection with any claims they might have against the City and its employees, including Nuss, arising out of how the murder investigation was handled. Dorning

and Clark conducted a combined six year investigation of whether any such claims could be brought, and, with respect to Nuss, they concluded that they could not. According to Dorning, there is no evidence that Nuss did anything improper, and he does not understand why Nuss is a defendant in this lawsuit. (Dorning, p. 170; Clark, p. 22). Further, after his two-years of investigation, Clark concluded that no good faith claims could be brought against Nuss.

> . . . I have investigated the case, and everything I know about it, there's not anything to believe that Nuss has done anything wrong, improper here . . . nothing at all that would justify a claim.

(Clark, p. 20, 21; also see p. 100.)

> . . . I was not going to win a suit against Nuss . . .

(Clark, p. 69.)

In sixty-one pages of briefing Plaintiffs do not devote even one sentence to Dorning's and Clark's conclusions that Nuss did nothing wrong and no claims could in good faith be brought against him. There is a good reason for this. Plaintiffs cannot address these conclusions in a meaningful and substantive manner, and, like the ostrich, they hope that by ignoring them they will somehow disappear. They did not disappear, and this Court cannot ignore them.

### VI.     NUSS IS IMMUNE FROM LIABILITY.

#### A.     R.C. §2744 Is Constitutional.

As fully set forth in the papers filed by the City and Schappa, R.C. §2744 is constitutional. Nuss incorporates the arguments of the City and Schappa in this regard.

#### B.     Plaintiffs Have Failed To Introduce Any Evidence That Nuss Acted In A Manner For Which He Is Not Immune.

Plaintiffs' argument that Nuss is not immune under Ohio law can be distilled to two points. First, if Nuss's allegedly wrongful acts were done in a reckless or intentional manner, he

is not immune. Second, Nuss acted in a reckless or intentional manner, so he is not immune. Plaintiffs' first point is correct, but their second is not because the *evidence*, as opposed to Plaintiffs' mischaracterization of the evidence, cannot support a finding of recklessness or intentional wrongdoing on the part of Nuss.

Plaintiffs apparently believe that merely repeating their conclusory mantra of reckless or intentional misconduct on the part of Nuss[5] is sufficient to defeat a motion for summary judgment. It is not. As fully set forth in this memorandum and in Nuss's Motion, there is no evidence that Nuss acted in a manner that can reasonably be characterized as malicious, bad faith, or reckless. In short, no matter how many times Plaintiffs say that Nuss's conduct was at least reckless, that will not make it true. As such, he is immune from liability.

### VII. PLAINTIFFS HAVE FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO ESTABLISH THEIR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST NUSS.

Consistent with their approach to each argument made by Nuss, Plaintiffs do not cite to any evidence that can reasonably support a claim that Nuss acted with the intent to harm them or in a reckless manner. In fact, in their discussion of their claim of intentional infliction of emotional distress, Nuss is not even mentioned by name. Rather, Plaintiffs rely upon a statement made by this Court that a "cover-up of murder could result in serious emotional harm to the children of murder. The alleged police cover-up of a murder was extreme and outrageous ... ." The problem with this reliance, which is ignored by Plaintiffs, is the undisputed evidence

---

[5]Plaintiffs do not cite to sufficient evidence to support this conclusion. Instead they make such conclusory statements as ". . . there is abundant evidence upon which a jury could reasonably conclude that the City defendants behaved in a reckless manner" and "[t]here is absolutely nothing in Chapter 2744 that purports to absolve a political subdivision's employee of liability for intentionally or recklessly injurious conduct." (Plaintiffs' memorandum, pp. 51, 52.)

conclusively establishes that Nuss did not even know about, let alone participate in, the alleged cover-up.

Plaintiffs also believe that, by introducing evidence of serious emotional distress, they have met their burden with respect to the second and third elements of this claim. They are mistaken. Plaintiffs have not introduced any evidence that Nuss - as opposed to someone else like Albert Schuholz - did anything that caused harm to Plaintiffs. (Once again Plaintiffs attempt to lump all of the Defendants together, and ask this Court to impose liability on Nuss based on the alleged conduct of another Defendant.) Further, Plaintiffs have failed to present any expert testimony directly associating Nuss's conduct with their injuries, and this type of testimony is necessary because there are multiple factors that could have caused or contributed to Plaintiffs' alleged emotional conditions. This lack of expert testimony makes it impossible to pinpoint the alleged actions of Nuss, as opposed to, for example, Albert Schuholz, as a cause of Plaintiffs' alleged emotional problems.

