Source: Legal > States Legal - U.S. > Ohio > Cases > OH Federal & State Cases, Combined
Terms: **nagel v. horner, court of appeals of ohio, fourth appellate district** (Edit Search)

↙Select for FOCUS™ or Delivery

*2005 Ohio 3574, \*; 2005 Ohio App. LEXIS 3291, \*\**

STEVEN E. **NAGEL**, Plaintiff-Appellee, v. CHARLES H. **HORNER**, et al., Defendants-Appellants.

Case No. 04CA2975

**COURT OF APPEALS OF OHIO,** FOURTH APPELLATE **DISTRICT,** SCIOTO COUNTY

2005 **Ohio** 3574; 2005 **Ohio** App. LEXIS 3291

July 11, 2005, Released

**DISPOSITION:** [\*\*1] JUDGMENT AFFIRMED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Utilizing **Ohio** Rev. Code Ann. § 2744.02(C), appellants, an individual and a City police department, appealed from a judgment entered by the trial court denying them sovereign immunity on appellee employee's retaliation and hostile work environment claims. The trial court entered summary judgment for appellants on all of the employee's other claims.

**OVERVIEW:** The employee argued that appellants wrongfully terminated him because he refused to participate in appellants' attempts to discredit another officer. The appellate court rejected the employee's claim that **Ohio** Rev. Code Ann. § 2744.02 was unconstitutional and refused to follow Kammeyer v. Sharonville. The trial court properly held that appellants were not entitled to statutory immunity under **Ohio** Rev. Code Ann. ch. 2744 for the retaliation and hostile work environment claims. On their face, the retaliation and hostile work environment claims were based upon the employment relationship and were causally connected to the employee's work with appellants. Thus, under **Ohio** Rev. Code Ann. § 2744.09(B) and (E), any immunity provided by **Ohio** Rev. Code Ann. ch. 2744 was inapplicable. Appellants' remaining arguments were not considered as **Ohio** Rev. Code Ann. § 2744.02(C) limited the appellate court's jurisdiction to deciding whether the trial court erroneously determined that appellants were not entitled to sovereign immunity.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** political subdivision, immunity, employment relationship, hostile work environment, sovereign immunity, retaliation, intentional tort, summary judgment, statutory immunity, connected, causally, intentional infliction of emotional distress, moving party, plurality, declare, dicta, entitled to summary judgment, terminated, surety, course of employment, age discrimination, nonmoving party, genuine issue, civil rights, certification, correctly, day-care, inspect, purview, assignment of error

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Governments > Local Governments > Claims By & Against 

Governments > Local Governments > Employees & Officials
Labor & Employment Law > Discrimination > Retaliation
Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
Labor & Employment Law > Employer Liability > Tort Liability > Scope of Employment

**HN1** Ohio Rev. Code Ann. § 2744.09 provides that sovereign immunity does not apply to claims arising out of an employment relationship. Regardless of whether they can be classified as intentional torts, retaliation and hostile work environment claims are causally connected to the employment relationship, and thus arise out of it.  More Like This Headnote

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule
Governments > Local Governments > Employees & Officials
**HN2** See Ohio Rev. Code Ann. § 2744.02(C).

Governments > Courts > Judicial Precedents
**HN3** The Ohio Supreme Court Rules for Reporting Opinions provide that the syllabus of its opinions states the controlling law. Former Ohio Sup. Ct. R. Reporting Op.1 R.1 (B), which was replaced by its current version, effective May 1, 2002.  More Like This Headnote

Governments > Local Governments > Licenses
**HN4** A plurality of the court in Butler v. Jordan has discussed reasons why Ohio Rev. Code Ann. § 2744.02 may be unconstitutional. This discussion is pure dicta and Butler falls short of declaring § 2744.02 unconstitutional.  More Like This Headnote

Constitutional Law > Trial by Jury in Civil Actions
Governments > Courts > Judicial Precedents
Governments > Local Governments > Claims By & Against
Governments > Local Governments > Licenses
**HN5** Kammeyer v. Sharonville, 311 F. Supp. 2d 653 (S.D. Ohio 2003) has concluded that the Ohio Supreme Court has provided more than adequate direction for the court to conclude that the invocation of sovereign immunity by the City and the individual defendants violates the plaintiffs' rights to trial by jury and to remedy under the Ohio Constitution. Thus, it has found Ohio Rev. Code Ann. ch. 2744 unconstitutional. The Court of Appeals of Ohio, Fourth Appellate District, Scioto County, chooses not to follow Kammeyer because it is not controlling authority.  More Like This Headnote

