UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PATRICIA KAMMEYER, et al., | CASE NO. 1:01cv00649 |
| | (J. Spiegel) |
| Plaintiffs | |
| vs. | |
| CITY OF SHARONVILLE, OHIO, et al., | |
| Defendants | |

### CITATION OF SUPPLEMENTAL AUTHORITY

Come now the Defendants, City of Sharonville, Ohio, and Michael G. Schappa, and hereby cite this Court to the case of **Warren v. City of Athens**, 2005 WL 1398519, ____ 5.3d ____, 2005 Fed. App. 0261P as supplemental authority in support of their Motion for Summary Judgment (*Doc. 233*) in the within action. In the **Warren** case, the United States Court of Appeals for the Sixth Circuit made more clear the requirement that a class of one plaintiff in an equal protection claim must either negate every possible basis which might support the government action or prove the extra factor that city officials were motivated by ill will or personal animus toward the plaintiff.

s/Lawrence E. Barbiere
Lawrence E. Barbiere (0027106)
**Attorney for Defendants, City of Sharonville, Ohio and Mike Schappa**
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, OH 45249-3703
(513)583-4200
(513)583-4203[fax]
lbarbiere@smbplaw.com

OF COUNSEL:

Michael E. Maundrell (0027110)
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
11935 Mason Road, Suite 110
Cincinnati, OH 45249
(513) 583-4200

Thomas T. Keating, Esq.
Keating, Ritchie & Swick
200 Whitehall Park
8050 Hosbrook Road
Cincinnati, OH 45236
*Attorney for Defendant, City of Sharonville*

## CERTIFICATE OF SERVICE

    I hereby certify that on **August 3rd, 2005**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Alphonse A. Gerhardstein, Esq., ***Attorney for Plaintiffs***, 1409 Enquirer Building, 617 Vine Street, Cincinnati, OH 45202, Brian E. Hurley, Crabbe, Brown & James LLP, ***Attorneys for Defendant William Nuss***, 30 Garfield Place, Suite 740, Cincinnati, OH 45202-4359, and Kelly Mulloy Myers, Esq., Freking & Betz, 215 E. Ninth Street, Cincinnati, OH 45202, ***Attorney for Defendant Cramer***.

                                                **s/Lawrence E. Barbiere**
                                                Lawrence E. Barbiere

2005 WL 1398519                                                                                          Page 1
--- F.3d ----, 2005 Fed.App. 0261P
(Publication page references are not available for this document.)
H

Briefs and Other Related Documents

United States Court of Appeals,
Sixth Circuit.
Charles W. WARREN; Ruth Warren, Plaintiffs-Appellees,
v.
CITY OF ATHENS, OHIO, Defendant-Appellant.
No. 03-3580.

Argued: Sept. 24, 2004.
Decided and Filed: June 15, 2005.

Background: Owners of ice cream store brought § 1983 action against city and city prosecutor, alleging that the defendants violated their constitutional rights by installing barricades that restricted access to the store from the street. The United States District Court for the Southern District of Ohio, James L. Graham, J., 2002 WL 1584292, dismissed damages claims against defendants, and issued injunction, permanently enjoining the city from restricting access to the store. City appealed.

Holdings: The Court of Appeals, Gibbons, J., held that:
(1) city's placement of barricades did not constitute a taking of owners' property without just compensation in violation of the Fifth Amendment;
(2) city's placement of barricades did not violate owners' substantive due process rights;
(3) owners had protected property interest in their access to store from public roads, supporting procedural due process claim;
(4) city's placement of barricades violated owners' procedural due process rights;
(5) city's placement of barricades was rationally related to legitimate government interest, barring equal protection claim; and
(6) owners were entitled to injunction.
Affirmed.

[1] Federal Courts ⚖776

170Bk776
Court of Appeals reviews legal conclusions upon which a decision to grant an injunction is based de novo.

[2] Eminent Domain ⚖2.19(1)

148k2.19(1)
City's placement of barricades restricting access to ice cream store from public street did not constitute a taking of ice cream store owners' property without just compensation, in violation of the Fifth Amendment, absent showing that owners were entitled to compensation, or that the barricades amounted to a taking by the city for private use. U.S.C.A. Const.Amend. 5.

[3] Eminent Domain ⚖61
148k61

[3] Eminent Domain ⚖69
148k69
Private use takings do not involve claims for compensation, as they are unconstitutional regardless of whether just compensation is paid. U.S.C.A. Const.Amend. 5.

[4] Constitutional Law ⚖292
92k292
City's placement of barricades restricting access to ice cream store from public street did not violate store owners' substantive due process rights, absent showing that city's actions constituted a government regulation that deprived them of property, or that restrictions were a de facto zoning change analogous to the denial of a zoning variance. U.S.C.A. Const.Amend. 14.

[4] Municipal Corporations ⚖703(1)
268k703(1)
City's placement of barricades restricting access to ice cream store from public street did not violate store owners' substantive due process rights, absent showing that city's actions constituted a government regulation that deprived them of property, or that restrictions were a de facto zoning change analogous to the denial of a zoning variance. U.S.C.A. Const.Amend. 14.

[5] Constitutional Law ⚖255(1)
92k255(1)

[5] Constitutional Law ⚖278(1.1)
92k278(1.1)
Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-00649-SAS    Document 299    Filed 08/03/2005    Page 4 of 15

2005 WL 1398519                                                                                          Page 2
(Publication page references are not available for this document.)

property or liberty interest. U.S.C.A. Const.Amend. 14.

[6] Constitutional Law ⇐255(1)
92k255(1)

[6] Constitutional Law ⇐278(1)
92k278(1)
Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process. U.S.C.A. Const.Amend. 14.

[7] Constitutional Law ⇐46(1)
92k46(1)
Takings claims, whether asserted as just compensation or substantive due process claims, are subject to ripeness requirements, as are procedural due process claims that are ancillary to takings claims. U.S.C.A. Const.Amend. 5, 14.

