UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PATRICIA KAMMEYER, et al., | CASE NO. 1:01cv00649 |
| Plaintiffs | (J. Spiegel) |
| vs. | |
| CITY OF SHARONVILLE, OHIO, et al., | |
| Defendants | |

### CITATION OF SUPPLEMENTAL AUTHORITY

Come now the Defendants, City of Sharonville, Ohio, and Michael G. Schappa, and hereby cite this Court to the case of **Schroder v. City of Fort Thomas, 412 F.3d 724** as supplemental authority in support of their Motion for Summary Judgment (*Doc. 233*) in the within action. In **Schroder,** the Sixth Circuit cites the decision of the United States Supreme Court in **Town of Castle Rock v. Gonzales,** ____ U.S. ____, 125 S.Ct. 2796 (2005), for the proposition that the due process clause "is phrased is a limitation of the state's power to act, not as a guarantee of certain minimal levels of safety and security." The **Schroder** case combined with the **Castle Rock** case strongly support these defendants' Motion for Summary Judgment.

    s/Lawrence E. Barbiere
Lawrence E. Barbiere (#0027106)
**Attorney for Defendants, City of Sharonville, Ohio and Mike Schappa**
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, OH 45249-3703
(513)583-4200
(513)583-4203[fax]
email: lbarbiere@smbplaw.com

OF COUNSEL:

Michael E. Maundrell (0027110)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, OH 45249
(513) 583-4200

Thomas T. Keating, Esq.
Keating, Ritchie & Swick
200 Whitehall Park
8050 Hosbrook Road
Cincinnati, OH 45236
*Attorney for Defendant, City of Sharonville*

## CERTIFICATE OF SERVICE

I hereby certify that on **August 11th, 2005**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Alphonse A. Gerhardstein, Esq., ***Attorney for Plaintiffs***, 1409 Enquirer Building, 617 Vine Street, Cincinnati, OH 45202, Brian E. Hurley, Crabbe, Brown & James LLP, ***Attorneys for Defendant William Nuss***, 30 Garfield Place, Suite 740, Cincinnati, OH 45202-4359, and Kelly Mulloy Myers, Esq., Freking & Betz, 215 E. Ninth Street, Cincinnati, OH 45202, ***Attorney for Defendant Cramer***.

                                                    **s/Lawrence E. Barbiere**
                                                    Lawrence E. Barbiere

412 F.3d 724                                                                 Page 1
412 F.3d 724, 2005 Fed.App. 0285P
**(Cite as: 412 F.3d 724)**

Briefs and Other Related Documents

United States Court of Appeals,
Sixth Circuit.
Kimberly SCHRODER, Individually and as Administrator of the Estate of Stephen Schroder; Lawrence Schroder, Individually, Plaintiffs-Appellants,
v.
CITY OF **FORT THOMAS**, Mary Brown, Ron Dill, Jeff Earlywine, Marvin Dawson, and Steven Schmidt, Defendants-Appellees.
No. 04-5216.

Argued: April 26, 2005.
Decided and Filed: June 29, 2005.

Background: Parents of child killed by speeding motorist brought § 1983 action against city, alleging substantive due process violation arising from its failure to lower or enforce speed limit. The United States District Court for the Eastern District of Kentucky, David L. Bunning, J., dismissed, and parents appealed.

Holding: The Court of Appeals, Sutton, Circuit Judge, held that city's conduct did not rise to level of sue process violation.
Affirmed.

West Headnotes

[1] Civil Rights ⚖═1351(1)
78k1351(1)
Local government may be held liable under § 1983 only for adoption of policy or custom that violates federally protected rights. 42 U.S.C.A. § 1983.

[2] Civil Rights ⚖═1354
78k1354

[2] Civil Rights ⚖═1376(2)
78k1376(2)
Government officials sued in their individual capacities may be held liable under § 1983 only when they violate federally protected rights that are clearly established. 42 U.S.C.A. § 1983.

[3] Automobiles ⚖═277.1
48Ak277.1

[3] Constitutional Law ⚖═292
92k292
City's failure to lower or enforce speed limit on residential street, despite complaints about unsafe traffic conditions, did not violate substantive due process rights of child killed by speeding motorist; city's conduct did not create special danger to child, as opposed to general traffic risk to pedestrians and other automobiles, and it did not act with callous disregard or intent to injure. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

*725 ARGUED: John H. Metz, Cincinnati, Ohio, for Appellants. Kimberly K. Zamary, Kohnen & Patton, Cincinnati, Ohio, Chris J. Gadansky, Landrum & Shouse, Louisville, Kentucky, for Appellees. ON BRIEF: John H. Metz, Cincinnati, Ohio, for Appellants. Kimberly K. Zamary, Jeffrey C. Shipp, Kohnen & Patton, Cincinnati, Ohio, Chris J. Gadansky, Robert T. Watson, Landrum & Shouse, Louisville, Kentucky, for Appellees.

