UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA KAMMEYER, et al. | : | Case No. C-1-01-649 |
| | : | |
| Plaintiffs | : | Spiegel, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | **PLAINTIFFS' MEMORANDUM IN** |
| CITY OF SHARONVILLE, et al. | : | **OPPOSITION TO JOINT MOTION** |
| | : | **TO STAY TRIAL** |
| Defendants | : | |

## I. INTRODUCTION

Plaintiffs oppose the motion to stay the trial of this civil rights action. Plaintiffs' mothers were murdered 25 years ago by or at the direction of Albert Schuholz. Sharonville officers lost evidence, lied to the prosecutor, and lied to the plaintiffs, delaying and possibly making futile any criminal or civil prosecution of Schuholz. Through this case plaintiffs have finally gained consistent access to the file in this case which documents the misconduct by Sharonville. Plaintiffs have waited 25 years for justice. They finally have a firm trial date – September 12, 2006. Five insurance companies ("Proposed Intervenors") have denied coverage to the Defendant City of Sharonville. These five companies want to delay the civil rights trial – possibly for several more years – while they continue their coverage dispute in the state courts of Ohio. Delaying the verdict while third parties argue over who should pay the verdict is completely unfair to the plaintiffs. This court should deny the motion to stay.

## II. FACTS WILL SUPPORT A LARGE VERDICT IN THIS CASE

The jury will likely render a substantial verdict in this case. Indemnification is also likely. Indeed, the current chief has known for years about the problems with this murder investigation. Eighteen years after the murder, in 1999, Albert Schuholz was finally indicted for the murder. At that time Sharonville Chief Mike Schappa stated to plaintiff Patti Kammeyer that he had "learned in the past few years about your case and the dirty cop" and that the Marie Wright Schuholz murder investigation was delayed by a "cover-up." Kammeyer Depo at 285. The "dirty cop" was former lead detective James Cramer who had responsibility for the case for the first ten years. Schappa, then an officer, was present when Cramer first interviewed Schuholz right after the murders in 1981. In that interview Cramer acted as if he did not know Schuholz. See sealed documents. In fact, Cramer knew Schuholz well and even had a financial relationship with Schuholz. Indeed one witness had even seen Cramer take money from Schuholz. See sealed documents. That familiarity between Cramer and Schuholz and the conflict of interest was covered up.

In April, 2000 defendant Schappa stated to plaintiff Kammeyer that the investigation of her mother's murder was delayed by an officer who "acted with criminal intent and a police chief that covered it up." Schappa Depo at Ex 8. The officer who acted with criminal intent was James Cramer and the police chief who covered it up was former chief William Nuss, Cramer's brother-in-law. Kammeyer Depo at 277-79.

Sharonville was so convinced of Cramer's misconduct that the city investigated *Cramer* for criminal wrongdoing. See sealed documents. On December 7, 1998, Chief Schappa, Det. Alan Hayes, and Det. Dale Dorning met with members of the Hamilton

2

County Prosecutor's office and reviewed the status of both the murder investigation and the Cramer investigation. Chief Schappa's notes of the meeting state, "Cramer – open – more to look at, difficult." Schappa Depo. Ex. 4. No criminal charges were ever filed against Cramer as the six year felony statute of limitations precluded any charges. Dorning Depo. Vol. III, p 426-427.

Albert Schuholz may never be brought to trial for the murder as he is mentally incompetent. But Sharonville knew within weeks of the murders that Schuholz had attempted to hire several people to murder Marie; that Marie had herself reported abuse and death threats by Schuholz shortly before the murder; that Schuholz told plaintiff James Wright, "I got her and I will get the rest of you;" that Schuholz was in the midst of a divorce with Marie and was exposed submitting a forged separation agreement to domestic relations court shortly before the murders; and that the alibi witness was a girlfriend of Schuholz who received a $25,000 payment from Schuholz right after the murders. See sealed documents. The overwhelming facts of Schuholz's guilt were never shared with the prosecutor until the 1998 investigation. Schuholz was free that whole time striking fear in these plaintiffs while this evidence remained covered up. Efforts to move the investigation failed. Both James Wright and Patti Kammeyer repeatedly contacted Sharonville over the years asking for action but they were ignored and told not to bother the city officials. Wright Depo. at 105-110; Kammeyer Dep. at p. 102-104.

