UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA KAMMEYER, et al. | : | NO. 1:01-CV-649 |
| Plaintiff | : | (Judge Spiegel) |
| | | (Magistrate Judge Black) |
| vs. | : | |
| CITY OF SHARONVILLE, et al. | : | **MOTION TO QUASH SUBPOENAS DIRECTED TO NON-PARTIES** |
| Defendants | : | **SIMON L. LEIS, JR. (FORMER COUNTY PROSECUTOR) JOHN** |
| | : | **JAY (INVESTIGATOR) TERRY GAINES (FORMER ASST.** |
| | : | **PROSECUTOR) AND RICHARD GIBSON (ASSISTANT** |
| | : | **PROSECUTING ATTORNEY)** |
| | : | **(HEARING REQUESTED)** |

Now come non-parties and movants, Sheriff Simon L. Leis, Jr. (former Hamilton County, Ohio Prosecutor), John Jay (Investigator), Terry Gaines (former Assistant Prosecuting Attorney) and Richard Gibson (Assistant Prosecuting Attorney)(hereinafter referred to as "County prosecutor employees") by and through counsel, and oppose the Plaintiffs' previously filed Motion in Limine relating to Sheriff Leis, and move this Court to quash the subpoenas issued to them by Plaintiffs, or ordering such other relief as the Court may deem just and proper. This motion is based on Fed. Civ. R. 45(c) and the authority set forth in the attached memorandum and affidavit of Assistant Prosecuting Attorney Richard Gibson.

Movants, the County prosecutor employees herein, respectfully request oral argument due to the important issues raised by the Plaintiffs' attempt in this civil case to interrogate the witnesses which will compromise the Schuholz murder prosecution.

A hearing in advance of the trial date is requested so that in the event this Court orders

the County prosecutor employees to testify at this civil trial in violation of the previous 6th Circuit order issued in Case No. 05-3171 (attached hereto as Exhibit A) which prohibits them from testifying in this civil case, they can again seek the protection of the 6th Circuit Court of Appeals which ordered this Court to quash the previous subpoenas because such testimony would require the disclosure of privileged and work product matters of the pending criminal murder prosecution against Albert Schuholz.[1]

The subpoenas provide no indication of the anticipated areas of inquiry, and therefore, because the plaintiffs' claim is based upon the alleged failure to prosecute Albert Schuholz for the murder of his wife and her friend, it must be assumed that the testimony sought from the County prosecutor employees in this trial will relate to the prosecution of Albert Schuholz, which the 6th Circuit has already prohibited and declared to be an improper intrusion upon the office of the County prosecutor.

In fact, the 6th Circuit recognized that even providing a privilege log describing the documents in the County prosecutor's file, typically required in a "privilege" dispute, would itself reveal privileged and work product information potentially diminishing the ability of the prosecutor to successfully prosecute Albert Schuholz for murder.

The plaintiffs have previously subpoenaed the County prosecutor employees to testify in this case, this Court ordered the interrogation of the County prosecutor witnesses, and the 6th Circuit Court of Appeals issued a writ of mandamus ordering this Court to quash the previous

---

[1] In response to this Court's denial of the County prosecutor employees' motion to quash the subpoenas for their depositions in the case, the County prosecutor employees' sought and were granted a writ of mandamus from the 6th Circuit ordering this Court to quash the aforesaid deposition subpoenas. (Case No. 05-3171, 6th Circuit, attached as Exhibit A hereto)

subpoenas. Nothing has changed. The 6th Circuit will certainly follow its previous ruling. If the County prosecutor employees are being called as witnesses to testify about the Schuholz "case"- that violates the 6th Circuit order. If they are being called to testify about something other than the Schuholz "case" then such is not relevant and they should not be required to interrupt the performance of their official duties for such irrelevant information.

Respectfully submitted,

JOSEPH T. DETERS
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO


*/s/ Mark C. Vollman (0007040)*
*/s/ Christian J. Schaefer (0015494)*
*/s/ Jerome A. Kunkel (0039562)*
Assistant Prosecuting Attorneys
Hamilton County, Ohio
230 E. Ninth Street, Suite 4000
Cincinnati, Ohio 45202
513/946-3144
513/946-3048
513/946-3018 (Fax)


**MEMORANDUM**

**I.   INTRODUCTION**

This is a civil case in federal court that has been pending for five years in which the Hamilton County Prosecuting Attorney is not, nor has ever been, a party. Plaintiffs' attorneys have subpoenaed Sheriff Simon Leis (former Hamilton County prosecutor), John Jay (Investigator) Terrence Gaines (former Assistant Prosecuting Attorney) and Richard Gibson (current Assistant Prosecuting Attorney)(hereafter "County prosecutor witnesses") to testify at the trial even though the 6th Circuit Court of Appeals has already ruled on this exact issue and

issued an order requiring this Court to quash the subpoenas and prohibit the interrogation of these witnesses. The 6th Circuit decision is attached hereto as Exhibit A.

