**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PATRICIA KAMMEYER, et al. | : | Case No. C-1-01-649 |
| | : | |
| Plaintiffs | : | Spiegel, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | **PLAINTIFFS' MOTION TO** |
| CITY OF SHARONVILLE, et al. | : | **ESTABLISH QUALIFIED** |
| | : | **SETTLEMENT FUND AND** |
| Defendant | : | **APPOINT FUND ADMINISTRATOR** |

The parties in the above action have settled the lawsuit. Pursuant to that settlement Plaintiffs move this Court for an Order to: (i) establish a fund, which shall be called the Kammeyer Qualified Settlement Fund (the "Fund"); and (ii) to appoint an administrator for the Fund. The Defendant does not oppose the establishment of a Qualified Settlement Fund.

# MEMORANDUM

## A. FACTS RELATED TO QUALIFIED SETTLEMENT FUND

1. Plaintiffs are seeking damages on account of an Incident as originally and particularly described in the Complaint filed with this Court on September 25, 2001 (the "Incident")(Doc. 1).

2. It is anticipated that the Parties [namely Plaintiffs, Patricia Kammeyer, James Wright, Jan Lorraine Miller, and Sue Ranielle Baker, and Defendant City of Sharonville, individually and on behalf of all of its current and former employees, in part, through contributions from its insurers [Hereafter collectively Defendant Sharonville]] will fully settle the claims that arose as a result of the Incident at a time when an exact allocation among and distribution to Plaintiffs cannot be finalized. Plaintiffs are not settling the wrongful death claims they may have against Albert Schuholz and plaintiffs will hold Defendant harmless on said

claims should they be filed. Hence the Court is asked to order the establishment of the Fund to facilitate the settlement of the claims against Defendant Sharonville while allowing for the allocation, classification of damages and final disbursement of funds to the plaintiffs and their counsel to be finalized.

3. Upon executing a release completely extinguishing any liability of the parties named in the above captioned action with respect to claims arising out of the Incident (the "Mutual Release"), Defendant Sharonville shall pay the sum of $1,500,000 into the Fund (hereafter referred to as the "Total Settlement Proceeds"). The Total Settlement Proceeds, made payable to the Kammeyer Qualified Settlement Fund, shall be paid by Defendant Sharonville and/or its insurance carrier(s) within 30 days of the establishment of the Qualified Settlement Fund.

4. The Fund shall be a Qualified Settlement Fund as described in Treas. Reg. Section 1.468B-1, established by order of this Court, and the Fund shall remain subject to the continuing jurisdiction of this Court.

5. This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a Qualified Settlement Fund "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

6. Except as otherwise provided for below, the Fund shall fully settle claims arising from the Incident with the approval of and upon the order of the Court by entering into subsequent Qualified Settlement Fund Agreements and Releases (the "Fund Agreements") with persons or entities asserting those claims. Until such time that Fund Agreements are executed,

no settlement proceeds shall be set apart for Plaintiffs, or otherwise made available so that they may draw upon or otherwise control said settlement proceeds.

7. The Fund shall only make payments to the above specified Plaintiffs according to the terms of the Fund Agreements.

8. The Fund may, with the consent of the persons or entities with whom it enters into Fund Agreements, purchase and assign any structured settlements created under any Fund Agreements. Any structured settlement shall be issued by a life insurance company that is rated A+ or better by A.M. Best Company.[1]

9. The claims made against the at-fault parties originate from a physical injury / death incident and arise out of alleged liability in tort or violation of law. Persons entering into Fund Agreements with the Fund shall agree in writing to a discharge of the Fund's liabilities to make any structured settlement payments, also known as periodic payments, under the Fund Agreements by executing, along with the Fund, any necessary documents required or related to the discharge of those liabilities.

10. Plaintiffs request that the Court approve the engagement of Matthew L. Garretson, Esq. of The Garretson Law Firm (TGLF) as the Fund Administrator. Matthew Garretson is an attorney in good standing in Ohio with extensive experience with 468B Qualified Settlement Fund administration. A copy of Mr. Garretson's Curriculum Vitae is attached and submitted herewith. Mr. Garretson's address is as follows: 9545 Kenwood Rd. Suite 304, Cincinnati, Ohio 45242. Mr. Garretson shall submit personally to the jurisdiction of this court.

---

[1] Structured Settlement Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Internal Revenue Code. The qualified assignee shall, respecting each person who is to receive periodic payments under a settlement agreement, purchase one or more qualified funding assets within the meaning of Section 130(d) of the Internal Revenue Code to fund any structured settlement payments assigned to the qualified assignee.