**VIII.   PLAINTIFFS HAVE FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO ESTABLISH THEIR SPOILATION OF EVIDENCE CLAIM AGAINST NUSS.**

As an initial matter, Nuss points out that Plaintiffs' assertion that "they must show only negligent, rather than willful, destruction of evidence" is wrong. Plaintiffs' spoilation claim is found in paragraph 70 of the Third Amended Complaint. That paragraph provides:

> Defendants Cramer, Nuss, Schappa, and Doe(s) have *willfully destroyed* evidence related to the investigation of the death of Marie Schuholz thereby disrupting plaintiffs' ability to pursue and present their claims in probate and in other litigation regarding her death. (Emphasis added.)

Plaintiffs are bound by their own pleading, which provides that their claim is one of alleged

willful, not negligent, destruction.[6]

Plaintiffs ignore that the alleged spoilation of evidence is, if true, *itself* evidence that supports their cover-up claims in this lawsuit.  In other words, the alleged spoilation*, which is part of the alleged cover-up*, has not in any way disrupted or hurt Plaintiffs' chances of successfully prosecuting those claims.  Indeed, if the spoilation actually occurred, it, in fact, *helps* Plaintiffs in this action.[7]  Accordingly, Plaintiffs have completely failed to introduce evidence to support the third, fourth and fifth elements of this claim.

Plaintiffs also completely ignore the undisputed evidence that is fatal to this claim against Nuss.  More specifically, Plaintiffs have introduced *no* evidence to refute the following:

1. Cramer's assertion that he had nothing to do with how the evidence came to be missing;
2. Dorning's assertion that the evidence could have merely been misplaced or lost by someone other than one of the Defendants;
3. Nuss's assertion that, not only did he not destroy or participate in the destruction of evidence, but that he did not even know it was missing until after this lawsuit was filed; and
4. the assertion by Nuss, Schappa, Cramer and every former and current SPD police officer that, contrary to Plaintiffs' conclusory allegation, Nuss and Schappa did not, as Plaintiffs' allege, become "willing accomplices in [Cramer's] actions" by "their total abdication of any responsibility for supervising him."[8]

---

[6]If this Court permits Plaintiffs to bring a negligent spoilation claim, Nuss is immune from any liability for this claim under R.C. §2744.

[7]Nuss concedes that, if willful destruction had occurred, Plaintiffs *might* be able to bring a spoilation of evidence claim against someone in conjunction with their wrongful death claims against Albert Schuholz.  This would, of course, depend on Plaintiffs' ability to establish the other elements of the claim, including the identity of the person who destroyed the evidence.

[8]The undisputed evidence is that Cramer was supervised, but just not in the manner that Plaintiffs' counsel, once again wearing their "expert" witness hats, deem appropriate.  With all due respect to Plaintiffs' counsel, they are not qualified to render this opinion.  Further, inadequate supervision is not the same as "total abdication," and it is not sufficient to support liability against either Nuss or Schappa.

In short, the undisputed evidence requires the dismissal of Plaintiffs' spoilation of evidence claim against Nuss.

### IX. PLAINTIFFS HAVE FAILED TO INTRODUCE EVIDENCE TO ESTABLISH THEIR CIVIL CONSPIRACY CLAIM AGAINST NUSS.

The undisputed evidence before this Court is that:

1. Nuss did not know about or participate in the alleged coverup;
2. none of Nuss's conduct can be reasonably characterized as malicious; and
3. none of Nuss's conduct was done with the intent to harm Plaintiffs.

Further, there is no evidence that Nuss purposely engaged in wrongful or unlawful conduct in furtherance of the alleged conspiracy. Plaintiffs do not in any way contest these facts with evidence. Rather, they assert that Nuss can be held liable because he "provided Cramer the access and freedom he needed in order to cover-up evidence linking Schuholz to the crimes." (Plaintiffs' memorandum, p. 58.) In other words, Plaintiffs maintain that Nuss was a participant in a conspiracy that he did not know about, did not participate in, and the existence of which was concealed from him. That is not the law, and, as such, this claim against Nuss fails.

### X. CONCLUSION

For the reasons set forth in Defendant's Motion and this Reply, Plaintiffs' claims against Nuss must be dismissed.

Respectfully submitted,

s/Brian E. Hurley
Brian E. Hurley (0007827)
Robert J. Gehring (0019329)
Crabbe, Brown & James LLP
Attorneys For Defendant William Nuss
30 Garfield Place, Suite 740
Cincinnati, Ohio 45202-4359
(513) 784-1525 - telephone
(513) 784-1250 - facsimile
Bhurley@cbjlawyers.com
Rgehring@cbjlawyers.com

-14-

## CERTIFICATE OF SERVICE

      I hereby certify that on April 1, 2005, a copy of the forgoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties my access this filing through the Court's system.

                                  s/Brian E. Hurley  
                                  Brian E. Hurley

\\theserver\firmdocs\NUSS\msj reply 032805.wpd