Governments > Courts > Judicial Precedents
**HN6** The appellate court is not bound by rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court.  More Like This Headnote

Constitutional Law > The Judiciary > Case or Controversy > Constitutionality of Legislation
**HN7** A court will not declare a statute unconstitutional based upon the legal reasoning of a plurality of the Supreme Court that was stated in dicta.  More Like This Headnote

Civil Procedure > Appeals > Reviewability > Notice of Appeal
**HN8** See Ohio R. App. P. 3(C)(1).

Civil Procedure > Appeals > Standards of Review > De Novo Review
Civil Procedure > Summary Judgment > Standards of Review

*HN9* When the appellate court reviews a trial court's summary judgment decision, it conducts a de novo review that independently applies the requirements of **Ohio** R. Civ. P. 56(C). More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN10* Summary judgment is appropriate when: (1) no genuine issue of material fact remains for trial; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence against it construed most strongly in its favor. **Ohio** R. Civ. P. 56(C). More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
*HN11* The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. If the moving party satisfies this burden, the nonmoving party then has a reciprocal burden under **Ohio** R. Civ. P. 56(E) to set forth specific facts showing that there is a genuine issue for trial, and if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Issues of Fact & Law
Civil Procedure > Summary Judgment > Summary Judgment Standard
Governments > Local Governments > Claims By & Against
*HN12* Because the determination of whether a political subdivision is immune from liability is a question of law, summary judgment is an appropriate vehicle for that determination. More Like This Headnote

Governments > Local Governments > Claims By & Against
*HN13* The most logical beginning for a political subdivision immunity analysis is **Ohio** Rev. Code Ann. § 2744.09, which removes certain actions from the purview of **Ohio** Rev. Code Ann. ch. 2744. More Like This Headnote

Governments > Local Governments > Claims By & Against
*HN14* See **Ohio** Rev. Code Ann. § 2744.09.

Governments > Local Governments > Claims By & Against
Labor & Employment Law > Discrimination > Retaliation
Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
*HN15* Where a plaintiff's retaliation and hostile work environment claims are based upon his employment relationship and upon what he claims is his exercise of free speech, under **Ohio** Rev. Code Ann. § 2744.09(B) and (E), any immunity provided by **Ohio** Rev. Code Ann. ch. 2744 is not available to the defendants. More Like This Headnote

Governments > Local Governments > Claims By & Against
Governments > Local Governments > Employees & Officials
Labor & Employment Law > Discrimination > Sexual Harassment > Coverage & Definitions
Labor & Employment Law > Employer Liability > Tort Liability > Scope of Employment
*HN16* The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment. However, Burlington Industries, Inc. v. Ellerth does not go so far as to say that discrimination claims "do not arise out of the employment relationship" between an employee and a political subdivision. More Like This Headnote

Governments > Local Governments > Claims By & Against
Labor & Employment Law > Employer Liability > Tort Liability > Scope of Employment
Torts > Business & Employment Torts > Deceit & Fraud
Torts > Intentional Torts > Intentional Infliction of Emotional Distress
Workers' Compensation & SSDI > Coverage > Employment Relationships

**HN17** Ohio courts consistently have held that under the provisions of Ohio Rev. Code Ann. ch. 2744, political subdivisions retain their cloak of immunity from lawsuits for intentional tort claims. Ohio appellate courts have held that Ohio Rev. Code Ann. § 2744.09 has no application to employer intentional tort claims. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Other Laws
Labor & Employment Law > Employer Liability > Tort Liability > Scope of Employment
Labor & Employment Law > Wrongful Termination > Defenses

**HN18** The Ohio Court of Appeals for the Second District has held that an age discrimination/wrongful discharge claim arose out of the employment relationship, despite the defendant's claim that age discrimination is an intentional tort. In reaching its decision, the court has noted that the case law on this issue is sparse, but that is not surprising in view of such an obvious point. The court has noted that no other Ohio cases preclude applying Ohio Rev. Code Ann. § 2744.09(B) when civil rights violations occur in the employment context. In fact, suit appears to be routinely permitted against political subdivisions in such situations. More Like This Headnote