[7] Eminent Domain ⇐277
148k277
Takings claims, whether asserted as just compensation or substantive due process claims, are subject to ripeness requirements, as are procedural due process claims that are ancillary to takings claims. U.S.C.A. Const.Amend. 5, 14.

[8] Constitutional Law ⇐277(1)
92k277(1)
Property rights, as protected by the procedural due process clause, are created and defined not by the constitution but by independent sources such as state law. U.S.C.A. Const.Amend. 14.

[9] Constitutional Law ⇐292
92k292
Under Ohio law, the state may regulate a property owner's easement of access without compensation, and without violating due process, as long as there is no denial of ingress or egress to a public street. U.S.C.A. Const.Amend. 14.

[9] Eminent Domain ⇐2.19(1)
148k2.19(1)
Under Ohio law, the state may regulate a property owner's easement of access without compensation, and without violating due process, as long as there is no denial of ingress or egress to a public street. U.S.C.A. Const.Amend. 14.

[10] Constitutional Law ⇐292
92k292
Under Ohio law, a landowner's property interest is infringed upon, for due process purposes, even when a government blocks off only part of the property's access to public roads. U.S.C.A. Const.Amend. 14.

[11] Constitutional Law ⇐292
92k292
Under Ohio law, ice cream store owners had protected property interest in their access to store from public street, supporting owners' action against city for violation of procedural due process, in connection with city's placement of barricades restricting access to store without prior notice to owners and an opportunity to be heard. U.S.C.A. Const.Amend. 14.

[11] Municipal Corporations ⇐703(1)
268k703(1)
Under Ohio law, ice cream store owners had protected property interest in their access to store from public street, supporting owners' action against city for violation of procedural due process, in connection with city's placement of barricades restricting access to store without prior notice to owners and an
opportunity to be heard. U.S.C.A. Const.Amend. 14.

[12] Constitutional Law ⇐278(1.1)
92k278(1.1)
Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing. U.S.C.A. Const.Amend. 14.

[13] Constitutional Law ⇐278(1)
92k278(1)
A § 1983 plaintiff can prevail on a procedural due process claim by demonstrating that the property deprivation resulted from either: (1) an established state procedure that itself violates due process rights, or (2) a random and unauthorized act, causing a loss for which available state remedies would not adequately compensate the plaintiff. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1398519                                                                                                          Page 3
**(Publication page references are not available for this document.)**

[14] Constitutional Law ⚖=251.5
92k251.5
A plaintiff asserting a procedural due process claim, under theory that an established state procedure itself violates due process rights, would not need to demonstrate the inadequacy of state remedies. U.S.C.A. Const.Amend. 14.

[15] Constitutional Law ⚖=251.5
92k251.5
A plaintiff asserting a procedural due process claim, under the theory that a random and unauthorized act caused a loss for which available state remedies will not adequately compensate the plaintiff, must show that state did not have adequate postdeprivation procedure. U.S.C.A. Const.Amend. 14.

[16] Constitutional Law ⚖=292
92k292
City's placement of barricades restricting access to ice cream store from public street violated store owners' procedural due process rights, although owners were given notice of barricades, where city did not provide owners with a hearing either before or after the placement of the barricades, and there was no showing that it would have been impossible for city to grant postdeprivation hearing. U.S.C.A. Const.Amend. 14.

[16] Municipal Corporations ⚖=703(1)
268k703(1)
City's placement of barricades restricting access to ice cream store from public street violated store owners' procedural due process rights, although owners were given notice of barricades, where city did not provide owners with a hearing either before or after the placement of the barricades, and there was no showing that it would have been impossible for city to grant postdeprivation hearing. U.S.C.A. Const.Amend. 14.

[17] Constitutional Law ⚖=209
92k209
The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. U.S.C.A. Const.Amend. 14.

[18] Constitutional Law ⚖=211(1)
92k211(1)

[18] Constitutional Law ⚖=213.1(2)
92k213.1(2)
Equal protection claims can be brought by a class of one, where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment. U.S.C.A. Const.Amend. 14.

[19] Constitutional Law ⚖=213.1(2)
92k213.1(2)
The rational basis test, in the context of an equal protection claim, means that courts will not overturn government action, unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational. U.S.C.A. Const.Amend. 14.

[20] Constitutional Law ⚖=213.1(2)
92k213.1(2)
A class of one plaintiff in an equal protection claim may demonstrate that a government action lacks a rational basis in one of two ways: either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will. U.S.C.A. Const.Amend. 14.

[21] Constitutional Law ⚖=235
92k235
City's placement of barricades restricting access to store from public street was rationally related to legitimate government interest of addressing residents' complaints of traffic congestion and safety on roadway adjacent to store, barring owners' equal protection claim, absent showing that city officials were motivated by ill-will. U.S.C.A. Const.Amend. 14.

[21] Municipal Corporations ⚖=703(1)
268k703(1)
City's placement of barricades restricting access to store from public street was rationally related to legitimate government interest of addressing residents' complaints of traffic congestion and safety on roadway adjacent to store, barring owners' equal protection claim, absent showing that city officials were motivated by ill-will. U.S.C.A. Const.Amend. 14.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-00649-SAS   Document 299   Filed 08/03/2005   Page 6 of 15

2005 WL 1398519                                                                                                         Page 4
(Publication page references are not available for this document.)

[22] Federal Courts ⚖=814.1
170Bk814.1
The Court of Appeals reviews the district court's decision to grant a permanent injunction for abuse of discretion.

[23] Federal Courts ⚖=812
170Bk812
An "abuse of discretion" is defined as a definite and firm conviction that the district court committed a clear error of judgment.

[24] Civil Rights ⚖=1450
78k1450
Where a plaintiff establishes a constitutional violation after a trial on the merits, the plaintiff will be entitled to permanent injunctive relief upon a showing of: (1) a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law.

[25] Civil Rights ⚖=1456
78k1456
Ice cream store owners were entitled to injunction, permanently enjoining city from placing barricades restricting access to the store from public street, where city's placement of barricades without hearing violated owners' procedural due process rights, resulted in a continuing irreparable injury, in that the barricades rendered the store's drive-thru window inoperable, which would likely lead to financial ruin, and if owner's store went out of business, they would have no adequate remedy at law. U.S.C.A. Const.Amend. 14.