Before: COLE and SUTTON, Circuit Judges; ZATKOFF, District Judge. [FN*]

  FN* The Honorable Lawrence P. Zatkoff, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

OPINION

SUTTON, Circuit Judge.

On June 28, 2000, Kimberly and Lawrence Schroder suffered every parent's worst nightmare. Their ten-year-old son, Stephen, was struck and killed by a car traveling 40 miles per hour in a 25 mile-per-hour zone on the street in front of their house. While no law provides true recourse for such a loss, the Schroders and local prosecutors sought some relief under the traditional civil and criminal causes of action authorized by state law, then the Schroders sought relief under a less-traditional civil cause of action under federal law. In this § 1983 claim, the Schroders submit that the City of **Fort Thomas** and some of its municipal officers violated their son's substantive due process rights by failing to act upon their request (and the requests of others) to lower the speed limit on the street from 25 miles per hour to 15 miles per hour and by failing to enforce the 25 mile-per-hour speed limit on the street. The district court rejected this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claim as a matter of law. Because the Due Process Clause establishes a "limitation on the State's power to act, not [ ] a guarantee of certain minimal levels of safety and security," *DeShaney v. Winnebago County *726 Dep't of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), we must affirm.

I.

The City of **Fort Thomas**, Kentucky opened Garrison Avenue on June 22, 1925. More than 50 years later, on April 5, 1976, the City restricted traffic on Garrison to one-way southeasterly travel and set the speed limit at 25 miles per hour, ten miles per hour below the State of Kentucky's permitted maximum speed limit (of 35 miles per hour) on residential streets. *See* Ky.Rev.Stat. § 189.390.

Despite periodic complaints from the residents of Garrison Avenue, the 25 mile-per-hour speed limit remained in effect for the next 24 years. Among the Garrison Avenue residents who complained to city officials about the speed limit was Kimberly Schroder. In May 1996, Schroder moved with her family, including two children, to 33 Garrison Avenue, and shortly thereafter she began to complain about the speed of traffic and the amount of traffic on the street. On several occasions between 1996 and 1999, Schroder told the police that Garrison was being used as a "cut-through" between two busier streets and that drivers routinely exceeded the 25 mile-per-hour speed limit. The police advised her to report license plate numbers of suspected traffic violators, though they did not take (or promise to take) any further action against those violators or any actions regarding the conditions on Garrison Avenue. The police also removed signs posted by residents indicating that drivers should adhere to a 15 mile-per-hour speed limit because children in the area were playing. According to city administrative officers, none of Schroder's requests was approved by the City.

On June 28, 2000, just over 75 years after its creation, Garrison Avenue became the scene of a tragic accident. At 6 p.m. that evening, a car traveling at an estimated speed of 40 miles per hour struck and killed Stephen Schroder, the Schroders' ten-year-old son, as he attempted to cross the street in front of his home. The driver of the car, Phillip Bridges, pleaded guilty to second-degree manslaughter for Stephen Schroder's death and ultimately settled a civil tort suit with the Schroders arising from the accident. In August of 2000, in response to the accident, the City lowered the speed limit on Garrison Avenue to 15 miles per hour.

On June 27, 2001, the Schroders filed this § 1983 action against the City and several of its officials-- Mayor Mary Brown, City Manager Jeff Earlywine, Building Services Director Ron Dill, Public Works Foreman Marvin Dawson and Chief of Police Steven Schmidt. In their complaint, the Schroders alleged that the City's failure to maintain safe conditions on Garrison Avenue violated their son's substantive due process rights. The City's creation of Garrison Avenue in 1925, its management of the road since that date and its adoption and inadequate enforcement of a 25 mile-per-hour speed limit, the Schroders argued, established a "state-created danger" under *DeShaney* and *Kallstrom v. City of Columbus,* 136 F.3d 1055 (6th Cir.1998). The Schroders also brought claims for negligence, wrongful death and loss of consortium under state law against the same defendants. While acknowledging that the "dips and rises" on Garrison made it "one of the more hazardous streets in the City," JA 231 (testimony of Officer Michael Lehkamp), the City argued that the Due Process Clause does not regulate a local municipality's enforcement of its own traffic laws. The district court agreed and granted summary judgment on the state-law and federal claims in the City's favor on January 26, 2004. On appeal, *727 the Schroders have challenged only the district court's resolution of their federal constitutional claims.