Criminal charges against Cramer were investigated too late. Murder charges against Schuholz apparently have also been filed too late. This civil rights case is the only path to justice for these families. They deserve to have this matter tried now.

3

## III ARGUMENT

These insurance companies have no right to further delay accountability by Sharonville. The insurance companies have been battling with the Defendant City of Sharonville since this lawsuit was filed in 2001. The coverage dispute has gone all the way to the Ohio Supreme Court. See *City of Sharonville v. American Employers Ins. Co., et al.*, 109 Ohio 3d 186 (2006). Proposed Intervenors moved to intervene and this court correctly denied intervention. Opinion and Order, Doc. 307, p. 30. They are now appealing this order to the Sixth Circuit Court of Appeals. The denial of intervention is a collateral order, so the trial court retains jurisdiction over the merits of the case and it should continue proceedings. Proposed Intervenors do not meet any of the four relevant factors for granting a motion to stay, and their concern regarding the application of collateral estoppel in a pending state court action is speculative and attenuated.

**A. This Court retains jurisdiction over the merits of this case.**

The denial of a nonparty's motion to intervene is a collateral order and may well be immediately appealable. *Purnell v. City of Akron*, 925 F.2d 941, 945 (6th Cir. 1991) citing *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 197 S. Ct. 1177, 1183 (1987). It falls within the collateral order doctrine, as articulated in *Cohen v. Beneficial Indus. Loan Corp.* 337 U.S. 541, 546 (U.S. 1949). *Purnell*, 925 F.2d 941, 944. See also, *Neroni v. Hubbard*, 1990 WL 205125, *1 (6th Cir. 1990) ("…a general rule has arisen that an order denying intervention as of right is appealable if it prevents a putative intervenor from becoming a party in any respect.")

Under *Cohen*, the "final judgment" rule of 28 USC 1291 is interpreted to include decisions which, while not final decision on the merits of a case, do, "finally determine

claims of right separable from, and collateral to, rights asserted in the action…" *Cohen*, 337 U.S. 541, 546. There are three conditions that must be met for a decision to be immediately appealable under the collateral order doctrine. The order must, "1) conclusively determine the disputed question, 2) resolve an important issue completely separate from the merits of the action, and 3) be effectively unreviewable on appeal from a final judgment." *Will v. Hallock,* 126 S. Ct. 952, 957 (U.S. 2006).

This court retains jurisdiction in this situation because an appeal of a collateral order is different from a standard appeal. In general, an appeal removes jurisdiction from the trial court except with regard to proceedings that assist the determination of the appellate court. *U.S. v. Bastanipour*, 697 F.2d 170, 173 (7th Cir. 1982). However, when the appeal is of a collateral order, a district court can retain jurisdiction over the merits of the case even as the appellate court gains jurisdiction over the subject matter of that particular order. *Id.*

In *Bastanipour*, the 7th Circuit held that an order granting a motion to compel was, in fact, non-appealable, so a purported appeal of that order did not divest the district court of jurisdiction. *Id.* at 173. However, the court also held that if the order had been final and appealable under *Cohen*, the district court still would have retained jurisdiction over the case. *Id.*

In general, a district court should have the power to continue proceedings while collateral appeals are considered, just as it does while interlocutory appeals are pending under 28 U.S.C.A §1292. 15A Fed. Prac. & Proc. Juris. 2d §3911. Indeed, Judge Posner has suggested that how effectively trial court proceedings could continue while it is

5

pending is a good test of whether an order is collateral. *Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1986), 15A Fed. Prac. & Proc. Juris. 2d §3911.1.

While there are some circumstances under which it may be appropriate to order a stay pending appeal of a collateral order, such as when a reversal would vitiate later proceedings in the trial court, *Id.* this is not one of those situations. The right of the Proposed Intervenors to intervene is not central to the merits of the case.

**B. Proposed Intervenors Do Not Meet Any of the Factors Needed for a Stay Pending Appeal**

The court should consider four factors in determining whether to issue a stay: 1) the strength of the applicant's showing that the case will succeed on the merits; 2) irreparable injury if a stay is not granted; 3) injury to the other parties' interest if the stay is granted; and 4) public interest. *Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113 (1987).