Plaintiffs' and their attorneys continue to seek to end the "work product" doctrine for state prosecutors. Plaintiffs' seek to denigrate the role of state prosecutors and make them subservient to parties litigating issues of money in federal court. This Court, in order to avoid the wasting the resources and time of this Court and the 6th Circuit Court of Appeals, and of the County prosecutor employees, should enforce the clear mandate of the 6th Circuit Court of Appeals issued directly to this Court about the identical issue by prohibiting the requested testimony by quashing the subpoenas issued by Plaintiffs to the County prosecutor employees.

## II.     SUBPOENAS

On September 6, 2006, attorney Paul Laufman, plaintiffs' counsel, issued subpoenas for the County prosecutor employees commanding their appearance to give testimony at the jury trial of this case on September 12, 2006. Copies of the subpoenas are attached hereto as Exhibit B, C, D and E.

The subpoenas require the County prosecutor employees' appearance at the trial in this case. A recently filed Motion in Limine contains an indication of the anticipated interrogation by counsel for plaintiffs of Simon L. Leis, Jr. current Hamilton County Sheriff and former Hamilton County Prosecutor. Plaintiffs indicated in the motion in limine they will inquire about the "routine policies and procedures" of the Hamilton County Prosecutor's Office during Mr. Leis' tenure.

The purpose of the testimony about the "routine" of an organization is to prove that the conduct of the organization *on a particular occasion* was in conformity with the routine. See

Fed.R.Ev. 406.

Fed. Ev.R. 406 reads as follows:

**RULE 406.   HABIT;   ROUTINE PRACTICE**

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

As stated in Rule 406, the relevance of the routine practices and procedures of Simon Leis, Jr. when he was prosecutor testimony or of the routine practices of the organization is to prove conduct was in conformity with the routine practice on a particular occasion, the particular occasion obviously being the 1981 murder investigation of Marie Wright Schuholz and her friend.

Plaintiffs claim in the motion they will not violate the 6th Circuit order, but if they interrogate the County prosecutor witnesses about the Schuholz case, that will violate the 6th Circuit order prohibiting such testimony. If they ask about subjects not related to the Schuholz case, such information is not relevant to the Schuholz case and should not be admitted into evidence.

Plaintiffs counsel is trying to circumvent the 6th Circuit's prior order requiring this Court to quash the subpoenas of the County prosecutor employees in this matter.

This is nothing more than a thinly veiled attempt by plaintiffs to interrogate the non-party County prosecutor employees about this case, which has been prohibited by the 6th Circuit. The evidence of the routine practices of the former County prosecutor during the time period of the Schuholz murder case is to prove Mr. Leis' conduct was in conformity with his routine practice during the 1981 Schuholz murder investigation thus revealing the thought process, judgments,

mental impressions, conclusions, opinions and/or legal theories of the prosecutor, assistant prosecutors and other office personnel.  Such testimony will jeopardize the successful prosecution of Albert Schuholz.  (See Affidavit of Richard Gibson attached hereto as Exhibit F).

## III.    BACKGROUND

Plaintiffs have brought a case in federal court against the City of Sharonville alleging a civil rights action against police officers who are alleged to have conspired to destroy evidence and cover up facts involving the 1981 murders of Marie Wright Schuholz and Starla Barns.

The murders occurred on May 8, 1981 in Sharonville, Hamilton County, Ohio.  The identity of the actual killer is unknown at this time.  It is alleged that Albert Schuholz ("Schuholz") arranged for the two women to be murdered and that the named defendants in Plaintiffs' civil rights action conspired to cover-up the murder investigation.  Plaintiffs maintain that the former detective for the City of Sharonville, James Cramer had an existing association with Schuholz in which he handled Schuholz's "loan-shark" collections and did not properly investigate the murders.  The City of Sharonville and certain current and former Sharonville employees and officials are alleged to have engaged in a "cover-up."