Upon Mr. Garretson's death, disability, unwillingness to act or bankruptcy, his Administration will terminate and the parties herein shall seek court approval of their nominated successor fund administrator.

11. The Fund Administrator shall be indemnified and held harmless by Plaintiffs from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund. Should the Fund Administrator be named as a party to, or threatened to be made a party, to any threatened, pending or completed action, suit, or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Fund Administrator having served in any capacity on behalf of the Fund, the Fund Administrator shall be indemnified and held harmless by the Plaintiffs against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Fund Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the Fund Administrator was grossly negligent or acted with willful misconduct in connection with the administration of this Fund.

12. The Plaintiffs request that no bond be required, provided that all monies received by the Fund, which includes all principal and interest earned thereon, shall be deposited in an account comprised of (i) United States Agency, Government Sponsored Enterprises (GSEs) or Treasury securities or obligations (or a mutual fund invested solely in such instruments) and (ii) cash equivalent securities. The Fund shall be held at L. M. Kohn & Company., a financial institution doing business in Ohio, according to the above terms and conditions, and said financial institution shall be responsible for any and all investment related decisions, pursuant to

these terms and conditions. Notwithstanding the foregoing, L. M. Kohn & Company shall not be allowed to distribute any income or principal from the Fund except upon the Order of this Court or as otherwise provided for in this motion.

13. The Fund Administrator shall be authorized to distribute all attorney fees and litigation expenses to counsel for Plaintiffs, consistent with existing contingency fee contracts and, to the extent required by law, upon Court approval.

14. All expenses incurred in the settlement of claims shall be allocated to the Kammeyer Qualified Settlement Fund, including any escrow fees and the fees of the Fund Administrator and shall not be the responsibility of Defendant Sharonville. All taxes on the income of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, expenses of tax attorneys and accountants) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlement, and shall be timely paid by the Fund Administrator without prior Order of the Court.

15. The Fund Administrator shall cause to be prepared and delivered Fund Statements ("Statements") on a monthly basis to counsel for the Plaintiffs and this Court. The Statements shall include, without limitation, a statement of receipts, investment earnings, and disbursements. The Fund Administrator shall provide the monthly Statements as soon as available, but in no event later than 10 business days following the end of the month to which those statements relate. The Fund Administrator shall provide the annual Statements as soon as available, but in no event later than 45 days following the end of each calendar year.

16. The Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by the Fund Administrator to be genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in his

reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by Plaintiffs' Counsel.

17.     Upon completion of all Fund Agreements and final distribution of all monies to be paid into the Fund, the Fund Administrator shall take appropriate steps to wind-down the fund and thereafter be discharged from any further responsibility with respect to the Fund.

18.     The Administrator has obtained a Federal Taxpayer Identification Number for the Kammeyer Qualified Settlement Fund, such number being 20-5615537.

**B. ARGUMENT**

**1. This Motion Complies with Federal Law Permitting Qualified Settlement Funds.**

Qualified Settlement Funds ("QSFs") were created by Congress to introduce a valuable settlement tool whereby plaintiffs can address critical settlement-related issues without slowing down the settlement process, and while releasing the defendant from alleged tort (or other) liability. QSFs are, therefore, both useful settlement tools and provide unique tax benefits to plaintiffs and defendants, alike.

The Federal tax rules concerning QSFs are to be found in Internal Revenue Code § 468B and its accompanying regulations. The Treasury Department further defined these settlement funds by promulgating Treasury Regulations § 1.468B-1 *et seq.*, which became effective on January 1, 1993.[2] Under these Regulations, there are three requirements for a settlement fund, account or trust to be treated as a QSF:[3]

> A fund, account, or trust satisfies the requirements of this paragraph (c) if –
> (1) It is established pursuant to an order of, or be approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a

---

[2] *See* Restatement (Second) of Contracts, Section 280 (1981)

[3] Treas. Reg. §1.468B-1

6

court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority; (2) It is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting liability – (I) Under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (hereinafter referred to as CERCLA), as amended, 42 U.S.C. 9601 et seq.; or (II) Arising out of a tort, breach of contract, or violation of law, or (III) Designated by the Commissioner in a revenue ruling or revenue procedure; and (3) The fund, account, or trust is a trust under applicable state law, or its assets are otherwise segregated from other assets of the transferor (and related parties).  Treas. Reg. § 1.468B-1(c).