Labor & Employment Law > Employer Liability > Tort Liability > Scope of Employment
Torts > Intentional Torts
Workers' Compensation & SSDI > Coverage > Employment Relationships

**HN19** The appellate court is not persuaded that the legislature intended to engraft the Ohio Supreme Court's interpretation of the workers' compensation scheme into its general statutory provisions for political subdivision immunity. Because employer intentional torts are not a natural risk of employment, the Supreme Court has concluded they occur outside of the employment relationship in the workers compensation context. However, the appellate court has noted that an employer's intentional tort arises out of and happens in the course of employment, even if the conduct can be characterized as outside of the normal employment relationship. Subsequently, the Supreme Court of Ohio has affirmed the appellate court's characterization of employer intentional torts in that matter. More Like This Headnote

Labor & Employment Law > Employer Liability > Tort Liability > Scope of Employment
Torts > Intentional Torts

**HN20** An injury that is the product of an employer's intentional tort is one that also arises out of and in the course of employment. Although an employer intentional tort occurs outside the employment relationship for purposes of recognizing a common-law cause of action for intentional tort, the injury itself must arise out of or in the course of employment; otherwise there can be no employer intentional tort. More Like This Headnote

Labor & Employment Law > Employer Liability > Tort Liability > Scope of Employment

**HN21** Claims that are causally connected to an individual's employment fit into the category of actions that are relative to any matter that arises out of the employment relationship. More Like This Headnote

Governments > Local Governments > Claims By & Against

Labor & Employment Law > Employer Liability > Tort Liability > Scope of Employment
Torts > Intentional Torts

**HN22** The contention that the principle behind political subdivision immunity, i.e., the integrity of the public fisc, should override the legislature's express directive that immunity does not apply to claims causally connected to the employment relationship seems dubious. Ostensibly, the legislature is aware that it is leaving the treasury unguarded when it has enacted **Ohio** Rev. Code Ann. § 2744.09 in 1985. More Like This Headnote

Governments > Local Governments > Claims By & Against
Labor & Employment Law > Discrimination > Retaliation
Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment
Labor & Employment Law > Employer Liability > Tort Liability > Scope of Employment

**HN23** Where they are causally connected to a worker's employment with an employer, retaliation and hostile work environment claims arise out of the employment relationship, are based upon what the worker asserts are violations of his civil rights. Therefore, such claims fall within the purview of **Ohio** Rev. Code Ann. § 2744.09, which means the statutory grant of immunity found in **Ohio** Rev. Code Ann. ch. 2744 does not apply. More Like This Headnote

Civil Procedure > Appeals > Appellate Jurisdiction > State Court Review
Governments > Local Governments > Claims By & Against

**HN24** **Ohio** Rev. Code Ann. § 2744.02(C) limits the appellate court's jurisdiction to deciding whether the trial court erroneously determined that appellants were not entitled to sovereign immunity. More Like This Headnote

**COUNSEL:** Lawrence E. Barbiere, Cincinnati, **Ohio,** for Appellants Charles H. **Horner,** Portsmouth Police Department/City of Portsmouth, **Ohio.**

James H. Banks and Nina M. Najjar, Dublin, **Ohio,** for Appellee.

**JUDGES:** William H. Harsha, Judge. Abele, P.J. & Kline, J. Concur in Judgment and Opinion.

**OPINIONBY:** William H. Harsha

**OPINION:** DECISION AND JUDGMENT ENTRY

Harsha, J.