ARGUED: Brian M. Zets, Schottenstein, Zox & Dunn, Columbus, Ohio, for Appellant. Frederick M. Gittes, Gittes and Schulte, Columbus, Ohio, for Appellees. ON BRIEF: Frederick M. Gittes, Kathaleen B. Schulte, Gittes and Schulte, Columbus, Ohio, for Appellees.

Before: MARTIN, COLE, and GIBBONS, Circuit Judges.

OPINION

GIBBONS, Circuit Judge.

Plaintiffs-appellees Charles and Ruth Warren, owners and operators of a Dairy Queen in Athens, Ohio, sued the City of Athens ("City") and City Prosecutor William Biddlestone under 42 U.S.C. § 1983, alleging that the defendants violated the Warrens' constitutional rights by installing barricades that restricted access to the Dairy Queen. The Warrens sought declaratory and injunctive relief, and the district court permanently enjoined the City from restricting access to the Dairy Queen. The City appeals, arguing that the district court erred by: (1) determining that the Warrens' takings claim was ripe; (2) finding that the City violated the Warrens' due process rights; (3) finding that the City violated the Warrens' right to equal protection of the law; and (4) granting the Warrens' request for a permanent injunction. We affirm the district court's grant of a permanent injunction, although our reasoning differs from that of the district court in several respects.

I.

Charles and Ruth Warren, along with members of their family, have owned and operated a Dairy Queen at the northwest corner of the intersection of Columbus Road and Sunset Drive in Athens, Ohio, since 1981. There has been a Dairy Queen at that location for over 50 years. Other than social security benefits, the Dairy Queen is the only source of income for Charles and Ruth Warren.

First, it is helpful to describe the Dairy Queen and its immediate surroundings. The Dairy Queen has a drive thru lane located along the south side of the building. The lane enters from and exits onto Sunset Drive, a two-lane dead-end street providing access to eighteen residences. There are head-in parking spaces located in the island created by the arc of the drive thru lane; cars exiting these spaces must back onto Sunset Drive. The Dairy Queen faces Columbus Road, a four-lane road, and there is an entrance to the restaurant parking lot from Columbus Road. The entrance from Columbus Road leads to parking spaces on the north side of the building as well as in the front of the building (the side facing Columbus Road). However, because of the property lines, there is no access around the back of the building from the north side to the west side abutting Sunset Drive. Thus, all cars must exit either back onto Columbus Road or via the same Sunset Drive exit utilized by drive thru customers. The Sunset Drive exit is only about twenty feet from the Sunset/Columbus intersection.

The Dairy Queen's drive thru lane was constructed after the Warren family decided in 1998 that a drive

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

thru would increase business and improve access for customers. As the president of the regional Dairy Queen office testified, no Dairy Queen would continue to be economically viable in the modern economy without a drive thru. In October 1998, the Warrens applied for a building permit from the City to allow construction of the drive thru. Stephen Pierson, Director of Code Enforcement for the City, determined that the proposed drive thru did not contravene any zoning regulations. Pierson nonetheless denied the Warrens' application in December 1998, explaining that the proposed drive thru and part of the existing Dairy Queen building were located on a public right-of-way owned by the City. [FN1] In his refusal, Pierson notified the Warrens of their right to appeal the decision. Pierson also suggested that the Warrens apply for a ten-year revocable license from the City Council for use of the right-of-way. The Warrens did so and entered into discussions with City officials, who had been contacted by Sunset Drive residents concerned about increased traffic on their street.

In April 1999, the Warrens proposed alternate plans for the drive thru in order to address the concerns of residents of Sunset Drive. Wayne Key, the City's service-safety director, endorsed one of these plans, since it channeled the drive thru exit onto Columbus Road and called for parallel parking, rather than head-in parking, along Sunset Drive. Nevertheless, the City Council denied the Warrens' application, citing safety concerns and the concerns of residents affected by the drive thru. The council acknowledged that its denial "may become moot" if the City did not in fact own the right-of-way. After being advised by their attorney that the City did not in fact have a right-of-way over their property, the plaintiffs-appellees decided to proceed with their original plan to build the drive-thru. The Warrens notified the City of their intent to so proceed, and the drive thru opened in July 1999. Drive thru customers generated forty to forty-five percent of the Warrens' business.

Three years later, in April 2002, City Prosecutor William Biddlestone [FN2] notified the Warrens' counsel that due to numerous complaints from the Dairy Queen's neighbors about traffic congestion and noise on Sunset Drive, the City planned to: (1) place "do not block" signs at the intersection of Sunset and Columbus; (2) place "no stopping or standing" signs at the exit and entrance to the drive thru on Sunset; and (3) build a curb along Sunset to close the "illegal driveways" comprising the drive thru. [FN3] The signs were erected soon after, and the Warrens did not object to this action. On May 1, 2002, City officials Biddlestone, Key and Pierson met with the Warrens to discuss the matter and specifically the City's plan to install curbs blocking the drive thru. On May 24, Biddlestone wrote the Warrens' counsel to inform him that "a little more research" indicated that several automobile accidents, including a couple of "fairly serious" ones, had taken place at the intersection since the drive thru opened. Declaring the drive thru a "traffic hazzard [sic]," Biddlestone reiterated the City's intention to follow through with placement of temporary curbing along Sunset and "permanent curbs" at some point in the future. On May 29, 2002, the City placed barricades along Sunset, running from the drive-thru exit to the west end of the property line. [FN4] Even though the drive thru exit was not barricaded, customers could not use the drive thru, and refuse trucks could not pick up trash, recycling, and waste grease at the back of the restaurant. The Warrens experienced a drop in sales of about 22% in the month following the blockage of the drive thru.