II.

[1][2] The claims against the City and the individual defendants, as an initial matter, implicate different theories of liability. Under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a local government may be held liable under § 1983 only for the adoption of a "policy or custom" that violates federally protected rights. *Id.* at 694, 98 S.Ct. 2018. Under *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), government officials sued in their individual capacities may be held liable under § 1983 only when they violate federally protected rights that are "clearly established." *Id.* at 201, 121 S.Ct. 2151. We need not address the municipal-policy and qualified-immunity issues in this case,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

however, because both theories share an initial premise-- the violation of a federally protected right--that has not been satisfied. Neither need we address the Schroders' procedural due process argument (because it was not presented in their complaint), or their argument that the district court abused its discretion in striking a late affidavit explaining the dangers of a 25 mile-per-hour speed limit (because including the affidavit in the record would not alter our constitutional analysis).

In *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held that the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution "generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196, 109 S.Ct. 998. In that case, a four-year-old child named Joshua DeShaney was beaten and permanently injured by his father, with whom he lived and about whom county social workers had received several abuse complaints. *Id.* at 191, 109 S.Ct. 998. Despite the fact that county officials "had reason to believe" that the abuse was ongoing and despite the fact that they "did not act to remove [Joshua] from his father's custody," *id.,* the Court held that the County's actions did not violate the Due Process Clause. "[N]othing in the language of the Due Process Clause itself," the Court reasoned, "requires the State to protect the life, liberty, and property of its citizens against invasion by private actors," because "[t]he Clause is phrased as a limitation of the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* at 195, 109 S.Ct. 998; *see also Town of Castle Rock v. Gonzales,* --- U.S. ----, 125 S.Ct. 2796, ----, --- L.Ed.2d ---- (2005).

There are two exceptions to the *DeShaney* rule, one established by *DeShaney* itself, the other by decisions of this court. Under the first exception, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney,* 489 U.S. at 199-200, 109 S.Ct. 998. "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations, brackets and quotations omitted). Under the second exception, *728 where a State creates a perilous situation that renders citizens more vulnerable to danger at the hands of private actors, a plaintiff may bring a substantive due process claim by establishing (1) an affirmative act by the State that either created or increased the risk that the plaintiff would be exposed to private acts of violence, *see Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir.1998); (2) a special danger to the plaintiff created by state action, as distinguished from a risk that affects the public at large, *see id.;* and (3) "the requisite [state] culpability to establish a substantive due process violation," *Ewolski v. City of Brunswick,* 287 F.3d 492, 510 (6th Cir.2002). We have described the "requisite culpability" factor as requiring "deliberate indifference" by the government entity when the entity "had time to deliberate on what to do." *Bukowski v. City of Akron,* 326 F.3d 702, 710 (6th Cir.2003).

[3] The Schroders' claim implicates the *DeShaney* prohibition, and they cannot bring themselves within either of its exceptions. *DeShaney* 's holding that the Constitution does not "guarantee [ ] certain minimal levels of safety and security" precludes the Schroders' argument that the Due Process Clause constitutionalizes a locality's choices about what speed limit to adopt for a given street or how to enforce that speed limit. We are not the first, and likely will not be the last, court to conclude that a tragedy like the one the Schroders suffered in this case stems (for constitutional purposes) from the reckless driving of a private citizen, not from the governmental actions of the city or its officials. *See Jones v. City of Carlisle,* 3 F.3d 945, 948 (6th Cir.1993) (holding that the *DeShaney* principle barred suit when the "City was [allegedly] aware that [an epileptic driver] presented a danger to motorists but took no action to revoke his driver's license"); *see also White v. City of Toledo,* 217 F.Supp.2d 838, 840 (N.D.Ohio 2002) ("[A] city's alleged failure, even if intentional, to enforce [a] speed limit does not state a § 1983 claim against a municipality."); *Hull v. City of Duncanville,* 678