1. <u>Likelihood of Success</u>. The Proposed Intervenors have not made an adequate showing regarding their likelihood of success on the merits of their appeal to the Sixth Circuit. In their Memorandum in Support of the Joint Motion to Stay, Proposed Intervenors assert that under the relevant case law, a movant is not required to show a high probability of success when there is a high likelihood that the movant will suffer irreparable harm if the stay is denied. Joint Motion to Stay, Memorandum in Support, Doc. 318, p. 5, citing *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). However, the *Griepentrog* court makes it clear that while a stronger showing on one of the first two factors may excuse a weaker showing on the other, this relationship, "is not without its limits; the movant is always required to demonstrate more than the mere 'possibility' of success on the merits."

6

*Griepentrog*, supra,153.  Further, as set out below, these proposed intervenors have failed to show any irreparable harm.

These intervenors clearly failed to meet the requirements for intervention under Fed.R. Civ. Proc. 24.  See Doc. 242.  They waited until the eve of the scheduled trial.  Their request was untimely.  They failed to show how the defense lawyers were not protecting their interests.  Indeed, if the city won the case no one would have to pay the verdict.  They failed to attach a pleading or even to suggest what jury instructions and juror interrogatories they were seeking.  They also failed to cite any cases where other insurance companies had intervened in underlying civil rights cases about which there was a coverage dispute.  Now they claim to be worried about collateral estoppel but the only case they cite actually says there is no collateral estoppel on these facts.  *Gehm v. Timberline Post & Frame*, 2005 WL 2401906 (9th Dist. Ct App. 2005).

2. <u>Irreparable Harm</u>.  There is no present risk of irreparable harm.  The only risk cited by Proposed Intervenors is attenuated and speculative.  There are three factors that should be considered in evaluating the second factor, potential harm to the movant: 1) substantiality of the injury 2) likelihood that it will occur 3) adequacy of the proof provided.  *Id.*  To show that injury is likely to occur, "a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Griepentrog*, supra, 154.

Proposed Intervenors seek to avoid, "the harsh effects of collateral estoppel" by participating in the trial. Joint Motion to Stay, Memorandum in Support, Doc. 318, p. 5.  In the memorandum in support of the motion for stay, Proposed Intervenors concede that under the current law regarding collateral estoppel, they will experience *no* harm if this

case goes to a plaintiff verdict while they are fighting coverage.  They will *not* be collaterally estopped from using any facts they deem appropriate in their indemnification dispute.  Joint Motion to Stay, Memorandum in Support, Doc. 318, p. 6, citing *Gehm v. Timberline Post & Frame*, 2005 WL 2401906 (9th Dist. Ct App. 2005).

The insurance companies fear that the *Gehm* case will be reversed on appeal.  This fear is speculative and so remote from the civil rights issues pending in the case at bar that it simply does not support a stay in this matter.

3.  <u>Harm to the Parties</u>.  There is a clear risk of harm to both plaintiffs and defendants if the stay is granted.  Justice has been long delayed; plaintiffs' mothers were murdered 25 years ago.  This complaint was file in 2001.  Witnesses are getting old.  Some have died.  The plaintiffs themselves are getting old.  The ability to present this case has already been compromised.  No further delay – especially one for a contingent problem – should be permitted.  A further, substantial, delay in the trial date would be a serious injury to both plaintiffs and defendants.

4.  <u>Public Interest</u>.  The public interest is best served by addressing cases on their merits and not letting collateral coverage disputes drive the calendar.

## IV. CONCLUSION

These families have waited long enough.  This matter must be tried.  The stay should be denied.

Respectfully submitted**,**

/s/ Alphonse A. Gerhardstein
Alphonse A. Gerhardstein # 0032053
Trial Attorney for Plaintiffs
Paul Laufman  #0066667
Attorney for the Plaintiffs
GERHARDSTEIN BRANCH & LAUFMAN CO., LPA
617 Vine Street, Suite 1409
Cincinnati, Ohio 45202
(513) 621-9100
(513) 345-5543 fax
agerhardstein@gblfirm.com
plaufman@gblfirm.com

**Certificate of Service**

I here by certify that on June 2, 2006, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Alphonse A. Gerhardstein