Schuholz subsequently married Norma Schuholz after the 1981 death of his former wife Marie Wright Schuholz.  In 1998, Schuholz pled guilty in the United States District Court for the Eastern District of Kentucky for the attempted murder of Norma Schuholz.  At the time of his sentencing, the Hon. William O. Bertelsman found Schuholz incompetent and ordered him to the custody of the Attorney General for the State of Kentucky.  Schuholz is presently being held at a federal hospital and is receiving treatment.  The Sheriff of Hamilton County, Ohio has a holder on Schuholz for him to be extradited to Ohio once he has been restored to competency and been

sentenced for the attempted murder.

Plaintiffs have not submitted any evidence as to the current mental condition of Schuholz or the identity of the actual killer of Marie Wright Schuholz and Starla Burns. Plaintiffs' counsel subpoenaed the County prosecutor witnesses to appear at deposition, give testimony and produce documents which this Court ordered in a decision denying the County prosecutor witnesses' Motion to Quash. The 6th Circuit, pursuant to a Petition for a Writ of Mandamus, ordered this Court to quash the subpoenas citing privilege and work product.

This Motion to Quash is the County prosecutor witnesses' request to have this Court require compliance with the 6th Circuit order already issued in this case which required the issuance of an order quashing the subpoenas of the County prosecutor witnesses for depositions.

## IV.     ARGUMENT

### A.     Abstention Doctrine Considerations

Whether it is next month or next year, the Hamilton County Prosecutor's Office will prosecute a criminal case against Albert Schuholz for the double murder of Marie Wright Schuholz and Starla Barns. This Court, in resolving this dispute about the disclosure of the prosecutor's work product, must preserve for both Mr. Schuholz and the State of Ohio, the opportunity to fully and fairly present their cases to a state jury.

The United States Supreme Court established the abstention doctrine to protect state criminal proceedings from interference by the federal judiciary. The principles behind the abstention doctrine were discussed in *Juidice v. Vail*, 430 U.S. 327, 334, 97 S. Ct. 1211, 1217 (1977) as follows:

> As we emphasized in *Huffman,* the "'more vital consideration'" behind the Younger doctrine of nonintervention lay not in the fact that the state criminal

> process was involved but rather in "'the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Huffman,* 420 U.S., at 601, quoting *Younger,* 401 U.S., at 44.
>
> This is by no means a novel doctrine. *In Ex parte Young,* 209 U.S. 123 (1908), the watershed case which sanctioned the use of the Fourteenth Amendment to the United States Constitution as a sword as well as a shield against unconstitutional conduct of state officers, the Court said:
>
> "But the Federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court. *Taylor* v. *Taintor,* 16 Wall. 366, 370; *Harkrader* v. *Wadley,* 172 U.S. 148." *Id.,* at 162.
>
> Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is "an offense to the State's interest... likely to be every bit as great as it would be were this a criminal proceeding," *Huffman, supra,* at 604. n12 Moreover, such interference with the contempt process not only "unduly interfere[s] with the legitimate activities of the [State]," *Younger, supra,* at 44, but [**1218] also "can readily be interpreted 'as reflecting negatively upon the state court's ability to enforce constitutional principles,'" *Huffman, supra,* at 604. n13

While the abstention doctrine does not directly apply because the Plaintiffs are not parties to the State Criminal case, the principles behind the abstention doctrine — the notion of comity and respect for state governmental functions — must be considered in determining this motion to quash the subpoena.

These are the same principles that would be at play, should the plaintiffs' attorneys, their notes, records, interviews, and other work product which are the result of the use of the "tongue, pen and head" be subpoenaed to help the state prosecute Albert Schuholz or Albert Schuholz subpoena the same material in order to present a defense to the murder charge. If both proceedings, under the test from *Younger v. Harris,* 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746

(1971), can continue simultaneously because they are independent, they should proceed in an independent fashion.

The County prosecutor witnesses can only assume that they will be questioned about the Albert Schuholz case and their investigation and preparation for the prosecutor thereof.  This will destroy the balance between the obligation of the state to prosecute and the rights of the accused to a fair trial.  This destroys the concepts of comity and respect for state functions that *Younger v. Harris,* 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971).  This Court should protect the state criminal prosecution from the type of interference that Plaintiffs propose.

The types of interference with Ohio's criminal prosecution are:

1.  <u>Pre-Trial Publicity</u> - A prosecutor in a criminal case cannot use pretrial publicity to unfairly prejudice an accused.  If the Plaintiffs' civil case goes to trial and the testimony of the prosecutors, and evidence and statements developed by the prosecutors is admitted, short of conducting a secret trial, there is no way to protect the prospective criminal jury pool from public exposure about the matter.  See Code of Professional Responsibility, DR 7-107.