The Kammeyer arrangement would satisfy all three elements of a QSF.  It would be established under this Court's order, to resolve one or more claims arising in tort, and the settlement assets would be held by the QSF Administrator, Mr. Garretson, rather than by Defendant Sharonville. With respect to this Court's authority to sign an Order creating the Kammeyer QSF, Treas. Reg. § 1.468B-1(c)(1) provides that a court of law has the authority to order the creation of a QSF.  In *United States v. Brown*, the Tenth Circuit Court of Appeals stated that a "[Qualified Settlement] Fund satisfies subparagraph (1) of § 1.468B-1(c) if it is established pursuant to an order of … a court of law."[4]  Here, this Court has jurisdiction over the underlying litigation, so it has jurisdiction over the establishment of a QSF to resolve settlement matters relating to this litigation.

The Kammeyer QSF also meets Treas. Reg. § 1.468B-1(c)(2) because it is being established to resolve the claims of Plaintiffs that originated with the murders of their mothers, Marie Wright and Starla Burns, and were asserted against the City of Sharonville for an alleged cover-up.  The murder and cover up resulted in Plaintiffs sustaining great pain and suffering, loss of inheritance, emotional distress, fear for their own safety and their children's safety, and interference with their access to courts by destroying evidence.  As well, Plaintiffs have suffered

---

[4] United States v. Brown (2003), 3438 F.3d 1200.

mental anguish from their mothers' death and damages for the loss of society over the life expectancy, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education. Hence, the settlement must be allocated among the damages associated with the personal injuries suffered by Plaintiffs.

In addition, the Motion complies with Treas. Reg. § 1.468B-1(c)(2) because while there is a single defendant, there are multiple parties being released and multiple sources of the settlement funds. Therefore, the Kammeyer QSF would be established to resolve multiple claims on behalf of multiple claimants resulting from tortious conduct.

Finally, the Motion complies with Treas. Reg. § 1.468B-1(c)(3) by being established as an interest-bearing account, for which the settlement funds would be segregated from the other assets of the Defendant Sharonville.

### 2. This QSF Provides Plaintiffs the Necessary Breathing Space

QSFs are useful tools to ensure proper client counseling can occur before, during and even *after* settlement. QSFs uniquely introduce a degree of breathing space after settlement that is valuable by: (1) allocating the settlement proceeds among the claimants; (2) verifying and negotiating liens and / or subrogation claims (if any); (3) determining the appropriate role and underwriting[5] of a structured settlement annuity; (4) evaluating the need to preserve governmental entitlement benefits (e.g. the need for the establishment of a special needs trust);

---

[5] Unless provided with evidence to the contrary, annuity companies assume a claimant has a normal medical condition and, therefore, a normal life expectancy. As a result, published annuity rates are by sex and age only. However, substandard (i.e., lower) annuity rates are available if the annuity company is provided with evidence that the claimant's life expectancy is less than normal. Many serious injuries can reduce a claimant's life expectancy. However, it is not necessary that the reduced life expectancy be caused by the injury that is the subject of the claim. Any claimant, therefore, may qualify for a substandard rate. Physicians who are employed for that purpose by the annuity companies make the evaluation of a claimant's life expectancy. Their evaluation is based on a review of medical information provided to them.

and (5) enabling a host of other decisions to be made without the pressure associated with the litigation itself. This breathing space is made available because, while temporarily parked in the QSF, the assets are not "constructively received" by any claimant, as that doctrine is set forth in Treasury Regulation § 1.451.2.[6]

In the typical QSF arrangement, the Administrator distributes the Net Recovery to each plaintiff for his or her respective claims with the approval of and upon the order of the Court by entering into subsequent Qualified Settlement Fund Agreements (the "Fund Agreements") with plaintiffs. Until such time that Fund Agreements are executed with the Administrator, and these conditions are met, no settlement proceeds shall be set apart for any individual plaintiff, or otherwise made available so that he or she may draw upon or otherwise control said settlement proceeds. In this regard, a QSF would help finalize the settlement by allowing the defense to walk away from the litigation upon their payment into the QSF prior to the resolution of all outstanding damage allocation and classification matters.

### 3. The Defendant is not Disadvantaged by the Creation of a QSF.

The creation of a QSF in this case would permit the Defendant Sharonville to disengage from the litigation; and qualify for economic performance to obtain a current income tax deduction. Payments made by the Defendant Sharonville would be in exchange for a release from the present claimant(s) and possible future claimants. Once payment has been made to the Kammeyer QSF the litigation process would cease for the Defendant Sharonville, thereby reducing legal costs and freeing up the resources being used in such litigation. Further, it would

---

[6] The Regulations state that income, "although not actually reduced to a taxpayer's possession, is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could draw upon it during the taxable year if notice of intention to withdraw had been given."

permit the Defendant Sharonville to deduct their payments to the QSF in the same manner as if the Defendant Sharonville paid the Plaintiffs directly or paid into some other irrevocable and unconditional fund established to receive payments for the benefit of the Plaintiffs, thereby permitting a current income tax deduction if available.