[*P1] Utilizing R.C. 2744.02(C), n1 Charles H. **Horner** and Portsmouth Police Department/City of Portsmouth, **Ohio** appeal the trial court's judgment denying them sovereign immunity on Steven E. **Nagel's** retaliation and hostile work environment claims. **HN1** R.C. 2744.09 provides that sovereign immunity does not apply to claims arising out of the employment relationship. Regardless of whether they can be classified as intentional torts, retaliation and hostile work environment claims are causally connected to the employment relationship, and thus arise out of it. Therefore, the trial court correctly determined that appellants were not entitled to statutory immunity on those two claims. Appellants raise two additional arguments, neither of which concerns the trial [**2] court's decision that they are not entitled to sovereign immunity. n2 Our review under R.C. 2744.02(C) is limited to the sovereign immunity issue. Because the order they appeal is not otherwise final, we lack jurisdiction to consider these other arguments. Therefore, we affirm the court's judgment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 R.C. 2744.02(C) provides: **HN2** "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

n2 Appellants contend that the trial court should have granted them summary judgment on the retaliation and hostile work environment claims because **Nagel** failed to exhaust his administrative remedies and because he did not present sufficient evidence to establish his claims. They further argue that the trial court should have stayed the proceedings pending arbitration.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[\*P2]** The underlying facts remain disputed, **[\*\*3]** but essentially, appellants terminated **Nagel's** employment for reasons that they claim were justified. **Nagel** contends otherwise and alleges that appellants wrongfully terminated him because he refused to participate in appellants' purported attempts to discredit another law enforcement officer. Thus, **Nagel** filed a complaint that contained various claims for relief, including retaliation and hostile work environment against appellants. Appellants moved for summary judgment, arguing in part that they were entitled to sovereign immunity on all claims. The trial court determined that appellants were entitled to summary judgment granting them immunity on all claims except for retaliation and creating a hostile work environment.

**[\*P3]** Appellants appealed from the denial of immunity and assign the following errors:

> FIRST ASSIGNMENT OF ERROR
> The trial court erred in determining defendants were not entitled to statutory immunity on any state claims for retaliation and hostile work environment.
>
> SECOND ASSIGNMENT OF ERROR
> The trial court erred in determining that the city of Portsmouth was not entitled to summary judgment on plaintiff's federal claims for retaliation **[\*\*4]** and hostile work environment.
>
> THIRD ASSIGNMENT OF ERROR
> The trial court erred in proceeding with plaintiff's claims where his administrative remedies under the collective bargaining agreement had not yet been exhausted.

I. Constitutionality of R.C. 2744.02

**[\*P4]** Before we address the merits of appellants' first assignment of error, we consider **Nagel's** argument that we lack jurisdiction. He claims that R.C. 2744.02 is unconstitutional based upon Kammeyer v. Sharonville (S.D.**Ohio** 2003), 311 F. Supp.2d 653, and Butler v. Jordan (2001), 92 **Ohio** St.3d 354, 2001 **Ohio** 204, 750 N.E.2d 554. **Nagel** also argues that assuming we do have jurisdiction, we are limited to reviewing the trial court's decision that appellants are not entitled to sovereign immunity. We agree with this latter proposition, but reject the former.

**[\*P5]** In Butler, the court held:

"1. Within the meaning of R.C. 2744.02(B)(5), R.C. 5104.11 does not expressly impose liability on a political subdivision for failure to inspect or for the negligent certification of a type-B [**5] family day-care home even where the political subdivision has completely ignored the obligations imposed upon it by the statute.

2. Within the meaning of R.C. 2744.02(B)(5), no other section of the Revised Code expressly imposes liability on a political subdivision for failure to inspect or for the negligent certification of a type-B family day-care home."

Id. at paragraphs one and two of the syllabus. Butler was decided on July 25, 2001, when **HN3** the Supreme Court Rules for Reporting Opinions provided that the syllabus of its opinions stated the controlling law. See former S.Ct.Rep. 1 R.1(B), which was replaced by its current version, eff. May 1, 2002. Nowhere in the syllabus did the **Ohio** Supreme Court declare R.C. 2744.02 unconstitutional. Instead, **HN4** a plurality of the court discussed reasons why R.C. 2744.02 might be unconstitutional. This discussion is pure dicta and Butler falls short of declaring R.C. 2744.02 unconstitutional.

[*P6] However, based upon Butler, Kammeyer predicted that the **Ohio** Supreme Court would declare R.C. 2744.02 [**6] unconstitutional. **HN5** Kammeyer concluded that "the **Ohio** Supreme Court has provided more than adequate direction for the Court to conclude that the invocation of sovereign immunity by the City and the individual Defendants violates the Plaintiffs' rights to trial by jury and to remedy under the **Ohio** Constitution." Thus, it found R.C. Chapter 2744 unconstitutional.