Both parties offered extensive evidence during the district court proceedings regarding traffic concerns related to the drive thru. Even though City officials such as Key, Pierson, and police officer Roger Dierdorf testified, they presented no evidence that the City had attempted to design a traffic enforcement plan in the area of the Dairy Queen, conduct a study of traffic flow on Sunset Drive, or assess the particular impact of the drive thru itself. Officer Dierdorf, who regularly patrols the area around the Dairy Queen, testified that he had never seen traffic backed up on Sunset Drive waiting to enter the drive thru. An examination of accident reports in the vicinity of the Columbus/Sunset intersection did not produce any evidence of accidents connected in any way to the drive thru. In addition, the City produced two videos of the Columbus/Sunset intersection covering week-long periods during the summer of 2002, but neither video revealed any traffic problems or accidents.

Various residents of houses on Sunset Drive testified about traffic problems caused by the drive thru. For example, Ralph Kliesch described how cars exiting the drive thru often block Sunset Drive,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-00649-SAS    Document 299    Filed 08/03/2005    Page 8 of 15

2005 WL 1398519                                                                                          Page 6
(Publication page references are not available for this document.)

putting drivers turning onto Sunset from Columbus in danger. He also noted that cars turning right into the drive thru have to swing into the other side of Sunset Drive, and Kliesch stated that he often has to swing into the oncoming traffic lane when cars are stacked up on Sunset in line for the drive thru. One resident, Ellen Kroutel, videotaped the stacking of cars on Sunset Drive on March 28, 2001, during the largest promotion in Dairy Queen history. Other residents echoed these concerns, as well as concerns over noise and use of residential driveways, but none of them reported an inability to see the vehicles on Sunset from Columbus, an inability to reach their homes, or witnessing firsthand an accident on Sunset Drive. The barricades installed by the city increased the number of cars using the residential driveways on Sunset.

In addition to evidence from City officials and local residents, both parties offered the testimony and reports of an expert witness at trial. The City retained Stephen Thieken, a transportation and traffic engineer, who found fault in the "stacking space" available to Dairy Queen drive thru customers, the short distance (the "corner clearance") between the drive thru exit and Columbus Road, and the angled nature of the parking spaces on Sunset Drive. Thieken also reported that the severity of accidents around the Dairy Queen increased after the drive thru was installed, but he cautioned that it was difficult to "link the accidents directly to the operation of the Dairy Queen drive-thru." Thieken based his report solely on maps, conversations with City officials, accident reports, and a one-hour visit to the site.

The Warrens offered the testimony and report of Richard DeWolfe, a civil transportation engineer who had experience designing commercial sites, including drive thru restaurants and banks. [FN5] DeWolfe reviewed the Dairy Queen site, other businesses in the vicinity of the Dairy Queen, accident reports, various letters sent among the parties to the case, the video shot by Ellen Kroutel, and the two videos of the Columbus/Sunset intersection shot in the summer of 2002. DeWolfe's report rebutted each of Thieken's conclusions. First, in DeWolfe's view, the Institute of Transportation Engineers (ITE) guidelines (upon which Thieken also relied) did not require a longer "stacking space" than that provided by the Dairy Queen drive thru. Second, DeWolfe pointed out that Thieken did not sufficiently observe traffic volumes at the intersection so as to support his conclusion that insufficient corner clearance was provided between the drive thru exit and Columbus Road. Similarly, DeWolfe found Thieken's analysis of the angled parking on Sunset Drive to be unsupported by any analysis of traffic volume or the relationship between the drive thru and the accidents that have occurred. DeWolfe listed a number of other businesses in Athens with angled parking, an amount of stacking space similar to that of Dairy Queen's, and exits near an intersection. DeWolfe concluded that these business locations created "more potential traffic conflicts than the Dairy Queen." These businesses, however, were not threatened with barricades.

Charles and Ruth Warren filed a complaint in federal court on June 6, 2002, seeking damages and injunctive relief against the City and Biddlestone. The district court granted a temporary restraining order against the City on June 7, and after an evidentiary hearing, the court issued a preliminary injunction on June 26 ordering the City to remove the barriers on Sunset Drive. Subsequently, on the Warrens' motion, the district court dismissed without prejudice the plaintiffs' claims against Biddlestone as well as their damage claims against the City, leaving only the Warrens' claims for declaratory and injunctive relief, as well as for attorneys' fees and expenses. Additional testimony and exhibits were presented at a trial in December 2002, and on March 18, 2003, the district court permanently enjoined the City from installing barricades, curbing, or otherwise restricting access to the Dairy Queen. The City appealed from the district court's order on April 16, 2003.

II.

The Warrens' rather imprecise complaint alleges an arbitrary "taking of property without due process" and a violation of their "right to equal protection, procedural due process, and substantive due process." It generally asserts violation of the Warrens' Fifth and Fourteenth Amendment rights. The essence of the Warrens' factual allegations and argument is that the City violated their federal constitutional rights [FN6] by placing barriers "along" their property, thereby "blocking" access to the drive thru, both for customers and for trash and waste removal. They allege that such barriers were not erected at other similarly situated businesses.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-00649-SAS    Document 299    Filed 08/03/2005    Page 9 of 15

2005 WL 1398519                                                                                                Page 7
(Publication page references are not available for this document.)

They assert that they have no administrative appeal remedy and received no notice of a hearing or appeal.

After scrutinizing the complaint, it is fairly clear that the Warrens assert an equal protection claim based on their allegations that the City did not erect barricades at similarly situated businesses. Also, their procedural due process claim rather obviously derives from the lack of a hearing to challenge the erection of the barriers. The Warrens also assert, however, a third claim which is less well-defined in the complaint. This third claim presents the issue of whether the City's erection of the barriers is an unconstitutional restriction on the Warrens' use of their property. The Warrens have described this claim as a substantive due process claim, and we refer to it in the same way, although we do not entirely agree with either the Warrens' or the district court's characterization of it. We address the third claim, which requires the most difficult analysis, first.