412 F.3d 724    Page 4
(Cite as: 412 F.3d 724, *728)

F.2d 582, 584 (5th Cir.1982); *Estate of Moser v. Exeter Township Borough Council Members,* No. 98-3525, 1998 WL 575109, 1-2, 1998 U.S. Dist. LEXIS 14012, at *4-8 (E.D.Pa.1998); *Wark v. Bd. of County Comm'rs,* 47 P.3d 711, 716-17 (Colo.Ct.App.2002); *City of Fort Worth v. Robles,* 51 S.W.3d 436, 443-44 (Tex.App. Fort Worth 2001); cf. *Norris v. City of Montgomery,* 29 F.Supp.2d 1292, 1297 (M.D.Ala.1998); *Wright v. Bailey,* 611 So.2d 300, 303-06 (Ala.1992); *Minks v. Pina,* 709 N.E.2d 379, 383-84 (Ind.Ct.App.1999) ; *Biggs v. Beth,* No. 40717, 1989 WL 168122, *4-6, 1989 Mo.App. LEXIS 346, at *11-16 (Mo.Ct.App.1989).

Nor do either of the two *DeShaney* exceptions apply to a city's enforcement of its general traffic laws. The "custodial" exception does not apply, the parties agree, because there has been no involuntary custody in this case. See *DeShaney,* 489 U.S. at 200, 109 S.Ct. 998 (holding that an affirmative duty to protect arises "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself"); cf. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that "deliberate indifference to [the] serious medical needs of prisoners" violates the Constitution); *Youngberg v. Romeo,* 457 U.S. 307, 324, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (reaching the same conclusion with respect to involuntarily committed patients).

The Schroders also fail to satisfy any of the three requirements for establishing our circuit's "state-created danger" exception to *DeShaney.* First, the creation of a *729 street and the management of traffic conditions on that street are too attenuated and indirect to count as an "affirmative act" that placed Stephen Schroder in the setting of a state-created peril. See *DeShaney,* 489 U.S. at 201, 109 S.Ct. 998 (holding that the State "played no part in [the] creation" of the dangers facing Joshua DeShaney even though it had created the laws that placed him in the custody of his father); *Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (holding that decedent's death five months after a parole broad granted a former prisoner release "is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law"); *Cartwright v. Marine City,* 336 F.3d 487, 493 (6th Cir.2003)

(taking an individual from "a place of great danger" (the shoulder of a dark, foggy, two-lane highway) and moving him to "a place of lesser danger" (the parking lot of an open convenience store) does not count as an affirmative act); *Bukowski,* 326 F.3d at 709 (finding no affirmative act when the police returned plaintiff to her home at her request); *Sargi v. Kent City Bd. of Educ.,* 70 F.3d 907, 912-13 (6th Cir.1995) (holding that the failure to train bus drivers to respond to a medical emergency did not amount to an "affirmative action that exposed decedent to any danger to which she was not already exposed").

Second, the City's establishment of a 25 mile-per-hour speed limit and enforcement (or lack of enforcement) of that law did not create a "special danger" to a discrete class of individuals (of which the Schroders' son was a member), as opposed to a general traffic risk to pedestrians and other automobiles. See *Jones,* 3 F.3d at 950 (observing that "while [the private tortfeasor] was a definite danger behind the wheel of a motor vehicle, he was no more a danger to [the plaintiff] than to any other citizen on the City streets"); *Jones v. Union County,* 296 F.3d 417, 431 (6th Cir.2002) (holding that the "failure to serve [an] *ex parte* order of protection did not create or increase the danger posed to Plaintiff by her ex-husband, or place her specifically at risk"); *Peach v. Smith County,* No. 02-6194, 93 Fed.Appx. 688, 692-93 (6th Cir.2004).

Third, the requisite "deliberate indifference" has not been established. The Schroders and others, it is true, warned the City about the risks of a 25 mile-per-hour speed limit and urged them to lower it to 15 miles per hour. And in one sense of these words, it is also true, it could be suggested that the City exhibited deliberate indifference to these warnings. After all, the City was told about the risks of not lowering the speed limit to 15 miles per hour (more accidents); it intentionally chose not to heed this warning (taking on the risk of more accidents); and the alleged risk came to pass when Stephen Schroder was killed (an accident).