2.  <u>Trial Strategy</u> - Finally, the most important thing a criminal prosecutor brings to a criminal case are his thoughts.   Unlike civil cases, most often a criminal prosecutor has little concept of what defense the accused may offer until it is presented at trial.  Because of the Fifth Amendment, there are no pretrial depositions of the accused to learn his theory of the case, his proposed testimony, and in many instances even the witnesses the defense will call.  The items created by the criminal prosecutor, the "intangible things, the results of the [prosecutors] use of his tongue, his pen, and his hand" are the only tools to offset the advantage our system gives to the accused in a heightened burden of proof and permitted element of surprise.  Revelation of

those items will be highly prejudicial to a successful prosecution. Also it will undoubtedly subject the County prosecutor employees to being called as witnesses in the Schuholz murder case that they are currently prosecuting. The revelation of the aforesaid information caused by the county prosecutor employees being forced to certify in this case will greatly compromise their ability to prosecute Albert Schuholz. See Affidavit of Richard Gibson attached as Exhibit F.

**B.**     **The Testimony Sought by the Subpoenas Issued to Non-Party County Prosecutor Employees is within the protections of both the Attorney-Client Privilege and the Work-Product Doctrine.**

Plaintiffs are seeking the prosecutors' work product, and their knowledge on a *pending* criminal case, a pending murder indictment no less. It can only be assumed that the testimony sought to be presented at the trial involves the criminal prosecution of Albert Schuholz because Plaintiffs' case is for "failure" to prosecute.

These requests upon the prosecutors are both unprecedented and unusual in that Plaintiffs are seeking discovery about a criminal case for a civil case when that criminal case is still pending. The appropriate standard in this instance with which to analyze the merits of Plaintiffs' request while balancing the concerns of a pending criminal case which concerns matters of attorney-client privilege and work-product is set out in *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) and its progeny.

The work product doctrine arises out of the need to provide an attorney with a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). It protects "intangible things, the results of the lawyer's use of his tongue, his pen and his head, for his client." *Hickman v. Taylor*, 153 F.2d

212, 223 (3d Cir. 1945), aff'd, 329 U.S. 495 (1947).  It provides an attorney with a "zone of privacy" within which to think, plan, weigh facts and legal theories, and prepare a case.  *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 142-43 (D. Del. 1982) (citing *Costal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980)); *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136 (D. Del. 1977).  The Ohio Supreme Court in *State ex rel Jackson v. Steckman,* explained that "It is difficult to conceive of anything in a prosecutor's file, in a pending criminal matter, that would not be either material compiled in anticipation of litigation of a specific criminal proceeding or in personal trial preparation of the prosecutor".

The work product doctrine is intended to aid trial preparation, most frequently as a bar to discovery in civil litigation, but "its role in assuring the proper functioning of the criminal justice system is even more vital," for "fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

The holding in *Shelton v. American Motors Corp*., 805 F.2d 1323 (8th Cir. 1986), in which counsel was seeking depositions of opposing counsel is instructive.  The *Shelton* Court held that:

> [t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and cost of litigation.  It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by attorney's testimony.  Finally, the practice of deposing opposing counsel detracts from the quality of client representation.  Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent.

While the prosecutors are not technically opposing counsel in the present case; however, their

reasons and argument regarding protected information are tantamount to that of counsel in *Shelton,* in so far as there is a pending criminal case and much, if not all, of the information being sought by Plaintiffs, exceeds the scope of what is allowable in discovery of criminal cases (*See generally Ohio Revised Code Criminal Rule 16). See also Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (addressing the work product doctrine stating, "Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims."); *Marco Island Partners v. Oak Development Corp.*, 117 F.R.D. 418, 420 (N.D. Ill. 1987) (recognizing that the deposition of opposing counsel "provides a unique opportunity for harassment; it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness"). Indeed, movants maintain that the same basic principles govern the instant attempts to depose the non-party former prosecuting attorney and the Investigator.

All of the materials and documents maintained in the Prosecutor's office file were either prepared and/or compiled by Richard Gibson in anticipation of preparing for and successfully prosecuting the case against Albert Schuholz for aggravated murder. The disclosure of the information would greatly compromise the prosecution of Albert Schuholz. (Affidavit of Richard Gibson).