The Defendant Sharonville would be completely released from present and future claims despite the cause of action remaining alive to permit the Court to maintain its jurisdiction over the case. This is accomplished by transferring tort liability to the Kammeyer QSF Administrator through the legal doctrine of novation (party substitution), which has the added affect of adding a new party as substitute obligor who was not a party to the action (in this case, the new party is the QSF Administrator), and discharging the original defendant by agreement of all the parties, completely extinguishing any alleged liability of the Defendant Sharonville.[6]

Defendant does not oppose the establishment of this fund.

## C.  CONCLUSION AND REQUEST FOR ORDER

Plaintiffs respectfully request that this motion be granted and that the Court enter an Order:

1.  Establishing said Fund as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1; and pursuant to the jurisdiction conferred on this Court by Treas. Reg. Section 1.468B-1(c)(1);

2.  Appointing Matthew L. Garretson of The Garretson Law Firm as Fund Administrator pursuant to the terms, conditions and restrictions of this Motion to Establish Qualified Settlement Fund and Appoint Fund Administrator and granting the Fund Administrator

the authority to conduct any and all activities necessary to administer this Fund as described in this Motion;

3. Completely extinguishing any alleged civil liability or actual civil liability of any at-fault party participating in the Fund and with respect to any claims brought by persons entitled under the law to bring claims against Defendant Sharonville arising from the Incidents.

4. Authorizing the Fund to enter into Fund Agreements with persons or entities claiming damages, injury, or death as a result of the Incident, including the use of settlements with periodic payments in a manner prescribed and approved by the Court.

5. Authorizing the Fund to effect qualified assignments of any resulting structured settlement liability within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee.

6. Authorizing the Fund Administrator, upon completion of all Fund Agreements and final distribution of all monies paid into the Fund, to take appropriate steps to wind-down the fund and thereafter discharging the Fund Administrator from any further responsibility with respect to the Fund.

    Respectfully submitted,

    /s/ Alphonse A. Gerhardstein
    Alphonse A. Gerhardstein (0032053)
    Trial Attorney for Plaintiffs
    GERHARDSTEIN & BRANCH, CO. LPA
    617 Vine Street, Suite 1409
    Cincinnati, Ohio 45202
    (513) 621-9100
    (513) 345-5543 fax
    agerhardstein@gbfirm.com

/s/ Paul M. Laufman
Paul M. Laufman (0066667)
Attorney for Plaintiffs
LAUFMAN, JENSEN & NAPOLITANO, LLC
30 Garfield Place, Suite 750
Cincinnati, Ohio  45202
(513) 621-4556
(513) 621-5563 (fax)
plaufman@ljnlawfirm.com

**Certificate of Service**

I here by certify that on September 29, 2006, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Alphonse A. Gerhardstein

**Matthew L. Garretson**

The Garretson Law Firm, LLC
9545 Kenwood Road, Suite 304
Cincinnati, Ohio 45242
513-794-0400 (ph)
513-936-5186 (fax)
mlg@garretsonfirm.com

Matt Garretson is the founding partner of The Garretson Law Firm which provides mass tort / class action settlement allocation and fund administration services. The firm also handles Medicare / Medicaid reimbursement claims, government benefit preservation strategies, and probate administration for individual and mass tort plaintiffs. Additionally, Matt is the President of The Settlement Services Group which provides structured settlement and settlement-related trust services. He received his BA from Yale University and his law degree at Kentucky's Salmon P. Chase College of Law.

Matt is a frequent speaker at Continuing Legal Education seminars about lawyers' professional responsibilities in individual or mass tort settlements. He has spoken at seminars sponsored by numerous state trial lawyer and state bar associations, The Association of Trial Lawyers of America, Mealey's and Mass Torts Made Perfect.

Matt has authored several articles regarding professional responsibility in individual and mass tort settlements that have been published in *Trial Magazine,* The American Bar Association's *The Professional Lawyer*, *Ohio Trial, Academy of Florida Trial Lawyers Journal, Utah Trial Journal,* and *Insurance Day* in the United Kingdom. In 2005, Loyola University *Journal of Public Interest Law* published an article by Matt entitled *A Practical Approach to Avoiding Conflicts of Interest in Aggregate Settlements*.

Matt is in the final stages of writing a legal text book for ATLA / West Publishing entitled "Settling Tort Cases".