[*P7] We choose not to follow Kammeyer because it is not controlling authority. See State v. Steele, Butler App. No. CA2003-11-276, 2005 **Ohio** 943, at P42, citing State v. Burnett (2001), 93 **Ohio** St. 3d 419, 422-24, 2001 **Ohio** 1581, 755 N.E.2d 857 (stating "**HN6** we are not bound by rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court"). Kammeyer did not involve a federal constitutional question, but instead involved a federal court deciding whether a state law violated the state constitution. Not being bound by federal **district** court pronouncements on federal law, we leave the interpretation of state constitutional law to our state's highest court. Moreover, Kammeyer does not apply the syllabus law of Butler, but instead expands the [**7] plurality's dicta. See Thompson v. Bagley, Paulding App. No. 11-04-12, 2005 **Ohio** 1921, at P19 (stating that **HN7** court will not declare a statute unconstitutional based upon the legal reasoning of a plurality of the Supreme Court that was stated in dicta).

[*P8] Finally, we have already rejected the proposition that Butler is a proper vehicle for finding R.C. Chapter 2744 unconstitutional. See Ratcliff v. Darby (Dec. 2, 2002), Scioto App. No. 02CA2832, 2002 **Ohio** 6626 at P23-25. We see nothing in **Nagel's** argument that causes us to reconsider our previous holding.

II. Immunity under R.C. Chapter 2744

[*P9] In their first assignment of error, appellants assert that the trial court erroneously denied their summary judgment motion regarding the retaliation and hostile work environment claims because they are entitled to statutory immunity under R.C. Chapter 2744.

A. **Nagel's** Failure to File a Cross-Appeal

**[\*P10]** While **Nagel** asserts that the trial court properly determined that appellants were not entitled to statutory immunity, he also seems to argue that the trial court erred by determining that appellants were entitled to sovereign immunity **[\*\*8]** on his other claims. Because **Nagel** did not file a cross-appeal and because this argument seeks to change the trial court's judgment, we cannot address it. See App.R. 3(C)(1) *HN8*("A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4.").

B. Summary Judgment Standard of Review

**[\*P11]** *HN9*When we review a trial court's summary judgment decision, we conduct a de novo review that independently applies the requirements of Civ.R. 56(C). See Midwest Specialties, Inc. v. Firestone Tire & Rubber Co. (1988), 42 **Ohio** App.3d 6, 8, 536 N.E.2d 411. *HN10*Summary judgment is appropriate when: (1) no genuine issue of material fact remains for trial; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for **[\*\*9]** summary judgment is made, that party being entitled to have the evidence against it construed most strongly in its favor. See Civ.R. 56(C) and Bostic v. Connor (1988), 37 **Ohio** St.3d 144, 146, 524 N.E.2d 881, citing Harless v. Willis Day Warehousing Co. (1978), 54 **Ohio** St.2d 64, 66, 375 N.E.2d 46; see, also, State ex rel. Coulverson v. **Ohio** Adult Parole Auth. (1991), 62 **Ohio** St.3d 12, 14, 577 N.E.2d 352. *HN11*The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. Mitseff v. Wheeler (1988), 38 **Ohio** St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial, and if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Vahila v. Hall (1997), 77 **Ohio** St.3d 421, 429, 1997 **Ohio** 259, 674 N.E.2d 1164, quoting Dresher v. Burt (1996), 75 **Ohio** St.3d 280, 295, 1996 **Ohio** 107, 662 N.E.2d 264.

**[\*P12]** *HN12*Because the determination **[\*\*10]** of whether a political subdivision is immune from liability is a question of law, summary judgment is an appropriate vehicle for that determination. See Conley v. Shearer (1992), 64 **Ohio** St.3d 284, 292, 1992 **Ohio** 133, 595 N.E.2d 862.