A. The Substantive Due Process Claim

[1] In this case, the appropriate legal analysis of the Warrens' claim of "taking of property without due process" is entirely dependent on its proper characterization. The district court extensively addressed the standards applicable to takings claims and eventually concluded that the Warrens' complaint actually involved a private use takings claim brought "under a substantive due process theory." The court went on to evaluate this "substantive due process" claim, holding that the City's actions amounted to a taking for private use, thus infringing the Warrens' substantive due process property rights. We review legal conclusions upon which a decision to grant an injunction is based *de novo*. *Sharpe v. Cureton,* 319 F.3d 259, 272 (6th Cir.2003).

[2] Although the Warrens mention the Fifth Amendment in their complaint, they have not sought to base their action on the Just Compensation Clause of the Fifth Amendment. Certainly, the Warrens have never contended that the City placed its barriers or otherwise physically encroached *on their property*. Such an allegation would have been a physical takings claim. *See Waste Mgmt., Inc. v. Metro. Gov't,* 130 F.3d 731, 737-38 (6th Cir.1997). Also, more fundamentally, although the decision to place barriers along the Warrens' property could be considered a regulatory taking arguably falling within the ambit of the Just Compensation Clause, *see Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Warrens have not sought monetary compensation for the taking of their property, even before they sought dismissal of their claims for damages. [FN7] Therefore, the appellees' claim does not fall under the Just Compensation Clause of the Fifth Amendment. *See id.* at 194-95, 105 S.Ct. 3108; *Montgomery v. Carter County,* 226 F.3d 758, 766-68 (6th Cir.2000).

[3] Another possible basis for a Fifth Amendment claim is the theory that a taking is for a private rather than a public use. The district court analyzed the Warrens' claim as a private use taking, although it grounded its analysis in Fourteenth Amendment substantive due process rather than in the Fifth Amendment's implied prohibition on takings for a private use. Private use takings do not involve claims for compensation, as they "are unconstitutional regardless of whether just compensation is paid." *See id.* at 766. In *Montgomery,* upon which the district court relied, the defendant county declared that it owned the plaintiff's driveway and would consider any obstruction of the driveway by plaintiff a crime. *Id.* This court held in *Montgomery* that the county's action had no rational relationship to any public purpose and was thus a "rare real-life example" of a taking for a private use. *Id.* *Montgomery* noted, however, that few takings will meet the standard for a private use taking, because all that is required for a public use is a rational relationship to some "conceivable public purpose." *Id.* at 765 (quoting *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 241, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)).

The district court's analysis of the Warrens' claim as a private use substantive due process claim is problematic for two reasons. First, although the City acted at the urging of residents of Sunset Drive and for their benefit, the City's action was rationally related to the conceivable public purposes of traffic, noise and accident control. [FN8] This fact situation contrasts with that in *Montgomery* where the county declared the driveway a county road at the urging of a single neighbor whose motive was to obtain delivery of mail to her home. *Id.* at 763. Second, although the *Montgomery* panel did not explicitly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-00649-SAS   Document 299   Filed 08/03/2005   Page 10 of 15

2005 WL 1398519                                                                Page 8
(Publication page references are not available for this document.)

decide whether a private use taking claim could be asserted as a substantive due process claim, it analyzed the two issues separately in the case and cast a dim light on the prospect that a claim merging the two principles would be viable. *See id.* at 768-69 ("[I]t is not clear why the concept of substantive due process should have any place in takings cases."). The district court's private use takings analysis of the Warrens' case thus appears inconsistent with both the facts and the law, and we decline to adopt it.

[4] Although the Warrens embrace the district court's private use analysis, they also assert that their claim is a substantive due process claim of the type described in *Williamson County. See* 473 U.S. at 197, 105 S.Ct. 3108. Their argument is that placement of the barriers constituted a government regulation "that goes so far that it ha[d] the same effect as a taking by eminent domain" and thus was "an invalid exercise of the police power, violative of the Due Process Clause of the Fourteenth Amendment." *Id.* The remedy for such a violation would not be "just compensation" but rather invalidation of the regulation. *Id.* This "due process takings" theory is based on language in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922), which held that "if regulation goes too far it will be recognized as a taking." In dicta in that case, Justice Holmes went on to suggest that the Court meant "taking" not in the literal Fifth Amendment sense, but to represent all actions having the same effect as a taking by eminent domain:

> Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act.

*Id.* at 413, 43 S.Ct. 158; *see also Williamson County,* 473 U.S. at 197- 200, 105 S.Ct. 3108 (interpreting *Mahon* and outlining the rationale for the "due process takings" theory). The Warrens' claim of "taking of property without due process" potentially fits well within this theory. The Warrens' case has never been about compensation but rather has concerned "invalidation of the regulation" imposed by the City, the argument being that the barricades were "so onerous that [they had] the same effect as an appropriation of the property." *Id.* at 197-99, 105 S.Ct. 3108. Yet, the Supreme Court has left undecided three times the issue of whether the Constitution supports such a theory. *See id.* at 185, 105 S.Ct. 3108 (citations omitted). And Supreme Court authority subsequent to *Williamson County* strongly stresses that substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff. *See, e.g., Graham v. Connor,* 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (analyzing an excessive force claim under a Fourth Amendment standard and not "the more generalized notion of 'substantive due process' "); *Whitley v. Albers,* 475 U.S. 312, 326-27, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (noting that in "the prison security context, the Due Process Clause affords...no greater protection than does" the Eighth Amendment); *see also Montgomery,* 226 F.3d at 758 ("The takings clause itself addresses whether and under what circumstances the government may take an individual's private property, which is why a number of circuits have concluded that no room is left for the concept of substantive due process.") (citing *Armendariz v. Penman,* 75 F.3d 1311, 1323-27 (9th Cir.1996) (en banc), and *Coniston Corp. v. Vill. of Hoffman Estates,* 844 F.2d 461, 464 (7th Cir.1988)); *cf. Choate's Air Conditioning & Heating v. Light, Gas & Water Div.,* 16 Fed. Appx. 323, 330-31 (6th Cir.2001) (rejecting an effort to repackage a takings claim as a substantive due process violation). We therefore decline to endorse a substantive due process theory based on a claim that erection of the barriers amounted to an unconstitutional taking [FN9] of property.