But this argument classically proves too much. It is in the very nature of deliberative bodies to choose between and among competing policy options, and yet a substantive due process violation does not arise whenever the government's choice prompts a known risk to come to pass. For in one sense, it could be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

said that *all* governing bodies act with deliberate indifference when they consider and reject a traffic-safety proposal of this sort that comes with known risks--because the accepted premise of all speed-limit debates is that lower speed limits will lead to fewer accidents and fewer traffic fatalities. Many, if not most, governmental policy choices come with risks attached to both of the competing options, and yet "it is not a tort for government to govern" by picking one option over another. *Scheuer v. Rhodes,* 416 U.S. 232, 241, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Dalehite v. *730 United States,* 346 U.S. 15, 57, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (Jackson, J., dissenting)). Because the demands on a government may be as manifold as its resources are limited, the Court has recognized in *DeShaney* and elsewhere that the practicalities of day-to-day governance require officials to make difficult allocation choices and tradeoffs and that it is generally not for the courts to compel affirmative steps in one area at the expense of another in weighing competing policy options. *See DeShaney,* 489 U.S. at 203, 109 S.Ct. 998 (recognizing that the defendant social workers faced a difficult policy decision because, "had they moved too soon to take custody of the son away from the father, they would likely have been met with charges of improperly intruding into the parent-child relationship, charges based on the same Due Process Clause that forms the basis for the present charge of failure to provide adequate protection"); *Collins v. City of Harker Heights,* 503 U.S. 115, 128-29, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (observing that "[d]ecisions concerning the allocation of resources to individual programs ... involve a host of policy choices that must be made by locally elected representatives"); *see also Dawson v. Milwaukee Hous. Auth.,* 930 F.2d 1283, 1286 (7th Cir.1991) (recognizing that "[j]udicial directives to devote more resources to safety do not *create* more resources" but merely "reallocate resources").

Consider the policy tradeoffs in this case. Kentucky law permitted the City to choose any speed limit for this residential area at or below 35 miles per hour, Ky.Rev.Stat. § 189.390, and it is quite possible that many residents, wisely or unwisely, thought that the 25 mile-per-hour speed limit represented a legitimate compromise between the 15 mile-per-hour speed limit that was being proposed and the 35 mile-per-hour speed limit that Kentucky law permitted. Given the limited resources of the City's budget, moreover, the choice to ramp up enforcement of the 25 mile-per-hour speed limit on Garrison Avenue assuredly would have meant decreased enforcement of other public safety laws. Finally, efforts to alter traffic patterns and slow down traffic on Garrison Avenue might well have created other traffic-safety risks of their own. As the **Fort Thomas** City Council acknowledged in addressing the policy issues implicated by the speed limit on Garrison Avenue, the installation of speed bumps or traffic channeling to reduce the speed to 15 miles per hour may make it "difficult to snow plow during winter snow and ice, and harder to get fire trucks [and] garbage trucks through [the] area." JA 238.

These considerations go a long way to explaining why our cases stress that, where a plaintiff claims that a non-custodial substantive due process violation has occurred because of the government's deliberate indifference, something more must be shown--a something that we have variously described as "callous[ ] disregard [for] the risk of injury," *Ewolski,* 287 F.3d at 515, or action "in an arbitrary manner that 'shocks the conscience' or that indicates an[ ] intent to injure," *Sperle v. Mich. Dep't of Corr.,* 297 F.3d 483, 493 (6th Cir.2002). That additional element--be it termed callous disregard or intent to injure--ensures that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.' " *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). And that additional element independently ensures that the standards for proving a state-created-danger violation based on governmental *inaction* correspond to the standards necessary for proving a substantive due process violation based on governmental *action,* which the Supreme Court has described as a "level of *731 executive abuse of power ... [that] shocks the conscience," *id. See also Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (holding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property"); *Upsher v. Grosse Pointe Pub. Sch. Sys.,* 285 F.3d 448, 453 (6th Cir.2002); *Lewellen v. Metro. Gov't of Nashville & Davidson County,* 34 F.3d 345, 351 (6th Cir.1994).

The "callous disregard" or "conscience shocking" element is conspicuously missing here. What the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Schroders have shown at most is that the City either shortsightedly did not heed the complaints of its citizens before tragedy struck or did not strike the correct balance in determining the proper speed limit for Garrison Avenue. And while this accident would wrench even the coldest of hearts and is undeniably heart-wrenching for the Schroder family, for the **Fort Thomas** community and for us, it does not present a federal constitutional violation. *See Ewolski,* 287 F.3d at 516 ("[I]mprudence and poor execution do not rise to the level of constitutionally arbitrary abuses of power.").

III.

For these reasons, we must affirm.

412 F.3d 724, 2005 Fed.App. 0285P

Briefs and Other Related Documents (Back to top)

.                 04-5216                 (Docket) (Feb. 27, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.