    **C.**    **Procedure for Resolving Work product claims between Parties**

If the Prosecutors were parties, their work product would be protected by the procedure

set out in *Toledo Edison vs. GA Technologies, Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988), the 6th Circuit of Appeals adopted a detailed procedure for litigating such work product claims:

> In order to adjudicate a claim of work product immunity under Fed.R.Civ.P.26(b)(3), a court must follow this sequence of steps:
>
> 1. The objecting party must make the claim that the materials have been prepared in anticipation of litigation or for trial; [Done herein.] (See Affidavit of Richard Gibson)
>
> 2. The party requesting the materials must then show and the court must find that they are (1) relevant to the subject matter of the litigation and (2) not privileged; [Not done herein.] (See Affidavit of Richard Gibson)
>
> 3. The burden then shifts to the objector to show (1) that the materials were in fact prepared in anticipation of litigation or for trial, (2) that the material was prepared by or for the party or the party's representative, including attorney, consultant, surety, indemnitor insurer, or agent; [Done herein.]
>
> 4. The burden then shifts to the requester to show (1) he has a substantial need of the materials to prepare his case and (2) he is unable without substantial hardship to obtain the substantial equivalent of the materials by other means; [Not done herein.]
>
> 5. Even if step four is met, the objector can still prevent disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation.

Everything that Plaintiffs want is clearly trial preparation materials as defined in F.Civ.26(b)(3). Therefore, pursuant to that rule, they are exempt from discovery absent a showing that petitioner has substantial need of them in the preparation of his case, and that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means.

While the Hamilton County Prosecutor is not a party to the instant case, it is helpful in resolving this situation. Plaintiffs have not satisfied their burden of demonstrating, at a minimum, that they are unable to obtain the represented information by other means.

Plaintiffs have merely subpoenaed the County prosecutor employees to testify at the trial;

no claim of substantial need or unavailability from other sources has been demonstrated. It is difficult to conceive of a situation where the need for the protection of work product of prosecutors is more critical.

Plaintiffs have presented no indication of why they need the County prosecutor employees' testimony or why the substantial equivalent of their testimony sought cannot be had from other means. Plaintiffs could simply arrange interviews with the witnesses to the events. Nothing is presented to indicate hardship or need by Plaintiffs. Plaintiffs are asking for information that contains obviously "the mental impressions, conclusions, opinions, or legal theories" of the prosecutors. Fed. Civ. R.P. 26(b)(3) provides:

> ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The purpose behind the work-product doctrine is to protect the adversary relationship and give a lawyer a "zone of freedom" in which to plan trial strategy without fearing disclosure to an opponent. *United States v. Nobles*, 422 U.S. 225, 238 (1975). This Court should deny access to the prosecutors' files in a pending murder indictment.

## IV.    CONCLUSION

Based upon the foregoing, this Court should quash the subpoenas issued for Sheriff Simon Leis, former Hamilton County Prosecutor, John Jay (Investigator), Terry Gaines (former Assistant Prosecuting Attorney) and Richard Gibson (Assistant Prosecuting Attorney)(hereinafter referred to as "County prosecutor witnesses") who respectfully requests an order under Fed. Civ. R. 45 that the subpoenas should be quashed and the County prosecutor witnesses not be required to testify at the trial of this case.

       Respectfully submitted,

       JOSEPH T. DETERS
       PROSECUTING ATTORNEY
       HAMILTON COUNTY, OHIO


       */s/Mark C. Vollman*, 0007040P
       /s/ Christian J. Schaefer 0015494P
       */s/* Jerome A. Kunkel, 0039562
       Assistant Prosecuting Attorneys
       230 East Ninth Street, Suite 4000
       Cincinnati, Ohio 45202
       513/946-3144

## CERTIFICATE OF SERVICE

        I hereby certify that on <u>21st. Of September, 2006</u>, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following, and I hereby certify that I have mailed by United States Postal service the document to non CM/ECF participants.

Lawrence E. Barbiere, Esq.  
Schroeder, Maundrell, Barbiere & Powers  
11935 Mason Road, Suite 110  
Cincinnati, Ohio 45249  

Thomas T. Keating, Esq.  
Keating, Ritchie & Swick  
8050 Hosbrook Road, Suite 200  
Cincinnati, Ohio 45236  

Randolph H. Freking, Esq.  
Leslie E. Ghiz, Esq.  
Freking & Betz  
215 East Ninth Street, Fifth Floor  
Cincinnati, Ohio 45202  

Alphonse A. Gerhardstein, Esq.  
Paul Laufman, Esq.  
617 Vine Street, Suite 1409  
Cincinnati, Ohio 45202  

Brian E. Hurley, Esq.  
Robert J. Gehring, Esq.  
Crabbe, Brown & James  
30 Garfield Place, Suite 940  
Cincinnati, Ohio 45202  

        <u>/s/ Mark C. Vollman 0007040</u>  
        Assistant Prosecuting Attorney