Matt has served as an adjunct professor at Salmon P. Chase College of Law, teaching a course on law practice management with an emphasis on how to avoid professional liability claims. Matt's "form-of-settlement" client counseling model (re: impact of settlement on government benefits, liens / subrogation, structured settlements and the taxation of damages) has received national recognition and is designed to protect clients as well as help lawyers avoid "failure to inform" professional liability claims.

Matt serves as the special master and / or administrator of settlement funds throughout the country. His role in numerous high profile church-related sexual abuse and civil rights settlements (including the historic Cincinnati police brutality / racial profiling settlement) led to his selection by *Lawyers Weekly* as 1 of 5 "Lawyers of the Year" in Ohio for 2003. He was nominated by his peers and selected as an Ohio Super Lawyer – Rising Star in 2005. His work was featured in the LA Times in January of 2005.

**Legal Ethics / Professional Responsibility Speaking Engagements**

- The Association of Trial Lawyers of America (Annual Seminar 2003, 2006)
- The Association of Trial Lawyers of America (Case For Hormone Therapy 2004)
- The Association of Trial Lawyers of America (Mid Winter Seminar 2005, 2006)
- The Association of Trial Lawyers of America (Legal Ethics Teleseminar)
- Dallas Bar Association (2002)
- Mississippi Trial Lawyers Association (2002)
- Academy of Florida Trial Lawyers (2003)
- Mass Torts Made Perfect (2003, 2004, 2006)
- Louisiana Bar Mass Tort Symposium (2002, 2004)
- Wyoming Trial Lawyers Association (2003)
- Utah Trial Lawyers Brain Injury Seminar (2002, 2003, 2004, 2005, 2006)
- Utah Bar Association Annual Seminar (2005)
- Ohio Academy of Trial Lawyers Annual (2003, 2004, 2005, 2006)
- Ohio Trial Advocacy Seminar (2004)
- Ohio Academy of Trial Lawyers Subrogation Seminar (2006)
- Ohio State Bar Association Annual Convention (2006)
- Mealeys (Lexis/Nexis) Emerging Drug and Devices Seminar (2004)
- Mealeys (Lexis/Nexis) Heart Device Litigation Seminar (2005)
- Mealeys (Lexis/Nexis) Medical Products and Heart Device Seminar (2005)
- Mealeys (Lexis / Nexis) Teleseminar concerning client expenses (2006)
- North American Brain Injury Society – Medical Issues in Brain Injury (2005, 2006)
- The Consumer Attorneys of Sonoma County (2001)
- The Consumer Attorneys of California (2001, 2003, 2004)
- Academy of Rail Labor Attorneys (2003, 2004)
- Alaska Trial Lawyer Association (2004)
- West Virginia Trial Lawyers (2003, 2006)
- Kansas Trial Lawyers Association (2003, 2004)
- Cleveland Bar Association (2001, 2005)
- Norfolk and Portsmouth Bar Association (2003)
- Virginia Trial Lawyers Association (2005)
- Finkelstein & Partners (New York, 2002, 2003)
- Jeff Anderson & Associates / Clergy Abuse Network Meeting (2003)
- TBI Symposium - Brain Injury Association of Ohio (2004, 2006)
- Doctor's Hospital - Joseph M. Still Burn Center (2002)
- Richardson, Patrick, Westbrook & Brickman Annual Meeting (SC, 2004, 2006)
- Provost Umphry, LLP Partners Meeting (Beaumont, 2003)
- Williams Bailey, L.L.P (Houston, 2003)
- PMA Group (2005)
- Hamilton Country Trial Lawyers Association (2005)
- Kentucky Academy of Trial Lawyers (2006)

## Relevant Publications

- *A Fine Line We Walk: Counseling Clients About the "Form" of Settlement*, 13 A.B.A. Prof'L Law. 4, (2002).
- *Don't Get Trapped By A Settlement Release*, Trial Magazine, September 2003.
- *Structured Settlement Factoring Transactions: New Laws Protect Clients Who Sell Their Structured Settlement Benefits*, Ohio Trial, Volume 13, Issue 2 (2004).
- *A Practical Approach to Proactive Client-Counseling and Avoiding Conflicts of Interest in Aggregate Settlements*, The Loyola University Journal of Public Interest Law, Volume 6 (2004).
- *Deferring Attorney Fees: Is There Now a Critical Mass of Enabling Legislation?* Ohio Trial, Volume 14, Issue 2 (2005)
- *Making Sense of Medicare Set-Asides*, Trial Magazine, May 2006
- *What Does the Ahlborn Decision Really Mean*?, Accepted for Publication by Ohio Trial for August 2006 volume.