C. Statutory Immunity Analysis

**[\*P13]** While many opinions begin with the now familiar three-tiered analysis of Greene Cty. Agricultural Soc. v. Liming (2000), 89 **Ohio** St.3d 551 at 556, 733 N.E.2d 1141, *HN13*the most logical beginning for our political subdivision immunity analysis is R.C. 2744.09, which removes certain actions from the purview of R.C. Chapter 2744. It states:

> *HN14*This chapter does not apply to, and shall not be construed to apply to, the following:
>
> (A) Civil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability;
>
> (B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political

subdivision;

(C) Civil actions by an employee of a political subdivision against [**11] the political subdivision relative to wages, hours, conditions, or other terms of his employment;

(D) Civil actions by sureties, and the rights of sureties, under fidelity or surety bonds;

(E) Civil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions. (Emphasis Supplied.)

[*P14] On their face, **Nagel's** HN15 retaliation and hostile work environment claims are based upon his employment relationship and upon what he claims is his exercise of free speech. Thus, under R.C. 2744.09(B) and (E), it would appear that any immunity provided by R.C. Chapter 2744 is not available to the appellants.

[*P15] Nonetheless, appellants contend that **Nagel's** claims represent intentional torts, for which political subdivisions retain their immunity. Appellants rely upon Burlington Industries, Inc. v. Ellerth (1998), 524 U.S. 742, 757, 118 S.Ct. 2257, 141 L.Ed.2d 633, to argue that discrimination claims, like those that **Nagel** raises, are employer intentional torts. However, [**12] they read Burlington too broadly. That case stated: HN16 "The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." However, Burlington never went so far as to say that discrimination claims "do not arise out of the employment relationship" between the employee and the political subdivision.

[*P16] We acknowledge that HN17 **Ohio** courts consistently have held that under the provisions of R.C. Chapter 2744, political subdivisions retain their cloak of immunity from lawsuits for intentional tort claims. See Wilson v. Stark Cty. Dept. of Human Services (1994), 70 **Ohio** St.3d 450 at 452, 639 N.E.2d 105 where in a suit by a private citizen the court stated that R.C. 2744.02(B) contains no exceptions to immunity for torts of fraud and intentional infliction of emotional distress. We also acknowledge that in the worker's compensation context, the Supreme Court of **Ohio** has held that an employer's intentional tort against an employee occurs outside the scope of the employment relationship. Brady v. Safety-Kleen Corp. (1991), 61 **Ohio** St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus. [**13] Consequently, **Ohio** appellate courts have held that R.C. 2744.09 has no application to employer intentional-tort claims. See Thayer v. West Carrolton Bd. of Edcn., Montgomery App. No. 20063, 2004 **Ohio** 3921; Terry v. Ottawa Co. Bd. of Mental Retardation & Developmental Disabilities (2002), 151 **Ohio** App.3d 234, 2002 **Ohio** 7299, 783 N.E.2d 959; and Chase v. Brooklyn City Sch. Dist. (2001), 141 **Ohio** App.3d 9, 749 N.E.2d 798 and the cases they cite.

[*P17] But, in Gessner v. Union, 159 **Ohio** App.3d 43, 2004 **Ohio** 5770, 823 N.E.2d 1, HN18 the Second **District** held that an age discrimination/wrongful discharge claim arose out of the employment relationship, despite the defendant's claim that age discrimination is an intentional tort. In reaching its decision, the court noted that "the case law on this issue is sparse, but that is not surprising in view of such an obvious point." Gessner further observed that no other **Ohio** cases precluded applying R.C. 2744.09(B) when civil rights violations occur in the employment context. "In fact, suit appears to be routinely permitted against political [**14] subdivisions in such situations." Id.

[*P18] Like our colleagues in Gessner, HN19 we are not persuaded that the legislature

intended to engraft the Supreme Court's interpretation of the workers' compensation scheme into its general statutory provisions for political subdivision immunity. Because employer intentional torts are not a natural risk of employment, the Supreme Court concluded they occur outside of the employment relationship in the workers compensation context. See Blankenship v. Cincinnati Milicron Chemicals, Inc. (1987), 69 **Ohio** St.2d 608, 613, 433 N.E.2d 572. However, as we noted in Penn Traffic Co., et al. v. AIU Insurance Co., et al., Pike App. No. 00CA653, 2001 **Ohio** 2567, an employer's intentional tort arises out of and happens in the course of employment, even if the conduct can be characterized as outside of the normal employment relationship. Subsequently, the Supreme Court of **Ohio** affirmed our characterization of employer intentional torts in that matter. See Penn Traffic Co. v. AIU Ins. Co. 99 **Ohio** St.3d 227, 2003 **Ohio** 3373, 790 N.E.2d 1199. While the case dealt with the interpretation of exclusions found **[\*\*15]** in commercial insurance policies, the Supreme Court's conclusion is instructive. The court stated:

> HN20 (A)n injury that is the product of an employer's intentional tort is one that also 'arises out of and in the course of' employment.
>
> * * *
>
> Although an employer intentional tort occurs outside the employment relationship for purposes of recognizing a common-law cause of action for intentional tort, the injury itself must arise out of or in the course of employment; otherwise there can be no employer intentional tort. Id. at 233.

**[\*P19]** We continue to believe HN21 claims that are causally connected to an individual's employment fit into the category of actions that are "relative to any matter that arises out of the employment relationship." See, also, Marcum v. Rice (July 20, 1999), Franklin App. No. 98AP717-721, 1999 **Ohio** App. LEXIS 3365, where the Tenth **District** interpreted R.C. 2744.09 as precluding immunity for the City of Columbus in an employee's suit for defamation and intentional infliction of emotional distress. See, also, the dissent in Coolidge v. Riegle, Hancock App. No. 5-02-59, 2004 **Ohio** 347, stressing the causal **[\*\*16]** relationship aspect when interpreting the statute. HN22 The contention that the principle behind political subdivision immunity, i.e., the integrity of the public fisc, should override the legislature's express directive that immunity does not apply to claims causally connected to the employment relationship seems dubious. Ostensibly, the legislature was aware that it was leaving the treasury unguarded when it enacted R.C. 2744.09 in 1985. Just one year earlier, the Supreme Court of **Ohio** reinstated a jury verdict of liability against a public employer in an employee's intentional tort case in Jones v. VIP Development Co. (1984), 15 **Ohio** St.3d 90, 15 **Ohio** B. 246, 472 N.E.2d 1046 (companion case No. 84-339: Gains v. City of Panesville). More recently, the Supreme Court of **Ohio** went so far as to summarily state that immunity is not available to a political subdivision in an employee's claim for unlawful discrimination. The court cited R.C. 2744.09(B)&(C). Whitehall ex rel. Wolfe v. **Ohio** Civil Rights Comm. (1995), 74 **Ohio** St.3d 120, 123, 1995 **Ohio** 302, 656 N.E.2d 684. And while Wilson v. Stark Cty. Dept. of Human Services, supra, **[\*\*17]** does indeed indicate that R.C. 2744.02(B) has no exceptions to immunity for fraud and intentional infliction of emotional distress, that case involved a suit by an individual citizen who was not a public employee. Thus, R.C. 2744.09(B) was not applicable.

**[\*P20]** HN23 Because they are causally connected to **Nagel's** employment with the appellants, the retaliation and hostile work environment claims arise out of the employment relationship, and in this case, are based upon what **Nagel** asserts are violations of his civil rights. Therefore, his claims fall within the purview of R.C. 2744.09, which means the statutory grant of immunity found in Chapter 2744 does not apply. Thus, we conclude the

trial court correctly decided that appellants are not entitled to summary judgment on these claims.

III. Non-immunity Issues

[*P21] We cannot consider appellants' remaining arguments because HN24 R.C. 2744.02 (C) limits our jurisdiction to deciding whether the trial court erroneously determined that appellants were not entitled to sovereign immunity. We cannot decide whether the merits of the action [**18] otherwise warrant summary judgment. Because R.C. 2744.02(C) does not provide us with jurisdiction to consider issues other than the trial court's sovereign immunity decision and because the order being appealed is not otherwise final, we lack jurisdiction to consider appellants' other two assignments of error.

[*P22] Consequently, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellants costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J. & Kline, J.: Concur in Judgment and Opinion.

For the Court

BY:

William H. Harsha, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes [**19] a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**

Source: Legal > States Legal - U.S. > Ohio > Cases > **OH Federal & State Cases, Combined**
Terms: **nagel v. horner, court of appeals of ohio, fourth appellate district** (Edit Search)
View: Full
Date/Time: Tuesday, July 19, 2005 - 4:57 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.