A final avenue exists for assertion of a substantive due process claim, but this avenue appears outside the scope of the Warrens' complaint and their argument on appeal. This court has recognized that a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest. *See Tri-Corp Mgmt. Co. v. Praznik,* 33 Fed. Appx. 742, 747 (6th Cir.2002); *Pearson v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-00649-SAS    Document 299    Filed 08/03/2005    Page 11 of 15

2005 WL 1398519                                                                                          Page 9
(Publication page references are not available for this document.)

*City of Grand Blanc,* 961 F.2d 1211, 1216, 1217 (6th Cir.1992); *see also Nectow v. City of Cambridge,* 277 U.S. 183, 187-88, 48 S.Ct. 447, 72 L.Ed. 842 (1928) (holding that a court should not interfere with local zoning decisions unless the locality's action "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense") (internal quotation marks and citation omitted); *Eide v. Sarasota County,* 908 F.2d 716, 721-22 (11th Cir.1990). While challenges to arbitrary and capricious government action appear most frequently in cases involving zoning and other ordinances, *see, e.g., Vill. of Belle Terre v. Boraas,* 416 U.S. 1, 8, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), they are not necessarily limited to such cases, *see, e.g., Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59, 82-83, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (noting that federal economic regulations will be upheld "absent proof of arbitrariness or irrationality on the part of Congress"); *see also Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ("[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' ") (citation omitted). Although the district court states that the City's actions were a "*de facto* zoning change analogous to the denial of a zoning variance or permit," the Warrens do not assert such a claim here and, in fact, argue in their brief that "the case at bar is not a zoning case" and that the City's barricades were not placed pursuant to any regulations or laws. Given the Warrens' position, we will not consider the applicability of this theory to the sort of particularized action involved in this case.

We recognize the soundness of the district court's findings and conclusions about the lack of any viable justification for the City's erection of the barriers and the clear deprivation of the Warrens' right to ingress and egress from their property. Yet, given the law, the facts, and the Warrens' own arguments and characterization of their claims, we cannot conclude that the City violated the Warrens' substantive due process rights.

*B. The Procedural Due Process Claim*

[5][6] We now turn to consideration of the Warrens' procedural due process claim. The Fourteenth Amendment provides, in part, that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. *See, e.g., Thompson v. Ashe,* 250 F.3d 399, 407 (6th Cir.2001) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."). Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process. *Hamilton v. Myers,* 281 F.3d 520, 529 (6th Cir.2002).

[7] Preliminarily, we consider the issue of ripeness of the procedural due process claim. Takings claims, whether asserted as just compensation or substantive due process claims, are subject to ripeness requirements, *Williamson County,* 473 U.S. at 194, 199-200, 105 S.Ct. 3108, as are procedural due process claims that are ancillary to takings claims, *Arnett v. Myers,* 281 F.3d 552, 562 (6th Cir.2002). Here the Warrens' procedural due process claim is not ancillary to their takings claim, but addresses a separate injury-the deprivation of a property interest without a predeprivation hearing. *See Nasierowski Bros. Inv. Co. v. City of Sterling Heights,* 949 F.2d 890, 893-95 (6th Cir.1991) (explaining the "vital distinction between procedural due process claims and other varieties of constitutional grievances stemming from land use decisions"); *see also Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036, 1045 n. 6 (5th Cir.1998) (holding that *Williamson County* would not apply when "main thrust" of plaintiff's claim is procedural due process, not takings); *cf. Nasierowski Bros.,* 949 F.2d at 899 (Martin, J., concurring) (stating that the *Williamson County* requirements will apply when "the procedural due process claim is in reality an adjunct to a taking or other constitutional claim").

[8][9][10][11] In resolving the procedural due process claim, the first issue is whether the Warrens were deprived of a property interest. Property rights

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-00649-SAS    Document 299    Filed 08/03/2005    Page 12 of 15

2005 WL 1398519                                                                                      Page 10
(Publication page references are not available for this document.)

are created and defined not by the Constitution but by independent sources such as state law. *Thomas v. Cohen,* 304 F.3d 563, 576 (6th Cir.2002). In *State ex rel. Merritt v. Linzell,* 163 Ohio St. 97, 126 N.E.2d 53, 54 (1955), the Ohio Supreme Court held:

> An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor.

This right of access is especially important for businesses abutting a public street. *See Branahan v. Cincinnati Hotel Co.,* 39 Ohio St. 333, 333-34 (1883). Under Ohio law, the state may regulate a property owner's easement of access without compensation as long as there is no denial of ingress or egress. *Castrataro v. City of Lyndhurst,* No. 60901, 1992 WL 209578, *2, 1992 Ohio App. LEXIS 4352, at *8 (Ohio Ct.App. Aug. 27, 1992). However, a landowner's property interest is infringed even when a government blocks off only part of the property's access to public roads. *See id.* at 1992 WL 209578, at *4; *see also State ex rel. OTR v. City of Columbus,* 76 Ohio St.3d 203, 667 N.E.2d 8, 15 (Ohio 1996) (finding that a taking can occur even when the government does not deny all access to the property); *Starr v. Linzell,* 129 N.E.2d 659, 661 (Ohio Ct.Com.Pl.1955) (citing *Merritt,* 126 N.E.2d at 56) (finding that the blocking of one of a business's entrances "molests a property enjoyment" of the owner). *Castrataro's* facts resemble those of the present case. In *Castrataro,* the city placed barriers across one of two entrances to a shopping center. *See* 1992 WL 209578, at 2*, 1992 Ohio App. LEXIS 4352, at *5. The court held that since the burden of the barriers was placed solely on the landowner's property and not on the general public, the city's action was a regulatory taking of a property interest. *Id.* at 1992 WL 209578 at *4, 1992 Ohio App. Lexis at *12-*14. Like the landowner in *Castrataro,* the **Warrens** bear the sole burden of the barriers placed by the **City**. According to these principles, then, the **City** of **Athens** clearly deprived the **Warrens** of a property interest by erecting barricades across one of the two means of access to their Dairy Queen.

[12][13][14][15] The second step in the procedural due process analysis is determining whether the **City's** deprivation of the **Warrens'** property interest contravened notions of due process. Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing. *Harris v. City of Akron,* 20 F.3d 1396, 1401 (6th Cir.1994). In this case, the **Warrens** received notice but not a predeprivation hearing. Under circuit precedent, a § 1983 plaintiff can prevail on a procedural due process claim by demonstrating that the property deprivation resulted from either: (1) an established state procedure that itself violates due process rights, or (2) a "random and unauthorized act" causing a loss for which available state remedies would not adequately compensate the plaintiff. *Macene v. MJW, Inc.,* 951 F.2d 700, 706 (6th Cir.1991). A plaintiff alleging the first element of this test would not need to demonstrate the inadequacy of state remedies. *Moore v. Bd. of Educ. of Johnson City Sch.,* 134 F.3d 781, 785 (6th Cir.1998). If the plaintiff pursues the second line of argument, he must navigate the rule of *Parratt v. Taylor,* 451 U.S. 527, 539, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which holds that a state may satisfy procedural due process with only an adequate postdeprivation procedure when the state action was "random and unauthorized." *See Macene,* 951 F.2d at 706; *see also Zinermon,* 494 U.S. at 128, 110 S.Ct. 975 (narrowing *Parratt* to only those situations where predeprivation process would have been impossible or impractical). In this context, "unauthorized" means that the official in question did not have the power or authority to effect the deprivation, not that the act was contrary to law. *See id.* at 138, 110 S.Ct. 975.

[16] Whether seen as an attack on an established state procedure or as an attack on a "random and unauthorized" act, the Warrens' claim is not subject to the *Parratt* rule. It clearly would not have been "impossible" for the City to grant a predeprivation hearing to the Warrens. *See Mackey v. Dyke,* 29 F.3d 1086, 1093 (6th Cir.1994); *Harris,* 20 F.3d at 1401. Moreover, even if the *Parratt* rule did apply, it is not clear that any state remedies were available to the Warrens. [FN10] Thus, if the City's action was a "random and unauthorized act," then the Warrens' claim prevails. If, alternatively, the City's action was the result of an established state procedure, then the question would be whether that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-00649-SAS  Document 299  Filed 08/03/2005  Page 13 of 15

2005 WL 1398519                                                                                      Page 11
(Publication page references are not available for this document.)

procedure violated due process rights. The Warrens have shown that the state procedure in this case violated their rights. This court held in *Nasierowski Brothers,* in the course of evaluating a § 1983 claim alleging that a zoning change effected a procedural due process violation:

> Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard. But, when a relatively small number of persons are affected on individual grounds, the right to a hearing is triggered .... [T]he Council's action clearly resulted in a differentiable impact on a specifiable individual, thus triggering a right to hearing.

949 F.2d at 896. The facts of *Nasierowski Brothers,* where the **city** (acting in accordance with state procedure) singled out a landowner for regulation detrimental to the landowner's property interest, are directly analogous to the **Warrens'** case. The same reasoning therefore applies, yielding the conclusion that the **City** of **Athens** violated the **Warrens'** procedural due process rights. For the above reasons, we affirm the judgment of the district court on this issue.

### C. Equal protection

[17][18][19] Finally, we turn to the **Warrens'** equal protection claim. "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923) (internal quotation marks and citation omitted). Equal protection claims can be brought by a "class of one," where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment. *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). The "rational basis" test means that courts will not overturn government action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 84, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (internal quotation marks and citation omitted).

[20][21] A "class of one" plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by "negativ[ing] every conceivable basis which might support" the government action or by demonstrating that the challenged government action was motivated by animus or ill-will. *Klimik v. Kent County Sheriff's Dept.,* 91 Fed. Appx. 396, 400 (6th Cir.2004) (citations omitted); *Bower v. Vill. of Mount Sterling,* 44 Fed. Appx. 670, 677-78 (6th Cir.2002). Here, despite the district court's ruling and appellees' arguments, the Warrens cannot negative all the bases upon which the City's act was premised. The City acted in response to numerous complaints from Sunset Drive residents who were concerned about traffic congestion and safety. Surely, responding to these concerns, which were legitimate state interests, constituted at least one conceivable basis for the placement of the barricades. The Warrens, then, are left with an argument that City officials were motivated by ill will. This argument has potential merit, based on the fact that City Prosecutor Biddlestone, the incumbent, was handily defeated in a primary election in 2000 for County Prosecutor by the Warrens' son. The appellees noted this in their original complaint and motion for preliminary injunction, and their lawyer attempted to examine Mr. Biddlestone on the issue during the preliminary injunction hearing, but the district court sustained an objection to this line of questioning based on relevance. [FN11] Therefore, the Warrens failed to show during the proceedings below that Mr. Biddlestone acted out of ill will or animus. [FN12] We hold that the Warrens' "class of one" equal protection claim fails.

### D. Permanent injunction

[22][23] This court reviews the district court's decision to grant a permanent injunction for abuse of discretion. *Sharpe,* 319 F.3d at 272; *Wayne v. Vill. of Sebring,* 36 F.3d 517, 531 (6th Cir.1994). " 'An abuse of discretion is defined as a definite and firm conviction that the district court committed a clear error of judgment.' " *United States v. Miami Univ.,* 294 F.3d 797, 806 (6th Cir.2002) (citation omitted). In other words, a district court abuses its discretion when it relies on clearly erroneous findings of fact

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-00649-SAS    Document 299    Filed 08/03/2005    Page 14 of 15

2005 WL 1398519                                                                                                Page 12
(Publication page references are not available for this document.)

or improperly applies the law. *Id.*

[24][25] Where a plaintiff establishes a constitutional violation after a trial on the merits, the plaintiff will be entitled to permanent injunctive relief upon a showing of: (1) a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law. *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1067 (6th Cir.1998). The Warrens have established that the City violated their procedural due process rights. They have also shown a continuing irreparable injury, in that with the barricades, the drive thru would be inoperable and the Dairy Queen would likely go out of business. Such financial ruin qualifies as irreparable harm. *See Performance Unlimited, Inc. v. Questar Publishers, Inc.,* 52 F.3d 1373, 1382 (6th Cir.1995); *cf. Basicomputer Corp. v. Scott,* 973 F.2d 507, 511-12 (6th Cir.1992) (holding that competitive losses and losses of customer goodwill constitute irreparable harm).

Nor is there an adequate remedy at law for the Warrens. Even though it would seem that the Warrens could quantify their past lost profits due to the barricades and seek money damages in compensation, *see Petereit v. S.B. Thomas, Inc.,* 63 F.3d 1169, 1186 (2d Cir.1995), future lost profits are much harder to quantify. Moreover, if these lost profits were of such a magnitude that the viability of their business were threatened (thereby giving rise to an irreparable injury as described above), then the Warrens would indeed have no adequate remedy at law and a permanent injunction would be appropriate. *See Auto. Elec. Serv. Corp. v. Assoc. of Auto. Aftermarket Distribs.,* 747 F.Supp. 1483, 1513-14 (E.D.N.Y.1990); *see also Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir.1970) ("Of course, Semmes' past profits would afford a basis for calculating damages .... But the right to continue a business in which William Semmes had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms; the Semmes want to sell automobiles, not to live on the income from a damages award."); *cf. Miami Univ.,* 294 F.3d at 819 (holding that an injury is not fully compensable by money damages if the plaintiff's loss would make damages difficult to calculate). Based on the record in this case, it was not an abuse of discretion for the district court to conclude that the Warrens could not obtain an adequate remedy at law for the potential loss of their business. We therefore affirm the district court's order of a permanent injunction. [FN13]

III.

For the foregoing reasons, we affirm the district court's order granting a permanent injunction, although only on the basis of the City's violation of the Warrens' procedural due process rights.

FN1. The City's claim to a right-of-way extending onto the Dairy Queen property derives from an easement granted in 1941 to the state of Ohio by a previous owner of the property on which the Dairy Queen is located. The easement was meant to be used for the construction of a new highway, but the highway was built in a different place. In 1943, the state abandoned North Columbus Road (formerly U.S. Highway 33) to the City without mention of the easement.

The parties disagree over whether the City owns the right-of-way, despite advice from an attorney hired by the City that the right-of-way belonged to the state of Ohio as of December 2000. The district court found that the Warrens owned the real property on which the Dairy Queen and its drive thru are located, and it also found that the City had no interest in any easement or right-of-way over that property. Those findings are not clearly erroneous, and, in fact, are plainly correct.

FN2. Biddlestone was formerly the County Prosecutor but lost a primary election to the Warrens' son David, the current County Prosecutor.

FN3. Biddlestone testified that the risk of accidents on Sunset or Columbus was not a factor in his decision to take these steps.

FN4. The district court's findings of fact make clear that the barriers were erected "along" the Warrens' property. This finding is consistent with the Warrens' contentions and the evidence in the record. Elsewhere, the district court opinion refers to barriers "on" the property. While we do not construe the district court opinion as making a finding that the barriers were "on" the Warrens' property, such a finding would be clearly erroneous.

FN5. In reaching its conclusion that the City violated the Warrens' substantive due process rights, the district court rejected Thieken's testimony and accepted that of DeWolfe. The City does not directly challenge the district court's

Case 1:01-cv-00649-SAS    Document 299    Filed 08/03/2005    Page 15 of 15

2005 WL 1398519                                                                                    Page 13
(Publication page references are not available for this document.)

credibility determination with respect to these two witnesses but essentially ignores it by reciting Thieken's testimony at length in its brief. Yet, the district court's acceptance of DeWolfe's testimony is not clearly erroneous, and we, as an appellate court, cannot reweigh the testimony of these witnesses and accept that of Thieken rather than that of DeWolfe. *See* Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.")

FN6. The Warrens' complaint also alleges violations of procedural due process, substantive due process, and equal protection rights under the Ohio Constitution. The district court correctly noted that these claims are governed by essentially the same standards as those applicable to the Warrens' federal constitutional claims. *See Sorrell v. Thevenir,* 69 Ohio St.3d 415, 633 N.E.2d 504, 511-12 (1994). The City does not challenge the district court's resolution of the Warrens' state constitutional claims on appeal, and therefore we will not address them. *See Priddy v. Edelman,* 883 F.2d 438, 446 (6th Cir.1989) (holding that issues not raised in appellant's brief will not be considered on appeal).

FN7. The damages sought by the Warrens would have included such items as lost profits, not the value of the real property.

FN8. The fact that any taking here was not for a private use does not imply that governmental deprivation of the Warrens' property interests was justified. We have no quarrel with the district court's assessment of the lack of justification for City action. The point here is simply that under applicable case authority the taking cannot be considered one for a private use.

FN9. We use the word "taking" here in the same sense as it is used in the Fifth Amendment's Just Compensation Clause, recognizing that "taking" has been used more loosely in other contexts to describe various types of deprivations or harms to property.

FN10. The Warrens are correct in pointing out that the 1998 zoning decision, which the Warrens could have appealed, is unrelated to the placement of the barricades, for which there was apparently no avenue of appeal. The 1998 zoning decision, moreover, was premised on the assumption that the City owned a right-of-way over the Warrens' property, an assumption which later proved incorrect.

FN11. Appellees do not contend on appeal that the evidentiary ruling was erroneous.

FN12. In fact, their initial complaint merely notes the fact that their son defeated Mr. Biddlestone; it does not allege that Mr. Biddlestone acted out of ill will or animus in ordering the placement of the barriers.

FN13. We note that the City's failure to appeal the Ohio constitutional claims renders the district court's disposition of those claims final and eliminates the possibility that the City could again seek to erect the barriers after providing the Warrens a hearing. Thus, there is no need to modify the permanent injunction to permit that possibility.

Briefs and Other Related Documents (Back to top)

. 03-3580 (Docket) (Apr. 23, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.